1  Elizabeth J. Cabraser (State Bar No. 083151)
   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2  275 Battery Street, 29th Floor
   San Francisco, CA 94111-3339
3  Telephone: 415.956.1000
   Facsimile: 415.956.1008
4  E-mail: ecabraser@lchb.com

5  *Lead Counsel for Plaintiffs*

6  [additional counsel listed on signature page]

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12 | MALLEN FAJARDO, CHRISTOPHER | CASE NO. 3:20-cv-7473 |
   | ALLEN, FRANK COHEN, ANDREW | |
13 | KAVAN, MARK KOVALETZ, CECIL | **CLASS ACTION COMPLAINT** |
   | ROBINSON, SANDER SHADY, WILLIAM | |
14 | VENTURINO, and JOHN VORISEK, on | JURY TRIAL DEMANDED |
   | behalf of themselves and all others similarly | |
15 | situated, | |
16 |                          Plaintiffs, | |
17 |          v. | |
18 | DR. ING. H.C. F. PORSCHE AG, PORSCHE | |
   | CARS NORTH AMERICA, INC., and | |
19 | VOLKSWAGEN AG, | |
   |                          Defendants. | |
20

21 | IN RE: VOLKSWAGEN 'CLEAN DIESEL' | MDL No. 2672 CRB (JSC) |
   | MARKETING, SALES PRACTICES, AND | |
22 | PRODUCTS LIABILITY LITIGATION | The Honorable Charles R. Breyer |
23 | This Document Relates to: | |
24 | Audi $CO_2$ Cases | |
25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION ................................................................................................ 1

4

II.     NATURE OF THE ACTION.............................................................................. 1

III.    PARTIES ............................................................................................................ 2

5

        A.      Plaintiffs ................................................................................................. 2

6

        B.      Defendants ............................................................................................. 6

7

IV.     JURISDICTION AND VENUE ......................................................................... 7

V.      INTRADISTRICT ASSIGNMENT AND RELATED CASE........................... 7

8

VI.     FACTS COMMON TO ALL COUNTS............................................................. 8

9

        A.      Porsche and its parent and sister companies have a long history of
                cheating on emissions and fuel economy............................................. 8

10

        B.      The emissions and fuel economy cheating schemes in the Class
11              Vehicles................................................................................................ 10

12              1.      Porsche knew for years that certain of its gasoline vehicles
                        contained defeat devices. ........................................................ 10

13              2.      Porsche deceived consumers and regulators about the true
                        fuel economy and emissions of the Class Vehicles. ............... 11

14                      a.      Altered test vehicles: the Axle Ratio fraud ................. 12

15                      b.      Programming used only for test cycles:
                                "Testing Software" fraud ............................................. 16

16                      c.      False attestations of emissions compliance:
                                "Sport Plus" fraud ........................................................ 17

17              3.      Porsche—like all vehicle manufacturers—was subject to
18                      specific regulations governing fleet-wide $CO_2$ emissions and
                        vehicle-specific NOx emissions. ............................................ 19

19                      a.      Fleet-wide $CO_2$ regulations ............................................ 19

20                      b.      Effect on Fuel Economy Ratings .................................. 20

                        c.      NOx regulations ........................................................... 21

21

        C.      Defendants' advertising featured inflated fuel economy ratings and
22              false promises of environmental friendliness........................................ 21

VII.    CLASS ACTION ALLEGATIONS .................................................................. 32

23

        A.      Numerosity: Federal Rule of Civil Procedure 23(a)(1)........................ 33

24

        B.      Commonality and Predominance: Federal Rule of Civil Procedure
25              23(a)(2) and 23(b)(3)............................................................................. 33

        C.      Typicality: Federal Rule of Civil Procedure 23(a)(3) .......................... 34

26

        D.      Adequacy: Federal Rule of Civil Procedure 23(a)(4) .......................... 34

27

        E.      Declaratory and Injunctive Relief: Federal Rule of Civil Procedure
                23(b)(2) ................................................................................................. 35

28

        F.      Superiority: Federal Rule of Civil Procedure 23(b)(3) ........................ 35

- i -                              CLASS ACTION COMPLAINT
                                                                                    CASE NO.: 3:20-CV-7473

**TABLE OF CONTENTS**
(continued)

Page

VIII.   ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED............................ 35

    A.   Discovery Rule Tolling ........................................................................ 35

    B.   Tolling Due to Fraudulent Concealment............................................. 36

    C.   Estoppel................................................................................................ 36

IX.   CAUSES OF ACTION ........................................................................................ 37

    A.   Claims Asserted on Behalf of the Nationwide Class ........................... 37

        NATIONWIDE COUNT I: FRAUD BY CONCEALMENT
        (Common Law) ..................................................................................... 37

        NATIONWIDE COUNT II: IMPLIED AND WRITTEN
        WARRANTY Magnuson - Moss Warranty Act (15 U.S.C. §§ 2301,
        *et seq.*) ................................................................................................. 39

    B.   State-Specific Claims ........................................................................... 42

        ALABAMA COUNT I: Violations of the Alabama Deceptive Trade
        Practices Act Ala. Code § 8-19-1, *et seq.* (On Behalf of the Alabama
        State Class) ........................................................................................... 42

        ALABAMA COUNT II: Breach of Express Warranty Ala. Code
        §§ 7-2-313 and 7-2A-210 (On Behalf of the Alabama State Class) .................. 44

        ALABAMA COUNT III: Breach of Implied Warranty of
        Merchantability Ala. Code §§ 7-2-314 and 7-2A-212 (On Behalf of
        the Alabama State Class) ...................................................................... 47

        ALASKA COUNT I: Violations of the Alaska Unfair Trade
        Practices and Consumer Protection Act Alaska Stat. Ann.
        § 45.50.471 *et seq.* (On Behalf of the Alaska State Class) ................... 48

        ALASKA COUNT II: Breach of Express Warranty Alaska Stat.
        §§ 45.02.313 and 45.12.210 (On Behalf of the Alaska State Class).................... 50

        ALASKA COUNT III: Breach of Implied Warranty of
        Merchantability Alaska Stat. §§ 45.02.314 and 45.12.212 (On Behalf
        of the Alaska State Class) .................................................................... 53

        ARIZONA COUNT I: Violations of the Arizona Consumer Fraud
        Act Ariz. Rev. Stat. § 44-1521, *et seq.* (On Behalf of the Arizona
        State Class)............................................................................................ 54

        ARIZONA COUNT II: Breach of Express Warranty Ariz. Rev. Stat.
        §§ 47-2313 and 47-2A210 (On Behalf of the Arizona State Class) .................... 57

        ARIZONA COUNT III: Breach of Implied Warranty of
        Merchantability Ariz. Rev. Stat. §§ 47-2314 and 47-2A212 (On
        Behalf of the Arizona State Class)........................................................ 60

        ARKANSAS COUNT I: Violations of the Deceptive Trade Practices
        Act Ark. Code Ann. § 4-88-101 *et seq.* (On Behalf of the Arkansas
        State Class)............................................................................................ 61

        ARKANSAS COUNT II: Breach of Express Warranty Ark Code
        Ann. §§ 4-2-313 and 4-2A-210 (On Behalf of the Arkansas State
        Class)..................................................................................................... 63

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

3

4

ARKANSAS COUNT III: Breach of Implied Warranty of
Merchantability Ark. Code Ann. §§ 4-2-314 and 4-2A-212 (On
Behalf of the Arkansas State Class) ........................................................ 66

5

6

CALIFORNIA COUNT I: Violation of California Consumers Legal
Remedies Act Cal Bus. & Prof. Code § 1750, *et seq.* (On Behalf of
the California State Class).......................................................................... 67

7

CALIFORNIA COUNT II: Violations of the California Unfair
Competition Law Cal. Bus. & Prof. Code § 17200 *et seq.* (On Behalf
of the California State Class) ..................................................................... 69

8

9

CALIFORNIA COUNT III: Violations of the California False
Advertising Law Cal. Civ. Code § 17500 *et seq.* (On Behalf of the
California State Class) ................................................................................ 70

10

CALIFORNIA COUNT IV: Breach of Express Warranty Cal. Com.
Code §§ 2313 and 10210 (On Behalf of the California State Class) .................. 72

11

12

CALIFORNIA COUNT V: Breach of Implied Warranty of
Merchantability Cal. Com. Code §§ 2314 and 10212 (On Behalf of
the California State Class).......................................................................... 75

13

14

CALIFORNIA COUNT VI: Violation of Song-Beverly Consumer
Warranty Act, Breach of Implied Warranty Cal Civ. Code § 1790, *et
seq.* (On Behalf of the California State Class) ....................................... 76

15

16

CALIFORNIA COUNT VII: Violation of the Song-Beverly
Consumer Protection Act, Breach of Express Warranty Cal Civ.
Code § 1790, *et seq.* (On Behalf of the California State Class).......................... 78

17

CALIFORNIA COUNT VIII: Breach of Express California
Emissions Warranties Cal. Civ. Code § 1793.2, *et seq.* (On Behalf of
the California State Class).......................................................................... 79

18

19

CALIFORNIA COUNT IX: Failure to Recall/Retrofit (On Behalf of
the California State Class).......................................................................... 81

20

COLORADO COUNT I: Violations of the Colorado Consumer
Protection Act Colo. Rev. Stat. § 6-1-101 *et seq.* (On Behalf of the
Colorado State Class) ................................................................................ 81

21

22

COLORADO COUNT II: Breach of Express Warranty Colo. Rev.
Stat. §§ 4-2-313 and 4-2.5-210 (On Behalf of the Colorado State
Class)........................................................................................................... 84

23

24

COLORADO COUNT III: Breach of Implied Warranty of
Merchantability Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212 (On
Behalf of the Colorado State Class) ......................................................... 87

25

26

CONNECTICUT COUNT I: Violations of Connecticut Unlawful
Trade Practice Act Conn. Gen. Stat. § 42-110a, *et seq.* (On Behalf of
the Connecticut State Class)...................................................................... 88

27

CONNECTICUT COUNT II: Breach of Express Warranty Conn.
Gen. Stat. Ann. § 42A-2-313 (On Behalf of the Connecticut State
Class)........................................................................................................... 90

28

- iii -

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

CONNECTICUT COUNT III: Breach of Implied Warranty of
Merchantability Conn. Gen. Stat. Ann. § 42A-2-314 (On Behalf of
4
the Connecticut State Class)......................................................................... 93

5

DELAWARE COUNT I: Violations of the Delaware Consumer
Fraud Act 6 Del. Code § 2513 *et seq.* (On Behalf of the Delaware
6
State Class)..................................................................................................... 94

7

DELAWARE COUNT II: Breach of Express Warranty 6 Code
§§ 2-313 and 2A-210 (On Behalf of the Delaware State Class)................... 97

8

DELAWARE COUNT III: Breach of Implied Warranty of
Merchantability 6. Del. Code §§ 2-314 and 7-2A-212 (On Behalf of
9
the Delaware State Class) ........................................................................... 100

10

DISTRICT OF COLUMBIA COUNT I: Violations of the Consumer
Protection Procedures Act D.C. Code § 28-3901 *et seq.* (On Behalf
of the District of Columbia Class) .......................................................... 101

11

DISTRICT OF COLUMBIA COUNT II: Breach of Express
12
Warranty D.C. Code §§ 28:2-313 and 28:2A-210 (On Behalf of the
District of Columbia Class)....................................................................... 103

13

DISTRICT OF COLUMBIA COUNT III: Breach of Implied
Warranty of Merchantability D.C. Code §§ 28:2-314 and 28:2A-212
14
(On Behalf of the District of Columbia Class)......................................... 107

15

FLORIDA COUNT I: Violations of the Florida Unfair & Deceptive
Trade Practices Act Fla. Stat. § 501.201, *et seq.* (On Behalf of the
16
Florida State Class) .................................................................................... 108

17

FLORIDA COUNT II: Breach of Express Warranty F.S.A.
§§ 672.313 and 680.21 (On Behalf of the Florida State Class) ................ 110

18

FLORIDA COUNT III: Breach of Implied Warranty of
Merchantability F.S.A. §§ 672.314 and 680.212 (On Behalf of the
19
Florida State Class) .................................................................................... 113

20

GEORGIA COUNT I: Violations of Georgia's Fair Business
Practices Act Ga. Code Ann. § 10-1-390 *et seq.* (On Behalf of the
Georgia State Class) ................................................................................... 114

21

GEORGIA COUNT II: Violations of Georgia's Uniform Deceptive
22
Trade Practices Act Ga. Code Ann. § 10-1-370 *et seq.* (On Behalf of
the Georgia State Class) ............................................................................. 116

23

GEORGIA COUNT III: Breach of Express Warranty Ga. Code Ann.
§§ 11-2-313 and 11-2A-210 (On Behalf of the Georgia State Class)....... 119

24

GEORGIA COUNT IV: Breach of Implied Warranty of
Merchantability Ga. Code Ann. §§ 11-2-314 and 11-2A-212 (On
25
Behalf of the Georgia State Class) ............................................................ 122

26

HAWAII COUNT I: Unfair and Deceptive Acts in Violation of
Hawaii Law Haw. Rev. Stat. § 480 *et seq.* (On Behalf of the Hawaii
27
State Class)................................................................................................... 123

28

- iv -

**TABLE OF CONTENTS**
**(continued)**

Page

HAWAII COUNT II: Breach of Express Warranty Haw. Rev. Stat.
§§ 490:2-313 and 490:2A-210 (On Behalf of the Hawaii State Class)
.................................................................................................................. 125

HAWAII COUNT III: Breach of Implied Warranty of
Merchantability Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212 (On
Behalf of the Hawaii State Class) ...................................................... 128

IDAHO COUNT I: Violations of the Idaho Consumer Protection Act
Idaho Code § 48-601 *et seq.* (On Behalf of the Idaho State Class) ................... 129

IDAHO COUNT II: Breach of Express Warranty Idaho Code
§§ 28-2-313 and 28-12-210 (On Behalf of the Idaho State Class) ................... 131

IDAHO COUNT III: Breach of Implied Warranty of
Merchantability Idaho Code §§ 28-2-314 and 28-12-212 (On Behalf
of the Idaho State Class) .................................................................... 134

ILLINOIS COUNT I: Violations of the Illinois Consumer Fraud and
Deceptive Business Practices Act 815 ILCS 505/1, *et seq.* and 720
ILCS 295/1a (On Behalf of the Illinois State Class)............................ 135

ILLINOIS COUNT II: Breach of Express Warranty 810 Ill. Comp.
Stat. §§ 5/2-313 and 5/2A-210 (On Behalf of the Illinois State Class)
.................................................................................................................. 138

ILLINOIS COUNT III: Breach of Implied Warranty of
Merchantability 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212 (On
Behalf of the Illinois State Class)........................................................ 141

INDIANA COUNT I: Violations of the Indiana Deceptive
Consumer Sales Act Ind. Code § 24-5-0.5-3 (On Behalf of the
Indiana State Class)............................................................................. 142

INDIANA COUNT II: Breach of Express Warranty Ind. Code
§§ 26-1-3-313 and 26-1-2.1-210 (On Behalf of the Indiana State
Class)................................................................................................... 144

INDIANA COUNT III: Breach of Implied Warranty of
Merchantability Ind. Code §§ 26-1-3-314 and 26-1-2.1-212 (On
Behalf of the Indiana State Class)........................................................ 147

IOWA COUNT I: Violations of the Private Right of Action For
Consumer Frauds Act Iowa Code § 714h.1, *et seq.* (On Behalf of the
Iowa State Class)................................................................................. 148

IOWA COUNT II: Breach of Express Warranty Iowa Code
§§ 554.2313 and 554.13210 (On Behalf of the Iowa State Class)..................... 150

IOWA COUNT III: Breach of Implied Warranty of Merchantability
Iowa Code §§ 554.2314 and 554.13212 (On Behalf of the Iowa State
Class)................................................................................................... 153

KANSAS COUNT I: Violations of the Kansas Consumer Protection
Act Kan. Stat. Ann. § 50-623 *et seq.* (On Behalf of the Kansas State
Class)................................................................................................... 154

KANSAS COUNT II: Breach of Express Warranty Kan. Stat.
§§ 84-2-313 and 84-2A-210 (On Behalf of the Kansas State Class)................. 157

# TABLE OF CONTENTS
## (continued)

Page

KANSAS COUNT III: Breach of Implied Warranty of Merchantability Kan. Stat. §§ 84-2-314 and 84-2A-212 (On Behalf of the Kansas State Class) .................................................................. 160

KENTUCKY COUNT I: Violations of the Kentucky Consumer Protection Act Ky. Rev. Stat. Ann. § 367.110 *et seq.* (On Behalf of the Kentucky State Class) ................................................ 161

KENTUCKY COUNT II: Breach of Express Warranty Ky. Rev. Stat. §§ 335.2-313 and 355.2A-210 (On Behalf of the Kentucky State Class) ...................................................................... 163

KENTUCKY COUNT III: Breach of Implied Warranty of Merchantability Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212 (On Behalf of the Kentucky State Class) .................................. 166

LOUISIANA COUNT I: Violations of the Louisiana Unfair Trade Practices and Consumer Protection Law La. Stat. Ann. § 51:1401 *et seq.* (On Behalf of the Louisiana State Class)........................ 167

LOUISIANA COUNT II: Breach of Implied Warranty of Merchantability/Warranty Against Prohibitory Defects La. Civ. Code Art. 2520, 2524 (On Behalf of the Louisiana State Class) ...................... 170

MAINE COUNT I: Violations of the Maine Unfair Trade Practices Act Me. Rev. Stat. Ann. Tit. 5, § 205-A *et seq.* (On Behalf of the Maine State Class) .......................................................... 170

MAINE COUNT II: Breach of Express Warranty Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210 (On Behalf of the Maine State Class)......................... 173

MAINE COUNT III: Breach of Implied Warranty of Merchantability Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212 (On Behalf of the Maine State Class)........................................................ 176

MARYLAND COUNT I: Violations of the Maryland Consumer Protection Act Md. Code Com. Law § 13-101 *et seq.* (On Behalf of the Maryland State Class) .................................................. 177

MARYLAND COUNT II: Maryland Lemon Law Md. Code Com. Law § 14-1501 *et seq.* (On Behalf of the Maryland State Class) ...................... 179

MARYLAND COUNT III: Breach of Express Warranty Md. Code Com. Law §§ 2-313 and 2a-210 (On Behalf of the Maryland State Class).................................................................... 180

MARYLAND COUNT IV: Breach of Implied Warranty of Merchantability Md. Code Com. Law §§ 2-314 and 2a-212 (On Behalf of the Maryland State Class) .................................... 183

MASSACHUSETTS COUNT I: Deceptive Acts or Practices Prohibited by Massachusetts Law Mass. Gen. Laws Ch. 93a, § 1, *et seq.* (On Behalf of the Massachusetts State Class) ............................ 184

MASSACHUSETTS COUNT II: Massachusetts Lemon Law Mass. Gen. Laws Ch. 90, § 7N1/2(1) (On Behalf of the Massachusetts State Class)........................................................ 187

1

**TABLE OF CONTENTS**
(continued)

2

Page

3   MASSACHUSETTS COUNT III: Breach of Express Warranty
    Mass. Gen. Laws c. 106 §§ 2-313 and 2A-210 (On Behalf of the
4   Massachusetts State Class)..................................................................... 188

5   MASSACHUSETTS COUNT IV: Breach of Implied Warranty of
    Merchantability Mass. Gen. Laws c. 106 §§ 2-314 and 2A-212 (On
6   Behalf of the Massachusetts State Class)............................................... 191

    MICHIGAN COUNT I: Violations of the Michigan Consumer
7   Protection Act Mich. Comp. Laws § 445.903 *et seq.* (On Behalf of
    the Michigan State Class)........................................................................ 192
8
    MICHIGAN COUNT II: Breach of Express Warranty Mich. Comp.
9   Laws §§ 440.2313 and 440.2860 (On Behalf of the Michigan State
    Class)........................................................................................................ 195
10
    MICHIGAN COUNT III: Breach of Implied Warranty of
    Merchantability Mich. Comp. Laws §§ 440.2314 and 440.2860 (On
11  Behalf of the Michigan State Class)........................................................ 198

12  MINNESOTA COUNT I: Violations of the Minnesota Prevention of
    Consumer Fraud Act Minn. Stat. § 325F.68 *et seq.* (On Behalf of the
13  Minnesota State Class)............................................................................ 199

    MINNESOTA COUNT II: Violations of the Minnesota Uniform
14  Deceptive Trade Practices Act Minn. Stat. § 325D.43-48 *et seq.* (On
    Behalf of the Minnesota State Class)...................................................... 201
15
    MINNESOTA COUNT III: Breach of Express Warranty Minn. Stat.
16  §§ 336.2-313 and 336.2A-210 (On Behalf of the Minnesota State
    Class)........................................................................................................ 204
17
    MINNESOTA COUNT IV: Breach of Implied Warranty of
    Merchantability Minn. Stat. §§ 336.2-314 and 336.2A-212 (On
18  Behalf of the Minnesota State Class)...................................................... 207

19  MISSISSIPPI COUNT I: Violations of Mississippi Consumer
    Protection Act Miss. Code. Ann. § 75-24-1, *et seq.* (On Behalf of the
20  Mississippi State Class) .......................................................................... 208

21  MISSISSIPPI COUNT II: Breach of Express Warranty Miss. Code
    §§ 75-2-313 and 75-2A-210 (On Behalf of the Mississippi State
22  Class)........................................................................................................ 211

    MISSISSIPPI COUNT III: Breach of Implied Warranty of
23  Merchantability Miss. Code §§ 75-2-314 and 75-2A-212 (On Behalf
    of the Mississippi State Class) ............................................................... 214
24
    MISSOURI COUNT I: Violations of the Missouri Merchandising
25  Practices Act Mo. Rev. Stat. § 407.010 *et seq.* (On Behalf of the
    Missouri State Class) .............................................................................. 215
26
    MISSOURI COUNT II: Breach of Express Warranty Mo. Stat.
    §§ 400.2-313 and 400.2A-210 (On Behalf of the Missouri State
27  Class)........................................................................................................ 217

28  MISSOURI COUNT III: Breach of Implied Warranty of
    Merchantability Mo. Stat. §§ 400.2-314 and 400.2A-212 (On Behalf
    of the Missouri State Class) ................................................................... 220

- vii -

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

MONTANA COUNT I: Violations of the Montana Unfair Trade
Practices and Consumer Protection Act of 1973 Mont. Code Ann.

4

§ 30-14-101 *et seq.* (On Behalf of the Montana State Class)............................. 221

5

MONTANA COUNT II: Breach of Express Warranty Mont. Code
§§ 30-2-313 and 30-2A-210 (On Behalf of the Montana State Class)

6

.................................................................................................................... 223

MONTANA COUNT III: Breach of Implied Warranty of

7

Merchantability Mont. Code §§ 30-2-314 and 30-2A-212 (On Behalf
of the Montana State Class) .................................................................. 226

8

NEBRASKA COUNT I: Violations of the Nebraska Consumer
Protection Act Neb. Rev. Stat. § 59-1601 *et seq.* (On Behalf of the

9

Nebraska State Class)............................................................................. 227

10

NEBRASKA COUNT II: Breach of Express Warranty Neb. Rev. St.
U.C.C. §§ 2-313 and 2A-210 (On Behalf of the Nebraska State

11

Class)..................................................................................................... 230

12

NEBRASKA COUNT III: Breach of Implied Warranty of
Merchantability Neb. Rev. St. U.C.C. §§ 2-314 and 2A-212 (On

13

Behalf of the Nebraska State Class)....................................................... 233

14

NEVADA COUNT I: Violations of the Nevada Deceptive Trade
Practices Act Nev. Rev. Stat. § 598.0903 *et seq.* (On Behalf of the
Nevada State Class) ............................................................................... 234

15

NEVADA COUNT II: Breach of Express Warranty N.R.S.

16

§§ 104.2313 and 104A.2210 (On Behalf of the Nevada State Class)................ 236

NEVADA COUNT III: Breach of Implied Warranty of

17

Merchantability N.R.S. §§ 104.2314 and 104A.2212 (On Behalf of
the Nevada State Class) .......................................................................... 239

18

NEW HAMPSHIRE COUNT I: Violations of the New Hampshire
Consumer Protection Act N.H. Rev. Stat. § 358-A:1 *et seq.* (On

19

Behalf of the New Hampshire State Class)............................................. 240

20

NEW HAMPSHIRE COUNT II: Breach of Express Warranty N.H.
Rev. Stat. §§ 382-A:2-313 and 382-A:2A-210 (On Behalf of the

21

New Hampshire State Class)................................................................... 242

22

NEW HAMPSHIRE COUNT III: Breach of Implied Warranty of
Merchantability N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212
(On Behalf of the New Hampshire State Class) ..................................... 245

23

NEW JERSEY COUNT I: Violations of the New Jersey Consumer

24

Fraud Act N.J. Stat. Ann. § 56:8-1 *et seq.* (On Behalf of the New
Jersey State Class).................................................................................. 246

25

NEW JERSEY COUNT II: Breach of Express Warranty N.J.S.

26

12A:2-313 and 2A-210 (On Behalf of the New Jersey State Class).................. 248

NEW JERSEY COUNT III: Breach of Implied Warranty of

27

Merchantability N.J.S. 12A:2-314 and 2A-212 (On Behalf of the
New Jersey State Class) ......................................................................... 252

28

CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-7473

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

NEW MEXICO COUNT I: Violations of the New Mexico Unfair
Trade Practices Act N.M. Stat. Ann. § 57-12-1 *et seq.* (On Behalf of

4

the New Mexico State Class) ................................................................ 252

5

NEW MEXICO COUNT II: Breach of Express Warranty N.M. Stat.
§§ 55-2-313 and 55-2A-210 (On Behalf of the New Mexico State

6

Class) ..................................................................................................... 255

7

NEW MEXICO COUNT III: Breach of Implied Warranty of
Merchantability N.M. Stat. §§ 55-2-314 and 55-2A-212 (On Behalf

of the New Mexico State Class) ............................................................ 258

8

NEW YORK COUNT I: Violations of the New York General
Business Law § 349 N.Y. Gen. Bus. Law § 349 (On Behalf of the

9

New York State Class) .......................................................................... 259

10

NEW YORK COUNT II: Violations of the New York General
Business Law § 350 N.Y. Gen. Bus. Law § 350 (On Behalf of the

11

New York State Class) .......................................................................... 261

12

NEW YORK COUNT III: Breach of Express Warranty N.Y. U.C.C.
Law §§ 2-313 and 2A-210 (On Behalf of the New York State Class)

13

................................................................................................................ 263

14

NEW YORK COUNT IV: Breach of Implied Warranty of
Merchantability N.Y. U.C.C. Law §§ 2-314 and 2A-212 (On Behalf

of the New York State Class) ................................................................ 266

15

NORTH CAROLINA COUNT I: Violations of the North Carolina
Unfair and Deceptive Acts and Practices Act N.C. Gen. Stat.

16

§ 75-1.1 *et seq.* (On Behalf of the North Carolina State Class) ......................... 267

17

NORTH CAROLINA COUNT II: Breach of Express Warranty
N.C.G.S.A. §§ 25-2-313 and 252A-210 (On Behalf of the North

18

Carolina State Class) ............................................................................ 269

19

NORTH CAROLINA COUNT III: Breach of Implied Warranty of
Merchantability N.C.G.S.A. §§ 25-2-314 and 252A-212 (On Behalf

20

of the North Carolina State Class) ........................................................ 272

21

NORTH DAKOTA COUNT I: Violations of the North Dakota
Consumer Fraud Act N.D. Cent. Code § 51-15-02 (On Behalf of the

North Dakota State Class) ..................................................................... 273

22

NORTH DAKOTA COUNT II: Breach of Express Warranty N.D.
Cent. Code §§ 41-02-30 and 41-02.1-19 (On Behalf of the North

23

Dakota State Class) ............................................................................... 276

24

NORTH DAKOTA COUNT III: Breach of Implied Warranty of
Merchantability N.D. Cent. Code §§ 41-02-31 and 41-02.1-21 (On

25

Behalf of the North Dakota State Class) ............................................... 279

26

OHIO COUNT I: Violations of the Ohio Consumer Sales Practices
Act Ohio Rev. Code § 1345.01 *et seq.* (On Behalf of the Ohio State

27

Class) ..................................................................................................... 280

28

OHIO COUNT II: Violations of the Ohio Deceptive Trade Practices
Act Ohio Rev. Code § 4165.01 *et seq.* (On Behalf of the Ohio State

Class) ..................................................................................................... 283

1

**TABLE OF CONTENTS**
(continued)

2

Page

3     OHIO COUNT III: Breach of Express Warranty Ohio. Rev. Code
      § 1302.26, *et seq.* / U.C.C. § 2-313 (On Behalf of the Ohio State
4     Class).............................................................................................................. 285

5     OHIO COUNT IV: Breach of Implied Warranty of Merchantability
      Ohio Rev. Code Ann. §§ 1302.27 and 1310.19 (On Behalf of the
6     Ohio State Class)........................................................................................... 288

      OKLAHOMA COUNT I: Violations of the Oklahoma Consumer
7     Protection Act Okla. Stat. Tit. 15 § 751 *et seq.* (On Behalf of the
      Oklahoma State Class) ................................................................................... 289
8
      OKLAHOMA COUNT II: Breach of Express Warranty Okla. Stat.
9     Tit. 12 §§ 2-313 and 2A-210 (On Behalf of the Oklahoma State
      Class).............................................................................................................. 292
10
      OKLAHOMA COUNT III: Breach of Implied Warranty of
      Merchantability Okla. Stat. Tit. 12A §§ 2-314 and 2A-212 (On
11    Behalf of the Oklahoma State Class) .............................................................. 295

12    OREGON COUNT I: Violations of the Oregon Unlawful Trade
      Practices Act Or. Rev. Stat. § 646.605, *et seq.* (On Behalf of the
13    Oregon State Class)........................................................................................ 296

14    OREGON COUNT II: Breach of Express Warranty Or. Rev. Stat.
      §§ 72.3130 and 72A.2100 (On Behalf of the Oregon State Class).................... 298

15    OREGON COUNT III: Breach of Implied Warranty of
      Merchantability Or. Rev. Stat. §§ 72.3140 and 72A.2120 (On Behalf
16    of the Oregon State Class).............................................................................. 301

17    PENNSYLVANIA COUNT I: Violations of the Pennsylvania
      Unfair Trade Practices and Consumer Protection Law 73 P.S.
      § 201-1 *et seq.* (On Behalf of the Pennsylvania State Class)........................... 302
18
      PENNSYLVANIA COUNT II: Breach of Express Warranty 13. Pa.
19    Cons. Stat. §§ 2313 and 2A210 (On Behalf of the Pennsylvania State
      Class).............................................................................................................. 304
20
      PENNSYLVANIA COUNT III: Breach of Implied Warranty of
      Merchantability 13. Pa. Cons. Stat. §§ 2314 and 2A212 (On Behalf
21    of the Pennsylvania State Class) .................................................................... 307

22    RHODE ISLAND COUNT I: Violations of the Rhode Island
      Deceptive Trade Practices and Consumer Protection Law R.I. Gen.
23    Laws § 6-13.1 *et seq.* (On Behalf of the Rhode Island State Class) ................. 308

      RHODE ISLAND COUNT II: Breach of Express Warranty 6A R.I.
24    Gen. Laws §§ 6A-2-313 and 6A-2.1-210 (On Behalf of the Rhode
      Island State Class).......................................................................................... 311
25
      RHODE ISLAND COUNT III: Breach of Implied Warranty of
      Merchantability 6A R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212
26    (On Behalf of the Rhode Island State Class) .................................................. 314

27    SOUTH CAROLINA COUNT I: Violations of the South Carolina
      Unfair Trade Practices Act S.C. Code Ann. § 39-5-10 *et seq.* (On
28    Behalf of the South Carolina State Class)....................................................... 315

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

SOUTH CAROLINA COUNT II: Violations of the South Carolina
Regulation of Manufacturers, Distributors, & Dealers Act S.C. Code
Ann. § 56-15-10 *et seq.* (On Behalf of the South Carolina State
Class)................................................................................................................ 317

4

5

SOUTH CAROLINA COUNT III: Breach of Express Warranty S.C.
Code §§ 36-2-313 and 36-2A-210 (On Behalf of the South Carolina
State Class).................................................................................................... 318

6

7

SOUTH CAROLINA COUNT IV: Breach of Implied Warranty of
Merchantability S.C. Code §§ 36-2-314 and 36-2A-212 (On Behalf
of the South Carolina State Class) ......................................................... 321

8

9

SOUTH DAKOTA COUNT I: Violations of the South Dakota
Deceptive Trade Practices and Consumer Protection Law S.D.
Codified Laws § 37-24-6 (On Behalf of the South Dakota State
Class)................................................................................................................ 322

10

11

SOUTH DAKOTA COUNT II: Breach of Express Warranty S.D.
Codified Laws §§ 57A-2-313 and 57-2A-210 (On Behalf of the
South Dakota State Class)........................................................................ 324

12

13

SOUTH DAKOTA COUNT III: Breach of Implied Warranty of
Merchantability S.D. Codified Laws §§ 57A-2-314 and 57-2A-212
(On Behalf of the South Dakota State Class)...................................... 328

14

15

TENNESSEE COUNT I: Violations of the Tennessee Consumer
Protection Act Tenn. Code Ann. § 47-18-101 *et seq.* (On Behalf of
the Tennessee State Class) ........................................................................ 329

16

17

TENNESSEE COUNT II: Breach of Express Warranty Tenn. Code
Ann. §§ 47-2-313 and 47-2A-210 (On Behalf of the Tennessee State
Class)................................................................................................................ 331

18

19

TENNESSEE COUNT III: Breach of Implied Warranty of
Merchantability Tenn. Code Ann. §§ 47-2-314 and 47-2A-212 (On
Behalf of the Tennessee State Class) ..................................................... 334

20

TEXAS COUNT I: Violations of the Deceptive Trade Practices Act
Tex. Bus. & Com. Code § 17.41 *et seq.* (On Behalf of the Texas State
Class)................................................................................................................ 335

21

22

TEXAS COUNT II: Breach of Express Warranty Tex. Bus. & Com.
Code §§ 2.313 and 2A.210 (On Behalf of the Texas State Class)..................... 337

23

TEXAS COUNT III: Breach of Implied Warranty of
Merchantability Tex. Bus. & Com. Code §§ 2.314 and 2A.212 (On
Behalf of the Texas State Class) ............................................................. 340

24

UTAH COUNT I: Violations of the Utah Consumer Sales Practices
Act Utah Code Ann. § 13-11-1 *et seq.* (On Behalf of the Utah State
Class)................................................................................................................ 341

25

26

UTAH COUNT II: Breach of Express Warranty Utah Code
§§ 70A-2-313 and 70-2A-210 (On Behalf of the Utah State Class)................. 344

27

UTAH COUNT III: Breach of Implied Warranty of Merchantability
Utah Code §§ 70A-2-314 and 70-2A-212 (On Behalf of the Utah
State Class).................................................................................................... 347

28

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

VERMONT COUNT I: Violations of the Vermont Consumer Fraud
Act Vt. Stat. Ann. Tit. 9, § 2451 *et seq.* (On Behalf of the Vermont
4       State Class) .......................................................................................................... 348

VERMONT COUNT II: Vermont Lemon Law Vt. Stat. Tit. 9,
5       § 4170 *et seq.* (On Behalf of the Vermont State Class) ..................................... 350

6       VERMONT COUNT III: Breach of Express Warranty Vt. Stat. Tit.
9, §§ 2-313 and 2A-210 (On Behalf of the Vermont State Class) ..................... 352

7       VERMONT COUNT IV: Breach of Implied Warranty of
Merchantability Vt. Stat. Tit. 9, §§ 2-314 and 2A-212 (On Behalf of
8       the Vermont State Class)..................................................................................... 355

9       VIRGINIA COUNT I: Violations of the Virginia Consumer
Protection Act Va. Code Ann. § 59.1-196 *et seq.* (On Behalf of the
10      Virginia State Class) .......................................................................................... 356

11      VIRGINIA COUNT II: Breach of Express Warranty Va. Code
§§ 8.2-313 and 8.2A-210 (On Behalf of the Virginia State Class)..................... 358

12      VIRGINIA COUNT III: Breach of Implied Warranty of
Merchantability Va. Code §§ 8.2-314 and 8.2A-212 (On Behalf of
13      the Virginia State Class) ..................................................................................... 361

14      WASHINGTON STATE COUNT I: Violations of the Washington
Consumer Protection Act Wash. Rev. Code Ann. § 19.86.010 *et seq.*
15      (On Behalf of the Washington State Class) ........................................................ 362

16      WASHINGTON STATE COUNT II: Washington Lemon Law
Wash. Rev. Code § 19.118.005 *et seq.* (On Behalf of the Washington
State Class)......................................................................................................... 364

17
WASHINGTON STATE COUNT III: Breach of Express Warranty
18      Wash Rev. Code §§ 62A.2-313 and 62A.2A-210 (On Behalf of the
Washington State Class) ..................................................................................... 366

19      WASHINGTON STATE COUNT IV: Breach of Implied Warranty
of Merchantability Wash Rev. Code §§ 62A.2-314 and 62A.2A-212
20      (On Behalf of the Washington State Class) ........................................................ 369

21      WEST VIRGINIA COUNT I: Violations of the West Virginia
Consumer Credit and Protection Act W. Va. Code § 46A-1-101 *et*
22      *seq.* (On Behalf of the West Virginia State Class)............................................. 370

WEST VIRGINIA COUNT II: West Virginia Lemon Law W. Va.
23      Code § 46A-6A-1 *et seq.* (On Behalf of the West Virginia State
Class).................................................................................................................. 372

24
WEST VIRGINIA COUNT III: Breach of Express Warranty W. Va.
25      Code §§ 46-2-313 and 46-2A-210 (On Behalf of the West Virginia
State Class)......................................................................................................... 375

26      WEST VIRGINIA COUNT IV: Breach of Implied Warranty of
Merchantability W. Va. Code §§ 46-2-314 and 46-2A-212 (On
27      Behalf of the West Virginia State Class) ............................................................ 378

28

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

WISCONSIN COUNT I: Violations of the Wisconsin Deceptive
Trade Practices Act Wis. Stat. § 100.18 *et seq.* (On Behalf of the
4    Wisconsin State Class)......................................................................................... 379

5    WISCONSIN COUNT II: Breach of Express Warranty Wis. Stat.
§§ 402.313 and 411.210 (On Behalf of the Wisconsin State Class).................. 381

6    WISCONSIN COUNT III: Breach of Implied Warranty of
Merchantability Wis. Stat. §§ 402.314 and 411.212 (On Behalf of
7    the Wisconsin State Class)................................................................................... 384

8    WYOMING COUNT I: Violations of the Wyoming Consumer
Protection Act, Wyo. Stat. § 40-12-101, *et seq.* (On Behalf of the
9    Wyoming State Class)........................................................................................... 385

WYOMING COUNT II: Breach of Express Warranty Wyo. Stat.
10    §§ 34.1-2-313 and 34.1-.2A-210 (On Behalf of the Wyoming State
Class)..................................................................................................................... 388

11    WYOMING COUNT III: Breach of Implied Warranty of
Merchantability Wyo. Stat. §§ 34.1-2-314 and 34.1-.2A-212 (On
12    Behalf of the Wyoming State Class).................................................................... 391

13    X.    REQUEST FOR RELIEF ........................................................................................ 392

14    XI.    DEMAND FOR JURY TRIAL................................................................................ 393

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     **INTRODUCTION**

Plaintiffs Mallen Fajardo, Christopher Allen, Frank Cohen, Andrew Kavan, Mark Kovaletz, Cecil Robinson, Sander Shady, William Venturino, and John Vorisek, individually and on behalf of all others similarly situated (the "Class"), allege the following against Dr. Ing. H.c. F. Porsche AG ("Porsche AG"), Porsche Cars North America, Inc. ("Porsche NA") (together, "Porsche"), and Volkswagen AG (collectively, "Defendants") based, where applicable, on personal knowledge, information and belief, and the thorough pre-filing investigation and vehicle testing of counsel and their experts.

## II.     **NATURE OF THE ACTION**

1.     This case exposes yet another emissions and fuel economy cheating scheme within the Volkswagen corporate family. As with the "Clean Diesel" cases and the "Audi $CO_2$" gasoline cases that followed, Plaintiffs allege here that Defendants manipulated testing results for a decade's worth of Porsche-branded vehicles sold in the United States, causing those vehicles to emit more pollution and obtain worse fuel economy on the road than in regulatory testing.

2.     The broad strokes of this latest scheme were first published in the German press reports, which revealed that the German regulatory agency (KBA) was investigating Porsche for manipulating the emissions systems of certain vehicles.

3.     Following the reports, Plaintiffs conducted their own extensive investigation and expert testing that both confirms and expands upon publicly reported allegations. This investigation has revealed an extensive scheme implemented with the common goal of artificially decreasing emissions test results and increasing fuel economy results to evade fleet-wide and vehicle-specific emissions regulations and to deceive Plaintiffs and the Class about the true nature of Porsche's vehicles. Plaintiffs' investigation shows that this scheme manifested in at least three ways, and affects hundreds of thousands of Porsche vehicles sold in the United States. In short, the three prongs of the scheme are as follows.

4.     First, Defendants physically altered the hardware (the gears connecting the drive shaft and rear axle) and manipulated the software of testing vehicles, rendering such vehicles different from the vehicles actually produced and sold to consumers. These testing vehicles emitted

1  fewer pollutants and were more fuel efficient than the production vehicles that consumers bought

2  and leased. This scheme is labeled herein as the "Rear Axle" or "Axle Ratio" fraud.

3      5.      Second, Defendants installed secret software in certain vehicles' Electronic Control

4  Unit ("ECU") that again caused the vehicles to run cleaner and obtain better fuel economy during

5  testing than during real-world driving. This scheme is labeled herein as the "Testing Software"

6  fraud.

7      6.      Third, Defendants falsely attested that certain vehicles' high-performance driving

8  mode, known as Sport Plus, met emissions requirements, when in reality, the vehicles exceeded

9  legal limits of certain pollutants in Sport Plus mode, and thus were illegal to import or sell in the

10  United States. This scheme is labeled herein as the "Sport Plus" fraud.

11      7.      This manipulation was deceptive, illegal, and material to regulators and consumers

12  alike. The scheme was also devised by the same companies, in the same time period, and in the

13  same places as the "Clean Diesel" and "Audi $CO_2$" emissions and fuel economy fraud, to which this

14  plot bears a striking resemblance.

15      8.      Through this action, Plaintiffs and the proposed Class seek to enjoin Porsche's

16  deceptive conduct and recover the economic damages it caused.

17  **III.   PARTIES**

18      **A.   Plaintiffs**

19      9.      Plaintiff **Mallen Fajardo** (for the purpose of this paragraph, "Plaintiff"), a citizen of

20  California, residing in San Bruno, California, purchased a used 2007 Porsche 911 Carrera (for the

21  purpose this paragraph, the "Class Vehicle") on or around June 17, 2017, at Volvo Palo Alto in Palo

22  Alto, California. The Class Vehicle is equipped with Sport Plus mode. Plaintiff decided to purchase

23  the Class Vehicle based in part on Porsche's representations regarding the vehicle's fuel economy,

24  emissions, and/or performance. At the time of purchase, Plaintiff did not know that the Class

25  Vehicle was designed to deceive regulators and the public, that its advertised fuel economy was

26  fraudulent and overstated, and that it emitted more pollutants than represented and potentially

27  allowed by law. Plaintiff has also paid more for fuel during his possession of the vehicle than he

28  would have had it achieved the represented fuel economy, and has been inconvenienced by having

1    to refill the fuel tank more often. Plaintiff has suffered a concrete injury as a direct and proximate

2    result of Defendants' misconduct.

3            10.    Plaintiff **Christopher Allen** (for the purpose of this paragraph, "Plaintiff"), a citizen

4    of Ohio, residing in New Albany, Ohio, purchased a used 2014 Porsche 911 Carrera S (for the

5    purpose this paragraph, the "Class Vehicle") in or around January 16, 2020, at Germain Lexus of

6    Dublin, in Dublin, Ohio. The Class Vehicle is equipped with Sport Plus mode. Plaintiff decided to

7    purchase the Class Vehicle based in part on Porsche's representations regarding the vehicle's fuel

8    economy, emissions, and/or performance. At the time of purchase, Plaintiff did not know that the

9    Class Vehicle was designed to deceive regulators and the public, that its advertised fuel economy

10   was fraudulent and overstated, and that it emitted more pollutants than represented and potentially

11   allowed by law. Plaintiff has also paid more for fuel during his possession of the vehicle than he

12   would have had it achieved the represented fuel economy, and has been inconvenienced by having

13   to refill the fuel tank more often. Plaintiff has suffered a concrete injury as a direct and proximate

14   result of Defendants' misconduct.

15           11.    Plaintiff **Frank Cohen** (for the purpose of this paragraph, "Plaintiff"), a citizen of

16   New York, residing in Melville, New York, purchased a used 2009 Porsche 911 (for the purpose

17   this paragraph, the "Class Vehicle") in or around January 2020, from a private sale in Easton,

18   Connecticut. Plaintiff decided to purchase the Class Vehicle based in part on Porsche's

19   representations regarding the vehicle's fuel economy, emissions, and/or performance. At the time

20   of purchase, Plaintiff did not know that the Class Vehicle was designed to deceive regulators and

21   the public, that its advertised fuel economy was fraudulent and overstated, and that it emitted more

22   pollutants than represented and potentially allowed by law. Plaintiff has also paid more for fuel

23   during his possession of the vehicle than he would have had it achieved the represented fuel

24   economy, and has been inconvenienced by having to refill the fuel tank more often. Plaintiff has

25   suffered a concrete injury as a direct and proximate result of Defendants' misconduct.

26           12.    Plaintiff **Andrew Kavan** (for the purpose of this paragraph, "Plaintiff"), a citizen of

27   Nebraska, residing in Omaha, Nebraska, purchased a used 2011 Porsche Panamera (for the purpose

28   this paragraph, the "Class Vehicle") in or around August 21, 2020, from a private sale in St.

George, Utah. The Class Vehicle is equipped with Sport Plus mode. Plaintiff decided to purchase the Class Vehicle based in part on Porsche's representations regarding the vehicle's fuel economy, emissions, and/or performance. At the time of purchase, Plaintiff did not know that the Class Vehicle was designed to deceive regulators and the public, that its advertised fuel economy was fraudulent and overstated, and that it emitted more pollutants than represented and potentially allowed by law. Plaintiff has also paid more for fuel during his possession of the vehicle than he would have had it achieved the represented fuel economy, and has been inconvenienced by having to refill the fuel tank more often. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct.

13.     Plaintiff **Mark Kovaletz** (for the purpose of this paragraph, "Plaintiff"), a citizen of California, residing in Yorba Linda, California, purchased a certified pre-owned 2014 Porsche Boxster S (for the purpose this paragraph, the "Class Vehicle") in or around November 5, 2018, at Porsche Riverside (part of the Walter's Automotive Group), an authorized Porsche dealer in Riverside, California. Plaintiff decided to purchase the Class Vehicle based in part on Porsche's representations regarding the vehicle's fuel economy, emissions, and/or performance. At the time of purchase, Plaintiff did not know that the Class Vehicle was designed to deceive regulators and the public, that its advertised fuel economy was fraudulent and overstated, and that it emitted more pollutants than represented and potentially allowed by law. Plaintiff has also paid more for fuel during his possession of the vehicle than he would have had it achieved the represented fuel economy, and has been inconvenienced by having to refill the fuel tank more often. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct.

14.     Plaintiff **Cecil Robinson** (for the purpose of this paragraph, "Plaintiff"), a citizen of Colorado, residing in Grand Junction, Colorado, purchased a certified pre-owned 2009 Porsche 911 (for the purpose this paragraph, the "Class Vehicle") on or around December 12, 2015, at Porsche Atlanta Perimeter (part of the Jim Ellis Automotive Group), an authorized Porsche dealer in Atlanta, Georgia. Plaintiff decided to purchase the Class Vehicle based in part on Porsche's representations regarding the vehicle's fuel economy, emissions, and/or performance. At the time of purchase, Plaintiff did not know that the Class Vehicle was designed to deceive regulators and

1    the public, that its advertised fuel economy was fraudulent and overstated, and that it emitted more

2    pollutants than represented and potentially allowed by law. Plaintiff has also paid more for fuel

3    during his possession of the vehicle than he would have had it achieved the represented fuel

4    economy, and has been inconvenienced by having to refill the fuel tank more often. Plaintiff has

5    suffered a concrete injury as a direct and proximate result of Defendants' misconduct.

6           15.    Plaintiff **Sander Shady** (for the purpose of this paragraph, "Plaintiff"), a citizen of

7    Florida, residing in Estero, Florida, purchased a certified pre-owned 2013 Porsche 911 (for the

8    purpose this paragraph, the "Class Vehicle") in or around June 2016, from Cherry Hill Porsche, an

9    authorized Porsche dealership in Cherry Hill, New Jersey. Plaintiff also purchased a used 2013

10   Porsche Cayenne in or around April 2017 from Mercedes-Benz of Bonita Springs in Naples,

11   Florida. For the purpose of this paragraph, Plaintiffs' two Porsche vehicles are referred to as the

12   "Class Vehicles." The Class Vehicles are equipped with Sport Plus mode. Plaintiff decided to

13   purchase the Class Vehicles based in part on Porsche's representations regarding the vehicles' fuel

14   economy, emissions, and/or performance. At the time of purchase, Plaintiff did not know that the

15   Class Vehicles were designed to deceive regulators and the public, that its advertised fuel economy

16   was fraudulent and overstated, and that it emitted more pollutants than represented and potentially

17   allowed by law. Plaintiff has also paid more for fuel during his possession of the vehicles than he

18   would have had it achieved the represented fuel economy, and has been inconvenienced by having

19   to refill the fuel tank more often. Plaintiff has suffered a concrete injury as a direct and proximate

20   result of Defendants' misconduct.

21          16.    Plaintiff **William Venturino** (for the purpose of this paragraph, "Plaintiff"), a

22   citizen of Arizona, residing in Glendale, Arizona, purchased a used 2010 Porsche 911 Carrera (for

23   the purpose this paragraph, the "Class Vehicle") on or around December 2, 2016, at Jaguar Land

24   Rover North Scottsdale, a Penske Automotive Group dealership in Scottsdale, Arizona. The Class

25   Vehicle is equipped with Sport Plus mode. Plaintiff decided to purchase the Class Vehicle based in

26   part on Porsche's representations regarding the vehicle's fuel economy, emissions, and/or

27   performance. At the time of purchase, Plaintiff did not know that the Class Vehicle was designed to

28   deceive regulators and the public, that its advertised fuel economy was fraudulent and overstated,

1    and that it emitted more pollutants than represented and potentially allowed by law. Plaintiff has

2    also paid more for fuel during his possession of the vehicle than he would have had it achieved the

3    represented fuel economy, and has been inconvenienced by having to refill the fuel tank more

4    often. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants'

5    misconduct.

6         17.    Plaintiff **John Vorisek** (for the purpose of this paragraph, "Plaintiff"), a citizen of

7    North Carolina, residing in Wilmington, North Carolina, purchased a certified pre-owned 2017

8    Porsche 911 (for the purpose this paragraph, the "Class Vehicle") in or around October 2018, at

9    Porsche Wilmington, in Wilmington, North Carolina. Plaintiff decided to purchase the Class

10   Vehicle based in part on Porsche's representations regarding the vehicle's fuel economy,

11   emissions, and/or performance. At the time of purchase, Plaintiff did not know that the Class

12   Vehicle was designed to deceive regulators and the public, that its advertised fuel economy was

13   fraudulent and overstated, and that it emitted more pollutants than represented and potentially

14   allowed by law. Plaintiff has also paid more for fuel during his possession of the vehicle than he

15   would have had it achieved the represented fuel economy, and has been inconvenienced by having

16   to refill the fuel tank more often. Plaintiff has suffered a concrete injury as a direct and proximate

17   result of Defendants' misconduct.

18        **B.    Defendants**

19        18.    **Dr. Ing. h.c. F. Porsche AG** ("Porsche AG") is a German corporation with its

20   principal place of business located in Stuttgart, Germany. Porsche AG designs, develops,

21   manufacturers, and sells luxury automobiles. Porsche AG is a wholly-owned subsidiary of VW

22   AG. Porsche AG engineered, designed, developed, manufactured, and installed the software on the

23   Class Vehicles and exported these vehicles with the knowledge and understanding that they would

24   be sold throughout the United States. On information and belief, Porsche AG also reviewed and

25   approved the marketing and advertising campaigns designed to sell the Porsche-branded Class

26   Vehicles.

27        19.    **Porsche Cars North America, Inc.** ("Porsche America") is a Delaware

28   corporation with its principal place of business located at 1 Porsche Drive, Atlanta, Georgia 30354.

1    Porsche America is a wholly-owned U.S. subsidiary of Porsche AG, and it engages in business,

2    including the advertising, marketing and sale of Porsche automobiles, in all 50 states.

3            20.    **Volkswagen AG** ("VW AG") is a German corporation with its principal place of

4    business in Wolfsburg, Germany. VW AG is one of the largest automobile manufacturers in the

5    world, and is in the business of designing, developing, manufacturing, and selling automobiles.

6    VW AG is the parent corporation of Porsche AG. Upon information and belief, VW AG reviewed

7    and approved Porsche's vehicle designs, testing strategies, and marketing materials.

8    **IV.    JURISDICTION AND VENUE**

9            21.    This Court has jurisdiction over this action pursuant to the Class Action Fairness

10   Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship

11   from one Defendant, there are more than 100 Class members, and the aggregate amount in

12   controversy exceeds $5 million, exclusive of interest and costs. The Court also has supplemental

13   jurisdiction over the claim brought under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et*

14   *seq.*, because that claim arises from the same controversy as the state law claims over which this

15   court has jurisdiction under CAFA. The Court has personal jurisdiction over Defendants pursuant

16   to 18 U.S.C. §§ 1965(b) and (d), and Cal. Code Civ. P. § 410.10.

17           22.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part

18   of the events and/or omissions giving rise to the claims occurred in this District, and because

19   Defendants have caused harm to Class members residing in this District, including Plaintiff Mallen

20   Fajardo. Defendants have marketed, advertised, sold and leased the Class Vehicles from dealers

21   located in this District.

22   **V.    INTRADISTRICT ASSIGNMENT AND RELATED CASE**

23           23.    This action is properly assigned to the San Francisco Division of this District

24   pursuant to N.D. Cal. L.R. 3-2 because a substantial part of the events or omissions giving rise to

25   Plaintiffs' claims arose in the counties served by the San Francisco Division. Moreover,

26   Defendants conduct substantial business in the counties served by this Division, have marketed,

27   advertised, sold and leased the Class Vehicles in those counties, and have caused harm to Class

28   members residing in those counties, including Mallen Fajardo who resides in San Bruno County.

24.     Finally, this Complaint is related to the Volkswagen "Clean Diesel" MDL No. 2672 proceedings—and specifically the "Audi $CO_2$ Cases" within those MDL proceedings—which have been consolidated before Judge Charles R. Breyer, presiding in the San Francisco Division of this District. As noted above and described further herein, the fraud alleged here involves many of the same players, implementing similar schemes, with nearly identical objectives, as the "Clean Diesel" scandal.

## VI.     FACTS COMMON TO ALL COUNTS

### A.     Porsche and its parent and sister companies have a long history of cheating on emissions and fuel economy.

25.     In the fall of 2015 the public learned that Volkswagen, Audi, and Porsche had deliberately used defeat devices—software designed to cheat emissions tests and deceive federal and state regulators—in nearly 600,000 so-called "clean" diesel vehicles sold in the United States over the course of six years. Unbeknownst to consumers and regulatory authorities, Volkswagen, Audi, and Porsche installed a software defeat device that allowed their diesel vehicles to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures.

26.     During emissions testing, the defeat device produced regulation-compliant results. When the vehicles were driven on the road, however, the defeat device reduced the effectiveness of the vehicles' emissions control system and caused the vehicles to emit noxious pollutants like oxides of nitrogen ("NOx") at up to 40 times the legal limit. Only by installing the defeat device on their vehicles were Volkswagen, Audi, and Porsche able to deceive the public and obtain permission from EPA and CARB to sell the vehicles. That case was litigated, and ultimately settled, under this Court's guidance in a pair of landmark settlements that provided billions of dollars to consumers and environmental mitigation. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC) (Dkt. 2102), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) (2.0L Final Approval Order), *aff'd*, 895 F.3d 597 (9th Cir. 2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB

1    (JSC) (Dkt. 3329), 2017 WL 2212783, at *2 (N.D. Cal. May 17, 2017) (3.0L Final Approval

2    Order).

3          27.    The Volkswagen Group's cheating was not limited to diesel vehicles. In late 2015 or

4    early 2016, the German Motor Transportation Authority ("KBA") detected increased $CO_2$

5    emissions and other irregularities in certain Audi vehicles.[1] As it turned out, Volkswagen and its

6    subsidiary companies—including Porsche—had again installed software that caused certain

7    vehicles to perform differently in a testing environment than on the road. The software, called the

8    "Warm-up Program," was calibrated to activate when it encounters certain common "entry

9    conditions" (including key start) and de-activate under certain "exit conditions" (such as steering

10   wheel rotation, longitudinal acceleration, and temperature conditions) which are common in

11   real-world driving but typically not satisfied during regulator tests. The result was that, in

12   approximately 100,000 Volkswagen-, Audi-, Bentley-, and Porsche-branded vehicles, Warm-up

13   Program was active for some or all of standard emissions testing procedures and mostly inactive

14   during on-road driving. This mattered because in "normal" mode—*i.e.*, with Warm-up Program

15   deactivated—the vehicles shift at higher RPMs, emit more carbon dioxide, and use more gas. As

16   with the diesel scandal, under this Court's guidance, these issues were litigated, and ultimately

17   settled for a non-reversionary $96.5 million fund that provided full compensation to the class. *See*

18   *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672

19   CRB (JSC), Dkt. 7244 (March 2, 2020) ("Audi $CO_2$" Final Approval Order).

20         28.    It has now been revealed that this was not the only emissions-manipulation scheme

21   affecting Porsche's gasoline vehicles. As described herein, Porsche has engaged in several more

22   illegal schemes dating back to at least 2007 that have misled consumers and regulators about the

23   true emissions and fuel economy of up to 400,000 gasoline vehicles sold in the United States.[2]

---

24   [1] *See, e.g.*, Carsten Rehder, *Examiners Measure Excessive CO2-Values for Many Car Models*, Bild

25   (November 13, 2016), http://www.bild.de/geld/aktuelles/wirtschaft/pruefer-messen-bei-vielen-
     automodellen-ueberhoehte-48744426.bild.html (German language article); *Ministry of*

26   *Transportation Examines Accusations Against Audi*, Handelsblatt (November 7, 2016),
     http://www.handelsblatt.com/politik/deutschland/abgaswertemanipulation-verkehrsministerium-p

27   rueft-vorwuerfe-gegen-audi/14804236.html (German language article).

28   [2] *See, e.g.*, Porsche Newsroom US, *Sales Statistics – Porsche Sales in North America*,
     https://newsroom.porsche.com/en_US/company/porsche-cars-north-america-sales-statistics-1819
     *Footnote continued on next page*

**B.**      **The emissions and fuel economy cheating schemes in the Class Vehicles**

**1.**      **Porsche knew for years that certain of its gasoline vehicles contained defeat devices.**

29.      As with its diesel vehicles, Porsche had for years developed and implemented a secret plan to cheat on emissions tests in certain gasoline vehicles. Upon information and belief, this plan goes back over a decade and was known to the upper echelons of Porsche management for at least five years.

30.      If they didn't know already, senior management learned about Porsche's emissions cheating in certain gasoline vehicles during a "crisis meeting" in November 2015.[3] Two months earlier, in September 2015, Porsche AG CEO Martin Mueller took over the reins at Volkswagen AG following Martin Winterkorn's resignation in the wake of the diesel scandal.[4] Mueller's replacement at Porsche commissioned a systematic review of Porsche's gas fleet to determine if Porsche's gas fleet (like its diesel fleet) cheated on emissions tests.[5] In just two months, engineers determined that the answer was "yes." A "crisis meeting" was convened to inform senior management of the findings.

31.      During the crisis meeting, company engineering experts explained to a large group that Porsche had actively been engaging in emissions cheating in gasoline vehicles for years. In meetings attended by senior management, these engineers explained that certain Porsche gasoline vehicles contained defeat devices which caused the vehicles to perform differently—*e.g.*, to emit fewer pollutants like $CO_2$—during testing on a dynamometer than in everyday driving.[6] Upon information and belief, Porsche did not contact the EPA or CARB about its findings. Instead, it

---

*Footnote continued from previous page*
0.html (showing that Porsche sold 420,596 MY 2007 – 2017 vehicles in the United States, a small percentage of which were diesel vehicles, not implicated by the allegations herein).
[3] Jan C. Wehmeyer, *The Gear Trick: Porsche apparently manipulated the transmissions of test vehicles in order to improve their CO2 emissions – the public prosecutor is now investigating*, Business Insider (October 4, 2020), https://www.businessinsider.de/wirtschaft/zahnrad-trick-porsche-manipulierte-offenbar-getriebe-von-testfahrzeugen-um-co2-ausstoss-zu-schoenen/ (German language article).
[4] *Id.*
[5] *Id.*
[6] *Id.*

continued to seek the required approvals from the EPA and CARB to export its gasoline vehicles that contained illegal defeat devices into the United States. Remarkably, Porsche engaged in this illegal behavior during the diesel scandal, when the KBA, the EPA and CARB were investigating its diesel vehicles, and during litigation involving its diesel and gasoline vehicles before this very Court.

32.     It took five additional years for these revelations to come to light. In June 2020, a whistleblower at Porsche reported at least one suspected defeat device in certain Porsche gasoline vehicles through an internal reporting system.[7] Only then did Porsche report its findings to the KBA and the EPA.[8] The Stuttgart public prosecutor has now opened a formal criminal investigation, poring over hundreds of thousands of documents, conducting interviews of employees, and reviewing data.[9] Its investigation is quickly bearing fruit. It has identified four specific Porsche employees it suspects played key roles in the fraud.[10] Meanwhile, the KBA has now taken the extraordinary step of halting future certifications of conformity for certain Porsche vehicles.[11]

**2.     Porsche deceived consumers and regulators about the true fuel economy and emissions of the Class Vehicles.**

33.     Porsche's emissions and fuel economy scheme took at least three forms: (a) submitting vehicles for regulatory testing that were materially different than vehicles sold and leased to consumers (Axle Ratio fraud); (b) installing a secret software program that caused the vehicles to perform differently in testing than on the road (Testing Software fraud); and (c) falsely attesting that certain vehicles' high performance mode could pass emissions tests (Sport Plus fraud). The three elements of this scheme—described in further detail below—all had the effect of

---

[7] Simon Hage and Gerard Trauffetter, *Has Porsche Fiddled with the 911*, Spiegel (August 28, 2020), https://www.spiegel.de/wirtschaft/unternehmen/porsche-soll-auch-bei-benzinern-getrickst-haben-a-00000000-0002-0001-0000-000172728836 (German language article).

[8] *Id.*

[9] Jan C. Wehmeyer, *supra* note 3.

[10] Gregor Habermehl, *New References to Exhaust Gas Manipulation*, Auto Motor Sport (October 1, 2020), https://www.auto-motor-und-sport.de/verkehr/porsche-verdacht-manipulation-getriebe-benzinmotoren/ (German language article).

[11] Simon Hage and Gerard Trauffetter, *supra* note 7.

1  deceiving regulators, Plaintiffs, the proposed Class, and the public at large about the Class

2  Vehicles' true emissions levels and fuel economy.

3  **a.    Altered test vehicles: the Axle Ratio fraud**

4       34.    One of Porsche's three schemes was to submit to the regulators testing results from

5  doctored vehicles that differed in material ways from the production models Porsche ultimately

6  sold and leased to consumers in the United States.

7       35.    Porsche consumers have come to expect sporty performance from its vehicles,

8  including its flagship Porsche 911, which can accelerate to 100 kilometers per hour in under three

9  seconds.[12] Porsche achieves this high level of performance by, among other things, carefully

10  calibrating the drivetrain, including the ratio of the gears connecting the drive shaft to the rear

11  axle.[13] Images illustrating these vehicle components are excerpted below.[14]

12



13

14

15

16

17

18

19

20

21

22

23

24

25

26  [12] Jan C. Wehmeyer, *supra* note 3.
   [13] *Id.*
27  [14] *Gearhead 101: the Drivetrain* (February 11, 2016),
28  https://www.artofmanliness.com/articles/gearhead-101-the-drivetrain/.



36.     Put simply, the ratio between the gears on the drive shaft and gears on the axle (in the differential) affects both the performance and fuel economy of a vehicle.[15] Vehicles with a lower ratio can spin the axle, and propel the vehicle forward, at lower revolutions per minute ("RPMs"), using less gasoline and emitting fewer pollutants. Vehicles with a higher ratio can, under certain circumstances, achieve a sportier performance, but they do so at the expense of increased emissions and fuel consumption.

37.     Internal documents show that the drivetrains in the vehicles Porsche used for regulatory testing differed materially from the vehicles Porsche produced for consumers.[16] Specifically, Porsche engineered specific vehicles for emissions and fuel economy testing that contained a different differential (a lower gear ratio) than the vehicles it mass produced. The test-specific vehicles were less dynamic but, according to internal investigations, emitted up to 8% less $CO_2$ and obtained correspondingly better fuel economy than the vehicles Porsche actually sold and leased to consumers.[17]

38.     Critically, Porsche did not dispute these characterizations in discussions with the regulators. Porsche informed the Stuttgart public prosecutor, Germany's Federal Motor Transport

---

[15] Gregor Habermehl, *supra* note 10.

[16] *Id.*

[17] *Id.*

Authority (KBA), and the U.S. regulators about its cheating in June 2020. Porsche employees also confirmed in internal interviews that Porsche engaged in the so-called "gear trick," by manufacturing special, test-only cars with reduced $CO_2$ emissions while producing vehicles with different specifications to sell to consumers.[18]

39.    Plaintiffs' own expert testing confirms the fraud. As part of their pre-suit investigation, Plaintiffs ran the full battery of regulatory tests—including the Federal Test Procedure ("FTP75"), the Highway Fuel Economy Test ("HWFET"), and the "US06" test cycles—on one of the vehicles Plaintiffs understood to be implicated by this scheme, a 2015 Porsche Boxster. Testing took place on a two-wheel dynamometer and followed the certification test procedures set out in 40 C.F.R. § 1065, such as using the approved fuel formulation for certification tests, documenting vehicle conditioning, driving a pre-test cycle, and storing a vehicle overnight at approximately 75 degrees Fahrenheit to "reset" before further testing. A picture of the test vehicle in the laboratory is shown below.



40.    After completing the tests, Plaintiffs compared the results to those that Porsche submitted to the regulators. A summary of that comparison is included below. It shows that the

---

[18] *Id.*

1   carbon emissions from the production vehicles were significantly greater than those from the

2   manipulated, test-only vehicles. Using the EPA's weighting formula, this yields a total $CO_2$

3   increase—and inversely related fuel economy decrease—of approximately 6%, in line with what

4   was reported in the German press. That translates into a reduction of approximately 2 miles per

5   gallon in the vehicle's combined fuel economy rating, which could cost owners thousands of

6   dollars in extra fuel costs alone over the course of the vehicle's lifespan.[19]

| Test Cycle | HC (g/mi) | CO (g/mi) | NOx (g/mi) | CO2 (g/mi) | CREE (g/mi) | Fuel Economy | % FE Change |
|---|---|---|---|---|---|---|---|
| FTP - Certification | 0.02890 | 0.1022 | 0.01824 | 319.00 | 319.0 | 26.18 | |
| FTP - Plaintiffs' Test | 0.05680 | 0.3610 | 0.01740 | 361.70 | 362.4 | 24.13 | -7.8% |
| HFET - Certification | 0.00282 | 0.0324 | 0.00485 | 198.00 | 198.0 | 44.88 | |
| HFET - Plaintiffs' Test | 0.00290 | 0.0450 | 0.14900 | 200.74 | 200.8 | 43.54 | -3.0% |
| US06 - Certification | 0.02297 | 0.2091 | 0.02760 | 292.47 | | 30.36 | |
| US06 - Plaintiffs' Test | 0.01480 | 0.3829 | 0.04340 | 295.16 | 295.8 | 29.56 | -2.6% |
| Combined (55% FTP / 45% HFET) Change: | | | | | | | -5.7% |

14       41.     Defendants' scheme was both deceptive and illegal. For obvious reasons, vehicles

15   used in regulatory testing must be materially identical to those sold. *See* 42 U.S.C. § 7541(a)(3)(A)

16   (explaining that it is prohibited "for any person to remove . . . any device or element of design

17   installed on or in a motor vehicle or motor vehicle engine in compliance with regulations . . . prior

18   to its sale and delivery to the ultimate purchaser").[20] The EPA issued certificates of conformity for

19   the vehicles as tested, and not as ultimately sold and leased to consumers. Accordingly, the

20   Monroney label Porsche caused to be affixed to each and every Class Vehicle that indicated that

21   each vehicle "is covered by a certificate of conformity" contained false information. *See* 42 U.S.C.

22   § 7541(c)(3)(C).

23

24   [19] The EPA estimates the average useful lifespan of passenger vehicles to be at least 120,000 miles.
     The useful lifespan of vehicles from a high-end manufacturer like Porsche is potentially even
25   longer.

     [20] The EPA's Certificates of Conformity—which are required for every vehicle sold in the United
26   States—also explain that the certificates cover "only those new motor vehicles or vehicle engines
     which conform, in all material respects, to the design specifications that apply" to the vehicles that
27   were tested. Similarly, CARB's Executive Orders—required for every vehicle sold in
     California—clearly state that "[p]roduction vehicles shall be in all material respects the same as
28   those for which certification is granted."

42.     In other words, the vehicles affected by the Axle Ratio fraud emitted more $CO_2$ and obtained worse fuel economy than represented, and—because they were not actually covered by legitimate COCs and EOs—they were illegal to import or sell.

43.     Upon information and belief based on vehicle testing, this fraud affects at least the following Class Vehicles: MY 2009 – 2016 Porsche Boxster and Boxster S; MY 2009 – 2016 Porsche Cayman and Cayman S; MY 2012 – 2016 Porsche 911 Carrera and 911 Carrera S; and MY 2010 – 2013 Porsche Panamera S.

**b.     Programming used only for test cycles: "Testing Software" fraud**

44.     Porsche's second fraudulent manipulation involves a scheme similar to the "Warm-Up Program" issue involving approximately 100,000 Volkswagen-, Audi-, Bentley-, and Porsche-branded gasoline vehicles, detailed at length in the "Audi $CO_2$" matter. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), Dkts. 6628 (Aug. 30, 2019) (Amended Consolidated Compliant) and 7244 (March 2, 2020) (Final Approval Order). Here again, certain Porsche gasoline vehicles were equipped with secret software in the vehicles' ECUs that, in many calibrations, caused the vehicles to perform differently in a testing environment than in comparable real-world driving.

45.     As with the "Warm-Up Program," Porsche's special test mode was activated and deactivated by certain entry and exit conditions.[21] In certain calibrations, the test mode was designed to be activated for some or all of regulatory testing (during which the vehicle would use less fuel and emit less $CO_2$) and de-activated under normal, on-road driving conditions (resulting in increased fuel consumption and emissions).

46.     This scheme, too, was both deceptive and illegal. *See* 42 U.S.C. § 7522(a)(3)(B) (It is a prohibited act "for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with

---

[21] Jan C. Wehmeyer, *supra* note 10.

1    regulations under this subchapter, and where the person knows or should know that such part or

2    component is being offered for sale or installed for such use or put to such use").

3         47.    Porsche's senior management was aware of the fraud in November 2015 when

4    Porsche engineers explained to senior management how its drivers cheated during testing.[22] Yet

5    Porsche did not disclose to defeat devices to the regulators. Instead they doubled down, concealed

6    their fraud and continued to sell mislabeled vehicles to Plaintiffs and the Class.

7                        c.    False attestations of emissions compliance: "Sport Plus" fraud

8         48.    Porsche offers consumers a variety of driving modes in its vehicles. Different modes

9    allow the consumers to customize their driving experience. For example, Porsche offers a "Sport

10   Mode" for "more spirited drives through backroads or canyon passes."[23] As the name implies, this

11   is a high performance mode where the throttle response and shifts are sharper, the suspension is

12   stiffer. But the highest performing mode is its "Sport+ (Plus) Mode." According to Porsche, "the

13   'SPORT+' mode is your go-to driving mode for track days or simply experiencing all of the

14   performance your Porsche has to offer. The throttle response is instantaneous, shifts are lightning

15   fast, and the overall steering and suspension feel is tight and responsive."[24] Sport Plus mode is a

16   standard feature on some Class Vehicles and an optional configuration for others.

17        49.    As one would expect, the ultra-high performance enabled by Sport Plus mode

18   comes at the cost of higher emissions and greater fuel consumption. What a reasonable consumer

19   would not expect, however, is that the pollutants emitted in Sport Plus mode would actually exceed

20   legal limits, making the vehicles unlawful to import or sell. But this is precisely what happens in the

21   Class Vehicles equipped with Sport Plus mode.

22        50.    Vehicle manufacturers are not always required to submit test cycle results for all of a

23   vehicle's driving modes. Those manufacturers, however, must attest to the EPA and CARB that

24   each driving mode in every vehicle meets certification requirements before the vehicles are

25

26   [22] *Id.*

27   [23] Porsche Irvine: Porsche Driving Modes (2020),
     https://www.porscheirvine.com/research/driving-modes.htm.

28   [24] *Id.*

approved for importation and sale.[25] This includes attesting that vehicles do not exceed the statutory limit for NOx emissions in any driving mode.[26] Moreover, the Clean Air Act requires that manufacturers warrant to all purchasing consumer that their vehicles are designed, built, and equipped to conform with the applicable emissions standards and are free from any defects which would cause it to fail to conform to such regulations. *See* 42 U.S.C. § 7541(a)(1).

51.     Accordingly, Porsche attested to the EPA and CARB, and warranted to every consumer, that each of its gasoline vehicles complied with statutory limits for emissions in every mode, including Sport Plus mode.[27] Porsche's attestation was false. As Porsche's internal investigation has revealed, when certain gasoline vehicles operate in Sport Plus mode, they emit pollutants, including NOx, in excess of legal requirements.[28]

52.     Plaintiffs' own expert testing again confirms this fraud. To determine the scope of this scheme, Plaintiffs ran the regulatory tests described above—FTP75, HWFET, and US06—on a 2016 Porsche Cayenne equipped with Sport Plus mode. Testing took place on a four-wheel dynamometer and followed the certification test procedures set out in 40 C.F.R. § 1065, such as using the approved fuel formulation for certification tests, documenting vehicle conditioning, driving a pre-test cycle, and storing a vehicle overnight at approximately 75 degrees Fahrenheit to "reset" before further testing. Pictures of the test vehicle in the laboratory are shown below.

 

---

[25] Jan C. Wehmeyer, *supra* note 10.
[26] *Id.*
[27] *Id.*
[28] *Id.*

53.     The testing revealed that with Sport Plus mode activated, the vehicle's emissions significantly exceed the limits established for the Tier 2, Bin 5 category for which the vehicle was certified. Specifically, for the US06 test cycle, the combined HC-NM (non-methane hydrocarbon) + NOx emissions were 0.4625 grams/mile, which is nearly *double the legal limit* of 0.25 grams/mile. This means that the Certificates of Conformity and Executive Orders that Porsche sought and received for these vehicles were fraudulently obtained, and the vehicles were illegal to import into or sell or lease in the United States.

54.     As with the Axle Ratio and Testing Software fraud, Porsche intentionally concealed and did not disclose the Sport Plus fraud to regulators or consumers and instead continued to sell and lease illegal vehicles to Plaintiffs and the Class.

55.     Upon information and belief, this fraud may implicate all Class Vehicles equipped with Sport Plus mode, and testing confirms that it affects at least the following Class Vehicles: MY 2013 Porsche Boxster / Cayman S; MY 2014 Porsche Panamera Turbo; 2015 Porsche 911 S; MY 2015 Porsche 911 S; MY 2016 Porsche Cayenne GTS; and MY 2017 Porsche Cayenne S.

**3.    Porsche—like all vehicle manufacturers—was subject to specific regulations governing fleet-wide $CO_2$ emissions and vehicle-specific NOx emissions.**

56.     Porsche cheated on emissions for a reason. As detailed further herein, both emissions and fuel economy are material to consumers—including Plaintiffs and the Class. They are also highly regulated.

**a.     Fleet-wide $CO_2$ regulations**

57.     California, one of the leaders in vehicle emissions regulations, implemented new greenhouse gas regulations in 2006 that took effect in 2009. These regulations, like the federal rules that followed, set a ceiling for a manufacturer's fleet-wide average emissions and governed all light- and medium-duty vehicles sold in California, one of Porsche's biggest markets in the United States.

58.     Federal fleet-wide standards for $CO_2$ emissions and average fuel economy followed suit. New regulations affecting model year 2012-2015 vehicles were implemented in 2011,

- 19 -

1    beginning with 2012 model years, and increased in stringency through model year 2016.[29] New,

2    even more stringent standards went into effect for model year 2017.[30]

3         59.    The EPA set $CO_2$ emissions standards for light-duty vehicles under section 202(a) of

4    the Clean Air Act. Under these standards, by model year 2016, light-duty vehicles were required to

5    meet an estimated combined average emissions level of 250 grams/mile of $CO_2$. The National

6    Highway Traffic Safety Administration ("NHTSA") set fleet-wide Corporate Average Fuel

7    Economy ("CAFE") standards for passenger cars and light trucks under 49 U.S.C. § 32902.

8    NHTSA's standards required manufacturers to meet an estimated combined average fuel economy

9    level of 34.1 miles per gallon ("MPG") by model year 2016.

10        60.    Defendants knew that their fleet of vehicles had to meet these standards to be sold in

11   the United States, and were equally aware that fuel consumption (MPG ratings) and emissions are

12   important factors for consumers choosing a vehicle to purchase or lease. Rather than meeting these

13   standards through legitimate means, however, Defendants cheated on the emissions tests in the

14   Class Vehicles to feign compliance and cater to consumer demands. They then misled consumers

15   by representing the Class Vehicles as consuming less fuel and emitting less $CO_2$ and other

16   pollutants than they actually do in normal driving conditions.

**b.    Effect on Fuel Economy Ratings**

17

18        61.    This deception had a direct impact on the Class Vehicles' fuel economy ratings.

19        62.    During the regulatory testing cycles, manufacturers calculate the amount of fuel

20   consumed, in part, by measuring tailpipe emissions. This process includes measuring

21   un-combusted or partially combusted gasoline (hydrocarbons or HC), carbon monoxide (CO), and

22   $CO_2$. The amount of carbon produced is then converted to the amount of gasoline which was

23   required to produce the carbon in the exhaust. Based on this equation, as the amount of $CO_2$

24   produced increases, the gasoline used increases and the fuel economy decreases. Within this

25

26   [29] *See*, *e.g*., Federal Registrar Vol. 75 p. 25324 (May 7, 2010) (summarizing new regulations)
     https://www.gpo.gov/fdsys/pkg/FR-2010-05-07/pdf/2010-8159.pdf, p.8.

27   [30] Environmental and Energy Study Institute, *Fact Sheet: Vehicle Efficiency and Emissions
     Standards* (August 26, 2015),

28   http://www.eesi.org/papers/view/fact-sheet-vehicle-efficiency-and-emissions-standards#1.

framework, if a Class Vehicle produced less $CO_2$ during laboratory testing, but higher $CO_2$ when driven on road, the Monroney sticker would correspondingly represent better estimated fuel economy than it would actually achieve during every day driving.

63.     This is exactly what happened with the Class Vehicles.

### c.     NOx regulations

64.      NOx is a dangerous pollutant linked with serious health risks and climate change. Congress first began regulating NOx as a tailpipe emission with the passage of the Clean Air Act in 1970. The standards went into effect in 1975 mandated that all passenger cars and light-duty trucks emit no more than 3.1 grams per mile of NOx. In 1990, the CAA was amended to set a lower standard (0.6 grams per mile) for NOx emissions, called Tier 1, effective in 1994.

65.     In 1999, newer standards were adopted, called Tier 2, which began taking effect in 2004, and which govern most of the Class Vehicles. The Tier 2 standards apply in two ways. First, as with $CO_2$ regulations, a manufacturer's entire fleet must not exceed a specific average. Second, each individual vehicle must also be certified to one of eight specific "bins," which limit the amount of NOx (among other pollutants) that any *individual* vehicle can legally emit.

66.     As described above, Porsche represented to the regulators that, in all available driving modes, its vehicles' NOx emissions did not exceed the limits set by the Tier 2 bins to which they were certified. This was false. As a result, the Certificates of Conformity and Executive Orders covering these vehicles were fraudulently obtained, and the vehicles were not truly legal to sell in the United States.

### C.     Defendants' advertising featured inflated fuel economy ratings and false promises of environmental friendliness.

67.     To many consumers, including Plaintiffs, environmental friendliness, fuel economy, and the range of miles between fuel tank refills are important factors in their decision to purchase or lease a vehicle. Defendants targeted these preferences in their misleading advertising and other consumer-facing representations about the Class Vehicles.

68.     As alleged above, new vehicles include a window or "Monroney" sticker disclosing the vehicles' fuel economy. The fuel economy ratings disclosed on Monroney stickers for the Class

Vehicles—and repeated in Defendants' own representations to the Class—were false because they were calculated in testing conditions that, because of the fraudulent schemes alleged above, did not reflect on-road driving.

69.    Monroney labels from some of the Class Vehicles are included below to exemplify these representations:









CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-7473

| | |
|---|---|
| Year:  2016 | Engine:  8 Cylinder Engine |
| Make:  Porsche | Transmission:  8-speed |
| Model:  Cayenne AWD 4dr Turbo | Exterior:  Black |
| VIN:  WP1AC2A20GLA88370 | Interior:  Leather Interior in Black |

## MECHANICAL

- 2.92 Axle Ratio
- Full-Time All-Wheel Drive
- 92-Amp/Hr Maintenance-Free Battery
- Towing Equipment -inc: Trailer Sway Control
- 4-Corner Auto-Leveling Suspension
- Hydraulic Power-Assist Speed-Sensing Steering
- 26.4 Gal. Fuel Tank
- Permanent Locking Hubs

## EXTERIOR

- Spare Tire Mobility Kit
- Steel Spare Wheel
- Clearcoat Paint
- Body-Colored Front Bumper
- Body-Colored Rear Bumper
- Aluminum Side Windows Trim and Black Front Windshield Trim
- Body-Colored Door Handles
- Body-Colored Fender Flares
- Body-Colored Power Heated Auto Dimming Side Mirrors w/Power Folding
- Fixed Rear Window w/Fixed Interval Wiper and Defroster
- Deep Tinted Glass
- Rain Detecting Variable Intermittent Wipers w/Heated Jets
- Front Windshield -inc: Sun Visor Strip
- Fully Galvanized Steel Panels
- Lip Spoiler
- Body-Colored Grille
- Front License Plate Bracket
- Front And Rear Fog Lamps
- Perimeter/Approach Lights
- LED Brakelights
- Cornering Lights

## ENTERTAINMENT

- Audio Theft Deterrent
- Concealed Diversity Antenna
- 585w Regular Amplifier
- Digital Signal Processor
- Bluetooth Wireless Phone Connectivity
- 2 LCD Monitors In The Front

## INTERIOR

- Power Tilt/Telescoping Steering Column
- Front Cupholder
- Rear Cupholder

- Compass
- HomeLink Garage Door Transmitter
- Cruise Control
- HVAC -inc: Underseat Ducts and Console Ducts
- Illuminated Locking Glove Box
- Driver Foot Rest
- Leather Door Trim Insert
- Leather/Metal-Look Gear Shift Knob
- Full Alcantara Simulated Suede Headliner
- Driver And Passenger Visor Vanity Mirrors w/Driver And Passenger Illumination, Driver And Passenger Auxiliary Mirror
- Day-Night Auto-Dimming Rearview Mirror
- Full Floor Console w/Covered Storage, Mini Overhead Console and 5 12V DC Power Outlets
- Front And Rear Map Lights
- Delay Off Interior Lighting
- Carpet Floor Trim and Carpet Trunk Lid/Rear Cargo Door Trim
- Trunk/Hatch Auto-Latch
- Cargo Area Concealed Storage
- Roll-Up Cargo Cover
- Cargo Features -inc: Spare Tire Mobility Kit
- Cargo Space Lights
- FOB Controls -inc: Trunk/Hatch/Tailgate and Windows
- Refrigerated/Cooled Box Located In The Glovebox, Driver / Passenger And Rear Door Bins and 1st Row Underseat Storage
- Delayed Accessory Power
- Systems Monitor
- Outside Temp Gauge
- Redundant Digital Speedometer
- Manual Adjustable Front Head Restraints and Manual Adjustable Rear Head Restraints
- Sliding Front Center Armrest and Rear Center Armrest
- 2 Seatback Storage Pockets
- Perimeter Alarm
- 5 12V DC Power Outlets
- Air Filtration

## SAFETY

- Side Impact Beams
- Tire Specific Low Tire Pressure Warning
- Dual Stage Driver And Passenger Front Airbags
- Curtain 1st And 2nd Row Airbags
- Airbag Occupancy Sensor
- Rear Child Safety Locks
- Outboard Front Lap And Shoulder Safety Belts -inc: Rear Center 3 Point, Height Adjusters and Pretensioners

| CITY MPG | HIGHWAY MPG |
|---|---|
| 14 | 21 |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## New

| MSRP | $114,460.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| [C4I] Wheels: 21" Cayenne Sport Classic Satin | $3,850 |
| [O2J] 14 Way Power Seats W/Memory Package (Q2 J) | $0 |
| [LC] Black, Leather Seat Trim | $0 |
| [PJI] Premium Plus Package | $3,660 |
| [1NP] Wheel Hub Cover W/Colored Porsche Crest | $185 |
| [OJ4] Exterior Package In High Gloss Black | $150 |
| [GZ2] Soft Close Doors | $770 |
| [8SI] Tinted Led Taillights | $650 |
| [4D3] Front Seat Ventilation | included |
| [5ZF] Porsche Crest On Front & Rear Seat Headrests | $570 |
| [8T3] Adaptive Cruise Control W/Porsche Active Safe | $2,300 |
| [9AH] 4 Zone Climate Control | $990 |
| [7X8] Front & Rear Parkassist W/Reversing Camera | included |
| [7Y1] Lane Change Assist (Lca) | included |
| [9JB] Smoker Package | $0 |
| [7M7] Illuminated Stainless Steel Door Sill Guards | $1,100 |
| [BASE] Cayenne Turbo | |
| [A1] Black | |
| [G1G] 8 Speed Tiptronic S | |
| Original Shipping Charge | $1,050 |
| **RETAIL PRICE (ORIGINALLY NEW)** | $129,735.00 |

CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-7473

| | |
|---|---|
| Year:   2015 | Engine:   Flat 6 Cylinder Engine |
| Make:   Porsche | Transmission:   6-SPEED MANUAL W/OVERDRIVE |
| Model:   Boxster 2dr Roadster | Exterior:   White |
| VIN:   WP0CB2A82FS140488 | Interior:   Black |

**MECHANICAL**

- Rear-Wheel Drive
- 3.89 Axle Ratio
- 70-Amp/Hr 340CCA Maintenance-Free Battery
- 120 Amp Alternator
- 3649# Gvwr 739# Maximum Payload
- Gas-Pressurized Shock Absorbers
- Front And Rear Anti-Roll Bars
- Electric Power-Assist Speed-Sensing Steering
- 16.9 Gal. Fuel Tank
- Strut Front Suspension w/Coil Springs
- Strut Rear Suspension w/Coil Springs
- 4-Wheel Disc Brakes w/4-Wheel ABS, Front And Rear Vented Discs, Brake Assist, Hill Hold Control and Electric Parking Brake

**EXTERIOR**

- Wheels w/Locks
- Spare Tire Mobility Kit
- Clearcoat Paint
- Body-Colored Rear Bumper w/Black Rub Strip/Fascia Accent
- Black Side Windows Trim and Black Front Windshield Trim
- Body-Colored Door Handles
- Body-Colored Power Heated Side Mirrors w/Manual Folding
- Fixed Rear Window w/Defroster
- Light Tinted Glass
- Front Windshield -inc: Sun Visor Strip
- Galvanized Steel/Aluminum Panels
- Trunk Rear Cargo Access
- Front And Rear Fog Lamps
- Perimeter/Approach Lights
- LED Brakelights

**ENTERTAINMENT**

- Radio w/Compatible Remote CD, Clock and Speed Compensated Volume Control
- Audio Theft Deterrent
- Window Grid Diversity Antenna
- 7 Speakers
- Regular Amplifier
- Bluetooth Wireless Phone Connectivity

**INTERIOR**

- Front Cupholder

- Valet Function
- Power Fuel Flap Locking Type
- Remote Releases -Inc: Power Cargo Access
- HomeLink Garage Door Transmitter
- Cruise Control
- Illuminated Locking Glove Box
- Driver Foot Rest
- Full Cloth Headliner
- Leather Door Trim Insert w/Carpet Lower
- Day-Night Rearview Mirror
- Driver And Passenger Visor Vanity Mirrors w/Driver And Passenger Illumination
- Full Floor Console w/Locking Storage and 3 12V DC Power Outlets
- Fade-To-Off Interior Lighting
- Carpet Floor Trim
- Cargo Features -inc: Spare Tire Mobility Kit
- Cargo Space Lights
- FOB Controls -inc: Trunk/Hatch/Tailgate and Sunroof/Convertible Roof
- Interior Concealed Storage, Driver And Passenger Door Bins
- Power 1st Row Windows w/Driver And Passenger 1-Touch Down
- Systems Monitor
- Redundant Digital Speedometer
- Outside Temp Gauge
- Analog Display
- Fixed Front Head Restraints
- Front Center Armrest
- Perimeter Alarm
- 3 12V DC Power Outlets
- Air Filtration

**SAFETY**

- Side Impact Beams
- Dual Stage Driver And Passenger Seat-Mounted Side Airbags
- Tire Specific Low Tire Pressure Warning
- Dual Stage Driver And Passenger Front Airbags
- Curtain 1st Row Airbags
- Airbag Occupancy Sensor
- Outboard Front Lap And Shoulder Safety Belts -inc: Pretensioners

## New

| MSRP | $65,810.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| [423] Wheels: FR 8 J X 20 & RR 9.5 J X 20 Carrera S Alloy | $1,560 |
| [00] White | $0 |
| [P06] 14 Way Electric Sport Seats W/Memory Package | $2,320 |
| [AG] Black, Partial Leather Seat Trim | $0 |
| [P98] Premium Package W/Sport Seats | $1,170 |
| [P9G] Infotainment Package W/Bose Surround Sound System | $3,990 |
| [658] Power Steering Plus | $270 |
| [603] Bi Xenon Lighting System | $690 |
| [844] Leather Multifunction Steering Wheel | $615 |
| [583] Smoking Package | $0 |
| [250] Porsche Doppelkupplung (PDK) | $0 |
| Original Shipping Charge | $995 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$77,420.00** |

**Get more information on your smartphone:**

70.     In addition to the Monroney labels, Defendants advertised the Class Vehicles and otherwise supplied consumers with misinformation about them—including exaggerated fuel economy statistics—through various public-facing channels.

71.     Brochures for the Class Vehicles—all of which, like the Monroney labels, include falsely-inflated fuel economy ratings—misleadingly emphasize fuel efficiency and/or

environmental cleanliness without the disclosing the truth about the laboratory and real-world contradictions therein.

72.     The brochure for the 2016 Cayenne S serves as a representative example. It promises "impressive fuel economy" and the "perfect balance between output and efficiency," noting that the Cayenne features "something quite special: enhanced power with greater fuel economy." Per the brochure, the 2016 Cayenne features a "significant decrease in fuel consumption" from its predecessor. As to the environment, it affirms that "[e]cological responsibility is nothing new for Porsche" where "all technological developments are carried out with environmental protection in mind," and explains that "even high-performance sports cars can achieve comparatively moderate exhaust emission values." Finally, the brochure includes a detailed chart specifying the fuel consumption ratings for each Cayenne subtype.

|  | 2016 Cayenne Turbo S | 2016 Cayenne Turbo | 2016 Cayenne GTS | 2016 Cayenne S E-Hybrid |
|---|---|---|---|---|
| **Estimated EPA fuel economy** |  |  |  |  |
| Fuel grade | Premium | Premium | Premium | Premium |
| City | 14 | 19 | 16 | 21 |
| Highway | 21 | 24 | 23 | 24 |
| Combined | 17 | 21 | 19 | 22 |
| Electricity consumption (combined) | – | – | – | 47 MPGe |
| Typical electric range in everyday driving | – | – | – | – |

73.     The brochure for the 2011 Cayenne similarly illustrates the types of representations made to consumers in the Class Vehicle brochures. The brochure includes a two-page spread on the environment, emphasizing Porsche's goal of "reducing excess, waste and inefficiency." On exhaust emissions, it describes "effective emissions control" based in part on using an "optimal amount of fuel." And as to fuel economy, it details how the 2011 Cayenne is "increasing performance while enhancing fuel economy." An image of the spread is included in full below, along with magnified excerpts of the paragraphs cited herein for reference.

Reducing excess, waste and inefficiency has always been our goal.

# Environment.

Since the beginning, the concept behind every Porsche has been to create the most, using the least. We are continually striving to gain performance by eliminating excess.

This is achieved by using advanced engine concepts featuring technologies such as DFI (p. 28), VarioCam Plus (p. 27), the Auto Start Stop function (p. 26), the parallel full hybrid system, and consistent lightweight construction.

Weight reduction is a key aspect of our design philosophy, derived from our rich racing heritage. Part of our R&D Center, the Motorsport Department is located in Weissach, where it shares premises with the German Automotive Industry

Exhaust Emissions Center. Just a coincidence? We call it symbiosis.

In practice: The new Cayenne is up to 408 pounds lighter, depending on the model. This was achieved through new weight-saving developments and materials, new production technologies, advanced functionalities and concept modifications. By using lighter

materials, for example, we cut the weight of the tailgate in half. New materials are also a feature of the axle construction, with steel being replaced where possible by lightweight alternatives such as aluminum and plastic.



## Porsche engines.
## Performing for today—and the future.



### Exhaust emissions.

Whatever the class, every Porsche combines high performance with comparatively moderate emissions. On the new Cayenne models, this is achieved using advanced drive concepts—from Direct Fuel

Injection (DFI) gasoline engines to our new parallel full hybrid system. This is further aided by the rapid warm-up cycle of the catalytic converters. The optimal operating temperature is reached earlier so emissions are reduced sooner when starting from cold.

On the gasoline-engine and hybrid models, another important feature is the use of twin oxygen-sensor circuits. Each bank of cylinders has a separate control system, which the engine management system uses to establish the optimal amount of fuel—for effective emissions control.

### Fuel and fuel economy.

Increasing performance while enhancing fuel economy. The new Cayenne range offers two different drive systems, each featuring state-of-the-art technology for high efficiency and relatively low fuel consumption. The gasoline engine models already operate on fuels with an ethanol content of up to 10 percent.

This further improves the carbon dioxide balance since the plants grown for the production of biofuels absorb carbon dioxide from the atmosphere. As you can see, for the benefit of the environment, we are continually working on making our cars more efficient—as well as compatible with alternative fuels. While ensuring that they remain one thing: a thoroughbred Porsche.

### Fuel system.

We have also applied the highest standards in order to protect the environment from fuel evaporation. The non-return fuel supply system provides a considerable reduction in vapor emissions. The lines carrying vapor are made from multilayer plastics. A large active-carbon filter and multilayer plastic fuel tank help reduce evaporation still further.

Standard on the Cayenne, Cayenne S, Cayenne S Hybrid and Cayenne Turbo.



Safety and environment | Environment · 53

> **Exhaust emissions.**
>
> Whatever the class, every Porsche combines high performance with comparatively moderate emissions. On the new Cayenne models, this is achieved using advanced drive concepts—from Direct Fuel
>
> Injection (DFI) gasoline engines to our new parallel full hybrid system. This is further aided by the rapid warm-up cycle of the catalytic converters. The optimal operating temperature is reached earlier so emissions are reduced sooner when starting from cold.
>
> On the gasoline-engine and hybrid models, another important feature is the use of twin oxygen-sensor circuits. Each bank of cylinders has a separate control system, which the engine management system uses to establish the optimal amount of fuel—for effective emissions control.

> **Fuel and fuel economy.**
>
> Increasing performance while enhancing fuel economy. The new Cayenne range offers two different drive systems, each featuring state-of-the-art technology for high efficiency and relatively low fuel consumption. The gasoline engine models already operate on fuels with an ethanol content of up to 10 percent.
>
> This further improves the carbon dioxide balance since the plants grown for the production of biofuels absorb carbon dioxide from the atmosphere. As you can see, for the benefit of the environment, we are continually working on making our cars more efficient—as well as compatible with alternative fuels. While ensuring that they remain one thing: a thoroughbred Porsche.

74.    Brochures for other Class Vehicles use similar language to send a misleading message of fuel efficiency and environmental protection. Illustrative examples are described below.

a.    The 2008 brochure for the Cayenne touts its "impressive fuel economy" and claims that its "engine management system works its silent magic to help reduce emissions at the source" and to "ensure Cayenne complies with all emissions legislation." The same brochure explains that "Porsche engineers have proven it's not necessary to decrease fuel efficiency in order to increase performance" and that Cayenne provides a "significant increase in fuel efficiency and a reduction of exhaust emissions."

b.     The brochure for the 2009 911 notes its "better fuel economy" and "lower exhaust emissions" and offers "maximum efficiency" as an answer to the question of "fuel consumption."

c.     The brochure for the 2010 911 promises "reduced fuel consumption and emissions, and outstanding dynamics" including a "distinct fall in fuel consumption and emissions" with a reduction in "$CO_2$ emissions by up to 15% compared with the previous model."

d.     The 2011 Cayenne brochure assures that it is "more fuel-efficient than ever before." Per the brochure, Cayenne provides "optimal fuel economy and lower CO2 emissions, as well as greater power and torque at all times."

e.     The 2011 brochure for the 911 similarly touts "lower fuel consumption and reduced emissions."

f.     The 2012 brochure for the Boxster describes a "commitment to high power with comparatively low fuel consumption and emissions figures" meaning that even Porsche's "high-performance sports cars can achieve moderate fuel consumption and exhaust emissions values in their respective categories." The same brochure further sets out that while "[e]very automotive manufacturer must ask itself what it has to offer in terms of reducing environmental impact," for Porsche, the answer is purportedly "high efficiency," including that it "managed to reduce fuel consumption across all model ranges by a double digit percentage."

g.     The 2013 Cayenne brochure similarly describes "greater efficiency in fuel consumption." Indeed, it notes that all gasoline-powered Cayennes purportedly offer a "significant increase in power and torque as well as better fuel economy and lower emissions." On the environment, Porsche explains it is "continually striving" to find a "successful balance" between performance and efficiency, and through new technologies in the Cayenne, it has achieved "efficiency at its best." Further, because Cayenne is "equipped with the latest emissions technology," all models "comply with U.S. EPA standards."

h.     The brochure for the 2012 Panamera assures consumers that Porsche was "achieving the lowest $CO_2$ emissions" through "efficient engine technologies."

i.   The brochure for the 2012 911 expresses Porsche's "concern" about "global climate change and $CO_2$ emissions" and emphasizes that the vehicle engines were "developed with new efficiency-enhancing technologies . . . that reduce fuel consumption."

j.   The brochure for the 2013 Panamera suggests that "performance and efficiency need not be mutually exclusive" and details the "highly efficient, state-of-the-art engines" that lead to "comparatively low fuel consumption" while maintaining a sound that is "still unmistakably Porsche."

k.   The 2014 brochure for the 911 notes that its "refined engine" will "consume less fuel."

l.   The 2014 brochure for the Panamera emphasizes "[c]onserving fuel. Without cutting back on adrenaline" and features "improved fuel efficiency" explaining that "turbocharging isn't just about increased power. It's about enhanced efficiency" including "lower fuel consumption."

m.   A 2015 brochure describes the 911 to be "[n]ot at thirsty as you might think" and likewise touts its "comparatively low fuel consumption" and "high power output" achieved in an "environmentally acceptable and sustainable way."

n.   The 2016 Boxster brochure addresses the "environment" and the "intensifying debate about global climate change and CO2 emissions." On these issues, it declares that "fair play" is a "sporting essential" and promises "excellent performance together with excellent efficiency" and "efficient emissions control."

o.   The brochure for the 2016 911 describes "fuel consumption and $CO_2$ emissions" that are "remarkably low."

p.   The 2017 Cayenne brochure likewise describes "comparatively low fuel consumption" and notes that "ecological responsibility is nothing new for Porsche" meaning that "even high-performance sports cars can achieve comparatively moderate exhaust emission values."

75.   The Defendants also similarly featured the Class Vehicles' fuel economy and supposedly clean emissions in other consumer-facing marketing materials.

- 30 -

a.      A January 25, 2010 Press Release at the launch of the 2010 Porsche 911 Turbo notes a "13 percent increase in fuel economy" making it a "more efficient" vehicle.

b.      An April 22, 2010 Press Release for the "New Porsche Panamera" boasts of "more performance on less fuel, increased efficiency and lower $CO_2$ emissions."

c.      A June 4, 2010 Press Release for the launch of the Panamera and Panamera 4 promises "even better fuel economy" where the "Panamera achieves 18 mpg city/27 highway" and the Panamera 4 "delivers 18 mpg city/26 highway, numbers that are no doubt appealing to consumers who demand driving excitement and fuel efficiency."

d.      An October 27, 2010 Press Release titled "Cayenne Proves Porsche's Goal of Better Fuel Economy" notes that the "New SUV Sees Significant Fuel Savings." As it describes, through the "Porsche Intelligent Performance" philosophy, the Cayenne offers "more power with lower consumption increased efficiency, and reduced $CO_2$ emissions."

e.      A page available on the Porsche USA website (www.porsche.com/usa) on September 5, 2015 regarding "fuel economy and recycling" for the 911 Carrera features "low fuel consumption values in conjunction with outstanding performance" as well "efficient emission control."

f.      A January 27, 2016 Press Release for the Boxster notes that the new models are "now more powerful yet more fuel efficient" with "fuel economy improvements of up to 13 percent."

g.      A Press Kit issued at the production anniversary of the 911 (at the production of the one millionth 911 in May 2017) explains that 911s "set the bar yet another notch higher in terms both of performance and efficiency" with "lower fuel consumption and even more power."

76.      As these and other marketing materials reflect, Porsche sought to cater to increasingly eco-conscious consumers and to align its brand—including the Class Vehicles—with a commitment to the environment and efficient use of resources.

77.      These efforts are also reflected throughout a February 18, 2013 interview with Porsche's Board of Management member, Wolfgang Hatz, by the consumer website, Driving the

1    Nation. In that interview, Mr. Hatz assured the public that "[t]hinking 'green' is not a trend at

2    Porsche; it is a way of conducting business." He further affirmed that that Porsche "has **always**

3    **complied with statutory legal requirements** and has, in fact, done so by a comfortable margin"

4    including through "eco-friendly" initiatives like "lowering fuel consumptions, and further reducing

5    emissions of pollutants and CO2" (emphasis added). At that time, he noted that Porsche had

6    "succeeded in reducing fuel consumption in its new cars, and thereby also CO2 emissions" as part

7    of their mission to "develop, produce, sell and service fascinating, high-quality, exclusive sports

8    cars that meet the highest possible standards of environmental . . . engineering."

9        78.    As described throughout this Complaint, these statements and those detailed above

10   about Porsche and the Class Vehicles' emissions and fuel economy were not true.

11                                                    * * *

12       79.    Defendants' deceptive actions harmed Plaintiffs and the Class. As a result of

13   Defendants' unfair, deceptive, and/or fraudulent business practices, and failure to disclose that the

14   Class Vehicles were designed to mislead consumers about the vehicles true emissions levels and

15   fuel economy, owners and lessees of the Class Vehicles have suffered losses in money and/or

16   property. Plaintiffs have suffered damages as a result their purchases of the Class Vehicles,

17   including but not limited to payment for additional fuel costs required by the lower fuel economy

18   performance in their Vehicles.

19   **VII.   CLASS ACTION ALLEGATIONS**

20       80.    Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil

21   Procedure 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4), on behalf of themselves and all others similarly

22   situated as members of the following Nationwide Class and State Classes (collectively, the

23   "Classes"). The Class Vehicles implicated by this Complaint include all model year 2007 – 2017

24   Porsche vehicles sold in the United States.

25       81.    The proposed Nationwide Class includes all persons and entities that purchased or

26   leased a Class Vehicle in the United States, including its territories.

27       82.    Plaintiffs also propose separate State Classes for all fifty states, each of which

28   includes all persons and entities that purchased or leased a Class Vehicle in that state.

83.     Excluded from the Classes are:

a.      Defendants' officers, directors and employees and participants in the Porsche Associate Lease Program; Defendants' affiliates and affiliates' officers, directors and employees; Defendants' distributors and distributors' officers, directors and employees; and

b.      Judicial officers and their immediate family members and associated court staff assigned to this case.

84.     Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

85.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims.

86.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23 and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of its provisions.

**A.      Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

87.     The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe that there are hundreds of thousands of members of the Class, and at least hundreds of members in each State Class. The precise number and identities of Nationwide Class and State Class members may be ascertained from Defendants' records and motor vehicle regulatory data. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

**B.      Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**

88.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.      Whether Defendants engaged in the conduct alleged herein;

1        b.      Whether Defendants designed, advertised, marketed, distributed, leased,

2   sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

3        c.      Whether the Class Vehicles were affected by the Axle Ratio, Testing

4   Software, and Sport Plus defects, as described herein;

5        d.      Whether Defendants' conduct violates consumer protection statutes,

6   warranty laws, and other laws as asserted herein;

7        e.      Whether Plaintiffs and the other Class members are entitled to equitable

8   relief, including, but not limited to, restitution or injunctive relief; and

9        f.      Whether Plaintiffs and the other Class members are entitled to damages and

10  other monetary relief and, if so, in what amount.

11       **C.      Typicality: Federal Rule of Civil Procedure 23(a)(3)**

12       89.     Plaintiffs' claims are typical of the claims of the Class members whom they seek to

13  represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased or

14  leased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as

15  described above. Plaintiffs and the other Class members suffered damages as a direct proximate

16  result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same

17  practices and courses of conduct that give rise to the claims of the other Class members. Plaintiffs'

18  claims are based upon the same legal theories as the claims of the other Class members.

19       **D.      Adequacy: Federal Rule of Civil Procedure 23(a)(4)**

20       90.     Plaintiffs will fairly and adequately represent and protect the interests of the Class

21  members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the

22  interests of the Class members. Plaintiffs have retained counsel competent and experienced in

23  complex class action litigation, including vehicle emissions litigation and other consumer

24  protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor

25  their counsel have interests that conflict with the interests of the other Class members. Therefore,

26  the interests of the Class members will be fairly and adequately protected.

27

28

E.      **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**

91.     Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

F.      **Superiority: Federal Rule of Civil Procedure 23(b)(3)**

92.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants such that it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

93.     Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

VIII.   **ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED**

A.      **Discovery Rule Tolling**

94.     For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

95.     Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiffs and members of the proposed Class could not have discovered that Defendants were concealing and misrepresenting the Class Vehicles' true emissions and fuel efficiency levels, including but not limited to their use of altered testing vehicles, a secret clean operating mode that is not used for real-world driving but is activated only during testing, and falsely attesting that Sport Plus Mode complies with applicable emissions regulations.

96.     Plaintiffs and the other Class members could not have reasonably discovered, and did not know of facts that would have caused a reasonable person to suspect, that Defendants

1    intentionally failed to report information within their knowledge to federal and state authorities,

2    dealerships, or consumers until—at the earliest—August 22, 2020, when published reports

3    surfaced for the first time disclosing the existence of the emissions and fuel economy defects in the

4    Class Vehicles.

5         97.    Likewise, a reasonable and diligent investigation could not have disclosed that

6    Defendants had information in their possession about the existence of its sophisticated emissions

7    and fuel economy deception and that they concealed that information, which Plaintiffs only

8    discovered immediately before this action was filed.

9         **B.    Tolling Due to Fraudulent Concealment**

10        98.    Throughout the relevant time period, all applicable statutes of limitation have been

11   tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged in

12   this Complaint.

13        99.    Upon information and belief, prior to the date of this Complaint, and at least as early

14   as September 2015, if not earlier, Defendants knew of the emissions and fuel economy defects in

15   certain Class Vehicles, but continued to distribute, sell, and/or lease the Class Vehicles to Plaintiffs

16   and the class members. In so doing, Defendants concealed and/or failed to notify Plaintiffs and the

17   Class members about the true nature of the Class Vehicles.

18        100.   Instead of disclosing their deception, or that the emissions and fuel economy from

19   the Class Vehicles were worse than represented, Defendants falsely represented the Class Vehicles'

20   true emissions and fuel economy.

21        101.   Any otherwise-applicable statutes of limitation have therefore been tolled by

22   Defendants' exclusive knowledge and active concealment of the facts alleged herein.

23        **C.    Estoppel**

24        102.   Defendants were and are under a continuous duty to disclose to Plaintiffs and Class

25   members the true character, quality, and nature of the Class Vehicles, including their fuel economy,

26   emissions systems, and their compliance with applicable federal and state law.

27        103.   Although Defendants had the duty throughout the relevant period to disclose to

28   Plaintiffs and Class members that they had engaged in the deception described in this Complaint,

Defendants did not actively disclose true fuel economy and emissions statistics and did not correct

their disclosures with respect to the Class Vehicles, actively concealed the true character, quality,

and nature of the Class Vehicles, and made misrepresentations about the quality, reliability,

characteristics, and/or performance of the Class Vehicles.

104.     Defendants actively concealed the true character, quality, performance, and nature

of the emission and fuel economy defects in the Class Vehicles, and Plaintiffs and the class

members reasonably relied upon Defendants' knowing and active concealment of these facts.

105.     Based on the foregoing, Defendants are estopped from relying on any statutes of

limitations in defense of this action.

IX.     **CAUSES OF ACTION**

A.     **Claims Asserted on Behalf of the Nationwide Class**

**NATIONWIDE COUNT I:**
**FRAUD BY CONCEALMENT**
**(Common Law)**

106.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

forth herein.

107.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class or, in

the alternative, on behalf of the State Classes, against all Defendants.

108.     Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*,

Restatement (Second) of Torts §§ 550-51 (1977).

109.     Specifically, Defendants committed fraud by submitting testing vehicles that were

materially different from production vehicles, installing and calibrating clean driving software in

the Class Vehicles for testing only, attesting that the high performance Sport Plus mode complied

with applicable emissions laws, and concealing all of this information from regulators, Plaintiffs

and the Class.

110.     A reasonable consumer would not have expected that the Class Vehicles they paid

for and drove were materially different from the testing-only vehicles used to obtain permission to

sell the vehicles, contained software designed to misrepresent the Class Vehicles' true emissions and fuel economy, and did not comply with emissions laws when operated in Sport Plus mode.

111.   Defendants knew that these facts about the Class Vehicles would be important to the consumers deciding to purchase or lease them. Defendants ensured that Plaintiffs and the Class did not discover this information through actively concealing it. Defendants intended for Plaintiffs and the Class to rely on their omissions—which they did by paying for the Class Vehicles.

112.   Defendants had a duty to disclose the emissions and fuel economy defects and that the Class Vehicles consumed more fuel and emitted higher levels of harmful pollutants during normal driving operation. These important facts were known and/or accessible only to the Defendants, including due to their involvement in the design, installment, and calibration of the hardware and software in the Class Vehicles. Defendants also knew that these technical facts were not known to or reasonably discoverable by Plaintiffs and the Class.

113.   Defendants also had a duty to disclose the true nature of the Class Vehicles in light of their affirmative statements about the Class Vehicles with respect to emissions standards, fuel efficiency and performance. In uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiffs and the Class that the Class Vehicles were equipped with emissions-cheating software and/or hardware that caused them to obtain worse fuel economy and/or emit more pollution on the road than in regulatory testing.

114.   Defendants knew these statements were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the existence of the emissions- and fuel economy-cheating fraud. Because they volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiffs and the Class, Defendants had the duty to disclose the whole truth. They did not.

115.   Defendants did not fulfill their duties to disclose to Plaintiffs and the Class. Instead, they actively concealed the truth.

116.   Defendants' deceptive actions harmed Plaintiffs and the Class. Because Defendants' fraudulently concealed the truth about the Class Vehicles' fuel economy and

emissions characteristics, consumers who paid for the Class Vehicles suffered economic losses. Plaintiffs suffered damages including but not limited to payment for additional fuel costs required by the lower fuel economy performance in their Class Vehicles. Accordingly, Defendants are liable to Plaintiffs and the Class for damages in an amount to be proven at trial.

117.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiffs and the Class; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**NATIONWIDE COUNT II:**
**IMPLIED AND WRITTEN WARRANTY**
**Magnuson - Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*)**

118.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

119.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants.

120.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

121.    Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

122.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

123.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

124.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

125.    Defendants provided Plaintiffs and the Nationwide Class with the following two express warranties, which are covered under 15 U.S.C. § 2301(6):

1          a.    **Manufacturer's Warranty**—This written warranty provides

2  "bumper-to-bumper" limited express warranty coverage for a minimum of 4 years or 50,000 miles,

3  whichever comes first. The warranty covers emissions related repairs.

4          b.    **Federal Emissions Warranty**—Consistent with federal law, the

5  Defendants provided a "performance warranty" and a "design and defect warranty." In the event

6  that a vehicle fails an emissions test, these warranties cover the repair and replacement of: all

7  emission control and emission-related parts for two years or 24,000 miles (whichever comes first);

8  and specified major emission control components, including catalytic converters, electronic

9  emissions control unit or computer and on–board emissions diagnostic device or computer for 8

10  years or 80,000 miles (whichever comes first).

11      126.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

12      127.    The terms of these warranties became part of the basis of the bargain when Plaintiffs

13  and each Class member purchased or leased their Class Vehicles.

14      128.    Defendants breached these written and implied warranties as described in detail

15  above. Without limitation, the Class Vehicles share a common design defect in that they emit more

16  pollution and consume more fuel than disclosed to regulators, consumers, and the driving public.

17      129.    Plaintiffs and each Class member have had sufficient direct dealings with either

18  Defendants or their agents (including dealerships) to establish privity of contract between

19  Defendants, on the one hand, and Plaintiffs and each Class member, on the other hand.

20  Nonetheless, privity is not required here because Plaintiffs and each Class member are intended

21  third-party beneficiaries of contracts between Defendants and their dealers, and of their implied

22  warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and

23  have no rights under the warranty agreements provided with the Class Vehicles; the warranty

24  agreements were designed for and intended to benefit consumers only.

25      130.    Affording Defendants a reasonable opportunity to cure their breach of written

26  warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle,

27  Defendants knew, or should have known, of their misrepresentations and/or material omissions

28  concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify

the situation and/or disclose the design defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs or members of the Class resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

131.    In addition, given the conduct described herein, any attempts by Defendants, in their capacity as warrantors, to limit the implied warranties in a manner that would exclude coverage of the defect is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defect is null and void.

132.    Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments they made to Defendants. Because Defendants are refusing to acknowledge any revocation of acceptance and have not immediately returned any payments made, Plaintiffs and the Class have not re-accepted their Class Vehicles by retaining them.

133.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

134.    As a direct and proximate result of the Defendants' breach of the written and implied warranties, Plaintiffs and each Class member have suffered damages.

135.    Plaintiffs, individually and on behalf of the Class, seek all damages permitted by law, including compensation for the monetary difference between the Class Vehicles as warranted and as sold or leased; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

1

**B.     State-Specific Claims**

2

**ALABAMA COUNT I:**
**Violations of the Alabama Deceptive Trade Practices Act**
**Ala. Code § 8-19-1, *et seq.***
**(On Behalf of the Alabama State Class)**

3

4

136.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully

5

set forth herein.

6

137.     This count is brought on behalf of the Alabama State Class against all Defendants.

7

138.     Alabama State Class members are "consumers" within the meaning of Ala. Code

8

§ 8-19-3(2).

9

139.     Alabama State Class members and Defendants are "persons" within the meaning of

10

Ala. Code § 8-19-3(5).

11

140.     The Class Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

12

141.     Defendants were and are engaged in "trade or commerce" within the meaning of

13

Ala. Code § 8-19-3(8).

14

142.     The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several

15

specific actions to be unlawful, including: "(5) Representing that goods or services have

16

sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not

17

have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that

18

goods are of a particular style or model, if they are of another," and "(27) Engaging in any other

19

unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or

20

commerce." Ala. Code § 8-19-5.

21

143.     In the course of their business, Defendants concealed and suppressed material facts

22

concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

23

emissions testing that were different from production vehicles, (b) installing a secret software

24

program that caused the vehicles to perform differently during emissions testing than on the road,

25

and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

26

emissions tests when they in fact did not.

27

28

1      144.    Alabama State Class members had no way of discerning that Defendants'

2  representations were false and misleading because Alabama State Class members did not have

3  access to Defendants' emissions certification test vehicles and Defendants' emissions-related

4  hardware and software was extremely sophisticated technology. Alabama State Class members did

5  not and could not unravel Defendants' deception on their own.

6      145.    Defendants thus violated the Alabama DTPA by, at minimum: representing that

7  Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

8  representing that Class Vehicles are of a particular standard, quality, and grade when they are not;

9  advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing

10  that the subject of a transaction involving Class Vehicles has been supplied in accordance with a

11  previous representation when it has not.

12      146.    Defendants intentionally and knowingly misrepresented material facts regarding the

13  Class Vehicles with intent to mislead the Alabama State Class.

14      147.    Defendants knew or should have known that their conduct violated the Alabama

15  DTPA.

16      148.    Defendants owed the Alabama State Class a duty to disclose the illegality and public

17  health risks, and the true nature of the Class Vehicles, because Defendants:

18          A.    possessed exclusive knowledge that they were manufacturing, selling, and

19      distributing vehicles throughout the United States that did not perform as advertised;

20          B.    intentionally concealed the foregoing from regulators and Alabama State

21      Class members; and/or

22          C.    made incomplete representations about the Class Vehicles' fuel economy

23      and emissions while purposefully withholding material facts that contradicted these

24      representations.

25      149.    Defendants' concealment of the Class Vehicles' true fuel consumption and

26  emissions was material to the Alabama State Class.

27      150.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

28  deceive regulators and reasonable consumers, including the Alabama Class, about the true

environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

151.    The Alabama State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

152.    Pursuant to Ala. Code § 8-19-10(e), Plaintiffs have sent a notice letter to Defendants. Additionally, Defendants are on notice of the issues raised in this count and this Complaint by way of investigations conducted by governmental regulators. The Alabama State Class seeks all damages and relief to which it is entitled.

**ALABAMA COUNT II:**
**Breach of Express Warranty**
**Ala. Code §§ 7-2-313 and 7-2A-210**
**(On Behalf of the Alabama State Class)**

153.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

154.    This count is brought on behalf of the Alabama State Class against all Defendants.

155.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

156.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

157.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

158.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

159.    Defendants also made numerous representations, descriptions, and promises to Alabama State Class members regarding the performance and emission controls of their vehicles.

160.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

161.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

162.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

163.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

164.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

165.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased the Class Vehicles.

166.     Despite the existence of warranties, Defendants failed to inform Alabama State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

167.     Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

168.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

169.     Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Alabama State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

170.     Accordingly, recovery by Alabama State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

171.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Alabama State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

172.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship, as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Alabama State Class members' remedies would be insufficient to make them whole.

173.    Finally, because of Defendants' breach of warranty as set forth herein, Alabama State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

174.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

175.    As a direct and proximate result of Defendants' breach of express warranties, Alabama State Class members have been damaged in an amount to be determined at trial.

**ALABAMA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ala. Code §§ 7-2-314 and 7-2-212**
**(On Behalf of the Alabama State Class)**

176.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

177.    This count is brought on behalf of the Alabama State Class against all Defendants.

178.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

179.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

180.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

181.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

182.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

183.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

184.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Alabama State Class members have been damaged in an amount to be proven at trial.

**ALASKA COUNT I:**
**Violations of the Alaska Unfair Trade Practices and Consumer Protection Act**
**Alaska Stat. Ann. § 45.50.471 *et seq.***
**(On Behalf of the Alaska State Class)**

185.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

186.    This count is brought on behalf of the Alaska State Class against all Defendants.

187.    The Alaska Unfair Trade Practices And Consumer Protection Act ("Alaska CPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471.

188.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software

1  program that caused the vehicles to perform differently during emissions testing than on the road,
2  and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass
3  emissions tests when they in fact did not.

4       189.   Alaska State Class members had no way of discerning that Defendants'
5  representations were false and misleading because Alaska State Class members did not have access
6  to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware
7  and software was extremely sophisticated technology. Alaska State Class members did not and
8  could not unravel Defendants' deception on their own.

9       190.   Defendants thus violated the Alaska CPA by, at minimum: representing that Class
10  Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that
11  Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class
12  Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a
13  transaction involving Class Vehicles has been supplied in accordance with a previous
14  representation when it has not.

15       191.   Defendants intentionally and knowingly misrepresented material facts regarding the
16  Class Vehicles with intent to mislead the Alaska State Class.

17       192.   Defendants knew or should have known that their conduct violated the Alaska CPA.

18       193.   Defendants owed the Alaska State Class a duty to disclose the illegality and public
19  health risks, the true nature of the Class Vehicles, because Defendants:

20       A.   possessed exclusive knowledge that they were manufacturing, selling, and
21  distributing vehicles throughout the United States that did not perform as advertised;

22       B.   intentionally concealed the foregoing from regulators and Alaska Class
23  members; and/or

24       C.   made incomplete representations about the Class Vehicles' fuel economy
25  and emissions while purposefully withholding material facts that contradicted these
26  representations.

27       194.   Defendants' concealment of the Class Vehicles' true fuel consumption and
28  emissions was material to the Alaska State Class.

195.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Alabama State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

196.     Defendants' violations present a continuing risk to the Alaska State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

197.     As a direct and proximate result of Defendants' violations of the Alaska CPA, the Alaska State Class have suffered injury-in-fact and/or actual damage.

198.     Pursuant to Alaska Stat. § 45.50. 531, the Alaska State Class seeks monetary relief against Defendants measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each Alaska State Class member.

199.     Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices pursuant to Alaska Stat. § 45.50. 535, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

200.     Pursuant to Alaska Stat. § 45.50.535, Plaintiffs sent a notice letter to Defendants. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by way of investigations conducted by governmental regulators. The Alabama State Class seeks all damages and relief to which it is entitled.

**ALASKA COUNT II:**
**Breach of Express Warranty**
**Alaska Stat. §§ 45.02.313 and 45.12.210**
**(On Behalf of the Alaska State Class)**

201.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

202.     This count is brought on behalf of the Alaska State Class against all Defendants.

203.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(11), and a "seller" of motor vehicles under Alaska Stat. § 45.02.103(a)(4).

204.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. § 45.12.103(a)(16).

205.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

206.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

207.    Defendants also made numerous representations, descriptions, and promises to Alaska State Class members regarding the performance and emission controls of their vehicles.

208.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

209.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

210.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

211.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express

warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

212.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

213.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

214.    Despite the existence of warranties, Defendants failed to inform Alaska State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

215.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

216.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

217.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Alaska State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

218.    Accordingly, recovery by the Alaska State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

219.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Alaska State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

220.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship fails in its essential purpose as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Alaska State Class members' remedies would be insufficient to make them whole.

221.     Finally, because of Defendants' breach of warranty as set forth herein, Alaska State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

222.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

223.     As a direct and proximate result of Defendants' breach of express warranties, Alaska State Class members have been damaged in an amount to be determined at trial.

**ALASKA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Alaska Stat. §§ 45.02.314 and 45.12.212**
**(On Behalf of the Alaska State Class)**

224.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

225.     This count is brought on behalf of the Alaska State Class against all Defendants.

226.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(11), and a "seller" of motor vehicles under Alaska Stat. § 45.02.103(a)(4).

227.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. § 45.12.103(a)(16).

228.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

229.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

230.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

231.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

232.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Alaska State Class members have been damaged in an amount to be proven at trial.

**ARIZONA COUNT I:**
**Violations of the Arizona Consumer Fraud Act**
**Ariz. Rev. Stat. § 44-1521, *et seq.***
**(On Behalf of the Arizona State Class)**

233.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

234.     Plaintiff William Venturino (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Arizona State Class against all Defendants.

235.     Defendants, Plaintiff, and Arizona State Class members are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

236.     The Class Vehicles are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

237.     The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

238.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

239.     Plaintiff and Arizona State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Arizona State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

240.     Defendants thus violated the Arizona CFA by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles.

241.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Arizona State Class.

242.     Defendants knew or should have known that their conduct violated the Arizona CFA.

243.    Defendants owed Plaintiff and the Arizona State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.    intentionally concealed the foregoing from regulators, Plaintiff, and Arizona State Class members; and/or

C.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts from Plaintiff and Arizona State Class members that contradicted these representations.

244.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to Plaintiff and the Arizona State Class.

245.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff and the Arizona State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

246.    Plaintiff and the Arizona State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

247.    Plaintiff and the Arizona State Class seek monetary relief against Defendants in an amount to be determined at trial. Plaintiff and the Arizona State Class also seek punitive damages because Defendants engaged in aggravated and outrageous conduct.

248.    Plaintiff and the Arizona State Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARIZONA COUNT II:**
**Breach of Express Warranty**
**Ariz. Rev. Stat. §§ 47-2313 and 47-2A210**
**(On Behalf of the Arizona State Class)**

249.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

250.    Plaintiff William Venturino (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Arizona State Class against all Defendants.

251.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c); and is a "seller" of motor vehicles under Ariz. Rev. Stat. § 47-2103(A)(4).

252.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

253.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

254.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

255.    Defendants also made numerous representations, descriptions, and promises to Plaintiff and Arizona State Class members regarding the performance and emission controls of their vehicles.

256.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

257.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

258.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

259.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

260.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

261.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

262.    Despite the existence of warranties, Defendants failed to inform Plaintiff and Arizona State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

263.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

264.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

265.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Arizona State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

266.    Accordingly, recovery by Plaintiff and Arizona State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

267.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiff and Arizona State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

268.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's Arizona State Class members' remedies would be insufficient to make them whole.

269.    Finally, because of Defendants' breach of warranty as set forth herein, Plaintiff and Arizona State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

270.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

271.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and Arizona State Class members have been damaged in an amount to be determined at trial.

**ARIZONA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ariz. Rev. Stat. §§ 47-2314 and 47-2A212**
**(On Behalf of the Arizona State Class)**

272.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

273.    Plaintiff William Venturino (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Arizona State Class against all Defendants.

274.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c); and is a "seller" of motor vehicles under Ariz. Rev. Stat. § 47-2103(A)(4).

275.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

276.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

277.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ariz. Rev. Stat. §§ 47-2314 and 47-2a212.

278.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

279.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

280.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Arizona State Class members have been damaged in an amount to be proven at trial.

**ARKANSAS COUNT I:**
**Violations of the Deceptive Trade Practices Act**
**Ark. Code Ann. § 4-88-101 *et seq.***
**(On Behalf of the Arkansas State Class)**

281.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

282.    This count is brought on behalf of the Arkansas State Class against all Defendants.

283.    Defendants and Arkansas State Class members are "persons" within the meaning of Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

284.    The Class Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

285.    The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

286.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road,

1    and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

2    emissions tests when they in fact did not.

3          287.    Arkansas State Class members had no way of discerning that Defendants'

4    representations were false and misleading because the Arkansas State Class did not have access to

5    Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and

6    software was extremely sophisticated technology.

7          288.    Defendants thus violated the Arkansas DTPA by, at minimum: representing that

8    Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

9    representing that Class Vehicles are of a particular standard, quality, and grade when they are not;

10   advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing

11   that the subject of a transaction involving Class Vehicles has been supplied in accordance with a

12   previous representation when it has not.

13         289.    Defendants intentionally and knowingly misrepresented material facts regarding the

14   Class Vehicles with intent to mislead the Arkansas State Class. Defendants knew or should have

15   known that their conduct violated the Arkansas DTPA.

16         290.    Defendants owed the Arkansas State Class a duty to disclose the illegality and

17   public health risks, the true nature of the Class Vehicles, because Defendants:

18              A.    possessed exclusive knowledge that they were manufacturing, selling, and

19         distributing vehicles throughout the United States that did not perform as advertised;

20              B.    intentionally concealed the foregoing from regulators, and Arkansas State

21         Class members; and/or

22              C.    made incomplete representations about the Class Vehicles' fuel economy

23         and emissions while purposefully withholding material facts that contradicted these

24         representations.

25         291.    Defendants' concealment of the Class Vehicles' true fuel consumption and

26   emissions was material to the Arkansas State Class.

27         292.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

28   deceive regulators and reasonable consumers, including the Arkansas State Class about the true

environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

293.    Defendants' violations present a continuing risk to the Arkansas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

294.    The Arkansas State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Arkansas DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

295.    As a direct and proximate result of Defendants' violations of the Arkansas DTPA, members of the Arkansas State Class have suffered injury-in-fact and/or actual damage.

296.    The Arkansas State Class seeks monetary relief against Defendants in an amount to be determined at trial. The Arkansas State Class also seeks punitive damages because Defendants acted wantonly in causing the injury or with conscious indifference to the consequences.

297.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**ARKANSAS COUNT II:**
**Breach of Express Warranty**
**Ark Code Ann. §§ 4-2-313 and 4-2A-210**
**(On Behalf of the Arkansas State Class)**

298.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

299.    This count is brought on behalf of the Arkansas State Class against all Defendants.

300.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ark. Code §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

301.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ark. Code § 4-2A-103(1)(p).

302.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code §§ 4-2-105(1) and 4-2A-103(1)(h).

303.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

304.    Defendants also made numerous representations, descriptions, and promises to Arkansas State Class members regarding the performance and emission controls of their vehicles.

305.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

306.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

307.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

308.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express

1     warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

2     Design and Defect Warranty required by the EPA covers repair of emission control or emission

3     related parts, which fail to function or function improperly because of a defect in materials or

4     workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

5     first, or, for the major emission control components, for eight years or 80,000 miles, whichever

6     comes first.

7            309.    As manufacturers of light-duty vehicles, Defendants were required to provide these

8     warranties to purchasers or lessees of Class Vehicles.

9            310.    Defendants' warranties formed a basis of the bargain that was reached when

10    consumers purchased or leased Class Vehicles.

11           311.    Despite the existence of warranties, Defendants failed to inform Arkansas State

12    Class members that the Class Vehicles defective and were intentionally designed and manufactured

13    to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

14    regulators and represented to consumers who purchased or leased them, and Defendants failed to

15    fix the defective emission components free of charge.

16           312.    Defendants breached the express warranty promising to repair and correct

17    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

18    have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

19           313.    Affording Defendants a reasonable opportunity to cure their breach of written

20    warranties would be unnecessary and futile here.

21           314.    Furthermore, the limited warranty promising to repair and correct Defendants'

22    defect in materials and workmanship fails in its essential purpose because the contractual remedy is

23    insufficient to make Arkansas State Class members whole and because Defendants have failed

24    and/or have refused to adequately provide the promised remedies within a reasonable time.

25           315.    Accordingly, recovery by Arkansas State Class members is not restricted to the

26    limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

27    and they seek all remedies as allowed by law.

28

316.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Arkansas State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

317.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Arkansas State Class members' remedies would be insufficient to make them whole.

318.    Finally, because of Defendants' breach of warranty as set forth herein, Arkansas State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

319.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

320.    As a direct and proximate result of Defendants' breach of express warranties, Arkansas State Class members have been damaged in an amount to be determined at trial.

**ARKANSAS COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ark. Code Ann. §§ 4-2-314 and 4-2A-212**
**(On Behalf of the Arkansas State Class)**

321.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

322.    This count is brought on behalf of the Arkansas State Class against all Defendants.

323.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ark. Code §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

324.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ark. Code § 4-2A-103(1)(p).

325.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code §§ 4-2-105(1) and 4-2A-103(1)(h).

326.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ark. Code §§ 4-2-314 and 4-2A-212.

327.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

328.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

329.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Arkansas State Class members have been damaged in an amount to be proven at trial.

**CALIFORNIA COUNT I:**
**Violation of California Consumers Legal Remedies Act**
**Cal Bus. & Prof. Code § 1750, *et seq.***
**(On Behalf of the California State Class)**

330.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

331.    Plaintiffs Mallen Fajardo and Mark Kovaletz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against all Defendants for injunctive relief only.

332.    Plaintiffs and members of the California State Class were deceived by Defendants' failure to disclose that the Class Vehicles were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy

1  and emissions ratings, and/or did not comply with emissions regulations when being driven in

2  Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

3      333.    Defendants engaged in unfair or deceptive acts or practices when, in the course of

4  their business they, among other acts and practices, knowingly made materially incomplete

5  representations as to the characteristics, uses and benefits of the Class Vehicles.

6      334.    In the various channels of information through which Defendants sold and marketed

7  Class Vehicles, Defendants failed to disclose material information concerning the Class Vehicles,

8  which it had a duty to disclose. Defendants had a duty to disclose the defect because, as detailed

9  above, (a) Defendants knew about the three emissions cheating schemes in the Class Vehicles; (b)

10 Defendants had exclusive knowledge of material facts not known to the general public or the other

11 California State Class members; (c) Defendants actively concealed material facts concerning the

12 software program from the general public and Plaintiffs and California State Class members; and

13 (d) Defendants made partial representations about the Class Vehicles that were misleading because

14 they did not disclose the full truth. As detailed above, Defendants knew the information concerning

15 the defect at the time of advertising and selling the Class Vehicles, all of which was intended to

16 induce consumers to purchase the Class Vehicles.

17     335.    Defendants intended for Plaintiffs and California State Class members to rely on it

18 to provide adequately designed, and adequately manufactured automobiles and to honestly and

19 accurately reveal the problems described throughout this Complaint.

20     336.    Defendants intentionally failed or refused to disclose the defect to consumers.

21     337.    Defendants' conduct and deceptive omissions were intended to induce Plaintiffs and

22 California State Class members to believe that the Class Vehicles were adequately designed and

23 adequately manufactured automobiles.

24     338.    Defendants' conduct constitutes unfair acts or practices as defined by the California

25 Consumers Legal Remedies Act (the "CLRA").

26     339.    Plaintiffs and the other California State Class members have suffered injury in fact

27 and actual damages resulting from Defendants' material omissions.

28

340.     Plaintiffs and the California State Class seek an order enjoining Defendants' unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available under the CLRA.

341.     Defendants are on notice of the issues raised in this count and this Complaint by way of investigations conducted by governmental regulators. Plaintiffs have also sent a notice letter to Defendants in accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendants of their alleged violations of Cal. Civ. Code § 1770(a) and demanding that Defendants correct or agree to correct the actions described therein within thirty (30) days of the notice letter. If Defendants fail to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiffs and California Class Members are entitled under the CLRA.

**CALIFORNIA COUNT II:**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
**(On Behalf of the California State Class)**

342.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

343.     Plaintiffs Mallen Fajardo and Mark Kovaletz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against all Defendants.

344.     California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Defendants have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

345.     Defendants' conduct, as described herein, was and is in violation of the UCL. Defendants' conduct violates the UCL in at least the following ways:

A.     by knowingly and intentionally concealing from Plaintiffs and California State Class members that the Class Vehicles suffer from a design defect while obtaining money from the California State Class members;

B.      by marketing Class Vehicles as possessing functional and defect-free, EPA-compliant engine systems; and

C.      by purposefully designing and manufacturing the Class Vehicles to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and failing to fix the defective emission component free of charge.

346.   Defendants' misrepresentations and omissions alleged herein caused Plaintiffs and the California State Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and California State Class members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not cheat on emissions testing or have inflated and misleading fuel economy values.

347.   Accordingly, Plaintiffs and California State Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

348.   Plaintiffs requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing its unfair, unlawful, and/or deceptive practices and to restore to members of the California State Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below.

**CALIFORNIA COUNT III:**
**Violations of the California False Advertising Law**
**Cal. Civ. Code § 17500 *et seq.***
**(On Behalf of the California State Class)**

349.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

350.   Plaintiffs Mallen Fajardo and Mark Kovaletz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against all Defendants.

351.   California Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to  be made or disseminated . . . from this state before the public in any state, in any newspaper or   other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

352.   Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or  misleading, and which were known, or which by the exercise of reasonable care should have been  known to Defendants, to be untrue and misleading to consumers, including California State Class members.

353.   Defendants have violated § 17500 because the misrepresentations and omissions  regarding the reliability and functionality of Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

354.   Plaintiffs and the other California State Class members have suffered an injury in fact, including  the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive  practices. In purchasing or leasing their Class Vehicles, the California State Class  relied on the misrepresentations and/or omissions of Defendants with respect to the  performance and reliability of the Class Vehicles. Defendants' representations turned out not to be true because the Class Vehicles are distributed with faulty and defective hardware and software systems, rendering certain emissions functions inoperative.

355.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants business. Defendants' wrongful conduct is part of a pattern or generalized

course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

356.    The California State Class requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to the California State Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**CALIFORNIA COUNT IV:**
**Breach of Express Warranty**
**Cal. Com. Code §§ 2313 and 10210**
**(On Behalf of the California State Class)**

357.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

358.     Plaintiffs Mallen Fajardo and Mark Kovaletz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against all Defendants.

359.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

360.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

361.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

362.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

363.    Defendants also made numerous representations, descriptions, and promises to California State Class members regarding the performance and emission controls of their vehicles.

1    364.    For example, Defendants included in the warranty booklets for some or all of the

2    Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

3    time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

4    from defects in material and workmanship which would cause it not to meet those standards."

5    365.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

6    federal emission control warranties: a "Performance Warranty" and a "Design and Defect

7    Warranty."

8    366.    The EPA requires vehicle manufacturers to provide a Performance Warranty with

9    respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

10   their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

11   required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

12   whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

13   emission control components are covered for the first eight years or 80,000 miles (whichever

14   comes first). These major emission control components subject to the longer warranty include the

15   catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

16   device or computer.

17   367.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties

18   with respect to their vehicles' emission systems. Thus, Defendants also provide an express

19   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

20   Design and Defect Warranty required by the EPA covers repair of emission control or emission

21   related parts, which fail to function or function improperly because of a defect in materials or

22   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

23   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

24   comes first.

25   368.    As manufacturers of light-duty vehicles, Defendants were required to provide these

26   warranties to purchasers or lessees of Class Vehicles.

27   369.    Defendants' warranties formed a basis of the bargain that was reached when

28   consumers purchased or leased Class Vehicles.

370.    Despite the existence of warranties, Defendants failed to inform Plaintiffs and California State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

371.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

372.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

373.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make California State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

374.    Accordingly, recovery by Plaintiffs and California State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

375.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. California State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

376.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and California State Class members' remedies would be insufficient to make them whole.

377.    Finally, because of Defendants' breach of warranty as set forth herein, Plaintiffs and California State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

378.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

379.    As a direct and proximate result of Defendants' breach of express warranties, California State Class members have been damaged in an amount to be determined at trial.

**CALIFORNIA COUNT V:**
**Breach of Implied Warranty of Merchantability**
**Cal. Com. Code §§ 2314 and 10212**
**(On Behalf of the California State Class)**

380.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

381.     Plaintiffs Mallen Fajardo and Mark Kovaletz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against all Defendants.

382.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

383.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

384.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

385.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

386.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software

that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

387.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

388.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and California State Class members have been damaged in an amount to be proven at trial.

**CALIFORNIA COUNT VI:**
**Violation of Song-Beverly Consumer Warranty Act, Breach of Implied Warranty**
**Cal Civ. Code § 1790, *et seq.***
**(On Behalf of the California State Class)**

389.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

390.    Plaintiffs Mallen Fajardo and Mark Kovaletz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against all Defendants.

391.    Plaintiffs and members of the California State Class who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

392.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

393.    Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

394.    Defendants impliedly warranted to Plaintiffs and the other members of the California State Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

395.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

      A.   Pass without objection in the trade under the contract description.

      B.   Are fit for the ordinary purposes for which such goods are used.

      C.   Are adequately contained, packaged, and labeled.

      D.   Conform to the promises or affirmations of fact made on the container or label.

396.   The Class Vehicles would not pass without objection in the automotive trade because they share a common design defect in that they were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, which conceals the vehicles' true emissions and overstates their fuel economy.

397.   Class Vehicles are not adequately labeled because the labeling fails to disclose the fact that they are defective.

398.   In the various channels of information through which Defendants sold and marketed Class Vehicles, Defendants failed to disclose material information concerning the Class Vehicles, which it had a duty to disclose. Defendants had a duty to disclose the defect because, as detailed above: (a) Defendants knew about the defect; (b) Defendants had exclusive knowledge of material facts not known to the general public or the other California State Class members; (c) Defendants actively concealed material facts from the general public and California State Class members concerning the Class Vehicles' true emissions and fuel economy; and (d) Defendants made partial representations about the Class Vehicles that were misleading because they did not disclose the full truth. As detailed above, Defendants knew the information concerning the defect at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

399.    Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles that are defective. Furthermore, this defect has caused members of the California State Class to not receive the benefit of their bargain and have caused the Class Vehicles to depreciate in value.

400.    Plaintiffs and members of the California State Class have been damaged as a result of the diminished value of Defendants' products.

401.    Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and other members of the California State Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

402.    Under Cal. Civ. Code § 1794, Plaintiffs and the other members of the California State Class are entitled to costs and attorneys' fees.

**CALIFORNIA COUNT VII:**
**Violation of the Song-Beverly Consumer Protection Act, Breach of Express Warranty**
**Cal Civ. Code § 1790, *et seq.***
**(On Behalf of the California State Class)**

403.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

404.    Plaintiffs Mallen Fajardo and Mark Kovaletz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against all Defendants.

405.    Plaintiffs and Members of the California State Class who purchased or leased the Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

406.    The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

407.    Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of California Civil Code § 1791(j).

408.    Defendants made express warranties to members of the California State Class within the meaning of California Civil Code §§ 1791.2 and 1793.2, as described above.

409.    As set forth above in detail, the Class Vehicles are inherently defective in that they were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode. This defect substantially impairs the use and value of the Class Vehicles to reasonable consumers.

410.    As a result of Defendants' breach of their express warranties, members of the California State Class received goods whose defect substantially impairs their value to Plaintiffs and the other members of the California State Class. Plaintiffs and members of the California State Class have been damaged as a result of, *inter alia*, the diminished value of Defendants' products.

411.    Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiffs and members of the California State Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

412.    Pursuant to California Civil Code § 1794, the Class is entitled to costs and attorneys' fees.

**CALIFORNIA COUNT VIII:**
**Breach of Express California Emissions Warranties**
**Cal. Civ. Code § 1793.2, *et seq.***
**(On Behalf of the California State Class)**

413.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

414.    Plaintiffs Mallen Fajardo and Mark Kovaletz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against all Defendants.

415.    Each Class Vehicle is covered by express California Emissions Warranties as a matter of law. *See* Cal. Health & Safety Code § 43205; Cal. Code Regs. tit. 13, § 2037.

416.    The express California Emissions Warranties generally provide "that the vehicle or engine is . . . [d]esigned, built, and equipped so as to conform with all applicable regulations

1   adopted by the Air Resources Board." *Id.* This provision applies without any time or mileage

2   limitation. *See id.*

3        417.    The California Emissions Warranties also specifically warrant consumers against

4   any performance failure of the emissions control system for three years or 50,000 miles, whichever

5   occurs first, and against any defect in any emission-related part for seven years or 70,000 miles,

6   whichever occurs first. *See id.*

7        418.    California law imposes express duties "on the manufacturer of consumer goods sold

8   in this state and for which the manufacturer has made an express warranty." Cal. Civ. Code

9   § 1793.2.

10       419.    Among those duties, "[i]f the manufacturer or its representative in this state is

11   unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties

12   after a reasonable number of attempts, the manufacturer shall either promptly replace the new

13   motor vehicle or promptly make restitution to the buyer" at the vehicle owner's option. *See* Cal.

14   Civ. Code § 1793.2(d)(2).

15       420.    Plaintiffs and Class members are excused from the requirement to "deliver

16   nonconforming goods to the manufacturer's service and repair facility within this state" because

17   Defendants are refusing to accept them and delivery of the California Vehicles "cannot reasonably

18   be accomplished." Cal. Civ. Code § 1793.2(c).

19       421.    This Complaint is written notice of nonconformity to Defendants and "shall

20   constitute return of the goods." *Id.*

21       422.    Plaintiffs and California State Class members are excused from any requirement

22   that they allow a "reasonable number of attempts" to bring California Vehicles into conformity

23   with their California Emissions Warranties based on futility because FCA has no ability to do so at

24   this time.

25       423.    In addition to all other damages and remedies, California State Class members are

26   entitled to "recover a civil penalty of up to two times the amount of damages" for the

27   aforementioned violation. *See* Cal. Civ. Code § 1794(e)(1).

28

1

2

**CALIFORNIA COUNT IX:**
**Failure to Recall/Retrofit**
**(On Behalf of the California State Class)**

3          424.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

4    fully set forth herein.

5          425.    Plaintiffs Mallen Fajardo and Mark Kovaletz (for the purposes of this count,

6    "Plaintiffs") bring this claim on behalf of themselves and the California State Class against all

7    Defendants.

8          426.    Defendants manufactured, marketed, distributed, sold, or otherwise placed into the

9    stream of U.S. commerce the Class Vehicles, as set forth above.

10          427.    Defendants knew or reasonably should have known that the Class Vehicles emit a

11    substantially increased amount of pollution and reasonably should have known that the Class

12    Vehicles were likely to be dangerous when used in a reasonably foreseeable manner.

13          428.    Defendants failed to recall the Class Vehicles in a timely manner or warn of the

14    Class Vehicles' heightened emissions.

15          429.    A reasonable manufacturer in same or similar circumstances would have timely and

16    properly recalled the Class Vehicles.

17          430.    Plaintiffs and California State Class members were harmed by Defendants' failure

18    to recall the Class Vehicles properly and in a timely manner and, as a result, have suffered damages,

19    caused by Defendants' ongoing failure to properly recall, retrofit, and fully repair the Class

20    Vehicles.

21          431.    Defendants' failure to timely recall the Class Vehicles was a substantial factor in

22    causing harm to Plaintiffs and California State Class members as alleged herein.

23

24

**COLORADO COUNT I:**
**Violations of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. § 6-1-101 *et seq.***
**(On Behalf of the Colorado State Class)**

25          432.    Plaintiffs incorporate by reference each preceding paragraph as though fully set

26    forth herein.

27          433.    This count is brought on behalf of the Colorado State Class against all Defendants.

28

2053816.1                                    - 81 -                          CLASS ACTION COMPLAINT
                                                                             CASE NO.: 3:20-CV-7473

1      434.    Defendants are "person[s]" under § 6-1-102(6) of the Colorado Consumer

2    Protection Act "Colorado CPA"), Col. Rev. Stat. § 6-1-101, *et seq.*

3      435.    Colorado State Class members are "consumers" for purposes of Col. Rev. Stat

4    § 6-1-113(1)(a) who purchased or leased one or more Class Vehicles.

5      436.    The Colorado CPA prohibits deceptive trade practices in the course of a person's

6    business. Defendants engaged in deceptive trade practices prohibited by the Colorado CPA,

7    including: (1) knowingly making a false representation as to the characteristics, uses, and benefits

8    of the Class Vehicles that had the capacity or tendency to deceive Colorado State Class members;

9    (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though

10    Defendants knew or should have known they are not; (3) advertising the Class Vehicles with the

11    intent not to sell them as advertised; and (4) failing to disclose material information concerning the

12    Class Vehicles that was known to Defendants at the time of advertisement or sale with the intent to

13    induce Colorado State Class members to purchase, lease or retain the Class Vehicles.

14      437.    In the course of their business, Defendants concealed and suppressed material facts

15    concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

16    emissions testing that were different from production vehicles, (b) installing a secret software

17    program that caused the vehicles to perform differently during emissions testing than on the road,

18    and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

19    emissions tests when they in fact did not.

20      438.    Colorado State Class members had no way of discerning that Defendants'

21    representations were false and misleading because the Colorado State Class members did not have

22    access to Defendants' emissions certification test vehicles and Defendants' emissions-related

23    hardware and software was extremely sophisticated technology.

24      439.    Defendants thus violated the Colorado CPA by, at minimum: representing that Class

25    Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that

26    Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

27    Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

28

transaction involving Class Vehicles has been supplied in accordance with a previous

representation when it has not.

440.    Defendants intentionally and knowingly misrepresented material facts regarding the

Class Vehicles with intent to mislead the Colorado State Class.

441.    Defendants knew or should have known that their conduct violated the Colorado

CPA.

442.    Defendants owed the Colorado State Class a duty to disclose the illegality and

public health risks, the true nature of the Class Vehicles, because Defendants:

A.    possessed exclusive knowledge that they were manufacturing, selling, and

distributing vehicles throughout the United States that did not perform as advertised;

B.    intentionally concealed the foregoing from regulators and Colorado State

Class members; and/or

C.    made incomplete representations about the Class Vehicles' fuel economy

and emissions, while purposefully withholding material facts that contradicted these

representations.

443.    Defendants' concealment of the Class Vehicles' true fuel consumption and

emissions was material to the Colorado State Class.

444.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

deceive regulators and reasonable consumers, including the Colorado State Class, about the true

environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants'

brands, the devaluing of environmental cleanliness and integrity at Defendant companies, and the

true value of the Class Vehicles.

445.    Defendants' violations present a continuing risk to the Colorado State Class as well

as to the general public. Defendants' unlawful acts and practices complained of herein affect the

public interest.

446.    The Colorado State Class suffered ascertainable loss and actual damages as a direct

and proximate result of Defendants' misrepresentations and concealment of and failure to disclose

material information. Defendants had an ongoing duty to all their customers to refrain from unfair

1    and deceptive practices under the Colorado CPA. All owners and lessees of Class Vehicles suffered

2    ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the

3    course of Defendants' business.

**COLORADO COUNT II:**
**Breach of Express Warranty**
**Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210**
**(On Behalf of the Colorado State Class)**

447.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though
fully set forth herein.

448.    This count is brought on behalf of the Colorado State Class against all Defendants.

449.    Defendants are and were at all relevant times "merchant[s]" with respect to motor
vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles
under § 4-2-103(1)(d).

450.    With respect to leases, Defendants are and were at all relevant times "lessors" of
motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

451.    The Class Vehicles are and were at all relevant times "goods" within the meaning of
Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

452.    In connection with the purchase or lease of each one of its new vehicles, Defendants
provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This
warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

453.    Defendants also made numerous representations, descriptions, and promises to
Colorado State Class members regarding the performance and emission controls of their vehicles.

454.    For example, Defendants included in the warranty booklets for some or all of the
Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the
time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free
from defects in material and workmanship which would cause it not to meet those standards."

455.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two
federal emission control warranties: a "Performance Warranty" and a "Design and Defect
Warranty."

456.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

457.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

458.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

459.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

460.    Despite the existence of warranties, Defendants failed to inform Colorado State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

461.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

462.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

463.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Colorado State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

464.    Accordingly, recovery by Colorado State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

465.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Colorado State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

466.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Colorado State Class members' remedies would be insufficient to make them whole.

467.    Finally, because of Defendants' breach of warranty as set forth herein, Colorado State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

468.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

469.     As a direct and proximate result of Defendants' breach of express warranties, Colorado State Class members have been damaged in an amount to be determined at trial.

## COLORADO COUNT III:
### Breach of Implied Warranty of Merchantability
### Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212
### (On Behalf of the Colorado State Class)

470.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

471.     This count is brought on behalf of the Colorado State Class against all Defendants.

472.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

473.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

474.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

475.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-212.

476.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

477.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

478.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Colorado State Class members have been damaged in an amount to be proven at trial.

**CONNECTICUT COUNT I:**
**Violations of Connecticut Unlawful Trade Practice Act**
**Conn. Gen. Stat. § 42-110a, *et seq.***
**(On Behalf of the Connecticut State Class)**

479.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

480.     Plaintiff Frank Cohen (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Connecticut State Class against all Defendants.

481.     The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

482.     Defendants are "person[s]" within the meaning of Conn. Gen. Stat. § 42-110a(3).

483.     Defendants engaged in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

484.     Defendants participated in deceptive trade practices that violated the Connecticut UTPA as described herein.

485.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

486.     Plaintiff and Connecticut State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Connecticut State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

487.     Defendants thus violated the Connecticut UTPA by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles.

488.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Connecticut State Class.

489.     Defendants knew or should have known that their conduct violated the Connecticut UTPA.

490.     Defendants owed Plaintiff and the Connecticut State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.     intentionally concealed the foregoing from regulators, Plaintiff, and Connecticut State Class members; and/or

C.     made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

491.     Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to Plaintiff and the Connecticut State Class.

492.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff and the Connecticut State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

493.     Plaintiff and the Connecticut State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

494.    Plaintiff and the Connecticut State Class seek monetary relief against Defendants in an amount to be determined at trial. Plaintiff and the Connecticut State Class also seek punitive damages because Defendants engaged in aggravated and outrageous conduct.

495.    Plaintiff and the Connecticut State Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Connecticut CFA.

496.    Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Connecticut UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

497.    Defendants' violations present a continuing risk to Plaintiff and the Connecticut State Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

498.    As a direct and proximate result of Defendants' violations of the Connecticut UTPA, Plaintiff and the Connecticut State Class have suffered injury-in-fact and/or actual damage.

499.    Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g. Defendants acted with a reckless indifference to another's rights or wanton or intentional violation to another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

**CONNECTICUT COUNT II:**
**Breach of Express Warranty**
**Conn. Gen. Stat. Ann. § 42A-2-313**
**(On Behalf of the Connecticut State Class)**

500.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

501.    Plaintiff Frank Cohen (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Connecticut State Class against all Defendants.

502.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

503.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

504.    Defendants also made numerous representations, descriptions, and promises to Plaintiff and Connecticut State Class members regarding the performance and emission controls of their vehicles.

505.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

506.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

507.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

508.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission

1   related parts, which fail to function or function improperly because of a defect in materials or

2   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

3   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

4   comes first.

5   509.   As manufacturers of light-duty vehicles, Defendants were required to provide these

6   warranties to purchasers or lessees of Class Vehicles.

7   510.   Defendants' warranties formed a basis of the bargain that was reached when

8   consumers purchased or leased Class Vehicles.

9   511.   Despite the existence of warranties, Defendants failed to inform Plaintiff and

10   Connecticut State Class members that the Class Vehicles were defective and were intentionally

11   designed and manufactured to emit more pollution and achieve worse fuel economy on the road

12   than what was disclosed to regulators and represented to consumers who purchased or leased them,

13   and Defendants failed to fix the defective emission components free of charge.

14   512.   Defendants breached the express warranty promising to repair and correct

15   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

16   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

17   513.   Affording Defendants a reasonable opportunity to cure their breach of written

18   warranties would be unnecessary and futile here.

19   514.   Furthermore, the limited warranty promising to repair and correct Defendants'

20   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

21   insufficient to make Plaintiff and Connecticut State Class members whole and because Defendants

22   have failed and/or have refused to adequately provide the promised remedies within a reasonable

23   time.

24   515.   Accordingly, recovery by Plaintiff and Connecticut State Class members is not

25   restricted to the limited warranty promising to repair and correct Defendants' defect in materials

26   and workmanship, and they seek all remedies as allowed by law.

27   516.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

28   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

1    conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

2    material facts regarding the Class Vehicles. Plaintiff and Connecticut State Class members were

3    therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

4         517.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

5    through the limited remedy of repairing and correcting Defendants' defect in materials and

6    workmanship as many incidental and consequential damages have already been suffered because of

7    Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

8    failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's

9    and Connecticut State Class members' remedies would be insufficient to make them whole.

10        518.    Finally, because of Defendants' breach of warranty as set forth herein, Plaintiff and

11   Connecticut State Class members assert, as additional and/or alternative remedies, the revocation

12   of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles

13   currently owned or leased, and for such other incidental and consequential damages as allowed.

14        519.    Defendants were provided reasonable notice of these issues by way of a letter sent

15   by Plaintiffs as well as the regulators' investigations.

16        520.    As a direct and proximate result of Defendants' breach of express warranties,

17   Plaintiff and Connecticut State Class members have been damaged in an amount to be determined

18   at trial.

19                            **CONNECTICUT COUNT III:**
                        **Breach of Implied Warranty of Merchantability**
20                         **Conn. Gen. Stat. Ann. § 42A-2-314**
                           **(On Behalf of the Connecticut State Class)**
21

22        521.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding

     paragraphs as though fully set forth herein.
23

24        522.    Plaintiff Frank Cohen (for the purposes of this count, "Plaintiff") brings this claim

     on behalf of himself and the Connecticut State Class against all Defendants.
25

26        523.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

     vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).
27

28

524.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Conn. Gen. Stat. Ann. § 42a-2-314.

525.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

526.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

527.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Connecticut State Class members have been damaged in an amount to be proven at trial.

**DELAWARE COUNT I:**
**Violations of the Delaware Consumer Fraud Act**
**6 Del. Code § 2513 *et seq.***
**(On Behalf of the Delaware State Class)**

528.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

529.     This count is brought on behalf of the Delaware State Class against all Defendants.

530.     Defendants are "person[s]" within the meaning of 6 Del. Code § 2511(7).

531.     The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

532.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

533.    Delaware State Class members had no way of discerning that Defendants' representations were false and misleading because the Delaware State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

534.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

535.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Delaware State Class.

536.    Defendants knew or should have known that their conduct violated the Delaware CFA.

537.    Defendants owed the Delaware State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    B.    intentionally concealed the foregoing from regulators and Delaware State Class members; and/or

    C.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

538.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Delaware State Class.

539.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Delaware State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

540.    Defendants' violations present a continuing risk to the Delaware Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

541.    The Delaware State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Delaware CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

542.    As a direct and proximate result of Defendants' violations of the Delaware CFA, the Delaware State Class have suffered injury-in-fact and/or actual damage.

543.    The Delaware State Class seeks damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendants' unlawful conduct. *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983). The Delaware State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

544.    Defendants engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DELAWARE COUNT II:**
**Breach of Express Warranty**
**6 Del. Code §§ 2-313 and 2A-210**
**(On Behalf of the Delaware State Class)**

545.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

546.     This count is brought on behalf of the Delaware State Class against all Defendants.

547.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

548.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

549.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

550.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

551.     Defendants also made numerous representations, descriptions, and promises to Delaware State Class members regarding the performance and emission controls of their vehicles.

552.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

553.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

554.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

1    required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

2    whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

3    emission control components are covered for the first eight years or 80,000 miles (whichever

4    comes first). These major emission control components subject to the longer warranty include the

5    catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

6    device or computer.

7         555.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties

8    with respect to their vehicles' emission systems. Thus, Defendants also provide an express

9    warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

10   Design and Defect Warranty required by the EPA covers repair of emission control or emission

11   related parts, which fail to function or function improperly because of a defect in materials or

12   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

13   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

14   comes first.

15        556.    As manufacturers of light-duty vehicles, Defendants were required to provide these

16   warranties to purchasers or lessees of Class Vehicles.

17        557.    Defendants' warranties formed a basis of the bargain that was reached when

18   consumers purchased or leased Class Vehicles.

19        558.    Despite the existence of warranties, Defendants failed to inform Delaware State

20   Class members that the Class Vehicles were defective and were intentionally designed and

21   manufactured to emit more pollution and achieve worse fuel economy on the road than what was

22   disclosed to regulators and represented to consumers who purchased or leased them, and

23   Defendants failed to fix the defective emission components free of charge.

24        559.    Defendants breached the express warranty promising to repair and correct

25   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

26   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

27        560.    Affording Defendants a reasonable opportunity to cure their breach of written

28   warranties would be unnecessary and futile here.

561.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Delaware State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

562.    Accordingly, recovery by the Delaware State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

563.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Delaware State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

564.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Delaware State Class members' remedies would be insufficient to make them whole.

565.    Finally, because of Defendants' breach of warranty as set forth herein, Delaware State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

566.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

567.    As a direct and proximate result of Defendants' breach of express warranties, Delaware State Class members have been damaged in an amount to be determined at trial.

**DELAWARE COUNT III:**
**Breach of Implied Warranty of Merchantability**
**6. Del. Code §§ 2-314 and 7-2A-212**
**(On Behalf of the Delaware State Class)**

568.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

569.    This count is brought on behalf of the Delaware State Class against all Defendants.

570.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

571.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

572.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

573.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6 Del. C. §§ 2-314 and 2A-212.

574.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

575.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

576.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Delaware State Class members have been damaged in an amount to be proven at trial.

**DISTRICT OF COLUMBIA COUNT I:**
**Violations of the Consumer Protection Procedures Act**
**D.C. Code § 28-3901 *et seq.***
**(On Behalf of the District of Columbia Class)**

577. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

578. This count is brought on behalf of the District of Columbia Class against all Defendants.

579. Defendants are "person[s]" under the Consumer Protection Procedures Act ("District of Columbia CPPA"), D.C. Code § 28-3901(a)(1).

580. Class members are "consumers," as defined by D.C. Code § 28-3901(1)(2), who purchased or leased one or more Class Vehicles.

581. Defendants' actions as set forth herein constitute "trade practices" under D.C. Code § 28-3901.

582. Defendants participated in unfair or deceptive acts or practices that violated the District of Columbia CPPA. By willfully failing to disclose and actively concealing that they submitted vehicles for emissions testing that were different from production vehicles, installed secret software, and falsely attested that Sport Plus code could pass emissions tests, Defendants engaged in unfair or deceptive practices prohibited by the District of Columbia CPPA, D.C. Code § 28-3901, *et seq.*, including: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; (4) representing that the subject of a transaction involving the Class Vehicles has been supplied in accordance with a previous representation when it has not; (5) misrepresenting as to a material fact which has a tendency to mislead; and (6) failing to state a material fact when such failure tends to mislead.

583. In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software

1    program that caused the vehicles to perform differently during emissions testing than on the road,

2    and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

3    emissions tests when they in fact did not.

4           584.    District of Columbia Class members had no way of discerning that Defendants'

5    representations were false and misleading because the District of Columbia Class Members did not

6    have access to Defendants' emissions certification test vehicles and Defendants' emissions-related

7    hardware and software was extremely sophisticated technology.

8           585.    Defendants thus violated the District of Columbia CPPA by, at minimum:

9    representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not

10   have; representing that Class Vehicles are of a particular standard, quality, and grade when they are

11   not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and

12   representing that the subject of a transaction involving Class Vehicles has been supplied in

13   accordance with a previous representation when it has not.

14          586.    Defendants intentionally and knowingly misrepresented material facts regarding the

15   Class Vehicles with intent to mislead the District of Columbia Class.

16          587.    Defendants knew or should have known that their conduct violated the District of

17   Columbia CPPA.

18          588.    Defendants the District of Columbia Class a duty to disclose the illegality and public

19   health risks, the true nature of the Class Vehicles, because Defendants:

20          A.      possessed exclusive knowledge that they were manufacturing, selling, and

21   distributing vehicles throughout the United States that did not perform as advertised;

22          B.      intentionally concealed the foregoing from regulators and District of

23   Columbia Class members; and/or

24          C.      made incomplete representations about the Class Vehicles' fuel economy

25   and emissions while purposefully withholding material facts that contradicted these

26   representations.

27          589.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel

28   consumption and emissions were material to the District of Columbia Class.

590.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the District of Columbia Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

591.    Defendants' violations present a continuing risk to the District of Columbia Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

592.    The District of Columbia Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the District of Columbia CPPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

593.    As a direct and proximate result of Defendants' violations of the District of Columbia CPPA, the District of Columbia Class have suffered injury-in-fact and/or actual damage.

594.    The District of Columbia Class are entitled to recover treble damages or $1,500, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the Court deems proper, under D.C. Code § 28-3901.

595.    The District of Columbia Class seeks punitive damages against Defendants because their conduct evidences egregious conduct. Defendants egregiously misrepresented the fuel economy and emissions of the Class Vehicles and concealed material facts that only they knew. Defendants' unlawful conduct warrants punitive damages.

**DISTRICT OF COLUMBIA COUNT II:**
**Breach of Express Warranty**
**D.C. Code §§ 28:2-313 and 28:2A-210**
**(On Behalf of the District of Columbia Class)**

596.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

597.    This count is brought on behalf of the District of Columbia Class against all Defendants.

598.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under D.C. Code §§ 28:2-104(1) and 28:2A-103(a)(20), and "sellers" of motor vehicles under § 28:2-103(1)(d).

599.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under D.C. Code § 28:2A-103(a)(16).

600.    The Class Vehicles are and were at all relevant times "goods" within the meaning of D.C. Code §§ 28:2-105(1) and 28:2A-103(a)(8).

601.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

602.    Defendants also made numerous representations, descriptions, and promises to District of Columbia Class members regarding the performance and emission controls of their vehicles.

603.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

604.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

605.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever

1    comes first). These major emission control components subject to the longer warranty include the

2    catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

3    device or computer.

4         606.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties

5    with respect to their vehicles' emission systems. Thus, Defendants also provide an express

6    warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

7    Design and Defect Warranty required by the EPA covers repair of emission control or emission

8    related parts, which fail to function or function improperly because of a defect in materials or

9    workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

10   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

11   comes first.

12        607.    As manufacturers of light-duty vehicles, Defendants were required to provide these

13   warranties to purchasers or lessees of Class Vehicles.

14        608.    Defendants' warranties formed a basis of the bargain that was reached when

15   consumers purchased or leased Class Vehicles.

16        609.    Despite the existence of warranties, Defendants failed to inform District of

17   Columbia Class members that the Class Vehicles were defective and were intentionally designed

18   and manufactured to emit more pollution and achieve worse fuel economy on the road than what

19   was disclosed to regulators and represented to consumers who purchased or leased them, and

20   Defendants failed to fix the defective emission components free of charge.

21        610.    Defendants breached the express warranty promising to repair and correct

22   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

23   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

24        611.    Affording Defendants a reasonable opportunity to cure their breach of written

25   warranties would be unnecessary and futile here.

26        612.    Furthermore, the limited warranty promising to repair and correct Defendants'

27   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

28

1   insufficient to make District of Columbia Class members whole and because Defendants have

2   failed and/or have refused to adequately provide the promised remedies within a reasonable time.

3          613.    Accordingly, recovery by District of Columbia Class members is not restricted to

4   the limited warranty promising to repair and correct Defendants' defect in materials and

5   workmanship, and they seek all remedies as allowed by law.

6          614.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or

7   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

8   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

9   material facts regarding the Class Vehicles. District of Columbia Class members were therefore

10  induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

11         615.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

12  through the limited remedy of repairing and correcting Defendants' defect in materials and

13  workmanship as many incidental and consequential damages have already been suffered because of

14  Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

15  failure to provide such limited remedy within a reasonable time, and any limitation on District of

16  Columbia Class members' remedies would be insufficient to make them whole.

17         616.    Finally, because of Defendants' breach of warranty as set forth herein, District of

18  Columbia Class members assert, as additional and/or alternative remedies, the revocation of

19  acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles

20  currently owned or leased, and for such other incidental and consequential damages as allowed.

21         617.    Defendants were provided reasonable notice of these issues by way of a letter sent

22  by Plaintiffs as well as the regulators' investigations.

23         618.    As a direct and proximate result of Defendants' breach of express warranties,

24  District of Columbia Class members have been damaged in an amount to be determined at trial.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISTRICT OF COLUMBIA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**D.C. Code §§ 28:2-314 and 28:2A-212**
**(On Behalf of the District of Columbia Class)**

619.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

620.     This count is brought on behalf of the District of Columbia Class against all Defendants.

621.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under D.C. Code §§ 28:2-104(1) and 28:2A-103(a)(20), and "sellers" of motor vehicles under § 28:2-103(1)(d).

622.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under D.C. Code § 28:2A-103(a)(16).

623.     The Class Vehicles are and were at all relevant times "goods" within the meaning of D.C. Code §§ 28:2-105(1) and 28:2A-103(a)(8).

624.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to D.C. Code §§ 28:2-314 and 28:2A-212.

625.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

626.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

627.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, District of Columbia Class members have been damaged in an amount to be proven at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FLORIDA COUNT I:**
**Violations of the Florida Unfair & Deceptive Trade Practices Act**
**Fla. Stat. § 501.201, *et seq.***
**(On Behalf of the Florida State Class)**

628.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

629.    Plaintiff Sander Shady (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Florida State Class against all Defendants.

630.    Plaintiff and members of the Florida State Class are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

631.    Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

632.    FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

633.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

634.    Plaintiff and Florida State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Florida State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

635.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class

1   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

2   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

3   transaction involving Class Vehicles has been supplied in accordance with a previous

4   representation when it has not.

5           636.   Defendants intentionally and knowingly misrepresented material facts regarding the

6   Class Vehicles with intent to mislead Plaintiff and the Florida State Class.

7           637.   Defendants knew or should have known that their conduct violated the FUDTPA.

8           638.   Defendants owed Plaintiff and the Florida State Class a duty to disclose the

9   illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

10          A.   possessed exclusive knowledge that they were manufacturing, selling, and

11  distributing vehicles throughout the United States that did not perform as advertised;

12          B.   intentionally concealed the foregoing from regulators, Plaintiff, and Florida

13  State Class members; and/or

14          C.   made incomplete representations about the Class Vehicles' fuel economy

15  and emissions, while purposefully withholding material facts from Plaintiff and the Florida

16  State Class that contradicted these representations.

17          639.   Defendants' concealment of the Class Vehicles' true fuel consumption and

18  emissions was material to Plaintiff and the Florida State Class.

19          640.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

20  deceive regulators and reasonable consumers, including Plaintiff and the Florida State Class, about

21  the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the

22  Defendants' brands, and the true value of the Class Vehicles.

23          641.   Defendants' violations present a continuing risk to Plaintiff and the Florida State

24  Class as well as to the general public. Defendants' unlawful acts and practices complained of herein

25  affect the public interest.

26          642.   Plaintiff and the Florida State Class suffered ascertainable loss and actual damages

27  as a direct and proximate result of Defendants' misrepresentations and concealment of and failure

28  to disclose material information. Defendants had an ongoing duty to all their customers to refrain

from unfair and deceptive practices under the FUDTPA. All owners of Class Vehicles suffered

ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the

course of Defendants' business.

643.    As a direct and proximate result of Defendants' violations of the FUDTPA, Plaintiff

and members of the Florida State Class have suffered injury-in-fact and/or actual damage.

644.    Plaintiff and the Florida State Class are entitled to recover their actual damages

under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

645.    Plaintiff and the Florida State Class also seek an order enjoining Defendants' unfair,

unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and

proper relief available under the FUDTPA.

**FLORIDA COUNT II:**
**Breach of Express Warranty**
**F.S.A. §§ 672.313 and 680.21**
**(On Behalf of the Florida State Class)**

646.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

fully set forth herein.

647.    Plaintiff Sander Shady (for the purposes of this count, "Plaintiff") brings this claim

on behalf of himself and the Florida State Class against all Defendants.

648.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under

§ 672.103(1)(d).

649.    With respect to leases, Defendants are and were at all relevant times "lessors" of

motor vehicles under F.S.A. § 680.1031(1)(p).

650.    The Class Vehicles are and were at all relevant times "goods" within the meaning of

F.S.A. §§ 672.105(1) and 680.1031(1)(h).

651.    In connection with the purchase or lease of each one of its new vehicles, Defendants

provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This

warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

652.    Defendants also made numerous representations, descriptions, and promises to Plaintiff and Florida State Class members regarding the performance and emission controls of their vehicles.

653.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

654.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

655.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

656.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

657.     As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

658.     Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

659.     Despite the existence of warranties, Defendants failed to inform Plaintiff and Florida State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

660.     Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

661.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

662.     Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Florida State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

663.     Accordingly, recovery by Plaintiff and Florida State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

664.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiff and Florida State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

665.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and

workmanship as many incidental and consequential damages have already been suffered because of

Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's

and the Florida State Class members' remedies would be insufficient to make them whole.

666.    Finally, because of Defendants' breach of warranty as set forth herein, Plaintiff and

Florida State Class members assert, as additional and/or alternative remedies, the revocation of

acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles

currently owned or leased, and for such other incidental and consequential damages as allowed.

667.    Defendants were provided reasonable notice of these issues by way of a letter sent

by Plaintiffs as well as the regulators' investigations.

668.    As a direct and proximate result of Defendants' breach of express warranties,

Plaintiff and Florida State Class members have been damaged in an amount to be determined at

trial.

### FLORIDA COUNT III:
#### Breach of Implied Warranty of Merchantability
#### F.S.A. §§ 672.314 and 680.212
#### (On Behalf of the Florida State Class)

669.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding

paragraphs as though fully set forth herein.

670.    Plaintiff Sander Shady (for the purposes of this count, "Plaintiff") brings this claim

on behalf of himself and the Florida State Class against all Defendants.

671.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under

§ 672.103(1)(d).

672.    With respect to leases, Defendants are and were at all relevant times "lessors" of

motor vehicles under F.S.A. § 680.1031(1)(p).

673.    The Class Vehicles are and were at all relevant times "goods" within the meaning of

F.S.A. §§ 672.105(1) and 680.1031(1)(h).

674.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to F.S.A. §§ 672.314 and 680.212.

675.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

676.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

677.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Florida State Class members have been damaged in an amount to be proven at trial.

**GEORGIA COUNT I:**
**Violations of Georgia's Fair Business Practices Act**
**Ga. Code Ann. § 10-1-390 *et seq.***
**(On Behalf of the Georgia State Class)**

678.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

679.     Plaintiff Cecil Robinson (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Georgia State Class against all Defendants.

680.     The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-1-393(b).

681.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

682.    Plaintiff and Georgia State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Georgia State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

683.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Georgia State Class.

684.    Defendants knew or should have known that their conduct violated the Georgia FBPA.

685.    Defendants owed Plaintiff and the Georgia State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.    intentionally concealed the foregoing from regulators, Plaintiff, and Georgia State Class members; and/or

C.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts from Plaintiff and George State Class members that contradicted these representations.

686.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions were material to Plaintiff and the Georgia State Class.

687.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff and the Georgia State Class, about

the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

688.    Defendants' violations present a continuing risk to Plaintiff and the Georgia State Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

689.    Plaintiff and the Georgia State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Georgia FBPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

690.    As a direct and proximate result of Defendants' violations of the Georgia FBPA, Plaintiff and the Georgia State Class has suffered injury-in-fact and/or actual damage.

691.    Plaintiff and the Georgia State Class are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).

692.    Plaintiff and the Georgia State Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code. Ann. § 10-1-399.

693.    Pursuant to Ga. Code Ann. § 10-1-399, Plaintiffs sent a notice letter to Defendants. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by way of the investigations conducted by governmental regulators. Plaintiff and the Georgia State Class seek all damages and relief to which it is entitled.

**GEORGIA COUNT II:**
**Violations of Georgia's Uniform Deceptive Trade Practices Act**
**Ga. Code Ann. § 10-1-370 *et seq.***
**(On Behalf of the Georgia State Class)**

694.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

695.     Plaintiff Cecil Robinson (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Georgia State Class against all Defendants.

696.     Defendants, Plaintiff, and members of the Georgia State Class are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

697.     The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

698.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

699.     Plaintiff and Georgia State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Georgia State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

700.     Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

701.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Georgia State Class.

702.    Defendants knew or should have known that their conduct violated the Georgia UDTPA.

703.    Defendants owed Plaintiff and the Georgia State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.    intentionally concealed the foregoing from regulators, Plaintiff, and Georgia State Class members; and/or

C.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

704.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to Plaintiff and the Georgia State Class.

705.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff and the Georgia State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

706.    Defendants' violations present a continuing risk to Plaintiff and the Georgia State Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

707.    Plaintiff and the Georgia State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Georgia UDTPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

708.    As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiff and the Georgia State Class have suffered injury-in-fact and/or actual damage.

709.     Plaintiff and the Georgia State Class seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann § 10-1-373.

### GEORGIA COUNT III:
**Breach of Express Warranty**
**Ga. Code Ann. §§ 11-2-313 and 11-2A-210**
**(On Behalf of the Georgia State Class)**

710.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

711.     Plaintiff Cecil Robinson (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Georgia State Class against all Defendants.

712.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

713.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

714.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

715.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

716.     Defendants also made numerous representations, descriptions, and promises to Plaintiff and Georgia State Class members regarding the performance and emission controls of their vehicles.

717.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

718.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

719.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

720.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

721.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

722.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

723.    Despite the existence of warranties, Defendants failed to inform Plaintiff and Georgia State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road

than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

724.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

725.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

726.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Georgia State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

727.    Accordingly, recovery by Plaintiff and Georgia State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

728.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiff and Georgia State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

729.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and Georgia State Class members' remedies would be insufficient to make them whole.

730.    Finally, because of Defendants' breach of warranty as set forth herein, Plaintiff and Georgia State Class members assert, as additional and/or alternative remedies, the revocation of

acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

731.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

732.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and Georgia State Class members have been damaged in an amount to be determined at trial.

**GEORGIA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Ga. Code Ann. §§ 11-2-314 and 11-2A-212**
**(On Behalf of the Georgia State Class)**

733.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

734.   Plaintiff Cecil Robinson (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Georgia State Class against all Defendants.

735.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

736.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

737.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

738.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

739.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

740. Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

741. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Georgia State Class members have been damaged in an amount to be proven at trial.

## HAWAII COUNT I:
### Unfair and Deceptive Acts in Violation of Hawaii Law
### Haw. Rev. Stat. § 480 *et seq.*
### (On Behalf of the Hawaii State Class)

742. Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

743. This count is brought on behalf of the Hawaii State Class against all Defendants.

744. Defendants are "person[s]" under Haw. Rev. Stat. § 480-1.

745. Hawaii State Class members are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1, who purchased or leased one or more Class Vehicles.

746. Defendants' acts or practices as set forth above occurred in the conduct of trade or commerce.

747. The Hawaii Act § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."

748. In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

749. Hawaii State Class members had no way of discerning that Defendants' representations were false and misleading because Hawaii State Class members did not have access

2053816.1

- 123 -

to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

750.     Defendants thus violated the Hawaii Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

751.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Hawaii State Class.

752.     Defendants knew or should have known that their conduct violated Hawaii law.

753.     Defendants owed the Hawaii State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.     intentionally concealed the foregoing from regulators and Hawaii State Class members; and/or

C.     made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

754.     Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Hawaii State Class.

755.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Hawaii State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

756.     Defendants' violations present a continuing risk to the Hawaii State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

757.     The Hawaii State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under Hawaii law. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

**HAWAII COUNT II:**
**Breach of Express Warranty**
**Haw. Rev. Stat. §§ 490:2-313 and 490:2A-210**
**(On Behalf of the Hawaii State Class)**

758.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

759.     This count is brought on behalf of the Hawaii State Class against all Defendants.

760.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), and a "seller" of motor vehicles under § 490:2-103(1)(d).

761.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Haw. Rev. Stat. § 490:2A-103(a)(16).

762.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

763.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

764.     Defendants also made numerous representations, descriptions, and promises to Hawaii State Class members regarding the performance and emission controls of their vehicles.

765.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

766.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

767.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

768.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

769.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

770.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

771. Despite the existence of warranties, Defendants failed to inform Hawaii State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

772. Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

773. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

774. Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Hawaii State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

775. Accordingly, recovery by Hawaii State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

776. Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Hawaii State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

777. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Hawaii State Class members' remedies would be insufficient to make them whole.

1    778.    Finally, because of Defendants' breach of warranty as set forth herein, Hawaii State

2    Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the

3    goods and the return to them the purchase or lease price of all Class Vehicles currently owned or

4    leased, and for such other incidental and consequential damages as allowed.

5    779.    Defendants were provided reasonable notice of these issues by way of a letter sent

6    by Plaintiffs as well as the regulators' investigations.

7    780.    As a direct and proximate result of Defendants' breach of express warranties,

8    Hawaii State Class members have been damaged in an amount to be determined at trial.

9
                                   **HAWAII COUNT III:**
                     **Breach of Implied Warranty of Merchantability**
10                      **Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212**
                              **(On Behalf of the Hawaii State Class)**
11

12   781.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding

     paragraphs as though fully set forth herein.
13

14   782.    This count is brought on behalf of the Hawaii State Class against all Defendants.

15   783.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

16   vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), and a "seller" of motor

     vehicles under § 490:2-103(1)(d).
17

18   784.    With respect to leases, Defendants are and were at all relevant times "lessors" of

19   motor vehicles under Haw. Rev. Stat. § 490:2A-103(a)(16).

20   785.    The Class Vehicles are and were at all relevant times "goods" within the meaning of

     Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).
21

22   786.    A warranty that the Class Vehicles were in merchantable condition and fit for the

23   ordinary purpose for which vehicles are used is implied by law pursuant to Haw. Rev. Stat.

     §§ 490:2-314 and 490:2A-212.
24

25   787.    These Class Vehicles, when sold or leased and at all times thereafter, were

26   materially different from vehicles Defendants submitted for emissions testing, included software

27   that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

28

emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

788. Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

789. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Hawaii State Class members have been damaged in an amount to be proven at trial.

**IDAHO COUNT I:**
**Violations of the Idaho Consumer Protection Act**
**Idaho Code § 48-601 *et seq.***
**(On Behalf of the Idaho State Class)**

790. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

791. This count is brought on behalf of the Idaho State Class against all Defendants.

792. Defendants are "person[s]" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-602(1).

793. Defendants' acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code § 48-602(2).

794. Defendants participated in misleading, false, or deceptive acts that violated the Idaho CPA.

795. In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

796. Idaho State Class members had no way of discerning that Defendants' representations were false and misleading because the Idaho State Class did not have access to

1 | Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and

2 | software was extremely sophisticated technology.

3 |     797.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles

4 | have characteristics, uses, benefits, and qualities which they do not have; representing that Class

5 | Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

6 | Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

7 | transaction involving Class Vehicles has been supplied in accordance with a previous

8 | representation when it has not.

9 |     798.    Defendants intentionally and knowingly misrepresented material facts regarding the

10 | Class Vehicles with intent to mislead the Idaho State Class.

11 |     799.    Defendants knew or should have known that their conduct violated the Idaho CPA.

12 |     800.    Defendants owed the Idaho State Class a duty to disclose the illegality and public

13 | health risks, the true nature of the Class Vehicles, because Defendants:

14 |             A.    possessed exclusive knowledge that they were manufacturing, selling, and

15 |         distributing vehicles throughout the United States that did not perform as advertised;

16 |             B.    intentionally concealed the foregoing from regulators and Idaho State Class

17 |         members; and/or

18 |             C.    made incomplete representations about the Class Vehicles' fuel economy

19 |         and emissions while purposefully withholding material facts that contradicted these

20 |         representations.

21 |     801.    Defendants' concealment of the Class Vehicles' true fuel consumption and

22 | emissions were material to the Idaho State Class.

23 |     802.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

24 | deceive regulators and reasonable consumers, including the Idaho State Class, about the true

25 | environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants'

26 | brands, and the true value of the Class Vehicles.

27 |

28 |

803.     Defendants' violations present a continuing risk to the Idaho State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

804.     The Idaho State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Idaho CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

805.     As a direct and proximate result of Defendants' violations of the Idaho CPA, the Idaho State Class has suffered injury-in-fact and/or actual damage.

806.     Pursuant to Idaho Code § 48-608, the Idaho State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Idaho State Class member.

807.     The Idaho State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

808.     The Idaho State Class also seeks punitive damages against Defendants because Defendants conduct evidences an extreme deviation from reasonable standards. Defendants flagrantly and fraudulently misrepresented the reliability of the Class Vehicles, deceived Class members, and concealed material facts that only they knew—all to avoid the expense and public relations nightmare of correcting a flaw in the Class Vehicles. Defendants' unlawful conduct constitutes oppression and fraud warranting punitive damages.

**IDAHO COUNT II:**
**Breach of Express Warranty**
**Idaho Code §§ 28-2-313 and 28-12-210**
**(On Behalf of the Idaho State Class)**

809.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1    810.    This count is brought on behalf of the Idaho State Class against all Defendants.

2    811.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

3    vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under

4    § 28-2-103(1)(d).

5    812.    With respect to leases, Defendants are and were at all relevant times "lessors" of

6    motor vehicles under Idaho Code § 28-12-103(1)(p).

7    813.    The Class Vehicles are and were at all relevant times "goods" within the meaning of

8    Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

9    814.    In connection with the purchase or lease of each one of its new vehicles, Defendants

10   provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This

11   warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

12   815.    Defendants also made numerous representations, descriptions, and promises to

13   Idaho State Class members regarding the performance and emission controls of their vehicles.

14   816.    For example, Defendants included in the warranty booklets for some or all of the

15   Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

16   time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

17   from defects in material and workmanship which would cause it not to meet those standards."

18   817.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

19   federal emission control warranties: a "Performance Warranty" and a "Design and Defect

20   Warranty."

21   818.    The EPA requires vehicle manufacturers to provide a Performance Warranty with

22   respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

23   their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

24   required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

25   whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

26   emission control components are covered for the first eight years or 80,000 miles (whichever

27   comes first). These major emission control components subject to the longer warranty include the

28

catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

819.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

820.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

821.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

822.    Despite the existence of warranties, Defendants failed to inform Idaho State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

823.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

824.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

825.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Idaho State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

826.    Accordingly, recovery by Idaho State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

827.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Idaho State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

828.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Idaho State Class members' remedies would be insufficient to make them whole.

829.    Finally, because of Defendants' breach of warranty as set forth herein, Idaho State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

830.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

831.    As a direct and proximate result of Defendants' breach of express warranties, Idaho State Class members have been damaged in an amount to be determined at trial.

**IDAHO COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Idaho Code §§ 28-2-314 and 28-12-212**
**(On Behalf of the Idaho State Class)**

832.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

833.    This count is brought on behalf of the Idaho State Class against all Defendants.

834.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under § 28-2-103(1)(d).

835.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Idaho Code § 28-12-103(1)(p).

836.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

837.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Idaho Code §§ 28-2-314 and 28-12-212.

838.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

839.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

840.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Idaho State Class members have been damaged in an amount to be proven at trial.

**ILLINOIS COUNT I:**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq.* and 720 ILCS 295/1a**
**(On Behalf of the Illinois State Class)**

841.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

842.    This count is brought on behalf of the Illinois State Class against all Defendants.

843.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

844.    Members of the Illinois State Class are "consumers" as that term is defined in 815 ILCS 505/1(e).

845.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

846.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

847.    Illinois State Class members had no way of discerning that Defendants' representations were false and misleading because Illinois State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology. Illinois State Class members did not and could not unravel Defendants' deception on their own.

848.    Defendants thus violated the Illinois CFA by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

849.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Illinois State Class.

850.    Defendants knew or should have known that their conduct violated the Illinois CFA.

851.    Defendants owed the Illinois State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

1          A.      possessed exclusive knowledge that they were manufacturing, selling, and

2    distributing vehicles throughout the United States that did not perform as advertised;

3          B.      intentionally concealed the foregoing from regulators and Illinois State

4    Class members; and/or

5          C.      made incomplete representations about the Class Vehicles' fuel economy

6    and emissions while purposefully withholding material facts that contradicted these

7    representations.

8    852.    Defendants' concealment of the Class Vehicles' fuel consumption and emissions

9    was material to the Illinois State Class.

10   853.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

11   deceive regulators and reasonable consumers, including the Illinois State Class, about the true

12   environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants'

13   brands, and the true value of the Class Vehicles.

14   854.    Defendants' violations present a continuing risk to the Illinois State Class as well as

15   to the general public. Defendants' unlawful acts and practices complained of herein affect the

16   public interest.

17   855.    The Illinois State Class suffered ascertainable loss and actual damages as a direct

18   and proximate result of Defendants' misrepresentations and concealment of and failure to disclose

19   material information Defendants had an ongoing duty to all their customers to refrain from unfair

20   and deceptive practices under the Illinois CFA. All owners of Class Vehicles suffered ascertainable

21   loss as a result of Defendants' deceptive and unfair acts and practices made in the course of

22   Defendants' business.

23   856.    As a direct and proximate result of Defendants' violations of the Illinois CFA,

24   members of the Illinois State Class have suffered injury-in-fact and/or actual damage.

25   857.    Pursuant to 815 ILCS 505/10a(a), the Illinois State Class seeks monetary relief

26   against Defendants in the amount of actual damages, as well as punitive damages because

27   Defendants acted with fraud and/or malice and/or was grossly negligent.

28

858.   The Illinois State Class also seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

**ILLINOIS COUNT II:**
**Breach of Express Warranty**
**810 Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210**
**(On Behalf of the Illinois State Class)**

859.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

860.   This count is brought on behalf of the Illinois State Class against all Defendants.

861.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

862.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

863.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

864.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

865.   Defendants also made numerous representations, descriptions, and promises to Illinois State Class members regarding the performance and emission controls of their vehicles.

866.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

867.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

868.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

869.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

870.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

871.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

872.    Despite the existence of warranties, Defendants failed to inform Illinois State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

873.     Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

874.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

875.     Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Illinois State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

876.     Accordingly, recovery by Illinois State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

877.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Illinois State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

878.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Illinois State Class members' remedies would be insufficient to make them whole.

879.     Finally, because of Defendants' breach of warranty as set forth herein, Illinois State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

880.     Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, within a reasonable amount of time.

881.     As a direct and proximate result of Defendants' breach of express warranties, Illinois State Class members have been damaged in an amount to be determined at trial.

## ILLINOIS COUNT III:
### Breach of Implied Warranty of Merchantability
### 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212
### (On Behalf of the Illinois State Class)

882.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

883.     This count is brought on behalf of the Illinois State Class against all Defendants.

884.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

885.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

886.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

887.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

888.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

889.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

890.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Illinois State Class members have been damaged in an amount to be proven at trial.

**INDIANA COUNT I:**
**Violations of the Indiana Deceptive Consumer Sales Act**
**Ind. Code § 24-5-0.5-3**
**(On Behalf of the Indiana State Class)**

891.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

892.     This count is brought on behalf of the Indiana State Class against all Defendants.

893.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

894.     Indiana State Class members had no way of discerning that Defendants' representations were false and misleading because Indiana State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology. Indiana State Class members did not and could not unravel Defendants' deception on their own.

895.     Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

896.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Indiana State Class.

897.     Defendants knew or should have known that their conduct violated the Indiana DCSA.

898.     Defendants owed the Indiana State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

        A.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

        B.     intentionally concealed the foregoing from regulators and Indiana State Class members; and/or

        C.     made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

899.     Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Indiana State Class.

900.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Indiana State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

901.     Defendants' violations present a continuing risk to the Indiana State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

902.     The Indiana State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Indiana DCSA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

903.     As a direct and proximate result of Defendants' violations of the Indiana DCSA, members of the Indiana State Class have suffered injury-in-fact and/or actual damage.

904.    Pursuant to Ind. Code § 24-5-0.5-4, the Indiana State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Indiana State Class member, including treble damages up to $1,000 for Defendants' willfully deceptive acts.

905.    The Indiana State Class also seeks punitive damages based on the outrageousness and recklessness of the Defendants' conduct and Defendants' high net worth.

906.    Pursuant to Ind. Code § 24-5-0.5-5(a), Plaintiffs sent a notice letter to Defendants. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by way of the investigations conducted by governmental regulators. The Indiana State Class seeks all damages and relief to which it is entitled.

**INDIANA COUNT II:**
**Breach of Express Warranty**
**Ind. Code §§ 26-1-3-313 and 26-1-2.1-210**
**(On Behalf of the Indiana State Class)**

907.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

908.    This count is brought on behalf of the Indiana State Class against all Defendants.

909.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

910.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

911.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

912.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

913.    Defendants also made numerous representations, descriptions, and promises to Indiana State Class members regarding the performance and emission controls of their vehicles.

914. For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

915. The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

916. The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

917. The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

918. As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

919. Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased the Class Vehicles.

920.    Despite the existence of warranties, Defendants failed to inform Indiana State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

921.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

922.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

923.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Indiana State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

924.    Accordingly, recovery by Indiana State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

925.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Indiana State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

926.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Indiana State Class members' remedies would be insufficient to make them whole.

927.     Finally, because of Defendants' breach of warranty as set forth herein, Indiana State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

928.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

929.     As a direct and proximate result of Defendants' breach of express warranties, Indiana State Class members have been damaged in an amount to be determined at trial.

<strong>INDIANA COUNT III:<br>Breach of Implied Warranty of Merchantability<br>Ind. Code §§ 26-1-3-314 and 26-1-2.1-212<br>(On Behalf of the Indiana State Class)</strong>

930.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

931.     This count is brought on behalf of the Indiana State Class against all Defendants.

932.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

933.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

934.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

935.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

936.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

937.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

938.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Indiana State Class members have been damaged in an amount to be proven at trial.

**IOWA COUNT I:**
**Violations of the Private Right of Action For Consumer Frauds Act**
**Iowa Code § 714h.1, *et seq.***
**(On Behalf of the Iowa State Class)**

939.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

940.    This count is brought on behalf of the Iowa State Class against all Defendants.

941.    Defendants are "person[s]" under Iowa Code § 714H.2(7).

942.    Iowa State Class members are "consumers," as defined by Iowa Code § 14H.2(3), who purchased or leased one or more Class Vehicles.

943.    The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3.

944.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

945.    Iowa State Class members had no way of discerning that Defendants' representations were false and misleading because Iowa State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

946.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

947.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Iowa State Class.

948.    Defendants knew or should have known that their conduct violated the Iowa CFA.

949.    Defendants owed the Iowa State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.    intentionally concealed the foregoing from regulators and Iowa State Class members; and/or

C.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

950.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Iowa State Class.

951.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Iowa State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

952.   Defendants' violations present a continuing risk to the Iowa State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

953.   The Iowa State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Iowa CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

954.   As a direct and proximate result of Defendants' violations of the Iowa CFA, members of the Iowa State Class have suffered injury-in-fact and/or actual damage.

955.   Pursuant to Iowa Code § 714H.5, the Iowa State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices; actual damages; in addition to an award of actual damages, statutory damages up to three times the amount of actual damages awarded as a result of Defendants' willful and wanton disregard for the rights of others; attorneys' fees; and such other equitable relief as the Court deems necessary to protect the public from further violations of the Iowa CFA.

**IOWA COUNT II:**
**Breach of Express Warranty**
**Iowa Code §§ 554.2313 and 554.13210**
**(On Behalf of the Iowa State Class)**

956.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

957.   This count is brought on behalf of the Iowa State Class against all Defendants.

958.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

959.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

960.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

961.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

962.    Defendants also made numerous representations, descriptions, and promises to Iowa State Class members regarding the performance and emission controls of their vehicles.

963.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

964.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

965.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

966.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission

1    related parts, which fail to function or function improperly because of a defect in materials or

2    workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

3    first, or, for the major emission control components, for eight years or 80,000 miles, whichever

4    comes first.

5         967.    As manufacturers of light-duty vehicles, Defendants were required to provide these

6    warranties to purchasers or lessees of Class Vehicles.

7         968.    Defendants' warranties formed a basis of the bargain that was reached when

8    consumers purchased or leased Class Vehicles.

9         969.    Despite the existence of warranties, Defendants failed to inform Iowa State Class

10   members that the Class Vehicles were defective and intentionally designed and manufactured to

11   emit more pollution and achieve worse fuel economy on the road than what was disclosed to

12   regulators and represented to consumers who purchased or leased them, and Defendants failed to

13   fix the defective emission components free of charge.

14        970.    Defendants breached the express warranty promising to repair and correct

15   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

16   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

17        971.    Affording Defendants a reasonable opportunity to cure their breach of written

18   warranties would be unnecessary and futile here.

19        972.    Furthermore, the limited warranty promising to repair and correct Defendants'

20   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

21   insufficient to make Iowa State Class members whole and because Defendants have failed and/or

22   have refused to adequately provide the promised remedies within a reasonable time.

23        973.    Accordingly, recovery by Iowa State Class members is not restricted to the limited

24   warranty promising to repair and correct Defendants' defect in materials and workmanship, and

25   they seek all remedies as allowed by law.

26        974.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or

27   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

28   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

1   material facts regarding the Class Vehicles. Iowa State Class members were therefore induced to

2   purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

3         975.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

4   through the limited remedy of repairing and correcting Defendants' defect in materials and

5   workmanship as many incidental and consequential damages have already been suffered because of

6   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

7   failure to provide such limited remedy within a reasonable time, and any limitation on Iowa State

8   Class members' remedies would be insufficient to make them whole.

9         976.    Finally, because of Defendants' breach of warranty as set forth herein, Iowa State

10  Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the

11  goods and the return to them the purchase or lease price of all Class Vehicles currently owned or

12  leased, and for such other incidental and consequential damages as allowed.

13        977.    Defendants were provided reasonable notice of these issues by way of a letter sent

14  by Plaintiffs as well as the regulators' investigations.

15        978.    As a direct and proximate result of Defendants' breach of express warranties, Iowa

16  State Class members have been damaged in an amount to be determined at trial.

17                              **IOWA COUNT III:**
                **Breach of Implied Warranty of Merchantability**
18                    **Iowa Code §§ 554.2314 and 554.13212**
                      **(On Behalf of the Iowa State Class)**
19
20        979.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding
   paragraphs as though fully set forth herein.
21
22        980.    This count is brought on behalf of the Iowa State Class against all Defendants.

23        981.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

24  vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under

25  § 554.2103(1)(d).

26        982.    With respect to leases, Defendants are and were at all relevant times "lessors" of

27  motor vehicles under Iowa Code § 554.13103(1)(p).

28

983.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

984.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Iowa Code §§ 554.2314 and 554.13212.

985.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

986.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

987.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Iowa State Class members have been damaged in an amount to be proven at trial.

**KANSAS COUNT I:**
**Violations of the Kansas Consumer Protection Act**
**Kan. Stat. Ann. § 50-623 *et seq.***
**(On Behalf of the Kansas State Class)**

988.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

989.     This count is brought on behalf of the Kansas State Class against all Defendants.

990.     Each Defendant is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

991.     Kansas State Class members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Class Vehicles.

992.     The sale of the Class Vehicles to the Kansas State Class members was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

993.     The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or

1    practices include: (1) knowingly making representations or with reason to know that "(A) Property

2    or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or

3    quantities that they do not have;" and "(D) property or services are of particular standard, quality,

4    grade, style or model, if they are of another which differs materially from the representation;" "(2)

5    the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or

6    ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful

7    concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o

8    supplier shall engage in any unconscionable act or practice in connection with a consumer

9    transaction." Kan. Stat. Ann. § 50-627(a).

10        994.    In the course of their business, Defendants concealed and suppressed material facts

11   concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

12   emissions testing that were different from production vehicles, (b) installing a secret software

13   program that caused the vehicles to perform differently during emissions testing than on the road,

14   and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

15   emissions tests when they in fact did not.

16        995.    Kansas State Class members had no way of discerning that Defendants'

17   representations were false and misleading because Kansas State Class members did not have access

18   to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware

19   and software was extremely sophisticated technology.

20        996.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles

21   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

22   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

23   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

24   transaction involving Class Vehicles has been supplied in accordance with a previous

25   representation when it has not.

26        997.    Defendants intentionally and knowingly misrepresented material facts regarding the

27   Class Vehicles with intent to mislead the Kansas State Class.

28        998.    Defendants knew or should have known that their conduct violated the Kansas CPA.

999.   Defendants owed the Kansas State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.   intentionally concealed the foregoing from regulators and Kansas State Class members; and/or

C.   made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1000.   Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Kansas State Class.

1001.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Kansas State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1002.   Defendants' violations present a continuing risk to the Kansas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1003.   Members of the Kansas State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Kansas CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1004.   As a direct and proximate result of Defendants' violations of the Kansas CPA, the Kansas State Class have suffered injury-in-fact and/or actual damage.

- 156 -

1005.   Pursuant to Kan. Stat. Ann. § 50-634, the Kansas State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Kansas State Class member.

1006.   Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann § 50-623, *et seq.*

**KANSAS COUNT II:**
**Breach of Express Warranty**
**Kan. Stat. §§ 84-2-313 and 84-2A-210**
**(On Behalf of the Kansas State Class)**

1007.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1008.   This count is brought on behalf of the Kansas State Class against all Defendants.

1009.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Kan. Stat. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

1010.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. § 84-2A-103(1)(p).

1011.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. §§ 84-2-105(1) and 84-2A-103(1)(h).

1012.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1013.   Defendants also made numerous representations, descriptions, and promises to Kansas State Class members regarding the performance and emission controls of their vehicles.

1014.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1    1015.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two
2    federal emission control warranties: a "Performance Warranty" and a "Design and Defect
3    Warranty."

4    1016.   The EPA requires vehicle manufacturers to provide a Performance Warranty with
5    respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for
6    their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty
7    required by the EPA applies to repairs that are required during the first two years or 24,000 miles,
8    whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major
9    emission control components are covered for the first eight years or 80,000 miles (whichever
10   comes first). These major emission control components subject to the longer warranty include the
11   catalytic converters, the electronic emission control unit, and the onboard emission diagnostic
12   device or computer.

13   1017.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties
14   with respect to their vehicles' emission systems. Thus, Defendants also provide an express
15   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The
16   Design and Defect Warranty required by the EPA covers repair of emission control or emission
17   related parts, which fail to function or function improperly because of a defect in materials or
18   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes
19   first, or, for the major emission control components, for eight years or 80,000 miles, whichever
20   comes first.

21   1018.   As manufacturers of light-duty vehicles, Defendants were required to provide these
22   warranties to purchasers or lessees of Class Vehicles.

23   1019.   Defendants' warranties formed a basis of the bargain that was reached when
24   consumers purchased or leased Class Vehicles.

25   1020.   Despite the existence of warranties, Defendants failed to inform Kansas State Class
26   members that the Class Vehicles were defective and intentionally designed and manufactured to
27   emit more pollution and achieve worse fuel economy on the road than what was disclosed to

28

1    regulators and represented to consumers who purchased or leased them, and Defendants failed to

2    fix the defective emission components free of charge.

3        1021.   Defendants breached the express warranty promising to repair and correct

4    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

5    have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

6        1022.   Affording Defendants a reasonable opportunity to cure their breach of written

7    warranties would be unnecessary and futile here.

8        1023.   Furthermore, the limited warranty promising to repair and correct Defendants'

9    defect in materials and workmanship fails in its essential purpose because the contractual remedy is

10   insufficient to make Kansas State Class members whole and because Defendants have failed and/or

11   have refused to adequately provide the promised remedies within a reasonable time.

12       1024.   Accordingly, recovery by Kansas State Class members is not restricted to the

13   limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

14   and they seek all remedies as allowed by law.

15       1025.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

16   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

17   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

18   material facts regarding the Class Vehicles. Kansas State Class members were therefore induced to

19   purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

20       1026.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

21   through the limited remedy of repairing and correcting Defendants' defect in materials and

22   workmanship as many incidental and consequential damages have already been suffered because of

23   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

24   failure to provide such limited remedy within a reasonable time, and any limitation on Kansas State

25   Class members' remedies would be insufficient to make them whole.

26       1027.   Finally, because of Defendants' breach of warranty as set forth herein, Kansas State

27   Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the

28

1    goods and the return to them the purchase or lease price of all Class Vehicles currently owned or

2    leased, and for such other incidental and consequential damages as allowed.

3        1028.   Defendants were provided reasonable notice of these issues by way of a letter sent

4    by Plaintiffs as well as the regulators' investigations.

5        1029.   As a direct and proximate result of Defendants' breach of express warranties,

6    Kansas State Class members have been damaged in an amount to be determined at trial.

7    

**KANSAS COUNT III:**
**Breach of Implied Warranty of Merchantability**
8    **Kan. Stat. §§ 84-2-314 and 84-2A-212**
**(On Behalf of the Kansas State Class)**

9        1030.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

10   paragraphs as though fully set forth herein.

11       1031.   This count is brought on behalf of the Kansas State Class against all Defendants.

12       1032.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

13   vehicles under Kan. Stat. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under

14   § 84-2-103(1)(d).

15       1033.   With respect to leases, Defendants are and were at all relevant times "lessors" of

16   motor vehicles under Kan. Stat. § 84-2A-103(1)(p).

17       1034.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

18   Kan. Stat. §§ 84-2-105(1) and 84-2A-103(1)(h).

19       1035.   A warranty that the Class Vehicles were in merchantable condition and fit for the

20   ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. §§ 84-2-314

21   and 84-2A-212.

22       1036.   These Class Vehicles, when sold or leased and at all times thereafter, were

23   materially different from vehicles Defendants submitted for emissions testing, included software

24   that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

25   emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the

26   ordinary purpose for which vehicles are used.

27   

28

1037.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1038.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Kansas State Class members have been damaged in an amount to be proven at trial.

**KENTUCKY COUNT I:**
**Violations of the Kentucky Consumer Protection Act**
**Ky. Rev. Stat. Ann. § 367.110 *et seq.***
**(On Behalf of the Kentucky State Class)**

1039.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1040.   This count is brought on behalf of the Kentucky State Class against all Defendants.

1041.   Defendants, Plaintiffs, and the Kentucky State Class are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

1042.   Defendants engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

1043.   The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." Ky. Rev. Stat. § 367.170(1). Defendants participated in misleading, false, or deceptive acts that violated the Kentucky CPA. By failing to disclose and by actively concealing the defects identified herein, marketing their vehicles as reliable, efficient, and of high quality, and by presenting themselves as reputable manufacturers that valued environmental cleanliness and fuel efficiency, and stood behind their vehicles after they were sold, Defendants engaged in deceptive business practices prohibited by the Kentucky CPA.

1044.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road,

1    and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

2    emissions tests when they in fact did not.

3         1045.   Kentucky State Class members had no way of discerning that Defendants'

4    representations were false and misleading because the Kentucky State Class did not have access to

5    Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and

6    software was extremely sophisticated technology.

7         1046.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

8    have characteristics, uses, benefits, and qualities which they do not have; representing that Class

9    Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

10   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

11   transaction involving Class Vehicles has been supplied in accordance with a previous

12   representation when it has not.

13        1047.   Defendants intentionally and knowingly misrepresented material facts regarding the

14   Class Vehicles with intent to mislead the Kentucky State Class.

15        1048.   Defendants knew or should have known that their conduct violated the Kentucky

16   CPA.

17        1049.   Defendants owed the Kentucky State Class a duty to disclose the illegality and

18   public health risks, the true nature of the Class Vehicles, because Defendants:

19             A.     possessed exclusive knowledge that they were manufacturing, selling, and

20        distributing vehicles throughout the United States that did not perform as advertised;

21             B.     intentionally concealed the foregoing from regulators and Kentucky State

22        Class members; and/or

23             C.     made incomplete representations about the Class Vehicles' fuel economy

24        and emissions, while purposefully withholding material facts that contradicted these

25        representations.

26        1050.   Defendants' fraudulent concealment of the Class Vehicles' true fuel consumption

27   were material to the Kentucky State Class.

28

1051.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Kentucky State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1052.   Defendants' violations present a continuing risk to the Kentucky State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1053.   Members of the Kentucky State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Kentucky CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1054.   As a direct and proximate result of Defendants' violations of the Kentucky CPA, Kentucky State Class members have suffered injury-in-fact and/or actual damage.

1055.   Pursuant to Ky. Rev. Stat. Ann. § 367.220, the Kentucky State Class seeks to recover actual damages in an amount to be determined at trial; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

**KENTUCKY COUNT II:**
**Breach of Express Warranty**
**Ky. Rev. Stat. §§ 335.2-313 and 355.2A-210**
**(On Behalf of the Kentucky State Class)**

1056.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1057.   This count is brought on behalf of the Kentucky State Class against all Defendants.

1058.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

1059.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

1060.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

1061.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1062.   Defendants also made numerous representations, descriptions, and promises to Kentucky State Class members regarding the performance and emission controls of their vehicles.

1063.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1064.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1065.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1066.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express

1   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

2   Design and Defect Warranty required by the EPA covers repair of emission control or emission

3   related parts, which fail to function or function improperly because of a defect in materials or

4   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

5   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

6   comes first.

7       1067.   As manufacturers of light-duty vehicles, Defendants were required to provide these

8   warranties to purchasers or lessees of Class Vehicles.

9       1068.   Defendants' warranties formed a basis of the bargain that was reached when

10  consumers purchased or leased Class Vehicles.

11      1069.   Despite the existence of warranties, Defendants failed to inform Kentucky State

12  Class members that the Class Vehicles were defective and intentionally designed and manufactured

13  to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

14  regulators and represented to consumers who purchased or leased them, and Defendants failed to

15  fix the defective emission components free of charge.

16      1070.   Defendants breached the express warranty promising to repair and correct

17  Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

18  have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

19      1071.   Affording Defendants a reasonable opportunity to cure their breach of written

20  warranties would be unnecessary and futile here.

21      1072.   Furthermore, the limited warranty promising to repair and correct Defendants'

22  defect in materials and workmanship fails in its essential purpose because the contractual remedy is

23  insufficient to make Kentucky State Class members whole and because Defendants have failed

24  and/or have refused to adequately provide the promised remedies within a reasonable time.

25      1073.   Accordingly, recovery by Kentucky State Class members is not restricted to the

26  limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

27  and they seek all remedies as allowed by law.

28

1074.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Kentucky State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1075.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Kentucky State Class members' remedies would be insufficient to make them whole.

1076.   Finally, because of Defendants' breach of warranty as set forth herein, Kentucky State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1077.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1078.   As a direct and proximate result of Defendants' breach of express warranties, Kentucky State Class members have been damaged in an amount to be determined at trial.

**KENTUCKY COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212**
**(On Behalf of the Kentucky State Class)**

1079.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1080.   This count is brought on behalf of the Kentucky State Class against all Defendants.

1081.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

1082.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

1083.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

1084.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212.

1085.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1086.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1087.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Kentucky State Class members have been damaged in an amount to be proven at trial.

**LOUISIANA COUNT I:**
**Violations of the Louisiana Unfair Trade Practices and Consumer Protection Law**
**La. Stat. Ann. § 51:1401 *et seq.***
**(On Behalf of the Louisiana State Class)**

1088.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1089.   This count is brought on behalf of the Louisiana State Class against all Defendants.

1090.   Defendants, Plaintiffs, and the Louisiana State Class are "persons" within the meaning of the La. Rev. Stat. § 51:1402(8)

1091.   Louisiana State Class members are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

1092.   Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

1093.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). Defendants participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

1094.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1095.   Louisiana State Class members had no way of discerning that Defendants' representations were false and misleading because the Louisiana State Class did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1096.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1097.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Louisiana State Class.

1098.   Defendants knew or should have known that their conduct violated the Louisiana CPL.

1099.   Defendants owed the Louisiana State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.      intentionally concealed the foregoing from regulators and Louisiana State Class members; and/or

C.      made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1100.   Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Louisiana State Class.

1101.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Louisiana State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1102.   Defendants' violations present a continuing risk to the Louisiana State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1103.   The Louisiana State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Louisiana CPL. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1104.   As a direct and proximate result of Defendants' violations of the Louisiana CPL, the Louisiana State Class has suffered injury-in-fact and/or actual damage.

1105.   Pursuant to La. Rev. Stat. § 51:1409, the Louisiana State Class seeks to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive

1    practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La.

2    Rev. Stat. § 51:1409.

3                                    **LOUISIANA COUNT II:**
     **Breach of Implied Warranty of Merchantability/Warranty Against Prohibitory Defects**
4                               **La. Civ. Code Art. 2520, 2524**
                              **(On Behalf of the Louisiana State Class)**
5
6        1106.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully

     set forth herein.
7
         1107.   This count is brought on behalf of the Louisiana State Class against all Defendants.
8
9        1108.   Defendants are and were at all relevant times merchants with respect to motor

10   vehicles.

11       1109.   A warranty that the Class Vehicles were in merchantable condition is implied by

12   law in the instant transactions. These Class Vehicles, when sold or leased and at all times thereafter,

13   were materially different from vehicles Defendants submitted for emissions testing, included

14   software that led to inflated and misleading fuel economy and emissions ratings, and/or did not

15   comply with emissions regulations when being driven in Sport Plus mode, and were therefore not

16   fit for the ordinary purpose for which vehicles are used.

17       1110.   Defendants were provided reasonable notice of these issues by way of a letter sent

18   by Plaintiffs as well as the regulators' investigations.

19       1111.   As a direct and proximate result of Defendants' breach of the warranties of

20   merchantability, Louisiana State Class members have been damaged in an amount to be proven at

21   trial.

22                                      **MAINE COUNT I:**
                             **Violations of the Maine Unfair Trade Practices Act**
23                          **Me. Rev. Stat. Ann. Tit. 5, § 205-A *et seq.***
                              **(On Behalf of the Maine State Class)**

24       1112.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

25   forth herein.

26       1113.   This count is brought on behalf of the Maine State Class against all Defendants.

27       1114.   Defendants, Plaintiffs, and the Maine State Class are "persons" within the meaning

28   of Me. Rev. Stat. Ann. Tit. 5, § 206(2).

1115.   Defendants engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(3).

1116.   The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Me. Rev. Stat. Ann. Tit. 5 § 207.

1117.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1118.   Maine State Class members had no way of discerning that Defendants' representations were false and misleading because the Maine State Class did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1119.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1120.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Maine State Class.

1121.   Defendants knew or should have known that their conduct violated the Maine UTPA.

1122.   Defendants owed the Maine State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.      intentionally concealed the foregoing from regulators and Maine State Class members; and/or

C.      made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1123.   Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Maine State Class.

1124.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Maine State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1125.   Defendants' violations present a continuing risk to the Maine State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1126.   The Maine State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Maine UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1127.   As a direct and proximate result of Defendants' violations of the Maine UTPA, the Maine State Class has suffered injury-in-fact and/or actual damage.

1128.   Pursuant to Me. Rev. Stat. Ann. Tit. 5 § 213, the Maine State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Maine UTPA.

Case 3:20-cv-07473-CRB   Document 1   Filed 10/23/20   Page 187 of 407

1129.   Pursuant to Me. Rev. Stat. Ann. Title 5, § 50-634(g), Plaintiffs sent a notice letter to Defendants. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by way of the investigations conducted by governmental regulators. The Maine State Class seeks all damages and relief to which it is entitled.

**MAINE COUNT II:**
**Breach of Express Warranty**
**Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210**
**(On Behalf of the Maine State Class)**

1130.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1131.   This count is brought on behalf of the Maine State Class against all Defendants.

1132.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11,§§ 2-104(1), and 2-1103(3), and is a "seller" of motor vehicles under § 2-103(1)(d).

1133.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11,§ 2-1103(1)(p).

1134.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11,§§ 2-105(1), and 2-1103(1)(h).

1135.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1136.   Defendants also made numerous representations, descriptions, and promises to Maine State Class members regarding the performance and emission controls of their vehicles.

1137.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2053816.1

- 173 -

CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-7473

1138.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1139.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1140.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1141.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1142.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1143.   Despite the existence of warranties, Defendants failed to inform Maine State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

1    regulators and represented to consumers who purchased or leased them, and Defendants failed to

2    fix the defective emission components free of charge.

3          1144.   Defendants breached the express warranty promising to repair and correct

4    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

5    have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

6          1145.   Affording Defendants a reasonable opportunity to cure their breach of written

7    warranties would be unnecessary and futile here.

8          1146.   Furthermore, the limited warranty promising to repair and correct Defendants'

9    defect in materials and workmanship fails in its essential purpose because the contractual remedy is

10   insufficient to make Maine State Class members whole and because Defendants have failed and/or

11   have refused to adequately provide the promised remedies within a reasonable time.

12         1147.   Accordingly, recovery by Maine State Class members is not restricted to the limited

13   warranty promising to repair and correct Defendants' defect in materials and workmanship, and

14   they seek all remedies as allowed by law.

15         1148.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

16   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

17   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

18   material facts regarding the Class Vehicles. Maine State Class members were therefore induced to

19   purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

20         1149.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

21   through the limited remedy of repairing and correcting Defendants' defect in materials and

22   workmanship as many incidental and consequential damages have already been suffered because of

23   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

24   failure to provide such limited remedy within a reasonable time, and any limitation on Maine State

25   Class members' remedies would be insufficient to make them whole.

26         1150.   Finally, because of Defendants' breach of warranty as set forth herein, Maine State

27   Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the

28

goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1151.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1152.   As a direct and proximate result of Defendants' breach of express warranties, Maine State Class members have been damaged in an amount to be determined at trial.

**MAINE COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212**
**(On Behalf of the Maine State Class)**

1153.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1154.   This count is brought on behalf of the Maine State Class against all Defendants.

1155.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11,§§ 2-104(1), and 2-1103(3), and is a "seller" of motor vehicles under § 2-103(1)(d).

1156.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11,§ 2-1103(1)(p).

1157.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11,§§ 2-105(1), and 2-1103(1)(h).

1158.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11,§§ 2-314, and 2-1212.

1159.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1160.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1161.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Maine State Class members have been damaged in an amount to be proven at trial.

**MARYLAND COUNT I:**
**Violations of the Maryland Consumer Protection Act**
**Md. Code Com. Law § 13-101 *et seq.***
**(On Behalf of the Maryland State Class)**

1162.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1163.   This count is brought on behalf of the Maryland State Class against all Defendants.

1164.   Defendants and the Maryland State Class are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

1165.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md. Code Com. Law § 13-303. Defendants participated in misleading, false, or deceptive acts that violated the Maryland CPA.

1166.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1167.   Maryland State Class members had no way of discerning that Defendants' representations were false and misleading because the Maryland State Class Members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology. Maryland State Class members did not and could not unravel Defendants' deception on their own.

1168.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1169.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Maryland State Class.

1170.   Defendants knew or should have known that their conduct violated the Maryland CPA.

1171.   Defendants owed the Maryland State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.      intentionally concealed the foregoing from regulators and Maryland State Class members; and/or

C.      made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1172.   Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Maryland State Class.

1173.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Maryland State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1174.   Defendants' violations present a continuing risk to the Maryland State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1175.   The Maryland State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Maryland CPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1176.   As a direct and proximate result of Defendants' violations of the Maryland CPA, the Maryland State Class has suffered injury-in-fact and/or actual damage.

1177.   Pursuant to Md. Code Com. Law § 13-408, the Maryland State Class seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**MARYLAND COUNT II:**
**Maryland Lemon Law**
**Md. Code Com. Law § 14-1501 *et seq.***
**(On Behalf of the Maryland State Class)**

1178.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth.

1179.   This count is brought on behalf of the Maryland State Class against all Defendants.

1180.   The Maryland State Class own or lease "motor vehicles" within the meaning of Md. Code, Com. Law § 14-1501(f), because these vehicles were registered in the state and fall within the categories of vehicles manufactured, assembled, or distributed by Defendants. These vehicles are not auto homes.

1181.   Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Md. Code, Com. Law § 14-1501(d).

1182.   The Maryland State Class members are "consumers" within the meaning of Md. Code Com. Law § 14-1501(b) because they: purchased the Class Vehicles, were transferred the Class Vehicles during the warranty period, or are otherwise entitled to the attendant terms of warranty.

1183.   The Class Vehicles did not conform to their "warranties" under Md. Code Com. Law § 14-1501(g) during the warranty period because they had inflated and misleading fuel

economy and emissions values, and were therefore not fit for the ordinary purpose for which vehicles are used.

1184.   Defendants had actual knowledge of the conformities during the "warranty period" within the meaning of Md. Code, Com. Law § 14-1501(e). But the nonconformities continued to exist throughout this term, as they have not been fixed. Maryland State Class members are excused from notifying Defendants of the nonconformities because it was already fully aware of the problem—it intentionally created it—and any repair attempt is futile.

1185.   Defendants have had a reasonable opportunity to cure the nonconformities during the warranty period because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Md. Code, Com. Law § 14-1502.

1186.   The Maryland State Class demands a full refund of the purchase price, including all license fees, registration fees, and any similar governmental charges. Md. Code Com. Law § 14-1502(c). Once payment has been tendered, Maryland State Class members will return their vehicles.

## MARYLAND COUNT III:
### Breach of Express Warranty
### Md. Code Com. Law §§ 2-313 and 2a-210
### (On Behalf of the Maryland State Class)

1187.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1188.   This count is brought on behalf of the Maryland State Class against all Defendants.

1189.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1190.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

1191.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

1192.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1193.   Defendants also made numerous representations, descriptions, and promises to Maryland State Class members regarding the performance and emission controls of their vehicles.

1194.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1195.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1196.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1197.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

1    first, or, for the major emission control components, for eight years or 80,000 miles, whichever

2    comes first.

3         1198.   As manufacturers of light-duty vehicles, Defendants were required to provide these

4    warranties to purchasers or lessees of Class Vehicles.

5         1199.   Defendants' warranties formed a basis of the bargain that was reached when

6    consumers purchased or leased Class Vehicles.

7         1200.   Despite the existence of warranties, Defendants failed to inform Maryland State

8    Class members that the Class Vehicles were defective and intentionally designed and manufactured

9    to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

10   regulators and represented to consumers who purchased or leased them, and Defendants failed to

11   fix the defective emission components free of charge.

12        1201.   Defendants breached the express warranty promising to repair and correct

13   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

14   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

15        1202.   Affording Defendants a reasonable opportunity to cure their breach of written

16   warranties would be unnecessary and futile here.

17        1203.   Furthermore, the limited warranty promising to repair and correct Defendants'

18   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

19   insufficient to make Maryland State Class members whole and because Defendants have failed

20   and/or have refused to adequately provide the promised remedies within a reasonable time.

21        1204.   Accordingly, recovery by Maryland State Class members is not restricted to the

22   limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

23   and they seek all remedies as allowed by law.

24        1205.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

25   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

26   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

27   material facts regarding the Class Vehicles. Maryland State Class members were therefore induced

28   to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1206.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Maryland State Class members' remedies would be insufficient to make them whole.

1207.   Finally, because of Defendants' breach of warranty as set forth herein, Maryland State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1208.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1209.   As a direct and proximate result of Defendants' breach of express warranties, Maryland State Class members have been damaged in an amount to be determined at trial.

**MARYLAND COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Md. Code Com. Law §§ 2-314 and 2a-212**
**(On Behalf of the Maryland State Class)**

1210.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1211.   This count is brought on behalf of the Maryland State Class against all Defendants.

1212.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1213.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

1214.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

1215.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law §§ 2-314, and 2a-212.

1216.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1217.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1218.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Maryland State Class members have been damaged in an amount to be proven at trial.

**MASSACHUSETTS COUNT I:**
**Deceptive Acts or Practices Prohibited by Massachusetts Law**
**Mass. Gen. Laws Ch. 93a, § 1, *et seq.***
**(On Behalf of the Massachusetts State Class)**

1219.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1220.   This count is brought on behalf of the Massachusetts State Class against all Defendants.

1221.   Defendants, Plaintiffs, and the Massachusetts State Class are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

1222.   Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

1223.   Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Defendants participated in misleading, false, or deceptive acts that violated the Massachusetts Act.

1224.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1225.   Massachusetts State Class members had no way of discerning that Defendants' representations were false and misleading because Massachusetts State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1226.   Massachusetts State Class members did not and could not unravel Defendants' deception on their own.

1227.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1228.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Massachusetts State Class.

1229.   Defendants knew or should have known that their conduct violated the Massachusetts Act.

1230.   Defendants owed the Massachusetts State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.    intentionally concealed the foregoing from regulators and Massachusetts State Class members; and/or

C.      made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1231.   Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Massachusetts State Class.

1232.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Massachusetts State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1233.   Defendants' violations present a continuing risk to the Massachusetts State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1234.   The Massachusetts State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Massachusetts Act. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1235.   As a direct and proximate result of Defendants' violations of the Massachusetts Act, the Massachusetts State Class have suffered injury-in-fact and/or actual damage.

1236.   Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Massachusetts State Class member. Because Defendants' conduct was committed willfully and knowingly, each Massachusetts State Class member is entitled to recover up to three times actual damages, but no less than two times actual damages.

1    1237.   The Massachusetts State Class also seeks an order enjoining Defendants' unfair

2    and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just

3    and proper relief available under the Massachusetts Act.

4    1238.   Pursuant to Mass. Gen. Laws ch. 93A, § 9(3), Plaintiffs sent a notice letter to

5    Defendants. Additionally, all Defendants were provided notice of the issues raised in this count and

6    this Complaint by way of the investigations conducted by governmental regulators. The

7    Massachusetts State Class seeks all damages and relief to which it is entitled.

8    1239.   As a result of Defendants' conduct, the amount of its unjust enrichment should be

9    disgorged, in an amount according to proof.

10
11
**MASSACHUSETTS COUNT II:**
**Massachusetts Lemon Law**
**Mass. Gen. Laws Ch. 90, § 7N1/2(1)**
**(On Behalf of the Massachusetts State Class)**

12    1240.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though

13    fully set forth herein.

14
15   1241.   This count is brought on behalf of the Massachusetts State Class against all

Defendants.

16
17   1242.   Massachusetts State Class members own or lease "motor vehicles" within the

18   meaning of Mass. Gen. Laws Ch. 90, § 7N1/2(1), because these vehicles were constructed or

19   designed for propulsion by power and were sold, leased, or replaced by Defendants. These vehicles

20   are not: (1) auto homes, (2) vehicles built primarily for off-read use, and (3) used primarily for

business purposes.

21
22   1243.   Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of

Mass. Gen. Laws Ch. 90, § 7N1/2(1).

23
24   1244.   The Massachusetts State Class members are "consumers" within the meaning of

25   Mass. Gen. Laws Ch. 90, § 7N1/2(1) because they bought or leased the Class Vehicles or are

otherwise entitled to the attendant terms of warranty.

26
27
28

1245.   The Class Vehicles did not conform to their express and implied warranties because they included software that led to inflated and misleading fuel economy values and misleading emissions values and were therefore not fit for the ordinary purpose for which vehicles are used.

1246.   Defendants had actual knowledge of the conformities during the "term of protection" within the meaning of Mass. Gen. Laws Ch. 90, §§ 7N1/2(1)–7N1/2(2). But the nonconformities continued to exist throughout this term, as they have not been fixed. Massachusetts State Class members are excused from notifying Defendants of the nonconformities because it was already fully aware of the problem—it intentionally created it—and any repair attempt is futile.

1247.   Defendants have had a reasonable opportunity to cure the nonconformities because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Mass. Gen. Laws Ch. 90, § 7N1/2(3).

1248.   For vehicles purchased, the Massachusetts State Class demands a full refund of the contract price. For vehicles leased, the Massachusetts State Class demands a full refund of all payments made under the lease agreement. The Massachusetts State Class exercise their "unqualified right" to reject an offer of replacement and will retain their vehicles until payment is tendered under Mass. Gen. Laws Ch. 90, § 7N1/2(3).

**MASSACHUSETTS COUNT III:**
**Breach of Express Warranty**
**Mass. Gen. Laws c. 106 §§ 2-313 and 2A-210**
**(On Behalf of the Massachusetts State Class)**

1249.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1250.   This count is brought on behalf of the Massachusetts State Class against all Defendants.

1251.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under M.G.L. c. 106 § 2-104(1) and is a "seller" of motor vehicles under § 2-103(1)(d).

1252.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under M.G.L. c. 106 § 2A-103(1)(p).

1    1253.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

2    M.G.L. c. 106 §§ 2-105(1) and 2A-103(1)(h).

3    1254.   In connection with the purchase or lease of each one of its new vehicles, Defendants

4    provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This

5    warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

6    1255.   Defendants also made numerous representations, descriptions, and promises to

7    Massachusetts State Class members regarding the performance and emission controls of their

8    vehicles.

9    1256.   For example, Defendants included in the warranty booklets for some or all of the

10   Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

11   time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

12   from defects in material and workmanship which would cause it not to meet those standards."

13   1257.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

14   federal emission control warranties: a "Performance Warranty" and a "Design and Defect

15   Warranty."

16   1258.   The EPA requires vehicle manufacturers to provide a Performance Warranty with

17   respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

18   their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

19   required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

20   whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

21   emission control components are covered for the first eight years or 80,000 miles (whichever

22   comes first). These major emission control components subject to the longer warranty include the

23   catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

24   device or computer.

25   1259.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

26   with respect to their vehicles' emission systems. Thus, Defendants also provide an express

27   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

28   Design and Defect Warranty required by the EPA covers repair of emission control or emission

1  related parts, which fail to function or function improperly because of a defect in materials or

2  workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

3  first, or, for the major emission control components, for eight years or 80,000 miles, whichever

4  comes first.

5          1260.   As manufacturers of light-duty vehicles, Defendants were required to provide these

6  warranties to purchasers or lessees of Class Vehicles.

7          1261.   Defendants' warranties formed a basis of the bargain that was reached when

8  consumers purchased or leased Class Vehicles.

9          1262.   Despite the existence of warranties, Defendants failed to inform Massachusetts

10  State Class members that the Class Vehicles were defective and intentionally designed and

11  manufactured to emit more pollution and achieve worse fuel economy on the road than what was

12  disclosed to regulators and represented to consumers who purchased or leased them, and

13  Defendants failed to fix the defective emission components free of charge.

14          1263.   Defendants breached the express warranty promising to repair and correct

15  Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

16  have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

17          1264.   Affording Defendants a reasonable opportunity to cure their breach of written

18  warranties would be unnecessary and futile here.

19          1265.   Furthermore, the limited warranty promising to repair and correct Defendants'

20  defect in materials and workmanship fails in its essential purpose because the contractual remedy is

21  insufficient to make Massachusetts State Class members whole and because Defendants have failed

22  and/or have refused to adequately provide the promised remedies within a reasonable time.

23          1266.   Accordingly, recovery by Massachusetts State Class members is not restricted to the

24  limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

25  and they seek all remedies as allowed by law.

26          1267.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

27  leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

28  conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

1  material facts regarding the Class Vehicles. Massachusetts State Class members were therefore

2  induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

3       1268.  Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

4  through the limited remedy of repairing and correcting Defendants' defect in materials and

5  workmanship as many incidental and consequential damages have already been suffered because of

6  Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

7  failure to provide such limited remedy within a reasonable time, and any limitation on

8  Massachusetts State Class members' remedies would be insufficient to make them whole.

9       1269.  Finally, because of Defendants' breach of warranty as set forth herein,

10  Massachusetts State Class members assert, as additional and/or alternative remedies, the revocation

11  of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles

12  currently owned or leased, and for such other incidental and consequential damages as allowed.

13       1270.  Defendants were provided reasonable notice of these issues by way of a letter sent

14  by Plaintiffs as well as the regulators' investigations.

15       1271.  As a direct and proximate result of Defendants' breach of express warranties,

16  Massachusetts State Class members have been damaged in an amount to be determined at trial.

17
**MASSACHUSETTS COUNT IV:**
**Breach of Implied Warranty of Merchantability**
18
**Mass. Gen. Laws c. 106 §§ 2-314 and 2A-212**
**(On Behalf of the Massachusetts State Class)**
19

20       1272.  Plaintiffs re-allege and incorporate by reference all allegations of the preceding

paragraphs as though fully set forth herein.
21

22       1273.  This count is brought on behalf of the Massachusetts State Class against all

Defendants.
23

24       1274.  Defendants are and were at all relevant times "merchant[s]" with respect to motor

25  vehicles under M.G.L. c. 106 § 2-104(1) and is a "seller" of motor vehicles under § 2-103(1)(d).

26       1275.  With respect to leases, Defendants are and were at all relevant times "lessors" of

motor vehicles under M.G.L. c. 106 § 2A-103(1)(p).
27

28

1276.   The Class Vehicles are and were at all relevant times "goods" within the meaning of M.G.L. c. 106 §§ 2-105(1) and 2A-103(1)(h).

1277.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to M.G.L. c. 106 §§ 2-314 and 2A-212.

1278.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1279.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1280.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Massachusetts State Class members have been damaged in an amount to be proven at trial.

**MICHIGAN COUNT I:**
**Violations of the Michigan Consumer Protection Act**
**Mich. Comp. Laws § 445.903 *et seq.***
**(On Behalf of the Michigan State Class)**

1281.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1282.   This count is brought on behalf of the Michigan State Class against all Defendants.

1283.    Michigan State Class members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

1284.   Defendants are "person[s]" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

1285.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." Mich. Comp. Laws § 445.903(1). Defendants engaged in unfair, unconscionable, or deceptive

1   methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that

2   goods or services have . . . characteristics . . . that they do not have. . . .;" "(e) Representing that

3   goods or services are of a particular standard . . . if they are of another;" "(i) Making false or

4   misleading statements of fact concerning the reasons for, existence of, or amounts of price

5   reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive

6   the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a

7   representation of fact or statement of fact material to the transaction such that a person reasonably

8   believes the represented or suggested state of affairs to be other than it actually is;" and "(cc)

9   Failing to reveal facts that are material to the transaction in light of representations of fact made in

10   a positive manner." Mich. Comp. Laws § 445.903(1).

11       1286.   In the course of their business, Defendants concealed and suppressed material facts

12   concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

13   emissions testing that were different from production vehicles, (b) installing a secret software

14   program that caused the vehicles to perform differently during emissions testing than on the road,

15   and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

16   emissions tests when they in fact did not.

17       1287.   Michigan State Class members had no way of discerning that Defendants'

18   representations were false and misleading because Michigan State Class members did not have

19   access to Defendants' emissions certification test vehicles and Defendants' emissions-related

20   hardware and software was extremely sophisticated technology.

21       1288.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

22   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

23   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

24   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

25   transaction involving Class Vehicles has been supplied in accordance with a previous

26   representation when it has not.

27       1289.   Defendants intentionally and knowingly misrepresented material facts regarding the

28   Class Vehicles with intent to mislead the Michigan State Class.

- 193 -

1290.   Defendants knew or should have known that their conduct violated the Michigan CPA.

1291.   Defendants owed the Michigan State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.      intentionally concealed the foregoing from regulators and Michigan State Class members; and/or

C.      made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1292.   Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions were material to the Michigan State Class.

1293.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Michigan State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1294.   Defendants' violations present a continuing risk to the Michigan State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1295.   Michigan State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Michigan CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1296.   As a direct and proximate result of Defendants' violations of the Michigan CPA, Michigan State Class members have suffered injury-in-fact and/or actual damage.

1297.   The Michigan State Class seeks injunctive relief to enjoin Defendants from continuing its unfair and deceptive acts; monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each Michigan State Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

1298.   The Michigan State Class also seeks punitive damages against Defendants because it carried out despicable conduct with willful and conscious disregard of the rights of others. Defendants intentionally and willfully misrepresented the reliability of the Class Vehicles and concealed material facts that only they knew—all to avoid the expense and public relations nightmare of correcting a flaw in the Class Vehicles. Defendants' unlawful conduct constitutes oppression and fraud warranting punitive damages.

**MICHIGAN COUNT II:**
**Breach of Express Warranty**
**Mich. Comp. Laws §§ 440.2313 and 440.2860**
**(On Behalf of the Michigan State Class)**

1299.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1300.   This count is brought on behalf of the Michigan State Class against all Defendants.

1301.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(d).

1302.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

1303.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

1304.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1305.   Defendants also made numerous representations, descriptions, and promises to Michigan State Class members regarding the performance and emission controls of their vehicles.

1306.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1307.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1308.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1309.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1310.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1311. Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1312. Despite the existence of warranties, Defendants failed to inform Michigan State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1313. Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1314. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1315. Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Michigan State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1316. Accordingly, recovery by the Michigan State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1317. Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Michigan State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1318. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

1    failure to provide such limited remedy within a reasonable time, and any limitation on Michigan

2    State Class members' remedies would be insufficient to make them whole.

3        1319.   Finally, because of Defendants' breach of warranty as set forth herein, Michigan

4    State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

5    of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

6    or leased, and for such other incidental and consequential damages as allowed.

7        1320.   Defendants were provided reasonable notice of these issues by way of a letter sent

8    by Plaintiffs as well as the regulators' investigations.

9        1321.   As a direct and proximate result of Defendants' breach of express warranties,

10   Michigan State Class members have been damaged in an amount to be determined at trial.

11                          **MICHIGAN COUNT III:**
                **Breach of Implied Warranty of Merchantability**
12              **Mich. Comp. Laws §§ 440.2314 and 440.2860**
                   **(On Behalf of the Michigan State Class)**
13

14       1322.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

15   paragraphs as though fully set forth herein.

16       1323.   This count is brought on behalf of the Michigan State Class against all Defendants.

17       1324.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

18   vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under

19   § 440.2103(1)(d).

20       1325.   With respect to leases, Defendants are and were at all relevant times "lessors" of

21   motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

22       1326.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

23   Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

24       1327.   A warranty that the Class Vehicles were in merchantable condition and fit for the

25   ordinary purpose for which vehicles are used is implied by law pursuant to Mich. Comp. Laws

26   §§ 440.2314 and 440.2862.

27       1328.   These Class Vehicles, when sold or leased and at all times thereafter, were

28   materially different from vehicles Defendants submitted for emissions testing, included software

1    that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

2    emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the

3    ordinary purpose for which vehicles are used.

4        1329.   Defendants were provided reasonable notice of these issues by way of a letter sent

5    by Plaintiffs as well as the regulators' investigations.

6        1330.   As a direct and proximate result of Defendants' breach of the implied warranty of

7    merchantability, Michigan State Class members have been damaged in an amount to be proven at

8    trial.

9                                **MINNESOTA COUNT I:**
                     **Violations of the Minnesota Prevention of Consumer Fraud Act**
10                              **Minn. Stat. § 325F.68 *et seq.***
                            **(On Behalf of the Minnesota State Class)**
11
12       1331.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

13   forth herein.

14       1332.   This count is brought on behalf of the Minnesota State Class against all Defendants.

15       1333.   The Class Vehicles constitute "merchandise" within the meaning of Minn. Stat.

16   § 325F.68(2).

17       1334.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits

18   "[t]he act, use, or employment by any person of any fraud, false pretense, false promise,

19   misrepresentation, misleading statement or deceptive practice, with the intent that others rely

20   thereon in connection with the sale of any merchandise, whether or not any person has in fact been

21   misled, deceived, or damaged thereby . . . ." Minn. Stat. § 325F.69(1). Defendants participated in

22   misleading, false, or deceptive acts that violated the Minnesota CFA.

23       1335.   In the course of their business, Defendants concealed and suppressed material facts

24   concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

25   emissions testing that were different from production vehicles, (b) installing a secret software

26   program that caused the vehicles to perform differently during emissions testing than on the road,

27   and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

28   emissions tests when they in fact did not.

1336.   Minnesota State Class members had no way of discerning that Defendants' representations were false and misleading because Minnesota State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1337.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1338.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Minnesota State Class.

1339.   Defendants knew or should have known that their conduct violated the Minnesota CFA.

1340.   Defendants owed the Minnesota State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.      intentionally concealed the foregoing from regulators and Minnesota State Class members; and/or

C.      made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1341.   Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Minnesota State Class.

1342.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Minnesota State Class, about the true

1    environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants'

2    brands, and the true value of the Class Vehicles.

3        1343.   Defendants' violations present a continuing risk to the Minnesota State Class as well

4    as to the general public. Defendants' unlawful acts and practices complained of herein affect the

5    public interest.

6        1344.   Minnesota State Class members suffered ascertainable loss and actual damages as a

7    direct and proximate result of Defendants' misrepresentations and concealment of and failure to

8    disclose material information. Defendants had an ongoing duty to all their customers to refrain

9    from unfair and deceptive practices under the Minnesota CFA. All owners of Class Vehicles

10   suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

11   in the course of Defendants' business.

12       1345.   As a direct and proximate result of Defendants' violations of the Minnesota CFA,

13   Minnesota State Class members have suffered injury-in-fact and/or actual damage.

14       1346.   Pursuant to Minn. Stat. § 8.31(3a), Minnesota State Class members seek actual

15   damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

16       1347.   Minnesota State Class members also seek punitive damages under Minn. Stat.

17   § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate

18   disregard for the rights of others.

19                              **MINNESOTA COUNT II:**
                   **Violations of the Minnesota Uniform Deceptive Trade Practices Act**
20                          **Minn. Stat. § 325D.43-48 *et seq.***
                            **(On Behalf of the Minnesota State Class)**
21

22       1348.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

     forth herein.
23

24       1349.   This count is brought on behalf the Minnesota State Class against all Defendants.

25       1350.   The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits

26   deceptive trade practices, which occur when a person "(5) represents that goods or services have

27   sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not

28   have or that a person has a sponsorship, approval, status, affiliation, or connection that the person

does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises goods or services with intent not to sell them as advertised." Minn. Stat. § 325D.44. In the course of the Defendants' business, it engaged in deceptive practices by representing that Class Vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have; representing that Class Vehicles are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and advertising Class Vehicles with intent not to sell them as advertised. Defendants participated in misleading, false, or deceptive acts that violated the Minnesota DTPA.

1351.   By submitting vehicles for emissions testing that were different from production vehicles, installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not, by marketing its vehicles as reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Defendants engaged in deceptive business practices prohibited by the Minnesota DTPA.

1352.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1353.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1354.   Minnesota State Class members had no way of discerning that Defendants' representations were false and misleading because Minnesota State Class members did not have

1    access to Defendants' emissions certification test vehicles and Defendants' emissions-related

2    hardware and software was extremely sophisticated technology.

3         1355.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

4    have characteristics, uses, benefits, and qualities which they do not have; representing that Class

5    Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

6    Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

7    transaction involving Class Vehicles has been supplied in accordance with a previous

8    representation when it has not.

9         1356.   Defendants intentionally and knowingly misrepresented material facts regarding the

10   Class Vehicles with intent to mislead the Minnesota State Class.

11        1357.   Defendants knew or should have known that their conduct violated the Minnesota

12   DTPA.

13        1358.   Defendants owed the Minnesota State Class a duty to disclose the illegality and

14   public health risks, the true nature of the Class Vehicles, because Defendants:

15             A.     possessed exclusive knowledge that they were manufacturing, selling, and

16        distributing vehicles throughout the United States that did not perform as advertised;

17             B.     intentionally concealed the foregoing from regulators and Minnesota State

18        Class members; and/or

19             C.     made incomplete representations about the Class Vehicles' fuel economy

20        and emissions while purposefully withholding material facts that contradicted these

21        representations.

22        1359.   Defendants' concealment of the true characteristics of the Class Vehicles' true fuel

23   consumption and emissions were material to the Minnesota State Class.

24        1360.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

25   deceive regulators and reasonable consumers, including the Minnesota State Class, about the true

26   environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

27   brands, the devaluing of environmental cleanliness and integrity at Defendant companies, and the

28   true value of the Class Vehicles.

1361.   Defendants' violations present a continuing risk to the Minnesota State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1362.   Minnesota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Minnesota DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1363.   As a direct and proximate result of Defendants' violations of the Minnesota DTPA, Minnesota State Class members have suffered injury-in-fact and/or actual damage.

1364.   Pursuant Minn. Stat. §§ 8.31(3a) and 325D.45, the Minnesota State Class seeks actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

**MINNESOTA COUNT III:**
**Breach of Express Warranty**
**Minn. Stat. §§ 336.2-313 and 336.2A-210**
**(On Behalf of the Minnesota State Class)**

1365.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1366.   This count is brought on behalf of the Minnesota State Class against all Defendants.

1367.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Minn. Stat. § 336.2-104(1) and "sellers" of motor vehicles under § 336.2-103(1)(d).

1368.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

1369.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

1370.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1371.   Defendants also made numerous representations, descriptions, and promises to Minnesota State Class members regarding the performance and emission controls of their vehicles.

1372.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1373.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1374.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1375.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

1  first, or, for the major emission control components, for eight years or 80,000 miles, whichever

2  comes first.

3      1376.   As manufacturers of light-duty vehicles, Defendants were required to provide these

4  warranties to purchasers or lessees of Class Vehicles.

5      1377.   Defendants' warranties formed a basis of the bargain that was reached when

6  consumers purchased or leased Class Vehicles.

7      1378.   Despite the existence of warranties, Defendants failed to inform Minnesota State

8  Class members that the Class Vehicles were defective and intentionally designed and manufactured

9  to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

10  regulators and represented to consumers who purchased or leased them, and Defendants failed to

11  fix the defective emission components free of charge.

12      1379.   Defendants breached the express warranty promising to repair and correct

13  Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

14  have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

15      1380.   Affording Defendants a reasonable opportunity to cure their breach of written

16  warranties would be unnecessary and futile here.

17      1381.   Furthermore, the limited warranty promising to repair and correct Defendants'

18  defect in materials and workmanship fails in its essential purpose because the contractual remedy is

19  insufficient to make Minnesota State Class members whole and because Defendants have failed

20  and/or have refused to adequately provide the promised remedies within a reasonable time.

21      1382.   Accordingly, recovery by Minnesota State Class members is not restricted to the

22  limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

23  and they seek all remedies as allowed by law.

24      1383.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

25  leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

26  conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

27  material facts regarding the Class Vehicles. Minnesota State Class members were therefore

28  induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1384.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Minnesota State Class members' remedies would be insufficient to make them whole.

1385.   Finally, because of Defendants' breach of warranty as set forth herein, Minnesota State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1386.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1387.   As a direct and proximate result of Defendants' breach of express warranties, Minnesota State Class members have been damaged in an amount to be determined at trial.

**MINNESOTA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Minn. Stat. §§ 336.2-314 and 336.2A-212**
**(On Behalf of the Minnesota State Class)**

1388.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1389.   This count is brought on behalf of the Minnesota State Class against all Defendants.

1390.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Minn. Stat. § 336.2-104(1) and "sellers" of motor vehicles under § 336.2-103(1)(d).

1391.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

1392.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

1393.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

1394.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1395.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1396.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Minnesota State Class members have been damaged in an amount to be proven at trial.

### MISSISSIPPI COUNT I:
#### Violations of Mississippi Consumer Protection Act
#### Miss. Code. Ann. § 75-24-1, *et seq.*
#### (On Behalf of the Mississippi State Class)

1397.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1398.   This count is brought on behalf of the Mississippi State Class against all Defendants.

1399.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised." Miss. Code. Ann. § 75-24-5. Defendants participated in deceptive trade practices that violated the Mississippi CPA as described herein,

1   including representing that Class Vehicles have characteristics, uses, benefits, and qualities which

2   they do not have; representing that Class Vehicles are of a particular standard and quality when

3   they are not; and advertising Class Vehicles with the intent not to sell them as advertised.

4       1400.   In the course of their business, Defendants concealed and suppressed material facts

5   concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

6   emissions testing that were different from production vehicles, (b) installing a secret software

7   program that caused the vehicles to perform differently during emissions testing than on the road,

8   and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

9   emissions tests when they in fact did not.

10      1401.   Mississippi State Class members had no way of discerning that Defendants'

11  representations were false and misleading because Mississippi State Class members did not have

12  access to Defendants' emissions certification test vehicles and Defendants' emissions-related

13  hardware and software was extremely sophisticated technology.

14      1402.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

15  have characteristics, uses, benefits, and qualities which they do not have; representing that Class

16  Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

17  Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

18  transaction involving Class Vehicles has been supplied in accordance with a previous

19  representation when it has not.

20      1403.   Defendants intentionally and knowingly misrepresented material facts regarding the

21  Class Vehicles with intent to mislead the Mississippi State Class.

22      1404.   Defendants knew or should have known that their conduct violated the Mississippi

23  CPA.

24      1405.   Defendants owed the Mississippi State Class a duty to disclose the illegality and

25  public health risks, the true nature of the Class Vehicles, because Defendants:

26          A.      possessed exclusive knowledge that they were manufacturing, selling, and

27          distributing vehicles throughout the United States that did not perform as advertised;

28

B.    intentionally concealed the foregoing from regulators and Mississippi State

Class members; and/or

C.    made incomplete representations about the Class Vehicles' fuel economy

and emissions while purposefully withholding material facts that contradicted these

representations.

1406.   Defendants' concealment of the Class Vehicles' true fuel consumption and

emissions were material to the Mississippi State Class.

1407.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

deceive regulators and reasonable consumers, including the Mississippi State Class, about the true

environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

brands, and the true value of the Class Vehicles.

1408.   Defendants' violations present a continuing risk to the Mississippi State Class as

well as to the general public. Defendants' unlawful acts and practices complained of herein affect

the public interest.

1409.   Mississippi State Class members suffered ascertainable loss and actual damages as a

direct and proximate result of Defendants' misrepresentations and concealment of and failure to

disclose material information. Defendants had an ongoing duty to all their customers to refrain

from unfair and deceptive practices under the Mississippi CPA. All owners of Class Vehicles

suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

in the course of Defendants' business.

1410.   As a direct and proximate result of Defendants' violations of the Mississippi CPA,

Mississippi State Class members have suffered injury-in-fact and/or actual damage.

1411.   Plaintiffs' seek actual damages in an amount to be determined at trial any other just

and proper relief available under the Mississippi CPA.

- 210 -

**MISSISSIPPI COUNT II:**
**Breach of Express Warranty**
**Miss. Code §§ 75-2-313 and 75-2A-210**
**(On Behalf of the Mississippi State Class)**

1412.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1413.   This count is brought on behalf of the Mississippi State Class against all Defendants.

1414.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

1415.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

1416.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

1417.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1418.   Defendants also made numerous representations, descriptions, and promises to Mississippi State Class members regarding the performance and emission controls of their vehicles.

1419.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1420.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1421.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

1    required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

2    whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

3    emission control components are covered for the first eight years or 80,000 miles (whichever

4    comes first). These major emission control components subject to the longer warranty include the

5    catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

6    device or computer.

7        1422.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

8    with respect to their vehicles' emission systems. Thus, Defendants also provide an express

9    warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

10   Design and Defect Warranty required by the EPA covers repair of emission control or emission

11   related parts, which fail to function or function improperly because of a defect in materials or

12   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

13   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

14   comes first.

15       1423.   As manufacturers of light-duty vehicles, Defendants were required to provide these

16   warranties to purchasers or lessees of Class Vehicles.

17       1424.   Defendants' warranties formed a basis of the bargain that was reached when

18   consumers purchased or leased Class Vehicles.

19       1425.   Despite the existence of warranties, Defendants failed to inform Mississippi State

20   Class members that the Class Vehicles were defective and intentionally designed and manufactured

21   to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

22   regulators and represented to consumers who purchased or leased them, and Defendants failed to

23   fix the defective emission components free of charge.

24       1426.   Defendants breached the express warranty promising to repair and correct

25   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

26   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

27       1427.   Affording Defendants a reasonable opportunity to cure their breach of written

28   warranties would be unnecessary and futile here.

1428.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Mississippi State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1429.   Accordingly, recovery by Mississippi State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1430.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Mississippi State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1431.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Mississippi State Class members' remedies would be insufficient to make them whole.

1432.   Finally, because of Defendants' breach of warranty as set forth herein, Mississippi State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1433.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1434.   As a direct and proximate result of Defendants' breach of express warranties, Mississippi State Class members have been damaged in an amount to be determined at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MISSISSIPPI COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Miss. Code §§ 75-2-314 and 75-2A-212**
**(On Behalf of the Mississippi State Class)**

1435.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1436.   This count is brought on behalf of the Mississippi State Class against all Defendants.

1437.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

1438.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

1439.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

1440.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Miss. Code §§ 75-2-314 and 75-2A-212.

1441.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1442.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1443.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Mississippi State Class members have been damaged in an amount to be proven at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MISSOURI COUNT I:**
**Violations of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. § 407.010 *et seq.***
**(On Behalf of the Missouri State Class)**

1444.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1445.   This count is brought on behalf of the Missouri State Class against all Defendants.

1446.   Defendants and the Missouri State Class are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

1447.   Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

1448.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise Mo. Rev. Stat. § 407.020.

1449.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1450.   Missouri State Class members had no way of discerning that Defendants' representations were false and misleading because Missouri State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1451.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

1    transaction involving Class Vehicles has been supplied in accordance with a previous

2    representation when it has not.

3        1452.   Defendants intentionally and knowingly misrepresented material facts regarding the

4    Class Vehicles with intent to mislead the Missouri State Class.

5        1453.   Defendants knew or should have known that their conduct violated the Missouri

6    MPA.

7        1454.   Defendants owed the Missouri State Class a duty to disclose the illegality and public

8    health risks, the true nature of the Class Vehicles, because Defendants:

9            A.    possessed exclusive knowledge that they were manufacturing, selling, and

10           distributing vehicles throughout the United States that did not perform as advertised;

11           B.    intentionally concealed the foregoing from regulators and Missouri State

12           Class members; and/or

13           C.    made incomplete representations about the Class Vehicles' fuel economy

14           and emissions while purposefully withholding material facts that contradicted these

15           representations.

16       1455.   Defendants' concealment of the true fuel consumption and emissions was material

17   to the Missouri State Class.

18       1456.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

19   deceive regulators and reasonable consumers, including Missouri State Class, about the true

20   environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

21   brands, and the true value of the Class Vehicles.

22       1457.   Defendants' violations present a continuing risk to the Missouri State Class as well

23   as to the general public. Defendants' unlawful acts and practices complained of herein affect the

24   public interest.

25       1458.   Missouri State Class members suffered ascertainable loss and actual damages as a

26   direct and proximate result of Defendants' misrepresentations and concealment of and failure to

27   disclose material information. Defendants had an ongoing duty to all their customers to refrain

28   from unfair and deceptive practices under the Missouri MPA. All owners of Class Vehicles

1    suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

2    in the course of Defendants' business.

3        1459.   As a direct and proximate result of Defendants' violations of the Missouri MPA,

4    Missouri State Class members have suffered injury-in-fact and/or actual damage.

5        1460.   Defendants are liable to the Missouri State Class for damages in amounts to be

6    proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief

7    enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under

8    Mo. Rev. Stat. § 407.025.

9
                                **MISSOURI COUNT II:**
                           **Breach of Express Warranty**
10                      **Mo. Stat. §§ 400.2-313 and 400.2A-210**
                          **(On Behalf of the Missouri State Class)**
11

12       1461.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though

13   fully set forth herein.

14       1462.   This count is brought on behalf of the Missouri State Class against all Defendants.

15       1463.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

16   vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

17       1464.   With respect to leases, Defendants are and were at all relevant times "lessors" of

18   motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

19       1465.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

20   Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

21       1466.   In connection with the purchase or lease of each one of its new vehicles, Defendants

22   provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This

23   warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

24       1467.   Defendants also made numerous representations, descriptions, and promises to

25   Missouri State Class members regarding the performance and emission controls of their vehicles.

26       1468.   For example, Defendants included in the warranty booklets for some or all of the

27   Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

28

time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1469.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1470.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1471.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1472.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1473.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1474.   Despite the existence of warranties, Defendants failed to inform Missouri State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1475.   Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1476.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1477.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Missouri State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1478.   Accordingly, recovery by Missouri State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1479.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Missouri State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1480.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Missouri State Class members' remedies would be insufficient to make them whole.

1481.   Finally, because of Defendants' breach of warranty as set forth herein, Missouri State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1482.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1483.   As a direct and proximate result of Defendants' breach of express warranties, Missouri State Class members have been damaged in an amount to be determined at trial.

**MISSOURI COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Mo. Stat. §§ 400.2-314 and 400.2A-212**
**(On Behalf of the Missouri State Class)**

1484.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1485.   This count is brought on behalf of the Missouri State Class against all Defendants.

1486.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

1487.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

1488.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

1489.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Stat. § 400.2-314 and Mo. Stat. § 400.2A-212.

1490.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1491.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1492.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Missouri State Class members have been damaged in an amount to be proven at trial.

**MONTANA COUNT I:**
**Violations of the Montana Unfair Trade Practices and Consumer Protection Act of 1973**
**Mont. Code Ann. § 30-14-101 *et seq.***
**(On Behalf of the Montana State Class)**

1493.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1494.   This count is brought on behalf of the Montana State Class against all Defendants.

1495.   Defendants and the Montana State Class are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

1496.   Montana State Class members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

1497.   The sale or lease of the Class Vehicles to Montana State Class members occurred within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and Defendants committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

1498.   The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103.

1499.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1       1500.   Montana State Class members had no way of discerning that Defendants'

2   representations were false and misleading because Montana State Class members did not have

3   access to Defendants' emissions certification test vehicles and Defendants' emissions-related

4   hardware and software was extremely sophisticated technology.

5       1501.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

6   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

7   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

8   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

9   transaction involving Class Vehicles has been supplied in accordance with a previous

10  representation when it has not.

11      1502.   Defendants intentionally and knowingly misrepresented material facts regarding the

12  Class Vehicles with intent to mislead the Montana State Class.

13      1503.   Defendants knew or should have known that their conduct violated the Montana

14  CPA.

15      1504.   Defendants owed the Montana State Class a duty to disclose the illegality and public

16  health risks, the true nature of the Class Vehicles, because Defendants:

17          A.      possessed exclusive knowledge that they were manufacturing, selling, and

18          distributing vehicles throughout the United States that did not perform as advertised;

19          B.      intentionally concealed the foregoing from regulators and Montana State

20          Class members; and/or

21          C.      made incomplete representations about the Class Vehicles' fuel economy

22          and emissions while purposefully withholding material facts that contradicted these

23          representations.

24      1505.   Defendants' concealment of the true characteristics of the Class Vehicles' fuel

25  economy and emissions was material to the Montana State Class.

26      1506.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

27  deceive regulators and reasonable consumers, including the Montana State Class, about the true

28

1  environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants'

2  brands, and the true value of the Class Vehicles.

3      1507.   Defendants' violations present a continuing risk to the Montana State Class as well

4  as to the general public. Defendants' unlawful acts and practices complained of herein affect the

5  public interest.

6      1508.   Montana State Class members suffered ascertainable loss and actual damages as a

7  direct and proximate result of Defendants' misrepresentations and concealment of and failure to

8  disclose material information. Defendants had an ongoing duty to all their customers to refrain

9  from unfair and deceptive practices under the Montana CPA. All owners of Class Vehicles suffered

10  ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the

11  course of Defendants' business.

12      1509.   As a direct and proximate result of Defendants' violations of the Montana CPA,

13  Montana State Class members have suffered injury-in-fact and/or actual damage.

14      1510.   Because Defendants' unlawful methods, acts, and practices have caused Montana

15  State Class members to suffer an ascertainable loss of money and property, the Montana State Class

16  seeks from Defendants actual damages or $500, whichever is greater, discretionary treble damages,

17  reasonable attorneys' fees, an order enjoining Defendants' unfair, unlawful, and/or deceptive

18  practices, and any other relief the Court considers necessary or proper, under Mont. Code Ann.

19  § 30-14-133.

20                            **MONTANA COUNT II:**
                        **Breach of Express Warranty**
21                  **Mont. Code §§ 30-2-313 and 30-2A-210**
                     **(On Behalf of the Montana State Class)**
22

23      1511.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though

24  fully set forth herein.

25      1512.   This count is brought on behalf of the Montana State Class against all Defendants.

26      1513.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

27  vehicles under Mont. Code § 30-2-104(1) and "sellers" of motor vehicles under § 30-2-103(1)(d).

28

1514.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mont. Code § 30-2A-103(1)(p).

1515.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).

1516.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1517.   Defendants also made numerous representations, descriptions, and promises to Montana State Class members regarding the performance and emission controls of their vehicles.

1518.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1519.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1520.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1521.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express

1   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

2   Design and Defect Warranty required by the EPA covers repair of emission control or emission

3   related parts, which fail to function or function improperly because of a defect in materials or

4   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

5   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

6   comes first.

7          1522.   As manufacturers of light-duty vehicles, Defendants were required to provide these

8   warranties to purchasers or lessees of Class Vehicles.

9          1523.   Defendants' warranties formed a basis of the bargain that was reached when

10   consumers purchased or leased Class Vehicles.

11          1524.   Despite the existence of warranties, Defendants failed to inform Montana State

12   Class members that the Class Vehicles were defective and intentionally designed and manufactured

13   to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

14   regulators and represented to consumers who purchased or leased them, and Defendants failed to

15   fix the defective emission components free of charge.

16          1525.   Defendants breached the express warranty promising to repair and correct

17   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

18   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

19          1526.   Affording Defendants a reasonable opportunity to cure their breach of written

20   warranties would be unnecessary and futile here.

21          1527.   Furthermore, the limited warranty promising to repair and correct Defendants'

22   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

23   insufficient to make Montana State Class members whole and because Defendants have failed

24   and/or have refused to adequately provide the promised remedies within a reasonable time.

25          1528.   Accordingly, recovery by Montana State Class members is not restricted to the

26   limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

27   and they seek all remedies as allowed by law.

28

1529.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Montana State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1530.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Montana State Class members' remedies would be insufficient to make them whole.

1531.   Finally, because of Defendants' breach of warranty as set forth herein, Montana State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1532.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1533.   As a direct and proximate result of Defendants' breach of express warranties, Montana State Class members have been damaged in an amount to be determined at trial.

**MONTANA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Mont. Code §§ 30-2-314 and 30-2A-212**
**(On Behalf of the Montana State Class)**

1534.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1535.   This count is brought on behalf of the Montana State Class against all Defendants.

1536.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mont. Code § 30-2-104(1) and "sellers" of motor vehicles under § 30-2-103(1)(d).

1537.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mont. Code § 30-2A-103(1)(p).

1538.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).

1539.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mont. Code §§ 30-2-314 and 30-2A-212.

1540.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1541.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1542.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Montana State Class members have been damaged in an amount to be proven at trial.

**NEBRASKA COUNT I:**
**Violations of the Nebraska Consumer Protection Act**
**Neb. Rev. Stat. § 59-1601 *et seq.***
**(On Behalf of the Nebraska State Class)**

1543.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1544.   This count is brought on behalf of the Nebraska State Class against all Defendants.

1545.   Defendants and Nebraska State Class members are "person[s]" under the Nebraska Consumer Protection Act ("Nebraska CPA"), Neb. Rev. Stat. § 59-1601(1).

1546.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under Neb. Rev. Stat. § 59-1601(2).

1   1547.   The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of

2   any trade or commerce." Neb. Rev. Stat. § 59-1602. The conduct Defendants engaged in as set

3   forth herein constitutes unfair or deceptive acts or practices.

4   1548.   In the course of their business, Defendants concealed and suppressed material facts

5   concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

6   emissions testing that were different from production vehicles, (b) installing a secret software

7   program that caused the vehicles to perform differently during emissions testing than on the road,

8   and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

9   emissions tests when they in fact did not.

10   1549.   Nebraska State Class members had no way of discerning that Defendants'

11   representations were false and misleading because the Nebraska State Class did not have access to

12   Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and

13   software was extremely sophisticated technology.

14   1550.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

15   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

16   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

17   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

18   transaction involving Class Vehicles has been supplied in accordance with a previous

19   representation when it has not.

20   1551.   Defendants intentionally and knowingly misrepresented material facts regarding the

21   Class Vehicles with intent to mislead the Nebraska State Class.

22   1552.   Defendants knew or should have known that their conduct violated the Nebraska

23   CPA.

24   1553.   Defendants owed the Nebraska State Class a duty to disclose the illegality and

25   public health risks, the true nature of the Class Vehicles, because Defendants:

26   A.   possessed exclusive knowledge that they were manufacturing, selling, and

27   distributing vehicles throughout the United States that did not perform as advertised;

28

B.     intentionally concealed the foregoing from regulators and Nebraska State

Class members; and/or

C.     made incomplete representations about the Class Vehicles' fuel economy

and emissions while purposefully withholding material facts that contradicted these

representations.

1554.   Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Nebraska State Class.

1555.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Nebraska State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1556.   Defendants' violations present a continuing risk to the Nebraska State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1557.   Nebraska State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Nebraska CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1558.   As a direct and proximate result of Defendants' violations of the Nebraska CPA, Nebraska State Class members have suffered injury-in-fact and/or actual damage.

1559.   Because Defendants' conduct caused injury to Nebraska State Class members' property through violations of the Nebraska CPA, the Nebraska State Class seeks recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Defendants' unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NEBRASKA COUNT II:**
**Breach of Express Warranty**
**Neb. Rev. St. U.C.C. §§ 2-313 and 2A-210**
**(On Behalf of the Nebraska State Class)**

1560.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1561.   This count is brought on behalf of the Nebraska State Class against all Defendants.

1562.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Neb. Rev. St. U.C.C. § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1563.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Neb. Rev. St. U.C.C. § 2A-103(1)(p).

1564.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Neb. Rev. St. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

1565.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1566.   Defendants also made numerous representations, descriptions, and promises to Nebraska State Class members regarding the performance and emission controls of their vehicles.

1567.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1568.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1569.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

1    required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

2    whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

3    emission control components are covered for the first eight years or 80,000 miles (whichever

4    comes first). These major emission control components subject to the longer warranty include the

5    catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

6    device or computer.

7        1570.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

8    with respect to their vehicles' emission systems. Thus, Defendants also provide an express

9    warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

10   Design and Defect Warranty required by the EPA covers repair of emission control or emission

11   related parts, which fail to function or function improperly because of a defect in materials or

12   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

13   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

14   comes first.

15       1571.   As manufacturers of light-duty vehicles, Defendants were required to provide these

16   warranties to purchasers or lessees of Class Vehicles.

17       1572.   Defendants' warranties formed a basis of the bargain that was reached when

18   consumers purchased or leased Class Vehicles.

19       1573.   Despite the existence of warranties, Defendants failed to inform Nebraska State

20   Class members that the Class Vehicles were defective and intentionally designed and manufactured

21   to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

22   regulators and represented to consumers who purchased or leased them, and Defendants failed to

23   fix the defective emission components free of charge.

24       1574.   Defendants breached the express warranty promising to repair and correct

25   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

26   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

27       1575.   Affording Defendants a reasonable opportunity to cure their breach of written

28   warranties would be unnecessary and futile here.

1576.   Furthermore, the limited warranty promising to repair and correct Defendants'
defect in materials and workmanship fails in its essential purpose because the contractual remedy is
insufficient to make Nebraska State Class members whole and because Defendants have failed
and/or have refused to adequately provide the promised remedies within a reasonable time.

1577.   Accordingly, recovery by Nebraska State Class members is not restricted to the
limited warranty promising to repair and correct Defendants' defect in materials and workmanship,
and they seek all remedies as allowed by law.

1578.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or
leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not
conform to their warranties; further, Defendants had wrongfully and fraudulently concealed
material facts regarding the Class Vehicles. Nebraska State Class members were therefore induced
to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1579.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved
through the limited remedy of repairing and correcting Defendants' defect in materials and
workmanship as many incidental and consequential damages have already been suffered because of
Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued
failure to provide such limited remedy within a reasonable time, and any limitation on Nebraska
State Class members' remedies would be insufficient to make them whole.

1580.   Finally, because of Defendants' breach of warranty as set forth herein, Nebraska
State Class members assert, as additional and/or alternative remedies, the revocation of acceptance
of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned
or leased, and for such other incidental and consequential damages as allowed.

1581.   Defendants were provided reasonable notice of these issues by way of a letter sent
by Plaintiffs as well as the regulators' investigations.

1582.   As a direct and proximate result of Defendants' breach of express warranties,
Nebraska State Class members have been damaged in an amount to be determined at trial.

1

2

**NEBRASKA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Neb. Rev. St. U.C.C. §§ 2-314 and 2A-212**
**(On Behalf of the Nebraska State Class)**

3

4

1583.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

paragraphs as though fully set forth herein.

5

6

1584.   This count is brought on behalf of the Nebraska State Class against all Defendants.

1585.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

7

vehicles under Neb. Rev. St. U.C.C. § 2-104(1) and "sellers" of motor vehicles under

8

§ 2-103(1)(d).

9

1586.   With respect to leases, Defendants are and were at all relevant times "lessors" of

10

motor vehicles under Neb. Rev. St. U.C.C. § 2A-103(1)(p).

11

12

1587.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

Neb. Rev. St. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

13

14

1588.   A warranty that the Class Vehicles were in merchantable condition and fit for the

ordinary purpose for which vehicles are used is implied by law pursuant to Neb. Rev. St.

15

U.C.C.§§ 2-314 and 2A-212.

16

17

1589.   These Class Vehicles, when sold or leased and at all times thereafter, were

materially different from vehicles Defendants submitted for emissions testing, included software

18

that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

19

emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the

20

ordinary purpose for which vehicles are used.

21

22

1590.   Defendants were provided reasonable notice of these issues by way of a letter sent

by Plaintiffs as well as the regulators' investigations.

23

24

1591.   As a direct and proximate result of Defendants' breach of the implied warranty of

merchantability, Nebraska State Class members have been damaged in an amount to be proven at

25

trial.

26

27

28

- 233 -

**NEVADA COUNT I:**
**Violations of the Nevada Deceptive Trade Practices Act**
**Nev. Rev. Stat. § 598.0903** *et seq.*
**(On Behalf of the Nevada State Class)**

1592.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1593.   This count is brought on behalf of the Nevada State Class against all Defendants.

1594.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et seq.* prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

1595.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1596.   Nevada State Class members had no way of discerning that Defendants' representations were false and misleading because the Nevada State Class did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1   1597.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

2   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

3   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

4   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

5   transaction involving Class Vehicles has been supplied in accordance with a previous

6   representation when it has not.

7   1598.   Defendants intentionally and knowingly misrepresented material facts regarding the

8   Class Vehicles with intent to mislead the Nevada State Class.

9   1599.   Defendants knew or should have known that their conduct violated the Nevada

10   DTPA.

11   1600.   Defendants owed the Nevada State Class a duty to disclose the illegality and public

12   health risks, the true nature of the Class Vehicles, because Defendants:

13        A.      possessed exclusive knowledge that they were manufacturing, selling, and

14   distributing vehicles throughout the United States that did not perform as advertised;

15        B.      intentionally concealed the foregoing from regulators and Nevada State

16   Class members; and/or

17        C.      made incomplete representations about the Class Vehicles' fuel economy

18   and emissions while purposefully withholding material facts that contradicted these

19   representations.

20   1601.   Defendants' concealment of the Class Vehicles' true fuel consumption and

21   emissions was material to the Nevada State Class.

22   1602.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

23   deceive regulators and reasonable consumers, including the Nevada State Class, about the true

24   environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

25   brands, and the true value of the Class Vehicles.

26   1603.   Defendants' violations present a continuing risk to the Nevada State Class as well as

27   to the general public. Defendants' unlawful acts and practices complained of herein affect the

28   public interest.

1604.   Nevada State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Nevada DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

**NEVADA COUNT II:**
**Breach of Express Warranty**
**N.R.S. §§ 104.2313 and 104A.2210**
**(On Behalf of the Nevada State Class)**

1605.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1606.   This count is brought on behalf of the Nevada State Class against all Defendants.

1607.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

1608.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

1609.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

1610.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1611.   Defendants also made numerous representations, descriptions, and promises to Nevada State Class members regarding the performance and emission controls of their vehicles.

1612.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1613.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1614.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1615.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1616.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1617.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1618.   Despite the existence of warranties, Defendants failed to inform Nevada State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

1    regulators and represented to consumers who purchased or leased them, and Defendants failed to

2    fix the defective emission components free of charge.

3         1619.   Defendants breached the express warranty promising to repair and correct

4    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

5    have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

6         1620.   Affording Defendants a reasonable opportunity to cure their breach of written

7    warranties would be unnecessary and futile here.

8         1621.   Furthermore, the limited warranty promising to repair and correct Defendants'

9    defect in materials and workmanship fails in its essential purpose because the contractual remedy is

10   insufficient to make Nevada State Class members whole and because Defendants have failed

11   and/or have refused to adequately provide the promised remedies within a reasonable time.

12        1622.   Accordingly, recovery by Nevada State Class members is not restricted to the

13   limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

14   and they seek all remedies as allowed by law.

15        1623.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

16   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

17   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

18   material facts regarding the Class Vehicles. Nevada State Class members were therefore induced to

19   purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

20        1624.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

21   through the limited remedy of repairing and correcting Defendants' defect in materials and

22   workmanship as many incidental and consequential damages have already been suffered because of

23   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

24   failure to provide such limited remedy within a reasonable time, and any limitation on Nevada State

25   Class members' remedies would be insufficient to make them whole.

26        1625.   Finally, because of Defendants' breach of warranty as set forth herein, Nevada State

27   Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the

28

1   goods and the return to them the purchase or lease price of all Class Vehicles currently owned or

2   leased, and for such other incidental and consequential damages as allowed.

3       1626.   Defendants were provided reasonable notice of these issues by way of a letter sent

4   by Plaintiffs as well as the regulators' investigations.

5       1627.   As a direct and proximate result of Defendants' breach of express warranties,

6   Nevada State Class members have been damaged in an amount to be determined at trial.

7                            **NEVADA COUNT III:**
                    **Breach of Implied Warranty of Merchantability**
8                      **N.R.S. §§ 104.2314 and 104A.2212**
                     **(On Behalf of the Nevada State Class)**
9
10      1628.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

11  paragraphs as though fully set forth herein.

12      1629.   This count is brought on behalf of the Nevada State Class against all Defendants.

13      1630.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

14  vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

15      1631.   With respect to leases, Defendants are and were at all relevant times "lessors" of

16  motor vehicles under N.R.S. § 104A.2103(1)(p).

17      1632.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

18  N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

19      1633.   A warranty that the Class Vehicles were in merchantable condition and fit for the

20  ordinary purpose for which vehicles are used is implied by law pursuant to N.R.S. §§ 104.2314 and

21  104A.2212.

22      1634.   These Class Vehicles, when sold or leased and at all times thereafter, were

23  materially different from vehicles Defendants submitted for emissions testing, included software

24  that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

25  emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the

26  ordinary purpose for which vehicles are used.

27      1635.   Defendants were provided reasonable notice of these issues by way of a letter sent

28  by Plaintiffs as well as the regulators' investigations.

1636.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Nevada State Class members have been damaged in an amount to be proven at trial.

**NEW HAMPSHIRE COUNT I:**
**Violations of the New Hampshire Consumer Protection Act**
**N.H. Rev. Stat. § 358-A:1 *et seq.***
**(On Behalf of the New Hampshire State Class)**

1637.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1638.   This count is brought on behalf of the New Hampshire State Class against all Defendants.

1639.   The New Hampshire State Class and Defendants are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

1640.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

1641.   The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but . . . not limited to, the following: . . . (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. § 358-A:2.

1642.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1643.   New Hampshire State Class members had no way of discerning that Defendants' representations were false and misleading because New Hampshire State Class members did not

1    have access to Defendants' emissions certification test vehicles and Defendants' emissions-related

2    hardware and software was extremely sophisticated technology.

3         1644.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

4    have characteristics, uses, benefits, and qualities which they do not have; representing that Class

5    Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

6    Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

7    transaction involving Class Vehicles has been supplied in accordance with a previous

8    representation when it has not.

9         1645.   Defendants intentionally and knowingly misrepresented material facts regarding the

10   Class Vehicles with intent to mislead the New Hampshire State Class.

11        1646.   Defendants knew or should have known that their conduct violated the New

12   Hampshire CPA.

13        1647.   Defendants owed the New Hampshire State Class a duty to disclose the illegality

14   and public health risks, the true nature of the Class Vehicles, because Defendants:

15             A.    possessed exclusive knowledge that they were manufacturing, selling, and

16        distributing vehicles throughout the United States that did not perform as advertised;

17             B.    intentionally concealed the foregoing from regulators and New Hampshire

18        State Class members; and/or

19             C.    made incomplete representations about the Class Vehicles' fuel economy

20        and emissions while purposefully withholding material facts that contradicted these

21        representations.

22        1648.   Defendants' concealment of the Class Vehicles' true fuel consumption and

23   emissions was material to the New Hampshire State Class.

24        1649.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

25   deceive regulators and reasonable consumers, including New Hampshire State Class, about the true

26   environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

27   brands, and the true value of the Class Vehicles.

28

1650.  Defendants' violations present a continuing risk to the New Hampshire State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1651.  New Hampshire State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the New Hampshire CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

## NEW HAMPSHIRE COUNT II:
### Breach of Express Warranty
### N.H. Rev. Stat. §§ 382-A:2-313 and 382-A:2A-210
### (On Behalf of the New Hampshire State Class)

1652.  Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1653.  This count is brought on behalf of the New Hampshire State Class against all Defendants.

1654.  Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2-103(1)(d).

1655.  With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

1656.  The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

1657.  In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1658.  Defendants also made numerous representations, descriptions, and promises to New Hampshire State Class members regarding the performance and emission controls of their vehicles.

1659.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1660.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1661.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1662.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1663.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1664.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1665.   Despite the existence of warranties, Defendants failed to inform New Hampshire State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1666.   Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1667.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1668.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make New Hampshire State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1669.   Accordingly, recovery by the New Hampshire State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1670.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. New Hampshire State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1671.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on New Hampshire State Class members' remedies would be insufficient to make them whole.

1672.   Finally, because of Defendants' breach of warranty as set forth herein, New Hampshire State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1673.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1674.   As a direct and proximate result of Defendants' breach of express warranties, New Hampshire State Class members have been damaged in an amount to be determined at trial.

**NEW HAMPSHIRE COUNT III:**
**Breach of Implied Warranty of Merchantability**
**N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212**
**(On Behalf of the New Hampshire State Class)**

1675.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1676.   This count is brought on behalf of the New Hampshire State Class against all Defendants.

1677.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2-103(1)(d).

1678.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

1679.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

1680.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212.

1681.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1682.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1683.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New Hampshire State Class members have been damaged in an amount to be proven at trial.

**NEW JERSEY COUNT I:**
**Violations of the New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. § 56:8-1 *et seq.***
**(On Behalf of the New Jersey State Class)**

1684.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1685.   Plaintiff Sander Shady (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the New Jersey State Class against all Defendants.

1686.   Plaintiff and New Jersey State Class members and Defendants are "persons" under the New Jersey Consumer Fraud Act ("New Jersey CFA"), N.J. Stat. § 56:8-1(d).

1687.   Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. §56:8-1(c), (e). Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

1688.   The New Jersey CFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. § 56:8-2.

1689.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1690.   Plaintiff and New Jersey State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and New Jersey State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1691.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1692.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the New Jersey State Class.

1693.   Defendants knew or should have known that their conduct violated the New Jersey CFA.

1694.   Defendants owed Plaintiff and the New Jersey State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      B.    intentionally concealed the foregoing from regulators, Plaintiff, and New Jersey State Class members; and/or

      C.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1     1695.   Defendants' concealment of the true characteristics of the Class Vehicles' fuel

2     consumption and emissions was material to Plaintiff and the New Jersey State Class.

3     1696.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

4     deceive regulators and reasonable consumers, including Plaintiff and the New Jersey State Class,

5     about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the

6     Defendants' brands, the devaluing of environmental cleanliness and integrity at Defendant

7     companies, and the true value of the Class Vehicles.

8     1697.   Defendants' violations present a continuing risk to Plaintiff and the New Jersey

9     State Class as well as to the general public. Defendants' unlawful acts and practices complained of

10    herein affect the public interest.

11    1698.   Plaintiff and New Jersey State Class members suffered ascertainable loss and actual

12    damages as a direct and proximate result of Defendants' misrepresentations and concealment of

13    and failure to disclose material information. Defendants had an ongoing duty to all their customers

14    to refrain from unfair and deceptive practices under the New Jersey CFA. All owners and lessees of

15    Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and

16    practices made in the course of Defendants' business.

17    1699.   As a direct and proximate result of Defendants' violations of the New Jersey CFA,

18    Plaintiff and the New Jersey State Class have suffered injury-in-fact and/or actual damage in an

19    amount to be proven at trial, and seek all just and proper remedies, including, but not limited to,

20    actual and statutory damages, treble damages, an order enjoining Defendants' deceptive and unfair

21    conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and

22    appropriate relief.

23                              **NEW JERSEY COUNT II:**
                              **Breach of Express Warranty**
24                        **N.J.S. 12A:2-313 and 2A-210**
                      **(On Behalf of the New Jersey State Class)**
25

26    1700.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though

      fully set forth herein.
27

28

1701.   Plaintiff Sander Shady (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the New Jersey State Class against all Defendants.

1702.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

1703.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

1704.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

1705.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1706.   Defendants also made numerous representations, descriptions, and promises to Plaintiff and New Jersey State Class members regarding the performance and emission controls of their vehicles.

1707.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1708.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1709.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the

catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1710.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1711.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1712.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1713.   Despite the existence of warranties, Defendants failed to inform Plaintiff and New Jersey State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1714.   Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1715.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1716.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and New Jersey State Class members whole and because Defendants

1  have failed and/or have refused to adequately provide the promised remedies within a reasonable

2  time.

3       1717.   Accordingly, recovery by Plaintiff and New Jersey State Class members is not

4  restricted to the limited warranty promising to repair and correct Defendants' defect in materials

5  and workmanship, and they seek all remedies as allowed by law.

6       1718.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

7  leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

8  conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

9  material facts regarding the Class Vehicles. Plaintiff and New Jersey State Class members were

10 therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

11      1719.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

12 through the limited remedy of repairing and correcting Defendants' defect in materials and

13 workmanship as many incidental and consequential damages have already been suffered because of

14 Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

15 failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's

16 and New Jersey State Class members' remedies would be insufficient to make them whole.

17      1720.   Finally, because of Defendants' breach of warranty as set forth herein, Plaintiff and

18 New Jersey State Class members assert, as additional and/or alternative remedies, the revocation of

19 acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles

20 currently owned or leased, and for such other incidental and consequential damages as allowed.

21      1721.   Defendants were provided reasonable notice of these issues by way of a letter sent

22 by Plaintiffs as well as the regulators' investigations.

23      1722.   As a direct and proximate result of Defendants' breach of express warranties,

24 Plaintiff and New Jersey State Class members have been damaged in an amount to be determined at

25 trial.

26

27

28

**NEW JERSEY COUNT III:**
**Breach of Implied Warranty of Merchantability**
**N.J.S. 12A:2-314 and 2A-212**
**(On Behalf of the New Jersey State Class)**

1723.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1724.   Plaintiff Sander Shady (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the New Jersey State Class against all Defendants.

1725.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

1726.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

1727.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

1728.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.J.S. 12A:2-314 and 2A-212.

1729.   These Class Vehicles, when sold or leased and at all times thereafter, included software that led to inflated and misleading fuel economy values, and were therefore not fit for the ordinary purpose for which vehicles are used.

1730.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1731.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and New Jersey State Class members have been damaged in an amount to be proven at trial.

**NEW MEXICO COUNT I:**
**Violations of the New Mexico Unfair Trade Practices Act**
**N.M. Stat. Ann. § 57-12-1 *et seq.***
**(On Behalf of the New Mexico State Class)**

1732.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1    1733.   This count is brought on behalf of the New Mexico State Class against all

2    Defendants.

3    1734.   Defendants and New Mexico State Class members are "person[s]" under the New

4    Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 57-12-2.

5    1735.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce

6    as defined under N.M. Stat. Ann. § 57-12-2.

7    1736.   The New Mexico UTPA makes unlawful "a false or misleading oral or written

8    statement, visual description or other representation of any kind knowingly made in connection

9    with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the

10   person's trade or commerce, that may, tends to or does deceive or mislead any person," including

11   but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M.

12   Stat. Ann. § 57-12-2(D). Defendants' acts and omissions described herein constitute unfair or

13   deceptive acts or practices under N.M. Stat. Ann. § 57-12-2(D). In addition, Defendants' actions

14   constitute unconscionable actions under N.M. Stat. Ann. § 57-12-2(E), since they took advantage

15   of the lack of knowledge, ability, experience, and capacity of New Mexico State Class members to

16   a grossly unfair degree.

17   1737.   In the course of their business, Defendants concealed and suppressed material facts

18   concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

19   emissions testing that were different from production vehicles, (b) installing a secret software

20   program that caused the vehicles to perform differently during emissions testing than on the road,

21   and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

22   emissions tests when they in fact did not.

23   1738.   New Mexico State Class members had no way of discerning that Defendants'

24   representations were false and misleading because New Mexico State Class members did not have

25   access to Defendants' emissions certification test vehicles and Defendants' emissions-related

26   hardware and software was extremely sophisticated technology.

27   1739.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

28   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

1    Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

2    Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

3    transaction involving Class Vehicles has been supplied in accordance with a previous

4    representation when it has not.

5         1740.   Defendants intentionally and knowingly misrepresented material facts regarding the

6    Class Vehicles with intent to mislead the New Mexico State Class.

7         1741.   Defendants knew or should have known that their conduct violated the New Mexico

8    UTPA.

9         1742.   Defendants owed the New Mexico State Class a duty to disclose the illegality and

10   public health risks, the true nature of the Class Vehicles, because Defendants:

11            A.     possessed exclusive knowledge that they were manufacturing, selling, and

12         distributing vehicles throughout the United States that did not perform as advertised;

13            B.     intentionally concealed the foregoing from regulators and New Mexico State

14         Class members; and/or

15            C.     made incomplete representations about the Class Vehicles' fuel economy

16         and emissions while purposefully withholding material facts that contradicted these

17         representations.

18        1743.   Defendants' concealment of the Class Vehicles' true fuel consumption and

19   emissions was material to the New Mexico State Class.

20        1744.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

21   deceive regulators and reasonable consumers, including the New Mexico State Class, about the true

22   environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

23   brands, and the true value of the Class Vehicles.

24        1745.   Defendants' violations present a continuing risk to the New Mexico State Class as

25   well as to the general public. Defendants' unlawful acts and practices complained of herein affect

26   the public interest.

27        1746.   New Mexico State Class members suffered ascertainable loss and actual damages as

28   a direct and proximate result of Defendants' misrepresentations and concealment of and failure to

disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the New Mexico UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1747.   As a direct and proximate result of Defendants' violations of the New Mexico UTPA, New Mexico State Class members have suffered injury-in-fact and/or actual damage.

1748.   Because Defendants' unconscionable, willful conduct caused actual harm to New Mexico State Class members, the New Mexico State Class seeks recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

1749.   New Mexico State Class members also seek punitive damages against Defendants because Defendants' conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

**NEW MEXICO COUNT II:**
**Breach of Express Warranty**
**N.M. Stat. §§ 55-2-313 and 55-2A-210**
**(On Behalf of the New Mexico State Class)**

1750.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1751.   This count is brought on behalf of the New Mexico State Class against all Defendants.

1752.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under § 55-2-103(1)(d).

1753.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.M. Stat. § 55-2A-103(1)(p).

1754.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

1      1755.  In connection with the purchase or lease of each one of its new vehicles, Defendants

2   provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This

3   warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

4      1756.  Defendants also made numerous representations, descriptions, and promises to New

5   Mexico State Class members regarding the performance and emission controls of their vehicles.

6      1757.  For example, Defendants included in the warranty booklets for some or all of the

7   Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

8   time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

9   from defects in material and workmanship which would cause it not to meet those standards."

10      1758.  The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

11   federal emission control warranties: a "Performance Warranty" and a "Design and Defect

12   Warranty."

13      1759.  The EPA requires vehicle manufacturers to provide a Performance Warranty with

14   respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

15   their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

16   required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

17   whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

18   emission control components are covered for the first eight years or 80,000 miles (whichever

19   comes first). These major emission control components subject to the longer warranty include the

20   catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

21   device or computer.

22      1760.  The EPA requires vehicle manufacturers to issue Design and Defect Warranties

23   with respect to their vehicles' emission systems. Thus, Defendants also provide an express

24   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

25   Design and Defect Warranty required by the EPA covers repair of emission control or emission

26   related parts, which fail to function or function improperly because of a defect in materials or

27   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

28

first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1761.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1762.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1763.   Despite the existence of warranties, Defendants failed to inform New Mexico State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1764.   Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1765.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1766.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make New Mexico State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1767.   Accordingly, recovery by New Mexico State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1768.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. New Mexico State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1    1769.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

2    through the limited remedy of repairing and correcting Defendants' defect in materials and

3    workmanship as many incidental and consequential damages have already been suffered because of

4    Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

5    failure to provide such limited remedy within a reasonable time, and any limitation on New Mexico

6    State Class members' remedies would be insufficient to make them whole.

7        1770.   Finally, because of Defendants' breach of warranty as set forth herein, New Mexico

8    State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

9    of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

10   or leased, and for such other incidental and consequential damages as allowed.

11       1771.   Defendants were provided reasonable notice of these issues by way of a letter sent

12   by Plaintiffs as well as the regulators' investigations.

13       1772.   As a direct and proximate result of Defendants' breach of express warranties, New

14   Mexico State Class members have been damaged in an amount to be determined at trial.

15                          **NEW MEXICO COUNT III:**
                **Breach of Implied Warranty of Merchantability**
16                 **N.M. Stat. §§ 55-2-314 and 55-2A-212**
                   **(On Behalf of the New Mexico State Class)**
17

18       1773.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

     paragraphs as though fully set forth herein.
19

20       1774.   This count is brought on behalf of the New Mexico State Class against all

     Defendants.
21

22       1775.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

     vehicles under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under § 55-2-103(1)(d).
23

24       1776.   With respect to leases, Defendants are and were at all relevant times "lessors" of

     motor vehicles under N.M. Stat. § 55-2A-103(1)(p).
25

26       1777.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

     N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).
27

28

1778.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.M. Stat. §§ 55-2-314 and 55-2A-212.

1779.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1780.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1781.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New Mexico State Class members have been damaged in an amount to be proven at trial.

**NEW YORK COUNT I:**
**Violations of the New York General Business Law § 349**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of the New York State Class)**

1782.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1783.    This count is brought on behalf of the New York State Class against all Defendants.

1784.   The New York State Class members and Defendants are "persons" under N.Y. Gen. Bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

1785.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

1786.   The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct, as set forth herein, constitutes deceptive acts or practices under this section.

1787.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1788.   New York State Class members had no way of discerning that Defendants' representations were false and misleading because New York State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1789.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1790.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New York State Class.

1791.   Defendants knew or should have known that their conduct violated the NY DAPA.

1792.   Defendants owed the New York State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

        A.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

        B.     intentionally concealed the foregoing from regulators and New York State Class members; and/or

        C.     made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1793.   Defendants' concealment of the true characteristics of the Class Vehicles' true fuel consumption and emissions was material to the New York State Class.

1794.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the New York State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1795.   Defendants' violations present a continuing risk to the New York State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1796.   New York State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the NY DAPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1797.   As a direct and proximate result of Defendants' violations of the NY DAPA, New York State Class members have suffered injury-in-fact and/or actual damage.

1798.   As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, New York State Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

**NEW YORK COUNT II:**
**Violations of the New York General Business Law § 350**
**N.Y. Gen. Bus. Law § 350**
**(On Behalf of the New York State Class)**

1799.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1800.   This count is brought on behalf of the New York State Class against all Defendants.

1       1801.   Defendants were engaged in the "conduct of business, trade or commerce," within

2   the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA")

3       1802.   The NY FAA makes unlawful "[f]alse advertising in the conduct of any business,

4   trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including

5   labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into

6   account "the extent to which the advertising fails to reveal facts material in light of . . .

7   representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a.

8       1803.   Defendants caused to be made or disseminated through New York, through

9   advertising, marketing, and other publications, statements and omissions that were untrue or

10  misleading, and that were known by Defendants, or that through the exercise of reasonable care

11  should have been known by Defendants, to be untrue and misleading to the New York State Class.

12      1804.   Defendants made numerous material misrepresentations and omissions of fact with

13  intent to mislead and deceive concerning the Class Vehicles, particularly concerning the illegality,

14  efficacy and functioning of the emissions systems on the Class Vehicles. Specifically, Defendants

15  intentionally concealed and suppressed material facts concerning the legality and quality of the

16  Class Vehicles to intentionally and grossly defraud and mislead the New York State Class

17  concerning the true emissions produced by the Class Vehicles.

18      1805.   The misrepresentations and omissions regarding fuel economy and emissions set

19  forth above were material and likely to deceive a reasonable consumer.

20      1806.   Defendants intentionally and knowingly misrepresented material facts regarding the

21  Class Vehicles with intent to mislead the New York State Class.

22      1807.   Defendants' false advertising was likely to and did in fact deceive regulators and

23  reasonable consumers, including the New York State Class, about the illegality and true

24  characteristics of the Class Vehicles, the quality of Defendants brand and the true value of the Class

25  Vehicles.

26      1808.   Defendants' violations of the NY FAA present a continuing risk to New York State

27  Class members and to the general public. Defendants' deceptive acts and practices affect the public

28  interest.

1809.   The Class Vehicles do not perform as advertised and are not compliant with EPA regulations, making them far less valuable than advertised.

1810.   New York State Class members have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendant's false advertising in violation of the NY FAA.

1811.   The New York State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York State Class members. Because Defendants' conduct was committed willingly and knowingly, New York State Class members are entitled to recover three times actual damages, up to $10,000.

1812.   The New York State Class also seeks an order enjoining Defendants' false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

**NEW YORK COUNT III:**
**Breach of Express Warranty**
**N.Y. U.C.C. Law §§ 2-313 and 2A-210**
**(On Behalf of the New York State Class)**

1813.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1814.   This count is brought on behalf of the New York State Class against all Defendants.

1815.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1816.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

1817.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

1818.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1    1819.   Defendants also made numerous representations, descriptions, and promises to New

2    York State Class members regarding the performance and emission controls of their vehicles.

3    1820.   For example, Defendants included in the warranty booklets for some or all of the

4    Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

5    time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

6    from defects in material and workmanship which would cause it not to meet those standards."

7    1821.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

8    federal emission control warranties: a "Performance Warranty" and a "Design and Defect

9    Warranty."

10   1822.   The EPA requires vehicle manufacturers to provide a Performance Warranty with

11   respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

12   their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

13   required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

14   whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

15   emission control components are covered for the first eight years or 80,000 miles (whichever

16   comes first). These major emission control components subject to the longer warranty include the

17   catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

18   device or computer.

19   1823.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

20   with respect to their vehicles' emission systems. Thus, Defendants also provide an express

21   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

22   Design and Defect Warranty required by the EPA covers repair of emission control or emission

23   related parts, which fail to function or function improperly because of a defect in materials or

24   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

25   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

26   comes first.

27   1824.   As manufacturers of light-duty vehicles, Defendants were required to provide these

28   warranties to purchasers or lessees of Class Vehicles.

1825.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1826.   Despite the existence of warranties, Defendants failed to inform New York State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1827.   Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1828.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1829.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make New York State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1830.   Accordingly, recovery by New York State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1831.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. New York State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1832.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

1   failure to provide such limited remedy within a reasonable time, and any limitation on New York

2   State Class members' remedies would be insufficient to make them whole.

3      1833.   Finally, because of Defendants' breach of warranty as set forth herein, New York

4   State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

5   of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

6   or leased, and for such other incidental and consequential damages as allowed.

7      1834.   Defendants were provided reasonable notice of these issues by way of a letter sent

8   by Plaintiffs as well as the regulators' investigations.

9      1835.   As a direct and proximate result of Defendants' breach of express warranties, New

10  York State Class members have been damaged in an amount to be determined at trial.

11                          **NEW YORK COUNT IV:**
                   **Breach of Implied Warranty of Merchantability**
12                    **N.Y. U.C.C. Law §§ 2-314 and 2A-212**
                      **(On Behalf of the New York State Class)**
13

14     1836.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

15  paragraphs as though fully set forth herein.

16     1837.   This count is brought on behalf of the New York State Class against all Defendants.

17     1838.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

18  vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

19     1839.   With respect to leases, Defendants are and were at all relevant times "lessors" of

20  motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

21     1840.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

22  N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

23     1841.   A warranty that the Class Vehicles were in merchantable condition and fit for the

24  ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law

25  §§ 2-314 and 2A-212.

26     1842.   These Class Vehicles, when sold or leased and at all times thereafter, were

27  materially different from vehicles Defendants submitted for emissions testing, included software

28  that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

1    emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the

2    ordinary purpose for which vehicles are used.

3         1843.   Defendants were provided reasonable notice of these issues by way of a letter sent

4    by Plaintiffs as well as the regulators' investigations.

5         1844.   As a direct and proximate result of Defendants' breach of the implied warranty of

6    merchantability, New York State Class members have been damaged in an amount to be proven at

7    trial.

8                                    **NORTH CAROLINA COUNT I:**
     **Violations of the North Carolina Unfair and Deceptive Acts and Practices Act**
9                         **N.C. Gen. Stat. § 75-1.1 *et seq.***
                          **(On Behalf of the North Carolina State Class)**
10
          1845.   Plaintiffs incorporate by reference each preceding paragraph as though fully set
11
     forth herein.
12
          1846.   Plaintiff John Vorisek (for the purposes of this count, "Plaintiff") brings this claim
13
     on behalf of himself and the North Carolina State Class against all Defendants.
14
          1847.   Plaintiff and North Carolina State Class members are persons under the North
15
     Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*
16
     ("NCUDTPA").
17
          1848.   Defendants' acts and practices complained of herein were performed in the course
18
     of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C.
19
     Gen. Stat. § 75-1.1(b).
20
          1849.   The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting
21
     commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA
22
     provides a private right of action for any person injured "by reason of any act or thing done by any
23
     other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.
24
          1850.   In the course of their business, Defendants concealed and suppressed material facts
25
     concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for
26
     emissions testing that were different from production vehicles, (b) installing a secret software
27
     program that caused the vehicles to perform differently during emissions testing than on the road,
28

and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1851.  Plaintiff and North Carolina State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and North Carolina State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1852.  Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1853.  Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the North Carolina State Class.

1854.  Defendants knew or should have known that their conduct violated the NCUDTPA.

1855.  Defendants owed to Plaintiff and the North Carolina State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.    intentionally concealed the foregoing from regulators, Plaintiff, and North Carolina State Class members; and/or

C.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts from Plaintiff and the North Carolina State Class that contradicted these representations.

1856.  Defendants' concealment of the Class Vehicles' true fuel consumption and emissions were material to Plaintiff and the North Carolina State Class.

1857.  Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff and the North Carolina State

1  Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of

2  the Defendants' brands, the devaluing of environmental cleanliness and integrity at Defendant

3  companies, and the true value of the Class Vehicles.

4      1858.   Defendants' violations present a continuing risk to Plaintiff and the North Carolina

5  State Class, as well as to the general public. Defendants' unlawful acts and practices complained of

6  herein affect the public interest.

7      1859.   Plaintiff and North Carolina State Class members suffered ascertainable loss and

8  actual damages as a direct and proximate result of Defendants' misrepresentations and concealment

9  of and failure to disclose material information. Defendants had an ongoing duty to all their

10  customers to refrain from unfair and deceptive practices under the NCUDTPA. All owners of Class

11  Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and

12  practices made in the course of Defendants' business.

13      1860.   As a result of the foregoing wrongful conduct of Defendants, Plaintiff and the North

14  Carolina State Class has been damaged in an amount to be proven at trial, and seek all just and

15  proper remedies, including but not limited to treble damages, an order enjoining Defendants'

16  deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and

17  proper relief available under N.C. Gen. Stat. § 75-16.

18  **NORTH CAROLINA COUNT II:**
**Breach of Express Warranty**
19  **N.C.G.S.A. §§ 25-2-313 and 252A-210**
**(On Behalf of the North Carolina State Class)**
20

21      1861.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though

    fully set forth herein.
22

23      1862.   Plaintiff John Vorisek (for the purposes of this count, "Plaintiff") brings this claim

    on behalf of himself and the North Carolina State Class against all Defendants.
24

25      1863.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

    vehicles under N.C.G.S.A. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).
26

27      1864.   With respect to leases, Defendants are and were at all relevant times "lessors" of

    motor vehicles under N.C.G.S.A. § 25-2A-103(1)(p).
28

1865.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S.A. § 25-2-105(1) and N.C.G.S.A. § 25-2A-103(1)(h).

1866.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1867.   Defendants also made numerous representations, descriptions, and promises to Plaintiff and North Carolina State Class members regarding the performance and emission controls of their vehicles.

1868.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1869.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1870.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1871.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission

1   related parts, which fail to function or function improperly because of a defect in materials or

2   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

3   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

4   comes first.

5        1872.   As manufacturers of light-duty vehicles, Defendants were required to provide these

6   warranties to purchasers or lessees of Class Vehicles.

7        1873.   Defendants' warranties formed a basis of the bargain that was reached when

8   consumers purchased or leased Class Vehicles.

9        1874.   Despite the existence of warranties, Defendants failed to inform Plaintiff and North

10  Carolina State Class members that the Class Vehicles were defective and intentionally designed

11  and manufactured to emit more pollution and achieve worse fuel economy on the road than what

12  was disclosed to regulators and represented to consumers who purchased or leased them, and

13  Defendants failed to fix the defective emission components free of charge.

14       1875.   Defendants breached the express warranty promising to repair and correct

15  Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

16  have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

17       1876.   Affording Defendants a reasonable opportunity to cure their breach of written

18  warranties would be unnecessary and futile here.

19       1877.   Furthermore, the limited warranty promising to repair and correct Defendants'

20  defect in materials and workmanship fails in its essential purpose because the contractual remedy is

21  insufficient to make Plaintiff and North Carolina State Class members whole and because

22  Defendants have failed and/or have refused to adequately provide the promised remedies within a

23  reasonable time.

24       1878.   Accordingly, recovery by Plaintiff and North Carolina State Class members is not

25  restricted to the limited warranty promising to repair and correct Defendants' defect in materials

26  and workmanship, and they seek all remedies as allowed by law.

27       1879.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

28  leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

1   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

2   material facts regarding the Class Vehicles. Plaintiff and North Carolina State Class members were

3   therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

4       1880.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

5   through the limited remedy of repairing and correcting Defendants' defect in materials and

6   workmanship as many incidental and consequential damages have already been suffered because of

7   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

8   failure to provide such limited remedy within a reasonable time, and any limitation Plaintiff's and

9   on North Carolina State Class members' remedies would be insufficient to make them whole.

10      1881.   Finally, because of Defendants' breach of warranty as set forth herein, Plaintiff and

11  North Carolina State Class members assert, as additional and/or alternative remedies, the

12  revocation of acceptance of the goods and the return to them the purchase or lease price of all Class

13  Vehicles currently owned or leased, and for such other incidental and consequential damages as

14  allowed.

15      1882.   Defendants were provided reasonable notice of these issues by way of a letter sent

16  by Plaintiffs as well as the regulators' investigations.

17      1883.   As a direct and proximate result of Defendants' breach of express warranties,

18  Plaintiff and North Carolina State Class members have been damaged in an amount to be

19  determined at trial.

20                          **NORTH CAROLINA COUNT III:**
                     **Breach of Implied Warranty of Merchantability**
21                       **N.C.G.S.A. §§ 25-2-314 and 252A-212**
                       **(On Behalf of the North Carolina State Class)**
22

23      1884.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

24  paragraphs as though fully set forth herein.

25      1885.   Plaintiff John Vorisek (for the purposes of this count, "Plaintiff") brings this claim

26  on behalf of himself and the North Carolina State Class against all Defendants.

27      1886.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

28  vehicles under N.C.G.S.A. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).

1887.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.C.G.S.A. § 25-2A-103(1)(p).

1888.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S.A. § 25-2-105(1) and N.C.G.S.A. § 25-2A-103(1)(h).

1889.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C.G.S.A. § 25-2-314 and N.C.G.S.A. § 25-2A-212.

1890.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1891.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1892.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and North Carolina State Class members have been damaged in an amount to be proven at trial.

**NORTH DAKOTA COUNT I:**
**Violations of the North Dakota Consumer Fraud Act**
**N.D. Cent. Code § 51-15-02**
**(On Behalf of the North Dakota State Class)**

1893.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1894.   This count is brought on behalf of the North Dakota State Class against all Defendants.

1895.   North Dakota State Class members and Defendants are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

1896.   Defendants engaged in the "sale" of "merchandise" within the meaning of N.D. Cent Code § 51-15-02(3), (5).

CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-7473

1    1897.   The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful

2    "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense,

3    false promise, or misrepresentation, with the intent that others rely thereon in connection with the

4    sale or advertisement of any merchandise . . . ." N.D. Cent. Code § 51-15-02. As set forth above and

5    below, Defendants committed deceptive acts or practices, with the intent that North Dakota State

6    Class members rely thereon in connection with their purchase or lease of the Class Vehicles.

7    1898.   In the course of their business, Defendants concealed and suppressed material facts

8    concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

9    emissions testing that were different from production vehicles, (b) installing a secret software

10   program that caused the vehicles to perform differently during emissions testing than on the road,

11   and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

12   emissions tests when they in fact did not.

13   1899.   North Dakota State Class members had no way of discerning that Defendants'

14   representations were false and misleading because North Dakota State Class members did not have

15   access to Defendants' emissions certification test vehicles and Defendants' emissions-related

16   hardware and software was extremely sophisticated technology.

17   1900.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

18   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

19   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

20   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

21   transaction involving Class Vehicles has been supplied in accordance with a previous

22   representation when it has not.

23   1901.   Defendants intentionally and knowingly misrepresented material facts regarding the

24   Class Vehicles with intent to mislead the North Dakota State Class.

25   1902.   Defendants knew or should have known that their conduct violated the North

26   Dakota CFA.

27   1903.   Defendants owed the North Dakota State Class a duty to disclose the illegality and

28   public health risks, the true nature of the Class Vehicles, because Defendants:

1    A. possessed exclusive knowledge that they were manufacturing, selling, and

2 distributing vehicles throughout the United States that did not perform as advertised;

3    B. intentionally concealed the foregoing from regulators and North Dakota

4 State Class members; and/or

5    C. made incomplete representations about the Class Vehicles' fuel economy

6 and emissions while purposefully withholding material facts that contradicted these

7 representations.

8   1904. Defendants' concealment of the true characteristics of the Class Vehicles' fuel

9 consumption and emissions was material to the North Dakota State Class.

10   1905. Defendants' unfair or deceptive acts or practices were likely to and did in fact

11 deceive regulators and reasonable consumers, including the North Dakota State Class, about the

12 true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

13 brands, and the true value of the Class Vehicles.

14   1906. Defendants' violations present a continuing risk to the North Dakota State Class as

15 well as to the general public. Defendants' unlawful acts and practices complained of herein affect

16 the public interest.

17   1907. North Dakota State Class members suffered ascertainable loss and actual damages

18 as a direct and proximate result of Defendants' misrepresentations and concealment of and failure

19 to disclose material information. Defendants had an ongoing duty to all their customers to refrain

20 from unfair and deceptive practices under the North Dakota CFA. All owners of Class Vehicles

21 suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

22 in the course of Defendants' business.

23   1908. As a direct and proximate result of Defendants' violations of the North Dakota CFA,

24 North Dakota State Class members have suffered injury-in-fact and/or actual damage.

25   1909. North Dakota State Class members seek punitive damages against Defendants

26 because Defendants' conduct was egregious. Defendants' egregious conduct warrants punitive

27 damages.

28

1910.   Further, Defendants knowingly committed the conduct described above, and thus, under N.D. Cent. Code § 51-15-09, Defendants are liable to the North Dakota State Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiffs further seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

**NORTH DAKOTA COUNT II:**
**Breach of Express Warranty**
**N.D. Cent. Code §§ 41-02-30 and 41-02.1-19**
**(On Behalf of the North Dakota State Class)**

1911.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1912.   This count is brought on behalf of the North Dakota State Class against all Defendants.

1913.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.D. Cent. Code § 41-02.04(3) and "sellers" of motor vehicles under § 41-02-03(1)(d).

1914.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.D. Cent. Code § 41-02.1-03(1)(p).

1915.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.D. Cent. Code § 41-02-05(2) and N.D. Cent. Code § 41-02.1-03(1)(h).

1916.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1917.   Defendants also made numerous representations, descriptions, and promises to North Dakota State Class members regarding the performance and emission controls of their vehicles.

1918.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

1   time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

2   from defects in material and workmanship which would cause it not to meet those standards."

3       1919.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

4   federal emission control warranties: a "Performance Warranty" and a "Design and Defect

5   Warranty."

6       1920.   The EPA requires vehicle manufacturers to provide a Performance Warranty with

7   respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

8   their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

9   required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

10   whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

11   emission control components are covered for the first eight years or 80,000 miles (whichever

12   comes first). These major emission control components subject to the longer warranty include the

13   catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

14   device or computer.

15       1921.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

16   with respect to their vehicles' emission systems. Thus, Defendants also provide an express

17   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

18   Design and Defect Warranty required by the EPA covers repair of emission control or emission

19   related parts, which fail to function or function improperly because of a defect in materials or

20   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

21   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

22   comes first.

23       1922.   As manufacturers of light-duty vehicles, Defendants were required to provide these

24   warranties to purchasers or lessees of Class Vehicles.

25       1923.   Defendants' warranties formed a basis of the bargain that was reached when

26   consumers purchased or leased Class Vehicles.

27       1924.   Despite the existence of warranties, Defendants failed to inform North Dakota State

28   Class members that the Class Vehicles were defective and intentionally designed and manufactured

to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1925.   Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1926.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1927.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make North Dakota State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1928.   Accordingly, recovery by North Dakota State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1929.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. North Dakota State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1930.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on North Dakota State Class members' remedies would be insufficient to make them whole.

1931.   Finally, because of Defendants' breach of warranty as set forth herein, North Dakota State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1932.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1933.   As a direct and proximate result of Defendants' breach of express warranties, North Dakota State Class members have been damaged in an amount to be determined at trial.

**NORTH DAKOTA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**N.D. Cent. Code §§ 41-02-31 and 41-02.1-21**
**(On Behalf of the North Dakota State Class)**

1934.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1935.   This count is brought on behalf of the North Dakota State Class against all Defendants.

1936.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.D. Cent. Code § 41-02.04(3) and "sellers" of motor vehicles under § 41-02-03(1)(d).

1937.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.D. Cent. Code § 41-02.1-03(1)(p).

1938.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.D. Cent. Code § 41-02-05(2) and N.D. Cent. Code § 41-02.1-03(1)(h).

1939.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.D. Cent. Code § 41-02-31 and N.D. Cent. Code § 41-02.1-21.

1940.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1941.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1942.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, North Dakota State Class members have been damaged in an amount to be proven at trial.

**OHIO COUNT I:**
**Violations of the Ohio Consumer Sales Practices Act**
**Ohio Rev. Code § 1345.01** *et seq.*
**(On Behalf of the Ohio State Class)**

1943.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1944.   Plaintiff Christopher Allen (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Ohio State Class against all Defendants.

1945.   Defendants, Plaintiff and Ohio State Class members are "persons" within the meaning of Ohio Rev. Code § 1345.01(B). Defendants are a "supplier" as defined by Ohio Rev. Code § 1345.01(C).

1946.   Plaintiff and the Ohio State Class are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchase and leases of the Class Vehicles with the Defect Devices installed in them are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

1947.   Ohio Rev. Code § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Ohio CSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

1948.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software

- 280 -

1    program that caused the vehicles to perform differently during emissions testing than on the road,

2    and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

3    emissions tests when they in fact did not.

4        1949.   Plaintiff and Ohio State Class members had no way of discerning that Defendants'

5    representations were false and misleading because Plaintiff and Ohio State Class members did not

6    have access to Defendants' emissions certification test vehicles and Defendants' emissions-related

7    hardware and software was extremely sophisticated technology.

8        1950.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

9    have characteristics, uses, benefits, and qualities which they do not have; representing that Class

10   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

11   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

12   transaction involving Class Vehicles has been supplied in accordance with a previous

13   representation when it has not.

14       1951.   Defendants intentionally and knowingly misrepresented material facts regarding the

15   Class Vehicles with intent to mislead Plaintiff and the Ohio State Class.

16       1952.   Defendants knew or should have known that their conduct violated the Ohio CSPA.

17       1953.   The Ohio Attorney General has made available for public inspection prior state

18   court decisions which have held that the acts and omissions of Defendants in this Complaint,

19   including, but not limited to, the failure to honor both implied warranties and express warranties,

20   the making and distribution of false, deceptive, and/or misleading representations, and the

21   concealment and/or non-disclosure of a substantial defect, constitute deceptive sales practices in

22   violation of the CSPA. These cases include, but are not limited to, the following:

23           A.    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

24           B.    *State ex rel. Betty D. Montgomery v. Ford Motor Co.* (OPIF #10002123);

25           C.    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF

26       #10002025);

27           D.    *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573

28       (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

1        E.     *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525

2  (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

3        F.     *State ex rel. Jim Petro v. Craftmatic Organization, Inc*. (OPIF #10002347);

4        G.     *Cranford v. Joseph Airport Toyota, Inc*. (OPIF #10001586);

5        H.     *Brown v. Spears* (OPIF #10000403);

6        I.     *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

7        J.     *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326); and

8        K.     *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524).

9     1954.  Defendants owed Plaintiff and the Ohio State Class a duty to disclose the illegality

10  and public health risks, the true nature of the Class Vehicles, because Defendants:

11        L.     possessed exclusive knowledge that they were manufacturing, selling, and

12  distributing vehicles throughout the United States that did not perform as advertised;

13        M.     intentionally concealed the foregoing from regulators, Plaintiff, and Ohio

14  State Class members; and/or

15        N.     made incomplete representations about the Class Vehicles' fuel economy

16  and emissions while purposefully withholding material facts that contradicted these

17  representations.

18     1955.  Defendants' concealment of the true characteristics of the Class Vehicles' fuel

19  consumption and emissions was material to Plaintiff and the Ohio State Class.

20     1956.  Defendants' unfair or deceptive acts or practices were likely to and did in fact

21  deceive regulators and reasonable consumers, including Plaintiff and the Ohio State Class, about

22  the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the

23  Defendants' brands, and the true value of the Class Vehicles.

24     1957.  Defendants' violations present a continuing risk to Plaintiff and the Ohio State Class

25  as well as to the general public. Defendants' unlawful acts and practices complained of herein

26  affect the public interest.

27     1958.  Plaintiff and Ohio State Class members suffered ascertainable loss and actual

28  damages as a direct and proximate result of Defendants' misrepresentations and concealment of

CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-7473

and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Ohio CSPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1959.   Pursuant to Ohio Rev. Code § 1345.09, Plaintiff and the Ohio State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, actual damages - trebled, and attorneys' fees, costs, and any other just and proper relief, to the extend available under the Ohio CSPA.

**OHIO COUNT II:**
**Violations of the Ohio Deceptive Trade Practices Act**
**Ohio Rev. Code § 4165.01 *et seq.***
**(On Behalf of the Ohio State Class)**

1960.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1961.   Plaintiff Christopher Allen (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Ohio State Class against all Defendants.

1962.   Defendants, Plaintiff, and the Ohio State Class are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

1963.   Defendants engaged in "the course of [its] business" within the meaning of Ohio Rev. Code § 4165.02(A) with respect to the acts alleged herein.

1964.   The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . . (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods

1    are of a particular style or model, if they are of another; . . . [or] (11) Advertises goods or services

2    with intent not to sell them as advertised."

3         1965.   In the course of their business, Defendants concealed and suppressed material facts

4    concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

5    emissions testing that were different from production vehicles, (b) installing a secret software

6    program that caused the vehicles to perform differently during emissions testing than on the road,

7    and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

8    emissions tests when they in fact did not.

9         1966.   Plaintiff and Ohio State Class members had no way of discerning that Defendants'

10   representations were false and misleading because Plaintiff and Ohio State Class members did not

11   have access to Defendants' emissions certification test vehicles and Defendants' emissions-related

12   hardware and software was extremely sophisticated technology.

13        1967.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

14   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

15   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

16   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

17   transaction involving Class Vehicles has been supplied in accordance with a previous

18   representation when it has not.

19        1968.   Defendants intentionally and knowingly misrepresented material facts regarding the

20   Class Vehicles with intent to mislead Plaintiff and the Ohio State Class.

21        1969.   Defendants knew or should have known that their conduct violated the Ohio DTPA.

22        1970.   Defendants owed Plaintiff and the Ohio State Class a duty to disclose the illegality

23   and public health risks, the true nature of the Class Vehicles, because Defendants:

24            A.     possessed exclusive knowledge that they were manufacturing, selling, and

25        distributing vehicles throughout the United States that did not perform as advertised;

26            B.     intentionally concealed the foregoing from regulators, Plaintiff, and Ohio

27        State Class members; and/or

28

- 284 -

1    C.    made incomplete representations about the Class Vehicles' true fuel

2    consumption and emissions while purposefully withholding material facts that contradicted

3    these representations.

4    1971.  Defendants' concealment of the true characteristics of the Class Vehicles' fuel

5    consumption and emissions was material to Plaintiff and the Ohio State Class.

6    1972.  Defendants' unfair or deceptive acts or practices were likely to and did in fact

7    deceive regulators and reasonable consumers, including Plaintiff and the Ohio State Class, about

8    the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the

9    Defendants' brands, and the true value of the Class Vehicles.

10   1973.  Defendants' violations present a continuing risk to Plaintiff and the Ohio State

11   Class, as well as to the general public. Defendants' unlawful acts and practices complained of

12   herein affect the public interest.

13   1974.  Plaintiff and Ohio State Class members suffered ascertainable loss and actual

14   damages as a direct and proximate result of Defendants' misrepresentations and concealment of

15   and failure to disclose material information. Defendants had an ongoing duty to all their customers

16   to refrain from unfair and deceptive practices under the Ohio DTPA. All owners of Class Vehicles

17   suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

18   in the course of Defendants' business.

19   1975.  Pursuant to Ohio Rev. Code § 4165.03, Plaintiff and the Ohio State Class seek an

20   order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages,

21   and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

22                          **OHIO COUNT III:**
                          **Breach of Express Warranty**
23                **Ohio. Rev. Code § 1302.26, *et seq.* / U.C.C. § 2-313**
                          **(On Behalf of the Ohio State Class)**
24
25   1976.  Plaintiffs re-allege and incorporate by reference all preceding allegations as though

     fully set forth herein.
26
     1977.  Plaintiff Christopher Allen (for the purposes of this count, "Plaintiff") brings this
27
     claim on behalf of himself and the Ohio State Class against all Defendants.
28

2053816.1                              - 285 -                    CLASS ACTION COMPLAINT
                                                                 CASE NO.: 3:20-CV-7473

1       1978.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

2   vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles

3   under § 1302.01(4).

4       1979.   With respect to leases, Defendants are and were at all relevant times "lessors" of

5   motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

6       1980.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

7   Ohio Rev. Code §§ 1302.01(8), and 1310.01(A)(8).

8       1981.   In connection with the purchase or lease of each one of its new vehicles, Defendants

9   provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This

10  warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

11      1982.   Defendants also made numerous representations, descriptions, and promises

12  Plaintiff and to Ohio State Class members regarding the performance and emission controls of their

13  vehicles.

14      1983.   For example, Defendants included in the warranty booklets for some or all of the

15  Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

16  time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

17  from defects in material and workmanship which would cause it not to meet those standards."

18      1984.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

19  federal emission control warranties: a "Performance Warranty" and a "Design and Defect

20  Warranty."

21      1985.   The EPA requires vehicle manufacturers to provide a Performance Warranty with

22  respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

23  their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

24  required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

25  whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

26  emission control components are covered for the first eight years or 80,000 miles (whichever

27  comes first). These major emission control components subject to the longer warranty include the

28

1   catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

2   device or computer.

3        1986.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

4   with respect to their vehicles' emission systems. Thus, Defendants also provide an express

5   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

6   Design and Defect Warranty required by the EPA covers repair of emission control or emission

7   related parts, which fail to function or function improperly because of a defect in materials or

8   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

9   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

10  comes first.

11       1987.   As manufacturers of light-duty vehicles, Defendants were required to provide these

12  warranties to purchasers or lessees of Class Vehicles.

13       1988.   Defendants' warranties formed a basis of the bargain that was reached when

14  consumers purchased or leased Class Vehicles.

15       1989.   Despite the existence of warranties, Defendants failed to inform Plaintiff and Ohio

16  State Class members that the Class Vehicles were defective and intentionally designed and

17  manufactured to emit more pollution and achieve worse fuel economy on the road than what was

18  disclosed to regulators and represented to consumers who purchased or leased them, and

19  Defendants failed to fix the defective emission components free of charge.

20       1990.   Defendants breached the express warranty promising to repair and correct

21  Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

22  have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

23       1991.   Affording Defendants a reasonable opportunity to cure their breach of written

24  warranties would be unnecessary and futile here.

25       1992.   Furthermore, the limited warranty promising to repair and correct Defendants'

26  defect in materials and workmanship fails in its essential purpose because the contractual remedy is

27  insufficient to make Plaintiff and Ohio State Class members whole and because Defendants have

28  failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1993.   Accordingly, recovery by Plaintiff and Ohio State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1994.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiff and Ohio State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1995.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and Ohio State Class members' remedies would be insufficient to make them whole.

1996.   Finally, because of Defendants' breach of warranty as set forth herein, Plaintiff and Ohio State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1997.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

1998.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and Ohio State Class members have been damaged in an amount to be determined at trial.

**OHIO COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Ohio Rev. Code Ann. §§ 1302.27 and 1310.19**
**(On Behalf of the Ohio State Class)**

1999.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2000.   Plaintiff Christopher Allen (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Ohio State Class against all Defendants.

2001.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

2002.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

2003.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8), and 1310.01(A)(8).

2004.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

2005.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2006.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2007.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Ohio State Class members have been damaged in an amount to be proven at trial.

**OKLAHOMA COUNT I:**
**Violations of the Oklahoma Consumer Protection Act**
**Okla. Stat. Tit. 15 § 751 *et seq.***
**(On Behalf of the Oklahoma State Class)**

2008.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2009.   This count is brought on behalf of the Oklahoma State Class against all Defendants.

2010.   Defendants and the Oklahoma State Class are "persons" within the meaning of Okla. Stat. Tit. 15 § 752.1.

2011.   Defendants engaged in "the course of [its] business" within the meaning of Okla. Stat. Tit. 15 § 752.3 with respect to the acts alleged herein.

2012.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits, in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics . . ., uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." Okla. Stat. Tit. 753.

2013.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2014.   Oklahoma State Class members had no way of discerning that Defendants' representations were false and misleading because Oklahoma State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2015.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2016. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Oklahoma State Class.

2017. Defendants knew or should have known that their conduct violated the Oklahoma CPA.

2018. Defendants owed the Oklahoma State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      A. possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      B. intentionally concealed the foregoing from regulators and Oklahoma State Class members; and/or

      C. made incomplete representations about the Class Vehicles' true fuel consumption and emissions while purposefully withholding material facts that contradicted these representations.

2019. Defendants' concealment of the true characteristics of the Class Vehicles' true fuel consumption and emissions was material to the Oklahoma State Class.

2020. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Oklahoma State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2021. Defendants' violations present a continuing risk to the Oklahoma State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2022. Oklahoma State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Oklahoma CPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2023.   Pursuant to Okla. Stat. Tit. 15 § 761.1, the Oklahoma State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oklahoma CPA.

**OKLAHOMA COUNT II:**
**Breach of Express Warranty**
**Okla. Stat. Tit. 12 §§ 2-313 and 2A-210**
**(On Behalf of the Oklahoma State Class)**

2024.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2025.   This count is brought on behalf of the Oklahoma State Class against all Defendants.

2026.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

2027.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

2028.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

2029.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2030.   Defendants also made numerous representations, descriptions, and promises to Oklahoma State Class members regarding the performance and emission controls of their vehicles.

2031.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2032.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2033.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2034.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2035.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2036.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2037.   Despite the existence of warranties, Defendants failed to inform Oklahoma State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1    2038.   Defendants breached the express warranty promising to repair and correct

2    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

3    have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

4    2039.   Affording Defendants a reasonable opportunity to cure their breach of written

5    warranties would be unnecessary and futile here.

6    2040.   Furthermore, the limited warranty promising to repair and correct Defendants'

7    defect in materials and workmanship fails in its essential purpose because the contractual remedy is

8    insufficient to make Oklahoma State Class members whole and because Defendants have failed

9    and/or have refused to adequately provide the promised remedies within a reasonable time.

10   2041.   Accordingly, recovery by Oklahoma State Class members is not restricted to the

11   limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

12   and they seek all remedies as allowed by law.

13   2042.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

14   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

15   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

16   material facts regarding the Class Vehicles. Oklahoma State Class members were therefore induced

17   to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

18   2043.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

19   through the limited remedy of repairing and correcting Defendants' defect in materials and

20   workmanship as many incidental and consequential damages have already been suffered because of

21   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

22   failure to provide such limited remedy within a reasonable time, and any limitation on Oklahoma

23   State Class members' remedies would be insufficient to make them whole.

24   2044.   Finally, because of Defendants' breach of warranty as set forth herein, Oklahoma

25   State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

26   of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

27   or leased, and for such other incidental and consequential damages as allowed.

28

2045.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2046.   As a direct and proximate result of Defendants' breach of express warranties, Oklahoma State Class members have been damaged in an amount to be determined at trial.

**OKLAHOMA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Okla. Stat. Tit. 12A §§ 2-314 and 2A-212**
**(On Behalf of the Oklahoma State Class)**

2047.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2048.   This count is brought on behalf of the Oklahoma State Class against all Defendants.

2049.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

2050.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

2051.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

2052.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Okla. Stat. Tit. 12A §§ 2-314 and 2A-212.

2053.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2054.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2055.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Oklahoma State Class members have been damaged in an amount to be proven at trial.

**OREGON COUNT I:**
**Violations of the Oregon Unlawful Trade Practices Act**
**Or. Rev. Stat. § 646.605, *et seq.***
**(On Behalf of the Oregon State Class)**

2056.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2057.   This count is brought on behalf of the Oregon State Class against all Defendants.

2058.   Defendants and the Oregon State Class are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

2059.   Defendants are engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

2060.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or deceptive acts conduct in trade or commerce . . . ." Or. Rev. Stat. § 646.608(1).

2061.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2062.   Oregon State Class members had no way of discerning that Defendants' representations were false and misleading because State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2063.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

1    Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

2    transaction involving Class Vehicles has been supplied in accordance with a previous

3    representation when it has not.

4        2064.   Defendants intentionally and knowingly misrepresented material facts regarding the

5    Class Vehicles with intent to mislead the Oregon State Class.

6        2065.   Defendants knew or should have known that their conduct violated the Oregon

7    UTPA.

8        2066.   Defendants owed the Oregon State Class a duty to disclose the illegality and public

9    health risks, the true nature of the Class Vehicles, because Defendants:

10           A.      possessed exclusive knowledge that they were manufacturing, selling, and

11       distributing vehicles throughout the United States that did not perform as advertised;

12           B.      intentionally concealed the foregoing from regulators and Oregon State

13       Class members; and/or

14           C.      made incomplete representations about the Class Vehicles' fuel economy

15       and emissions while purposefully withholding material facts that contradicted these

16       representations.

17       2067.   Defendants' concealment of the Class Vehicles' true fuel consumption and

18   emissions were material to the Oregon State Class.

19       2068.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

20   deceive regulators and reasonable consumers, including the Oregon State Class, about the true

21   environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants'

22   brands, and the true value of the Class Vehicles.

23       2069.   Defendants' violations present a continuing risk to the Oregon State Class as well as

24   to the general public. Defendants' unlawful acts and practices complained of herein affect the

25   public interest.

26       2070.   Oregon State Class members suffered ascertainable loss and actual damages as a

27   direct and proximate result of Defendants' misrepresentations and concealment of and failure to

28   disclose material information. Defendants had an ongoing duty to all their customers to refrain

from unfair and deceptive practices under the Oregon UTPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2071.   Pursuant to Or. Rev. Stat. § 646.638, the Oregon State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

**OREGON COUNT II:**
**Breach of Express Warranty**
**Or. Rev. Stat. §§ 72.3130 and 72A.2100**
**(On Behalf of the Oregon State Class)**

2072.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2073.   This count is brought on behalf of the Oregon State Class against all Defendants.

2074.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles under § 72.1030(1)(d).

2075.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p).

2076.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

2077.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2078.   Defendants also made numerous representations, descriptions, and promises to Oregon State Class members regarding the performance and emission controls of their vehicles.

2079.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

- 298 -

1    2080.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

2    federal emission control warranties: a "Performance Warranty" and a "Design and Defect

3    Warranty."

4    2081.   The EPA requires vehicle manufacturers to provide a Performance Warranty with

5    respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

6    their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

7    required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

8    whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

9    emission control components are covered for the first eight years or 80,000 miles (whichever

10   comes first). These major emission control components subject to the longer warranty include the

11   catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

12   device or computer.

13   2082.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

14   with respect to their vehicles' emission systems. Thus, Defendants also provide an express

15   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

16   Design and Defect Warranty required by the EPA covers repair of emission control or emission

17   related parts, which fail to function or function improperly because of a defect in materials or

18   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

19   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

20   comes first.

21   2083.   As manufacturers of light-duty vehicles, Defendants were required to provide these

22   warranties to purchasers or lessees of Class Vehicles.

23   2084.   Defendants' warranties formed a basis of the bargain that was reached when

24   consumers purchased or leased Class Vehicles.

25   2085.   Despite the existence of warranties, Defendants failed to inform Oregon State Class

26   members that the Class Vehicles were defective and intentionally designed and manufactured to

27   emit more pollution and achieve worse fuel economy on the road than what was disclosed to

28

1  regulators and represented to consumers who purchased or leased them, and Defendants failed to

2  fix the defective emission components free of charge.

3       2086.   Defendants breached the express warranty promising to repair and correct

4  Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

5  have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

6       2087.   Affording Defendants a reasonable opportunity to cure their breach of written

7  warranties would be unnecessary and futile here.

8       2088.   Furthermore, the limited warranty promising to repair and correct Defendants'

9  defect in materials and workmanship fails in its essential purpose because the contractual remedy is

10 insufficient to make Oregon State Class members whole and because Defendants have failed and/or

11 have refused to adequately provide the promised remedies within a reasonable time.

12      2089.   Accordingly, recovery by Oregon State Class members is not restricted to the

13 limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

14 and they seek all remedies as allowed by law.

15      2090.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

16 leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

17 conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

18 material facts regarding the Class Vehicles. Oregon State Class members were therefore induced to

19 purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

20      2091.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

21 through the limited remedy of repairing and correcting Defendants' defect in materials and

22 workmanship as many incidental and consequential damages have already been suffered because of

23 Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

24 failure to provide such limited remedy within a reasonable time, and any limitation on Oregon State

25 Class members' remedies would be insufficient to make them whole.

26      2092.   Finally, because of Defendants' breach of warranty as set forth herein, Oregon State

27 Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the

28

1   goods and the return to them the purchase or lease price of all Class Vehicles currently owned or

2   leased, and for such other incidental and consequential damages as allowed.

3       2093.   Defendants were provided reasonable notice of these issues by way of a letter sent

4   by Plaintiffs as well as the regulators' investigations.

5       2094.   As a direct and proximate result of Defendants' breach of express warranties,

6   Oregon State Class members have been damaged in an amount to be determined at trial.

7                              **OREGON COUNT III:**
                    **Breach of Implied Warranty of Merchantability**
8                     **Or. Rev. Stat. §§ 72.3140 and 72A.2120**
                       **(On Behalf of the Oregon State Class)**
9
        2095.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding
10
    paragraphs as though fully set forth herein.
11
        2096.   This count is brought on behalf of the Oregon State Class against all Defendants.
12
        2097.   Defendants are and were at all relevant times "merchant[s]" with respect to motor
13
    vehicles under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles
14
    under § 72.1030(1)(d).
15
        2098.   With respect to leases, Defendants are and were at all relevant times "lessors" of
16
    motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p).
17
        2099.   The Class Vehicles are and were at all relevant times "goods" within the meaning of
18
    Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).
19
        2100.   A warranty that the Class Vehicles were in merchantable condition and fit for the
20
    ordinary purpose for which vehicles are used is implied by law pursuant to Or. Rev. Stat.
21
    §§ 72.3140 and 72A-2120.
22
        2101.   These Class Vehicles, when sold or leased and at all times thereafter, were
23
    materially different from vehicles Defendants submitted for emissions testing, included software
24
    that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with
25
    emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the
26
    ordinary purpose for which vehicles are used.
27

28

2102.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2103.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Oregon State Class members have been damaged in an amount to be proven at trial.

**PENNSYLVANIA COUNT I:**
**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 P.S. § 201-1 *et seq.***
**(On Behalf of the Pennsylvania State Class)**

2104.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

2105.   This count is brought on behalf of the Pennsylvania State Class against all Defendants.

2106.   Defendants and the Pennsylvania State Class are "persons" within the meaning of 73 P.S. § 201-2(2).

2107.   Defendants engaged in "trade" or "commerce" within the meaning of 73 P.S. § 201-2(3).

2108.   The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201 3.

2109.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2110.   Pennsylvania State Class members had no way of discerning that Defendants' representations were false and misleading because Pennsylvania State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2111.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2112.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Pennsylvania State Class.

2113.   Defendants knew or should have known that their conduct violated the Pennsylvania UTPA.

2114.   Defendants owed the Pennsylvania State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    B.    intentionally concealed the foregoing from regulators and Pennsylvania State Class members; and/or

    C.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2115.   Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Pennsylvania State Class.

2116.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Pennsylvania State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2117.   Defendants' violations present a continuing risk to the Pennsylvania State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2118.   Pennsylvania State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2119.   As a direct and proximate result of Defendants' violations of the Pennsylvania UTPA, Pennsylvania State Class members have suffered injury-in-fact and/or actual damage.

2120.   Pursuant to 73 P.S. § 201-9.2(a), the Pennsylvania State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

**PENNSYLVANIA COUNT II:**
**Breach of Express Warranty**
**13. Pa. Cons. Stat. §§ 2313 and 2A210**
**(On Behalf of the Pennsylvania State Class)**

2121.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2122.   This count is brought on behalf of the Pennsylvania State Class against all Defendants.

2123.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

2124.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

2125.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

2126.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2127.   Defendants also made numerous representations, descriptions, and promises to Pennsylvania State Class members regarding the performance and emission controls of their vehicles.

2128.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2129.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2130.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2131.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2132.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2133.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2134.   Despite the existence of warranties, Defendants failed to inform Pennsylvania State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2135.   Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2136.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2137.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Pennsylvania State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2138.   Accordingly, recovery by Pennsylvania State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2139.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Pennsylvania State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2140.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and

1   workmanship as many incidental and consequential damages have already been suffered because of

2   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

3   failure to provide such limited remedy within a reasonable time, and any limitation on the

4   Pennsylvania State Class members' remedies would be insufficient to make them whole.

5       2141.   Finally, because of Defendants' breach of warranty as set forth herein, Pennsylvania

6   State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

7   of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

8   or leased, and for such other incidental and consequential damages as allowed.

9       2142.   Defendants were provided reasonable notice of these issues by way of a letter sent

10   by Plaintiffs as well as the regulators' investigations.

11       2143.   As a direct and proximate result of Defendants' breach of express warranties,

12   Pennsylvania State Class members have been damaged in an amount to be determined at trial.

**PENNSYLVANIA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**13. Pa. Cons. Stat. §§ 2314 and 2A212**
**(On Behalf of the Pennsylvania State Class)**

2144.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

paragraphs as though fully set forth herein.

2145.   This count is brought on behalf of the Pennsylvania State Class against all

Defendants.

2146.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under

§ 2103(a).

2147.   With respect to leases, Defendants are and were at all relevant times "lessors" of

motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

2148.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

2149.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

2150.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2151.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2152.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Pennsylvania State Class members have been damaged in an amount to be proven at trial.

**RHODE ISLAND COUNT I:**
**Violations of the Rhode Island Deceptive Trade Practices and Consumer Protection Law**
**R.I. Gen. Laws § 6-13.1 *et seq.***
**(On Behalf of the Rhode Island State Class)**

2153.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2154.   This count is brought on behalf of the Rhode Island State Class against all Defendants.

2155.   Defendants, the Rhode Island State Class are "persons" within the meaning of R.I. Gen. Laws § 6-13.1-1(3).

2156.   Defendants are engaged in "trade" or "commerce" within the meaning of R.I. Gen. Laws § 6-13.1-1(5).

2157.   The Rhode Island Deceptive Trade Practices Act ("Rhode Island DTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: (v) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) [r]epresenting that goods or services are of a

1    particular standard, quality, or grade . . ., if they are of another"; (ix) [a]dvertising goods or services

2    with intent not to sell them as advertised"; "(xiii) [u]sing any other methods, acts or practices which

3    mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1(6).

4          2158.   In the course of their business, Defendants concealed and suppressed material facts

5    concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

6    emissions testing that were different from production vehicles, (b) installing a secret software

7    program that caused the vehicles to perform differently during emissions testing than on the road,

8    and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

9    emissions tests when they in fact did not.

10         2159.   Rhode Island State Class members had no way of discerning that Defendants'

11   representations were false and misleading because Rhode Island State Class members did not have

12   access to Defendants' emissions certification test vehicles and Defendants' emissions-related

13   hardware and software was extremely sophisticated technology.

14         2160.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

15   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

16   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

17   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

18   transaction involving Class Vehicles has been supplied in accordance with a previous

19   representation when it has not.

20         2161.   Defendants intentionally and knowingly misrepresented material facts regarding the

21   Class Vehicles with intent to mislead the Rhode Island State Class.

22         2162.   Defendants knew or should have known that their conduct violated the Rhode Island

23   DTPA.

24         2163.   Defendants owed the Rhode Island State Class a duty to disclose the illegality and

25   public health risks, the true nature of the Class Vehicles, because Defendants:

26               A.      possessed exclusive knowledge that they were manufacturing, selling, and

27          distributing vehicles throughout the United States that did not perform as advertised;

28

1              B.       intentionally concealed the foregoing from regulators and Rhode Island

2       State Class members; and/or

3              C.       made incomplete representations about the Class Vehicles' fuel economy

4       and emissions while purposefully withholding material facts that contradicted these

5       representations.

6       2164.   Defendants' concealment of the Class Vehicles' true fuel consumption and

7 emissions was material to the Rhode Island State Class.

8       2165.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

9 deceive regulators and reasonable consumers, including the Rhode Island State Class, about the

10 true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the

11 Defendants' brands, and the true value of the Class Vehicles.

12       2166.   Defendants' violations present a continuing risk to the Rhode Island State Class as

13 well as to the general public. Defendants' unlawful acts and practices complained of herein affect

14 the public interest.

15       2167.   Rhode Island State Class members suffered ascertainable loss and actual damages

16 as a direct and proximate result of Defendants' misrepresentations and concealment of and failure

17 to disclose material information. Defendants had an ongoing duty to all their customers to refrain

18 from unfair and deceptive practices under the Rhode Island DTPA. All owners of Class Vehicles

19 suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

20 in the course of Defendants' business.

21       2168.   The Rhode Island State Class is entitled to recover the greater of actual damages or

22 $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a). The Rhode Island State Class is also entitled to

23 punitive damages because Defendants engaged in conduct amounting to a particularly aggravated,

24 deliberate disregard of the rights of others.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RHODE ISLAND COUNT II:**
**Breach of Express Warranty**
**6A R.I. Gen. Laws §§ 6A-2-313 and 6A-2.1-210**
**(On Behalf of the Rhode Island State Class)**

2169.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2170.    This count is brought on behalf of the Rhode Island State Class against all Defendants.

2171.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6A R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of motor vehicles under § 6A-2-103(a)(4).

2172.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6A R.I. Gen. Laws § 6A-2.1-103(1)(p).

2173.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 6A R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

2174.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2175.    Defendants also made numerous representations, descriptions, and promises to Rhode Island State Class members regarding the performance and emission controls of their vehicles.

2176.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2177.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2053816.1

- 311 -

2178.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2179.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2180.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2181.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2182.   Despite the existence of warranties, Defendants failed to inform Rhode Island State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1      2183.   Defendants breached the express warranty promising to repair and correct

2  Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

3  have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

4      2184.   Affording Defendants a reasonable opportunity to cure their breach of written

5  warranties would be unnecessary and futile here.

6      2185.   Furthermore, the limited warranty promising to repair and correct Defendants'

7  defect in materials and workmanship fails in its essential purpose because the contractual remedy is

8  insufficient to make Rhode Island State Class members whole and because Defendants have failed

9  and/or have refused to adequately provide the promised remedies within a reasonable time.

10      2186.   Accordingly, recovery by Rhode Island State Class members is not restricted to the

11  limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

12  and they seek all remedies as allowed by law.

13      2187.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

14  leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

15  conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

16  material facts regarding the Class Vehicles. Rhode Island State Class members were therefore

17  induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

18      2188.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

19  through the limited remedy of repairing and correcting Defendants' defect in materials and

20  workmanship as many incidental and consequential damages have already been suffered because of

21  Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

22  failure to provide such limited remedy within a reasonable time, and any limitation on Rhode Island

23  State Class members' remedies would be insufficient to make them whole.

24      2189.   Finally, because of Defendants' breach of warranty as set forth herein, Rhode Island

25  State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

26  of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

27  or leased, and for such other incidental and consequential damages as allowed.

28

2190.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2191.   As a direct and proximate result of Defendants' breach of express warranties, Rhode Island State Class members have been damaged in an amount to be determined at trial.

**RHODE ISLAND COUNT III:**
**Breach of Implied Warranty of Merchantability**
**6A R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212**
**(On Behalf of the Rhode Island State Class)**

2192.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2193.   This count is brought on behalf of the Rhode Island State Class against all Defendants.

2194.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6A R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of motor vehicles under § 6A-2-103(a)(4).

2195.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6A R.I. Gen. Laws § 6A-2.1-103(1)(p).

2196.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 6A R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

2197.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6A R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212.

2198.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2199.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2200.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Rhode Island State Class members have been damaged in an amount to be proven at trial.

**SOUTH CAROLINA COUNT I:**
**Violations of the South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. § 39-5-10 *et seq.***
**(On Behalf of the South Carolina State Class)**

2201.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2202.   This count is brought on behalf of the South Carolina State Class against all Defendants.

2203.   Defendants and the South Carolina State Class are "persons" within the meaning of S.C. Code § 39-5-10(a).

2204.   Defendants are engaged in "trade" or "commerce" within the meaning of S.C. Code § 39-5-10(b).

2205.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a).

2206.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2207.   South Carolina State Class members had no way of discerning that Defendants' representations were false and misleading because South Carolina State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1    2208.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

2    have characteristics, uses, benefits, and qualities which they do not have; representing that Class

3    Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

4    Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

5    transaction involving Class Vehicles has been supplied in accordance with a previous

6    representation when it has not.

7    2209.   Defendants intentionally and knowingly misrepresented material facts regarding the

8    Class Vehicles with intent to mislead the South Carolina State Class.

9    2210.   Defendants knew or should have known that their conduct violated the South

10   Carolina UTPA.

11   2211.   Defendants owed the South Carolina State Class a duty to disclose the illegality and

12   public health risks, the true nature of the Class Vehicles, because Defendants:

13           A.    possessed exclusive knowledge that they were manufacturing, selling, and

14           distributing vehicles throughout the United States that did not perform as advertised;

15           B.    intentionally concealed the foregoing from regulators and South Carolina

16           State Class members; and/or

17           C.    made incomplete representations about the Class Vehicles' fuel economy

18           and emissions while purposefully withholding material facts that contradicted these

19           representations.

20   2212.   Defendants' concealment of the Class Vehicles' true fuel consumption and

21   emissions was material to the South Carolina State Class.

22   2213.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

23   deceive regulators and reasonable consumers, including the South Carolina State Class, about the

24   true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

25   brands, and the true value of the Class Vehicles.

26   2214.   Defendants' violations present a continuing risk to the South Carolina Class as well

27   as to the general public. Defendants' unlawful acts and practices complained of herein affect the

28   public interest.

2215.   South Carolina State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the South Carolina UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2216.   Pursuant to S.C. Code § 39-5-140(a), the South Carolina State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the South Carolina UTPA.

**SOUTH CAROLINA COUNT II:**
**Violations of the South Carolina Regulation of Manufacturers, Distributors, & Dealers Act**
**S.C. Code Ann. § 56-15-10 *et seq.***
**(On Behalf of the South Carolina State Class)**

2217.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

2218.   This count is brought on behalf of the South Carolina State Class against all Defendants.

2219.   Defendants are "manufacturer[s]" as set forth in S.C. Code Ann. § 56-15-10, as it is engaged in the business of manufacturing or assembling new and unused motor vehicles.

2220.   Defendants committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. Code Ann. § 56-15-30.

2221.   Defendants engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to the South Carolina State Class and to the public.

2222.   Defendants' bad faith and unconscionable actions include, but are not limited to: (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, (4) representing

1   that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations

2   which it does not, and (5) representing that the subject of a transaction involving Class Vehicles has

3   been supplied in accordance with a previous representation when it has not.

4       2223.   Defendants resorted to and used false and misleading advertisements in connection

5   with their business. As alleged above, Defendants made numerous material statements about the

6   efficiency and reliability of the Class Vehicles that were either false or misleading. Each of these

7   statements contributed to the deceptive context of Defendants' unlawful advertising and

8   representations as a whole.

9       2224.   Pursuant to S.C. Code Ann. § 56-15-110(2), Plaintiffs bring this action on behalf of

10   themselves and the South Carolina State Class, as the action is one of common or general interest to

11   many persons and the parties are too numerous to bring them all before the court.

12       2225.   The South Carolina State Class is entitled to double their actual damages, the cost of

13   the suit, attorney's fees pursuant to S.C. Code Ann. § 56-15-110. Plaintiffs also seek injunctive

14   relief under S.C. Code Ann. § 56-15-110.

**SOUTH CAROLINA COUNT III:**
**Breach of Express Warranty**
**S.C. Code §§ 36-2-313 and 36-2A-210**
**(On Behalf of the South Carolina State Class)**

18       2226.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though
    fully set forth herein.

20       2227.   This count is brought on behalf of the South Carolina State Class against all
    Defendants.

22       2228.   Defendants are and were at all relevant times "merchant[s]" with respect to motor
    vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles
    under § 36-2-103(1)(d).

25       2229.   With respect to leases, Defendants are and were at all relevant times "lessors" of
    motor vehicles under S.C. Code § 36-2A-103(1)(p).

27       2230.   The Class Vehicles are and were at all relevant times "goods" within the meaning of
    S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

2231.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2232.   Defendants also made numerous representations, descriptions, and promises to South Carolina State Class members regarding the performance and emission controls of their vehicles.

2233.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2234.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2235.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2236.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

1    first, or, for the major emission control components, for eight years or 80,000 miles, whichever

2    comes first.

3          2237.   As manufacturers of light-duty vehicles, Defendants were required to provide these

4    warranties to purchasers or lessees of Class Vehicles.

5          2238.   Defendants' warranties formed a basis of the bargain that was reached when

6    consumers purchased or leased Class Vehicles.

7          2239.   Despite the existence of warranties, Defendants failed to inform South Carolina

8    State Class members that the Class Vehicles were defective and intentionally designed and

9    manufactured to emit more pollution and achieve worse fuel economy on the road than what was

10   disclosed to regulators and represented to consumers who purchased or leased them, and

11   Defendants failed to fix the defective emission components free of charge.

12         2240.   Defendants breached the express warranty promising to repair and correct

13   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

14   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

15         2241.   Affording Defendants a reasonable opportunity to cure their breach of written

16   warranties would be unnecessary and futile here.

17         2242.   Furthermore, the limited warranty promising to repair and correct Defendants'

18   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

19   insufficient to make South Carolina State Class members whole and because Defendants have

20   failed and/or have refused to adequately provide the promised remedies within a reasonable time.

21         2243.   Accordingly, recovery by South Carolina State Class members is not restricted to

22   the limited warranty promising to repair and correct Defendants' defect in materials and

23   workmanship, and they seek all remedies as allowed by law.

24         2244.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

25   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

26   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

27   material facts regarding the Class Vehicles. South Carolina State Class members were therefore

28   induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2245.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on South Carolina State Class members' remedies would be insufficient to make them whole.

2246.   Finally, because of Defendants' breach of warranty as set forth herein, South Carolina State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2247.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2248.   As a direct and proximate result of Defendants' breach of express warranties, South Carolina State Class members have been damaged in an amount to be determined at trial.

### SOUTH CAROLINA COUNT IV:
**Breach of Implied Warranty of Merchantability**
**S.C. Code §§ 36-2-314 and 36-2A-212**
**(On Behalf of the South Carolina State Class)**

2249.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2250.   This count is brought on behalf of the South Carolina State Class against all Defendants.

2251.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-2-103(1)(d).

2252.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.C. Code § 36-2A-103(1)(p).

2253.   The Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

2254.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to S.C. Code §§ 36-2-314 and 36-2A-212.

2255.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2256.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2257.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, South Carolina State Class members have been damaged in an amount to be proven at trial.

**SOUTH DAKOTA COUNT I:**
**Violations of the South Dakota Deceptive Trade Practices and Consumer Protection Law**
**S.D. Codified Laws § 37-24-6**
**(On Behalf of the South Dakota State Class)**

2258.   Plaintiffs re-allege incorporate by reference each preceding paragraph as though fully set forth herein.

2259.   This count is brought on behalf of the South Dakota State Class against all Defendants.

2260.   Defendants and the South Dakota State Class are "persons" within the meaning of S.D. Codified Laws § 37-24-1(8).

2261.   Defendants are engaged in "trade" or "commerce" within the meaning of S.D. Codified Laws § 37-24-1(13).

2262.   The South Dakota Deceptive Trade Practices and Consumer Protection ("South Dakota CPA") prohibits "deceptive acts or practices, which are defined to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with

1    the sale or advertisement of any merchandise, regardless of whether any person has in fact been

2    misled, deceived, or damaged thereby." S.D. Codified Laws § 37-24-6(1).

3          2263.   In the course of their business, Defendants concealed and suppressed material facts

4    concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

5    emissions testing that were different from production vehicles, (b) installing a secret software

6    program that caused the vehicles to perform differently during emissions testing than on the road,

7    and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

8    emissions tests when they in fact did not.

9          2264.   South Dakota State Class members had no way of discerning that Defendants'

10   representations were false and misleading because South Dakota State Class members did not have

11   access to Defendants' emissions certification test vehicles and Defendants' emissions-related

12   hardware and software was extremely sophisticated technology.

13         2265.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

14   have characteristics, uses, benefits, and qualities which they do not have; representing that Class

15   Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

16   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

17   transaction involving Class Vehicles has been supplied in accordance with a previous

18   representation when it has not.

19         2266.   Defendants intentionally and knowingly misrepresented material facts regarding the

20   Class Vehicles with intent to mislead the South Dakota State Class.

21         2267.   Defendants knew or should have known that their conduct violated the South

22   Dakota CPA.

23         2268.   Defendants owed the South Dakota State Class a duty to disclose the illegality and

24   public health risks, the true nature of the Class Vehicles, because Defendants:

25               A.     possessed exclusive knowledge that they were manufacturing, selling, and

26   distributing vehicles throughout the United States that did not perform as advertised;

27               B.     intentionally concealed the foregoing from regulators and South Dakota

28   State Class members; and/or

C.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2269.  Defendants' concealment of the Class Vehicles' true fuel consumption and emissions were material to the South Dakota State Class.

2270.  Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the South Dakota State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2271.  Defendants' violations present a continuing risk to the South Dakota Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2272.  South Dakota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the South Dakota CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2273.  Pursuant to S.D. Codified Laws § 37-24-31, the South Dakota State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the South Dakota CPA.

**SOUTH DAKOTA COUNT II:**
**Breach of Express Warranty**
**S.D. Codified Laws §§ 57A-2-313 and 57-2A-210**
**(On Behalf of the South Dakota State Class)**

2274.  Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2275.   This count is brought on behalf of the South Dakota State Class against all Defendants.

2276.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under S.D. Codified Laws §§ 57A-104(1) and 57A-2A-103(1)(t), and "sellers" of motor vehicles under § 57A-104(1)(d).

2277.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

2278.   The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

2279.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2280.   Defendants also made numerous representations, descriptions, and promises to South Dakota State Class members regarding the performance and emission controls of their vehicles.

2281.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2282.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2283.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever

1    comes first). These major emission control components subject to the longer warranty include the

2    catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

3    device or computer.

4          2284.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

5    with respect to their vehicles' emission systems. Thus, Defendants also provide an express

6    warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

7    Design and Defect Warranty required by the EPA covers repair of emission control or emission

8    related parts, which fail to function or function improperly because of a defect in materials or

9    workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

10   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

11   comes first.

12         2285.   As manufacturers of light-duty vehicles, Defendants were required to provide these

13   warranties to purchasers or lessees of Class Vehicles.

14         2286.   Defendants' warranties formed a basis of the bargain that was reached when

15   consumers purchased or leased Class Vehicles.

16         2287.   Despite the existence of warranties, Defendants failed to inform South Dakota State

17   Class members that the Class Vehicles were defective and intentionally designed and manufactured

18   to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

19   regulators and represented to consumers who purchased or leased them, and Defendants failed to

20   fix the defective emission components free of charge.

21         2288.   Defendants breached the express warranty promising to repair and correct

22   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

23   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

24         2289.   Affording Defendants a reasonable opportunity to cure their breach of written

25   warranties would be unnecessary and futile here.

26         2290.   Furthermore, the limited warranty promising to repair and correct Defendants'

27   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

28

1    insufficient to make South Dakota State Class members whole and because Defendants have failed

2    and/or have refused to adequately provide the promised remedies within a reasonable time.

3        2291.   Accordingly, recovery by the South Dakota State Class members is not restricted to

4    the limited warranty promising to repair and correct Defendants' defect in materials and

5    workmanship, and they seek all remedies as allowed by law.

6        2292.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

7    leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

8    conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

9    material facts regarding the Class Vehicles. South Dakota State Class members were therefore

10   induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

11       2293.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

12   through the limited remedy of repairing and correcting Defendants' defect in materials and

13   workmanship as many incidental and consequential damages have already been suffered because of

14   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

15   failure to provide such limited remedy within a reasonable time, and any limitation on South

16   Dakota State Class members' remedies would be insufficient to make them whole.

17       2294.   Finally, because of Defendants' breach of warranty as set forth herein, South Dakota

18   State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

19   of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

20   or leased, and for such other incidental and consequential damages as allowed.

21       2295.   Defendants were provided reasonable notice of these issues by way of a letter sent

22   by Plaintiffs as well as the regulators' investigations.

23       2296.   As a direct and proximate result of Defendants' breach of express warranties, South

24   Dakota State Class members have been damaged in an amount to be determined at trial.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SOUTH DAKOTA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**S.D. Codified Laws §§ 57A-2-314 and 57-2A-212**
**(On Behalf of the South Dakota State Class)**

2297.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2298.   This count is brought on behalf of the South Dakota State Class against all Defendants.

2299.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under S.D. Codified Laws §§ 57A-104(1) and 57A-2A-103(1)(t), and "sellers" of motor vehicles under § 57A-104(1)(d).

2300.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

2301.   The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

2302.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.

2303.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2304.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2305.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, South Dakota State Class members have been damaged in an amount to be proven at trial.

1

2

**TENNESSEE COUNT I:**
**Violations of the Tennessee Consumer Protection Act**
**Tenn. Code Ann. § 47-18-101 *et seq.***
**(On Behalf of the Tennessee State Class)**

3

4

2306.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though

fully set forth herein.

5

6

2307.   This count is brought on behalf of the Tennessee State Class against all Defendants.

2308.   Tennessee State Class members are "natural persons" and "consumers" within the

7

meaning of Tenn. Code § 47-18-103(2). Defendants are "person[s]" within the meaning of Tenn.

8

Code § 47-18-103(9).

9

10

2309.   Defendants are engaged in "trade" or "commerce" or "consumer transactions"

within the meaning Tenn. Code § 47-18-103(9).

11

12

2310.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or

deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code

13

§ 47-18-104.

14

15

2311.   In the course of their business, Defendants concealed and suppressed material facts

concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

16

emissions testing that were different from production vehicles, (b) installing a secret software

17

program that caused the vehicles to perform differently during emissions testing than on the road,

18

and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

19

emissions tests when they in fact did not.

20

21

2312.   Tennessee State Class members had no way of discerning that Defendants'

representations were false and misleading because Tennessee State Class members did not have

22

access to Defendants' emissions certification test vehicles and Defendants' emissions-related

23

hardware and software was extremely sophisticated technology.

24

2313.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

25

have characteristics, uses, benefits, and qualities which they do not have; representing that Class

26

Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

27

Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

28

1    transaction involving Class Vehicles has been supplied in accordance with a previous

2    representation when it has not.

3         2314.   Defendants intentionally and knowingly misrepresented material facts regarding the

4    Class Vehicles with intent to mislead the Tennessee State Class.

5         2315.   Defendants knew or should have known that their conduct violated the Tennessee

6    CPA.

7         2316.   Defendants owed the Tennessee State Class a duty to disclose the illegality and

8    public health risks, the true nature of the Class Vehicles, because Defendants:

9              A.    possessed exclusive knowledge that they were manufacturing, selling, and

10             distributing vehicles throughout the United States that did not perform as advertised;

11             B.    intentionally concealed the foregoing from regulators and Tennessee State

12             Class members; and/or

13             C.    made incomplete representations about the Class Vehicles' fuel economy

14             and emissions while purposefully withholding material facts that contradicted these

15             representations.

16        2317.   Defendants' concealment of the true characteristics of the Class Vehicles' fuel

17   consumption and emissions was material to the Tennessee State Class.

18        2318.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

19   deceive regulators and reasonable consumers, including the Tennessee State Class, about the true

20   environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

21   brands, and the true value of the Class Vehicles.

22        2319.   Defendants' violations present a continuing risk to the Tennessee State Class as well

23   as to the general public. Defendants' unlawful acts and practices complained of herein affect the

24   public interest.

25        2320.   Tennessee State Class members suffered ascertainable loss and actual damages as a

26   direct and proximate result of Defendants' misrepresentations and concealment of and failure to

27   disclose material information. Defendants had an ongoing duty to all their customers to refrain

28   from unfair and deceptive practices under the Tennessee CPA. All owners of Class Vehicles

1   suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

2   in the course of Defendants' business.

3   2321.  Pursuant to Tenn. Code § 47-18-109, the Tennessee State Class seeks an order

4   enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for

5   willful and knowing violations, pursuant to § 47-18-109(a)(3), punitive damages, and attorneys'

6   fees, costs, and any other just and proper relief to the extent available under the Tennessee CPA.

7
                              **TENNESSEE COUNT II:**
                          **Breach of Express Warranty**
8                   **Tenn. Code Ann. §§ 47-2-313 and 47-2A-210**
                      **(On Behalf of the Tennessee State Class)**
9
10  2322.  Plaintiffs re-allege and incorporate by reference all preceding allegations as though

    fully set forth herein.
11
12  2323.  This count is brought on behalf of the Tennessee State Class against all Defendants.

13  2324.  Defendants are and were at all relevant times "merchant[s]" with respect to motor

14  vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles

    under § 47-2-103(1)(d).
15
16  2325.  With respect to leases, Defendants are and were at all relevant times "lessors" of

17  motor vehicles under Tenn. Code § 47-2A-103(1)(p).

18  2326.  The Class Vehicles are and were at all relevant times "goods" within the meaning of

19  Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

20  2327.  In connection with the purchase or lease of each one of its new vehicles, Defendants

21  provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This

22  warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

23  2328.  Defendants also made numerous representations, descriptions, and promises to

24  Tennessee State Class members regarding the performance and emission controls of their vehicles.

25  2329.  For example, Defendants included in the warranty booklets for some or all of the

26  Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

27  time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

28  from defects in material and workmanship which would cause it not to meet those standards."

2330.  The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2331.  The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2332.  The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2333.  As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2334.  Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2335.  Despite the existence of warranties, Defendants failed to inform Tennessee State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

1    regulators and represented to consumers who purchased or leased them, and Defendants failed to

2    fix the defective emission components free of charge.

3        2336.   Defendants breached the express warranty promising to repair and correct

4    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

5    have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

6        2337.   Affording Defendants a reasonable opportunity to cure their breach of written

7    warranties would be unnecessary and futile here.

8        2338.   Furthermore, the limited warranty promising to repair and correct Defendants'

9    defect in materials and workmanship fails in its essential purpose because the contractual remedy is

10    insufficient to make Tennessee State Class members whole and because Defendants have failed

11    and/or have refused to adequately provide the promised remedies within a reasonable time.

12        2339.   Accordingly, recovery by Tennessee State Class members is not restricted to the

13    limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

14    and they seek all remedies as allowed by law.

15        2340.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

16    leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

17    conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

18    material facts regarding the Class Vehicles. Tennessee State Class members were therefore induced

19    to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

20        2341.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

21    through the limited remedy of repairing and correcting Defendants' defect in materials and

22    workmanship as many incidental and consequential damages have already been suffered because of

23    Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

24    failure to provide such limited remedy within a reasonable time, and any limitation on Tennessee

25    State Class members' remedies would be insufficient to make them whole.

26        2342.   Finally, because of Defendants' breach of warranty as set forth herein, Tennessee

27    State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

28

1    of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

2    or leased, and for such other incidental and consequential damages as allowed.

3        2343.   Defendants were provided reasonable notice of these issues by way of a letter sent

4    by Plaintiffs as well as the regulators' investigations.

5        2344.   As a direct and proximate result of Defendants' breach of express warranties,

6    Tennessee State Class members have been damaged in an amount to be determined at trial.

7                                    **TENNESSEE COUNT III:**
                            **Breach of Implied Warranty of Merchantability**
8                           **Tenn. Code Ann. §§ 47-2-314 and 47-2A-212**
                              **(On Behalf of the Tennessee State Class)**
9

10       2345.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

11   paragraphs as though fully set forth herein.

12       2346.   This count is brought on behalf of the Tennessee State Class against all Defendants.

13       2347.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

14   vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles

15   under § 47-2-103(1)(d).

16       2348.   With respect to leases, Defendants are and were at all relevant times "lessors" of

17   motor vehicles under Tenn. Code § 47-2A-103(1)(p).

18       2349.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

19   Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

20       2350.   A warranty that the Class Vehicles were in merchantable condition and fit for the

21   ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2-314

22   and 47-2A-212.

23       2351.   These Class Vehicles, when sold or leased and at all times thereafter, were

24   materially different from vehicles Defendants submitted for emissions testing, included software

25   that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

26   emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the

27   ordinary purpose for which vehicles are used.

28

2352.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2353.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Tennessee State Class members have been damaged in an amount to be proven at trial.

**TEXAS COUNT I:**
**Violations of the Deceptive Trade Practices Act**
**Tex. Bus. & Com. Code § 17.41 *et seq.***
**(On Behalf of the Texas State Class)**

2354.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2355.   This count is brought on behalf of the Texas State Class against all Defendants.

2356.   The Texas State Class are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), *see* Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4).Defendants are "person[s]" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

2357.   Defendants engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a).

2358.   The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

2359.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road,

1    and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

2    emissions tests when they in fact did not.

3         2360.   Texas State Class members had no way of discerning that Defendants'

4    representations were false and misleading because Texas State Class members did not have access

5    to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware

6    and software was extremely sophisticated technology.

7         2361.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

8    have characteristics, uses, benefits, and qualities which they do not have; representing that Class

9    Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

10   Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

11   transaction involving Class Vehicles has been supplied in accordance with a previous

12   representation when it has not.

13        2362.   Defendants intentionally and knowingly misrepresented material facts regarding the

14   Class Vehicles with intent to mislead the Texas State Class.

15        2363.   Defendants knew or should have known that their conduct violated the Texas

16   DTPA.

17        2364.   Defendants owed the Texas State Class a duty to disclose the illegality and public

18   health risks, the true nature of the Class Vehicles, because Defendants:

19             A.      possessed exclusive knowledge that they were manufacturing, selling, and

20        distributing vehicles throughout the United States that did not perform as advertised;

21             B.      intentionally concealed the foregoing from regulators and Texas State Class

22        members; and/or

23             C.      made incomplete representations about the Class Vehicles' fuel economy

24        and emissions while purposefully withholding material facts that contradicted these

25        representations.

26        2365.   Defendants' concealment of the true characteristics of the Class Vehicles' fuel

27   consumption and $CO_2$ emissions were material to the Texas State Class.

28

2366.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Texas State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2367.   Defendants' violations present a continuing risk to the Texas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2368.   Texas State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2369.   Pursuant to Tex. Bus. & Com. Code § 17.50, the Texas State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

2370.   Pursuant to Tex. Bus. & Com. Code Ann. § 17.505, Plaintiffs sent a notice letter to Defendants. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by way of the investigations conducted by governmental regulators. The Texas State Class seeks all damages and relief to which it is entitled.

**TEXAS COUNT II:**
**Breach of Express Warranty**
**Tex. Bus. & Com. Code §§ 2.313 and 2A.210**
**(On Behalf of the Texas State Class)**

2371.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2372.   This count is brought on behalf of the Texas State Class against all Defendants.

CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-7473

2373.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4)

2374.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

2375.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

2376.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2377.   Defendants also made numerous representations, descriptions, and promises to Texas State Class members regarding the performance and emission controls of their vehicles.

2378.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2379.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2380.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2381.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2382.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2383.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2384.   Despite the existence of warranties, Defendants failed to inform Texas State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2385.   Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2386.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2387.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Texas State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2388.   Accordingly, recovery by Texas State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2389.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Texas State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2390.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Texas State Class members' remedies would be insufficient to make them whole.

2391.   Finally, because of Defendants' breach of warranty as set forth herein, Texas State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2392.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2393.   As a direct and proximate result of Defendants' breach of express warranties, Texas State Class members have been damaged in an amount to be determined at trial.

**TEXAS COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Tex. Bus. & Com. Code §§ 2.314 and 2A.212**
**(On Behalf of the Texas State Class)**

2394.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2395.   This count is brought on behalf of the Texas State Class against all Defendants.

2396.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4)

2397.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

2398.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

2399.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212.

2400.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2401.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2402.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Texas State Class members have been damaged in an amount to be proven at trial.

**UTAH COUNT I:**
**Violations of the Utah Consumer Sales Practices Act**
**Utah Code Ann. § 13-11-1 *et seq.***
**(On Behalf of the Utah State Class)**

2403.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2404.   Plaintiff Andrew Kavan (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Utah State Class against all Defendants.

2405.   Plaintiff and Utah State Class members are "persons" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code § 13-11-3(5). The sales and leases of the Class

1   Vehicles to Plaintiff and Utah State Class members were "consumer transactions" within the

2   meaning of Utah Code § 13-11-3(2).

3        2406.   Defendants are "supplier[s]" within the meaning of Utah Code § 13-11-3(6).

4        2407.   The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in

5   connection with a consumer transaction." Specifically, "a supplier commits a deceptive act or

6   practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer

7   transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if

8   it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard,

9   quality, grade, style, or model, if it is not." Utah Code § 13-11-4. "An unconscionable act or

10  practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.

11  Utah Code § 13-11-5.

12       2408.   In the course of their business, Defendants concealed and suppressed material facts

13  concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

14  emissions testing that were different from production vehicles, (b) installing a secret software

15  program that caused the vehicles to perform differently during emissions testing than on the road,

16  and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

17  emissions tests when they in fact did not.

18       2409.    Plaintiff and Utah State Class members had no way of discerning that Defendants'

19  representations were false and misleading because Plaintiff and Utah State Class members did not

20  have access to Defendants' emissions certification test vehicles and Defendants' emissions-related

21  hardware and software was extremely sophisticated technology.

22       2410.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

23  have characteristics, uses, benefits, and qualities which they do not have; representing that Class

24  Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

25  Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

26  transaction involving Class Vehicles has been supplied in accordance with a previous

27  representation when it has not.

28

1      2411.   Defendants intentionally and knowingly misrepresented material facts regarding the

2   Class Vehicles with intent to mislead Plaintiff and the Utah State Class.

3      2412.   Defendants knew or should have known that their conduct violated the Utah CSPA.

4      2413.   Defendants owed Plaintiff and the Utah State Class a duty to disclose the illegality

5   and public health risks, the true nature of the Class Vehicles, because Defendants:

6          A.      possessed exclusive knowledge that they were manufacturing, selling, and

7      distributing vehicles throughout the United States that did not perform as advertised;

8          B.      intentionally concealed the foregoing from regulators, Plaintiff and Utah

9      State Class members; and/or

10          C.      made incomplete representations about the Class Vehicles' fuel economy

11      and emissions, while purposefully withholding material facts from Plaintiff and Utah State

12      Class members that contradicted these representations.

13      2414.   Defendants' concealment of the true characteristics of the Class Vehicles' true fuel

14   consumption and emissions was material to Plaintiff and the Utah State Class.

15      2415.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

16   deceive regulators and reasonable consumers, including Plaintiff and the Utah State Class, about

17   the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the

18   Defendants' brands, and the true value of the Class Vehicles.

19      2416.   Defendants' violations present a continuing risk to Plaintiff, Utah State Class

20   members, as well as to the general public. Defendants' unlawful acts and practices complained of

21   herein affect the public interest.

22      2417.    Plaintiff and Utah State Class members suffered ascertainable loss and actual

23   damages as a direct and proximate result of Defendants' misrepresentations and concealment of

24   and failure to disclose material information. Defendants had an ongoing duty to all their customers

25   to refrain from unfair and deceptive practices under the Utah CSPA. All owners of Class Vehicles

26   suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

27   in the course of Defendants' business.

28

2418.   Pursuant to Utah Code Ann. § 13-11-4, Plaintiff and the Utah State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Utah State Class member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

**UTAH COUNT II:**
**Breach of Express Warranty**
**Utah Code §§ 70A-2-313 and 70-2A-210**
**(On Behalf of the Utah State Class)**

2419.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2420.   Plaintiff Andrew Kavan (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Utah State Class against all Defendants.

2421.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Utah Code § 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

2422.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p).

2423.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

2424.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2425.   Defendants also made numerous representations, descriptions, and promises to Plaintiff and Utah State Class members regarding the performance and emission controls of their vehicles.

2426.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

1     time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

2     from defects in material and workmanship which would cause it not to meet those standards."

3         2427.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

4     federal emission control warranties: a "Performance Warranty" and a "Design and Defect

5     Warranty."

6         2428.   The EPA requires vehicle manufacturers to provide a Performance Warranty with

7     respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

8     their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

9     required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

10     whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

11     emission control components are covered for the first eight years or 80,000 miles (whichever

12     comes first). These major emission control components subject to the longer warranty include the

13     catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

14     device or computer.

15         2429.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

16     with respect to their vehicles' emission systems. Thus, Defendants also provide an express

17     warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

18     Design and Defect Warranty required by the EPA covers repair of emission control or emission

19     related parts, which fail to function or function improperly because of a defect in materials or

20     workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

21     first, or, for the major emission control components, for eight years or 80,000 miles, whichever

22     comes first.

23         2430.   As manufacturers of light-duty vehicles, Defendants were required to provide these

24     warranties to purchasers or lessees of Class Vehicles.

25         2431.   Defendants' warranties formed a basis of the bargain that was reached when

26     consumers purchased or leased Class Vehicles.

27         2432.   Despite the existence of warranties, Defendants failed to inform Plaintiff and Utah

28     State Class members that the Class Vehicles were intentionally designed and manufactured to emit

1   more to emit more emissions and achieve worse fuel and achieve worse fuel economy on the road

2   than what was disclosed to regulators and represented to consumers who purchased or leased them,

3   and failed to fix the defective emission components free of charge.

4       2433.   Defendants breached the express warranty promising to repair and correct

5   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

6   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

7       2434.   Affording Defendants a reasonable opportunity to cure their breach of written

8   warranties would be unnecessary and futile here.

9       2435.   Furthermore, the limited warranty promising to repair and correct Defendants'

10   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

11   insufficient to make Plaintiff and Utah State Class members whole and because Defendants have

12   failed and/or have refused to adequately provide the promised remedies within a reasonable time.

13       2436.   Accordingly, recovery by Plaintiff and Utah State Class members is not restricted to

14   the limited warranty promising to repair and correct Defendants' defect in materials and

15   workmanship, and they seek all remedies as allowed by law.

16       2437.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

17   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

18   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

19   material facts regarding the Class Vehicles. Plaintiff and Utah State Class members were therefore

20   induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

21       2438.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

22   through the limited remedy of repairing and correcting Defendants' defect in materials and

23   workmanship as many incidental and consequential damages have already been suffered because of

24   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

25   failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's

26   and Utah State Class members' remedies would be insufficient to make them whole.

27       2439.   Finally, because of Defendants' breach of warranty as set forth herein, Plaintiff and

28   Utah State Class members assert, as additional and/or alternative remedies, the revocation of

acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2440.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2441.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and Utah State Class members have been damaged in an amount to be determined at trial.

**UTAH COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Utah Code §§ 70A-2-314 and 70-2A-212**
**(On Behalf of the Utah State Class)**

2442.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2443.   Plaintiff Andrew Kavan (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Utah State Class against all Defendants.

2444.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Utah Code §§ 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

2445.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p).

2446.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

2447.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Utah Code §§ 70A-2-314 and 70A-2a-212.

2448.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

- 347 -

2449.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2450.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Utah State Class members have been damaged in an amount to be proven at trial.

**VERMONT COUNT I:**
**Violations of the Vermont Consumer Fraud Act**
**Vt. Stat. Ann. Tit. 9, § 2451 *et seq.***
**(On Behalf of the Vermont State Class)**

2451.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2452.   This count is brought on behalf of the Vermont State Class against all Defendants.

2453.   The Vermont State Class are "consumers" within the meaning of Vt. Stat. Tit. 9, § 451a(a).

2454.   Defendants are "person[s]" within the meaning of Vt. Code R. § 100(3) (citing Vt. Stat. Tit. 9, § 2453).

2455.   Defendants are engaged in "commerce" within the meaning of Vt. Stat. Tit. 9, § 2453(a).

2456.   The Vermont Consumer Protection Act ("Vermont CPA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce . . . ." Vt. Stat. Tit. 9, § 2453(a).

2457.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2458.   Vermont State Class members had no way of discerning that Defendants' representations were false and misleading because Vermont State Class members did not have

1    access to Defendants' emissions certification test vehicles and Defendants' emissions-related

2    hardware and software was extremely sophisticated technology.

3         2459.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

4    have characteristics, uses, benefits, and qualities which they do not have; representing that Class

5    Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

6    Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

7    transaction involving Class Vehicles has been supplied in accordance with a previous

8    representation when it has not.

9         2460.   Defendants intentionally and knowingly misrepresented material facts regarding the

10   Class Vehicles with intent to mislead the Vermont State Class.

11        2461.   Defendants knew or should have known that their conduct violated the Vermont

12   UTPA.

13        2462.   Defendants owed the Vermont State Class a duty to disclose the illegality and public

14   health risks, the true nature of the Class Vehicles, because Defendants:

15             A.    possessed exclusive knowledge that they were manufacturing, selling, and

16        distributing vehicles throughout the United States that did not perform as advertised;

17             B.    intentionally concealed the foregoing from regulators and Vermont State

18        Class members; and/or

19             C.    made incomplete representations about the Class Vehicles' fuel economy

20        and emissions while purposefully withholding material facts that contradicted these

21        representations.

22        2463.   Defendants' concealment of the true characteristics of the Class Vehicles' fuel

23   consumption and emissions was material to the Vermont State Class.

24        2464.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

25   deceive regulators and reasonable consumers, including the Vermont State Class, about the true

26   environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

27   brands, and the true value of the Class Vehicles.

28

2465.   Defendants' violations present a continuing risk to the Vermont State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2466.   Vermont State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Vermont UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2467.   Pursuant to Vt. Stat. Tit. 9, § 2461(b), the Vermont State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, actual damages, damages up to three times the consideration provided, punitive damages, attorneys' fees, costs, and any other just and proper relief available under the Vermont UTPA.

**VERMONT COUNT II:**
**Vermont Lemon Law**
**Vt. Stat. Tit. 9, § 4170 *et seq.***
**(On Behalf of the Vermont State Class)**

2468.   Plaintiffs re-allege incorporate by reference each preceding paragraph as though fully set forth herein.

2469.   This count is brought on behalf of the Vermont State Class against all Defendants.

2470.   The Vermont State Class own or lease "motor vehicles" within the meaning of Vt. Stat. tit. 9, § 4171(6), because these vehicles were purchased, leased, or registered in Vermont by Defendants and were registered in Vermont within 15 days of the date of purchase or lease. These vehicles are not: (1) tractors, (2) motorized highway building equipment, (3) roadmaking appliances, (4) snowmobiles, (5) motorcycles, (5) mopeds, (6) the living portion of recreation vehicles, or (7) trucks with a gross vehicle weight over 10,000 pounds.

2471.   Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Vt. Stat. Tit. 9, § 4171(7) because it manufactures and assembles new motor vehicles or imports for

distribution through distributors of motor vehicles. It is also a "manufacturer" within the definition of "distributor" and "factory branch." *Id.*

2472.   The Vermont State Class are "consumers" within the meaning of Vt. Stat. Tit. 9, § 4171(2) because they bought or leased the Class Vehicles, were transferred their vehicles during the duration the applicable warranty, or are otherwise entitled to the attendant terms of warranty. They are not governmental entities or a business or commercial enterprise that registers or leases three or more motor vehicles.

2473.   The Class Vehicles did not conform to their express warranties during the term of warranty because they were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode.

2474.   Defendants had actual knowledge of the conformities during the term of warranty. But the nonconformities continued to exist throughout this term, as they have not been fixed. Vermont State Class members are excused from notifying Defendants of the nonconformities because it was already fully aware of the problem—as it intentionally created it—and any repair attempt is futile.

2475.   Defendants have had a reasonable opportunity to cure the nonconformities during the relevant period because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Vt. Stat. Tit. 9, § 4173.

2476.   For vehicles purchased, the Vermont State Class demands a full refund of the contract price and all credits and allowances for any trade-in or down payment, license fees, finance charges, credit charges, registration fees and any similar charges and incidental and consequential damages. Vt. Stat. Tit. 9, § 4173(e). For vehicles leased, the Vermont State Class demands the aggregate deposit and rental payments previously paid, and any incidental and consequential damages incurred. Vt. Stat. Tit. 9, § 4173(e), (i). The Vermont State Class rejects an offer of replacement and will retain their vehicles until payment is tendered.

1

2

**VERMONT COUNT III:**
**Breach of Express Warranty**
**Vt. Stat. Tit. 9, §§ 2-313 and 2A-210**
**(On Behalf of the Vermont State Class)**

3

4

2477.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though

fully set forth herein.

5

6

2478.   This count is brought on behalf of the Vermont State Class against all Defendants.

2479.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

7

8

vehicles under Vt. Stat. Tit. 9A, §§ 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles

under § 2-103(1)(d).

9

10

2480.   With respect to leases, Defendants are and were at all relevant times "lessors" of

motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

11

12

2481.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

Vt. Stat. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

13

14

2482.   In connection with the purchase or lease of each one of its new vehicles, Defendants

provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This

15

16

warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2483.   Defendants also made numerous representations, descriptions, and promises to

17

Vermont State Class members regarding the performance and emission controls of their vehicles.

18

19

2484.   For example, Defendants included in the warranty booklets for some or all of the

Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

20

time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

21

22

from defects in material and workmanship which would cause it not to meet those standards."

2485.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

23

24

federal emission control warranties: a "Performance Warranty" and a "Design and Defect

Warranty."

25

26

2486.   The EPA requires vehicle manufacturers to provide a Performance Warranty with

respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

27

their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

28

1    required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

2    whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

3    emission control components are covered for the first eight years or 80,000 miles (whichever

4    comes first). These major emission control components subject to the longer warranty include the

5    catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

6    device or computer.

7        2487.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

8    with respect to their vehicles' emission systems. Thus, Defendants also provide an express

9    warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

10   Design and Defect Warranty required by the EPA covers repair of emission control or emission

11   related parts, which fail to function or function improperly because of a defect in materials or

12   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

13   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

14   comes first.

15       2488.   As manufacturers of light-duty vehicles, Defendants were required to provide these

16   warranties to purchasers or lessees of Class Vehicles.

17       2489.   Defendants' warranties formed a basis of the bargain that was reached when

18   consumers purchased or leased Class Vehicles.

19       2490.   Despite the existence of warranties, Defendants failed to inform Vermont State

20   Class members that the Class Vehicles were defective and intentionally designed and manufactured

21   to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

22   regulators and represented to consumers who purchased or leased them, and Defendants failed to

23   fix the defective emission components free of charge.

24       2491.   Defendants breached the express warranty promising to repair and correct

25   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

26   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

27       2492.   Affording Defendants a reasonable opportunity to cure their breach of written

28   warranties would be unnecessary and futile here.

1     2493.   Furthermore, the limited warranty promising to repair and correct Defendants'

2     defect in materials and workmanship fails in its essential purpose because the contractual remedy is

3     insufficient to make Vermont State Class members whole and because Defendants have failed

4     and/or have refused to adequately provide the promised remedies within a reasonable time.

5     2494.   Accordingly, recovery by Vermont State Class members is not restricted to the

6     limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

7     and they seek all remedies as allowed by law.

8     2495.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

9     leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

10    conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

11    material facts regarding the Class Vehicles. Vermont State Class members were therefore induced

12    to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

13    2496.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

14    through the limited remedy of repairing and correcting Defendants' defect in materials and

15    workmanship as many incidental and consequential damages have already been suffered because of

16    Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

17    failure to provide such limited remedy within a reasonable time, and any limitation on Vermont

18    State Class members' remedies would be insufficient to make them whole.

19    2497.   Finally, because of Defendants' breach of warranty as set forth herein, Vermont

20    State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

21    of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

22    or leased, and for such other incidental and consequential damages as allowed.

23    2498.   Defendants were provided reasonable notice of these issues by way of a letter sent

24    by Plaintiffs as well as the regulators' investigations.

25    2499.   As a direct and proximate result of Defendants' breach of express warranties,

26    Vermont State Class members have been damaged in an amount to be determined at trial.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERMONT COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Vt. Stat. Tit. 9, §§ 2-314 and 2A-212**
**(On Behalf of the Vermont State Class)**

2500.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2501.   This count is brought on behalf of the Vermont State Class against all Defendants.

2502.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Vt. Stat. Tit. 9A, § 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles under § 2-103(1)(d).

2503.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

2504.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

2505.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Vt. Stat. Tit. 9A, §§ 2-314 and 2A-212.

2506.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2507.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2508.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Vermont State Class members have been damaged in an amount to be proven at trial.

1

2

**VIRGINIA COUNT I:**
**Violations of the Virginia Consumer Protection Act**
**Va. Code Ann. § 59.1-196 *et seq.***
**(On Behalf of the Virginia State Class)**

3

4

2509.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

forth herein.

5

6

2510.   This count is brought on behalf of the Virginia State Class against all Defendants.

7

2511.   Defendants and the Virginia State Class are "persons" within the meaning of Va.

Code § 59.1-198.

8

9

2512.   Defendants are "supplier[s]" within the meaning of Va. Code § 59.1-198.

10

2513.   The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful

"fraudulent acts or practices." Va. Code § 59.1-200(A).

11

12

2514.   In the course of their business, Defendants concealed and suppressed material facts

13

concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

14

emissions testing that were different from production vehicles, (b) installing a secret software

15

program that caused the vehicles to perform differently during emissions testing than on the road,

16

and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

emissions tests when they in fact did not.

17

18

2515.   Virginia State Class members had no way of discerning that Defendants'

19

representations were false and misleading because Virginia State Class members did not have

20

access to Defendants' emissions certification test vehicles and Defendants' emissions-related

hardware and software was extremely sophisticated technology.

21

22

2516.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

23

have characteristics, uses, benefits, and qualities which they do not have; representing that Class

24

Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

25

Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

26

transaction involving Class Vehicles has been supplied in accordance with a previous

representation when it has not.

27

28

2517.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Virginia State Class.

2518.   Defendants knew or should have known that their conduct violated the Virginia CPA.

2519.   Defendants owed the Virginia State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.   intentionally concealed the foregoing from regulators and Virginia State Class members; and/or

C.   made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2520.   Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions were material to the Virginia State Class.

2521.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Virginia State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2522.   Defendants' violations present a continuing risk to the Virginia State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2523.   Virginia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Virginia CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2524.   Pursuant to Va. Code § 59.1-204(A)–(B), the Virginia State Class is entitled to the greater of actual damages or $500 for each Virginia State Class member, attorneys' fees, and costs. Because Defendants' actions were willful, Virginia State Class members should each receive the greater of treble damages or $1,000. *Id.*

### VIRGINIA COUNT II:
**Breach of Express Warranty**
**Va. Code §§ 8.2-313 and 8.2A-210**
**(On Behalf of the Virginia State Class)**

2525.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2526.   This count is brought on behalf of the Virginia State Class against all Defendants.

2527.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Va. Code §§ 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

2528.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

2529.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

2530.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2531.   Defendants also made numerous representations, descriptions, and promises to Virginia State Class members regarding the performance and emission controls of their vehicles.

2532.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2533.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2534.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2535.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2536.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2537.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2538.   Despite the existence of warranties, Defendants failed to inform Virginia State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

1  regulators and represented to consumers who purchased or leased them, and Defendants failed to

2  fix the defective emission components free of charge.

3      2539.   Defendants breached the express warranty promising to repair and correct

4  Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

5  have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

6      2540.   Affording Defendants a reasonable opportunity to cure their breach of written

7  warranties would be unnecessary and futile here.

8      2541.   Furthermore, the limited warranty promising to repair and correct Defendants'

9  defect in materials and workmanship fails in its essential purpose because the contractual remedy is

10  insufficient to make Virginia State Class members whole and because Defendants have failed

11  and/or have refused to adequately provide the promised remedies within a reasonable time.

12      2542.   Accordingly, recovery by the Virginia State Class members is not restricted to the

13  limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

14  and they seek all remedies as allowed by law.

15      2543.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

16  leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

17  conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

18  material facts regarding the Class Vehicles. Virginia State Class members were therefore induced

19  to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

20      2544.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

21  through the limited remedy of repairing and correcting Defendants' defect in materials and

22  workmanship as many incidental and consequential damages have already been suffered because of

23  Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

24  failure to provide such limited remedy within a reasonable time, and any limitation on Virginia

25  State Class members' remedies would be insufficient to make them whole.

26      2545.   Finally, because of Defendants' breach of warranty as set forth herein, Virginia

27  State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

28

of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

or leased, and for such other incidental and consequential damages as allowed.

2546.   Defendants were provided reasonable notice of these issues by way of a letter sent

by Plaintiffs as well as the regulators' investigations.

2547.   As a direct and proximate result of Defendants' breach of express warranties,

Virginia State Class members have been damaged in an amount to be determined at trial.

**VIRGINIA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Va. Code §§ 8.2-314 and 8.2A-212**
**(On Behalf of the Virginia State Class)**

2548.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

paragraphs as though fully set forth herein.

2549.   This count is brought on behalf of the Virginia State Class against all Defendants.

2550.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

vehicles under Va. Code §§ 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under

§ 8.2-103(1)(d).

2551.   With respect to leases, Defendants are and were at all relevant times "lessors" of

motor vehicles under Va. Code § 8.2A-103(1)(p).

2552.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

2553.   A warranty that the Class Vehicles were in merchantable condition and fit for the

ordinary purpose for which vehicles are used is implied by law pursuant to Va. Code §§ 8.2-314

and 8.2A-212.

2554.   These Class Vehicles, when sold or leased and at all times thereafter, were

materially different from vehicles Defendants submitted for emissions testing, included software

that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the

ordinary purpose for which vehicles are used.

2555.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2556.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Virginia State Class members have been damaged in an amount to be proven at trial.

**WASHINGTON STATE COUNT I:**
**Violations of the Washington Consumer Protection Act**
**Wash. Rev. Code Ann. § 19.86.010 *et seq.***
**(On Behalf of the Washington State Class)**

2557.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2558.   This count is brought on behalf of the Washington State Class against all Defendants.

2559.   Defendants and the Washington State Class are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

2560.   Defendants engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

2561.   The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

2562.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2563.   Washington State Class members had no way of discerning that Defendants' representations were false and misleading because Washington State Class members did not have

1    access to Defendants' emissions certification test vehicles and Defendants' emissions-related

2    hardware and software was extremely sophisticated technology.

3         2564.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

4    have characteristics, uses, benefits, and qualities which they do not have; representing that Class

5    Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

6    Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

7    transaction involving Class Vehicles has been supplied in accordance with a previous

8    representation when it has not.

9         2565.   Defendants intentionally and knowingly misrepresented material facts regarding the

10   Class Vehicles with intent to mislead the Washington State Class.

11        2566.   Defendants knew or should have known that their conduct violated the Washington

12   CPA.

13        2567.   Defendants owed the Washington State Class a duty to disclose the illegality and

14   public health risks, the true nature of the Class Vehicles, because Defendants:

15             A.      possessed exclusive knowledge that they were manufacturing, selling, and

16        distributing vehicles throughout the United States that did not perform as advertised;

17             B.      intentionally concealed the foregoing from regulators and Washington State

18        Class members; and/or

19             C.      made incomplete representations about the Class Vehicles' fuel economy

20        and emissions while purposefully withholding material facts that contradicted these

21        representations.

22        2568.   Defendants' concealment of the Class Vehicles' true fuel consumption and

23   emissions were material to the Washington State Class.

24        2569.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

25   deceive regulators and reasonable consumers, including the Washington State Class, about the true

26   environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

27   brands, and the true value of the Class Vehicles.

28

2570.   Defendants' violations present a continuing risk to the Washington State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2571.   Washington State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Washington CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2572.   Pursuant to Wash. Rev. Code § 19.86.090, the Washington State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Washington CPA. Because Defendants' actions were willful and knowing, Washington State Class members' damages should be trebled.

### WASHINGTON STATE COUNT II:
#### Washington Lemon Law
#### Wash. Rev. Code § 19.118.005 *et seq.*
#### (On Behalf of the Washington State Class)

2573.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2574.   This count is brought on behalf of the Washington State Class against all Defendants.

2575.   The Washington State Class own or lease "new motor vehicles" within the meaning of Wash. Rev. Code § 19.118.021(12), because these vehicles are self-propelled primarily designed for the transportation of persons or property over the public highways and were originally purchased or leased at retail from a new motor vehicle dealer or leasing company in Washington. These vehicles do not include vehicles purchased or leased by a business as part of a fleet of ten or more vehicles at one time or under a single purchase or lease agreement or those portions of a motor home designated, used, or maintained primarily as a mobile dwelling, office, or commercial space.

2576.   Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Wash. Rev. Code § 19.118.021(8) because it is in the business of constructing or assembling new motor vehicles or is engaged in the business of importing new motor vehicles into the United States for the purpose of selling or distributing new motor vehicles to new motor vehicle dealers.

2577.   The Washington State Class are "consumers" within the meaning of Wash. Rev. Code § 19.118.021(4) because they entered into an agreement or contract for the transfer, lease, or purchase of a new motor vehicle, other than for purposes of resale or sublease, during the eligibility period as defined by Wash. Rev. Code § 19.118.021(6).

2578.   The Class Vehicles did not conform to their warranties as defined by Wash. Rev. Code § 19.118.021(22), during the "eligibility period," defined by Wash. Rev. Code § 19.118.021(6), or the coverage period under the applicable written warranty because they contained, among other defects described herein, a software program designed to circumvent state and federal emissions standards and inflate the fuel economy thereon. Wash. Rev. Code § 19.118.031. This program did in fact circumvent emissions standards and overstate fuel economy and substantially impaired the use and market value of their motor vehicles.

2579.   Defendants had actual knowledge of the conformities during warranty periods. But the nonconformities continued to exist throughout this term, as they have not been fixed. Washington State Class members are excused from notifying Defendants of the nonconformities because it was already fully aware of the problem—as it intentionally created it—and any repair attempt is futile.

2580.   Defendants have had a reasonable opportunity to cure the nonconformities because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Wash. Rev. Code § 19.118.031.

2581.   For vehicles purchased, the Washington State Class demands a full refund of the contract price, all collateral charges, and incidental costs. Wash. Rev. Code § 19.118.041(1)(b). For vehicles leased, the Washington State Class demands all payments made under the lease including but not limited to all lease payments, trade-in value or inception payment, security deposit, and all collateral charges and incidental costs. The consumer is also relieved of any future obligation to the

1

2

lessor or lienholder. The Washington State Class rejects an offer of replacement and will retain

their vehicles until payment is tendered.

3

4

5

**WASHINGTON STATE COUNT III:**
**Breach of Express Warranty**
**Wash Rev. Code §§ 62A.2-313 and 62A.2A-210**
**(On Behalf of the Washington State Class)**

6

2582.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though

fully set forth herein.

7

8

2583.   This count is brought on behalf of the Washington State Class against all

Defendants.

9

10

11

2584.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

vehicles under Wash. Rev. Code §§ 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor

vehicles under § 2.103(a)(4).

12

13

14

2585.   With respect to leases, Defendants are and were at all relevant times "lessors" of

motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

15

16

2586.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

17

18

19

2587.   In connection with the purchase or lease of each one of its new vehicles, Defendants

provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This

warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

20

21

22

2588.   Defendants also made numerous representations, descriptions, and promises to

Washington State Class members regarding the performance and emission controls of their

vehicles.

23

24

25

26

2589.   For example, Defendants included in the warranty booklets for some or all of the

Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

from defects in material and workmanship which would cause it not to meet those standards."

27

28

2590.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2591.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2592.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2593.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2594.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2595.   Despite the existence of warranties, Defendants failed to inform Washington State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

1   regulators and represented to consumers who purchased or leased them, and Defendants failed to

2   fix the defective emission components free of charge.

3          2596.   Defendants breached the express warranty promising to repair and correct

4   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

5   have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

6          2597.   Affording Defendants a reasonable opportunity to cure their breach of written

7   warranties would be unnecessary and futile here.

8          2598.   Furthermore, the limited warranty promising to repair and correct Defendants'

9   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

10  insufficient to make Washington State Class members whole and because Defendants have failed

11  and/or have refused to adequately provide the promised remedies within a reasonable time.

12         2599.   Accordingly, recovery by the Washington State Class members is not restricted to

13  the limited warranty promising to repair and correct Defendants' defect in materials and

14  workmanship, and they seek all remedies as allowed by law.

15         2600.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

16  leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

17  conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

18  material facts regarding the Class Vehicles. Washington State Class members were therefore

19  induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

20         2601.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

21  through the limited remedy of repairing and correcting Defendants' defect in materials and

22  workmanship as many incidental and consequential damages have already been suffered because of

23  Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

24  failure to provide such limited remedy within a reasonable time, and any limitation on Washington

25  State Class members' remedies would be insufficient to make them whole.

26         2602.   Finally, because of Defendants' breach of warranty as set forth herein, Washington

27  State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

28

of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned

or leased, and for such other incidental and consequential damages as allowed.

2603.   Defendants were provided reasonable notice of these issues by way of a letter sent

by Plaintiffs as well as the regulators' investigations.

2604.   As a direct and proximate result of Defendants' breach of express warranties,

Washington State Class members have been damaged in an amount to be determined at trial.

**WASHINGTON STATE COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Wash Rev. Code §§ 62A.2-314 and 62A.2A-212**
**(On Behalf of the Washington State Class)**

2605.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

paragraphs as though fully set forth herein.

2606.   This count is brought on behalf of the Washington State Class against all

Defendants.

2607.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor

vehicles under § 2.103(a)(4).

2608.   With respect to leases, Defendants are and were at all relevant times "lessors" of

motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

2609.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

2610.   A warranty that the Class Vehicles were in merchantable condition and fit for the

ordinary purpose for which vehicles are used is implied by law pursuant to Wash. Rev. Code

§§ 62A.2-314 and 62A.2A-212.

2611.   These Class Vehicles, when sold or leased and at all times thereafter, were

materially different from vehicles Defendants submitted for emissions testing, included software

that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with

emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the

ordinary purpose for which vehicles are used.

2612.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2613.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Washington State Class members have been damaged in an amount to be proven at trial.

**WEST VIRGINIA COUNT I:**
**Violations of the West Virginia Consumer Credit and Protection Act**
**W. Va. Code § 46A-1-101** *et seq.*
**(On Behalf of the West Virginia State Class)**

2614.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2615.   This count is brought on behalf of the West Virginia State Class against all Defendants.

2616.   Defendants and the West Virginia State Class are "persons" within the meaning of W. Va. Code § 46A-1-102(31). West Virginia State Class members are "consumers" within the meaning of W. Va. Code §§ 46A-1-102(2) and 46A-1-102(12).

2617.   Defendants are engaged in "trade" or "commerce" within the meaning of W. Va. Code § 46A-6-102(6).

2618.   The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

2619.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2620.   West Virginia State Class members had no way of discerning that Defendants' representations were false and misleading because the West Virginia State Class members did not

1    have access to Defendants' emissions certification test vehicles and Defendants' emissions-related

2    hardware and software was extremely sophisticated technology.

3        2621.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles

4    have characteristics, uses, benefits, and qualities which they do not have; representing that Class

5    Vehicles are of a particular standard, quality, and grade when they are not; advertising Class

6    Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a

7    transaction involving Class Vehicles has been supplied in accordance with a previous

8    representation when it has not.

9        2622.   Defendants intentionally and knowingly misrepresented material facts regarding the

10   Class Vehicles with intent to mislead the West Virginia State Class.

11       2623.   Defendants knew or should have known that their conduct violated the West

12   Virginia CCPA.

13       2624.   Defendants owed the West Virginia State Class a duty to disclose the illegality and

14   public health risks, the true nature of the Class Vehicles, because Defendants:

15           A.    possessed exclusive knowledge that they were manufacturing, selling, and

16       distributing vehicles throughout the United States that did not perform as advertised;

17           B.    intentionally concealed the foregoing from regulators and West Virginia

18       State Class members; and/or

19           C.    made incomplete representations about the Class Vehicles' fuel economy

20       and emissions while purposefully withholding material facts that contradicted these

21       representations.

22       2625.   Defendants' concealment of the true characteristics of the Class Vehicles' true fuel

23   consumption and emissions were material to the West Virginia State Class.

24       2626.   Defendants' unfair or deceptive acts or practices were likely to and did in fact

25   deceive regulators and reasonable consumers, including the West Virginia State Class, about the

26   true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants'

27   brands, and the true value of the Class Vehicles.

28

2627.   Defendants' violations present a continuing risk to the West Virginia State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2628.   West Virginia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the West Virginia CCPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2629.   Pursuant to W. Va. Code § 46A-6-106(a), the West Virginia State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the West Virginia CCPA.

2630.   Pursuant to W. Va. Code § 46A-6-106(b), Plaintiffs sent a notice letter to Defendants. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by way of the investigations conducted by governmental regulators. The West Virginia State Class seeks all damages and relief to which it is entitled.

**WEST VIRGINIA COUNT II:**
**West Virginia Lemon Law**
**W. Va. Code § 46A-6A-1 *et seq.***
**(On Behalf of the West Virginia State Class)**

2631.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

2632.   This count is brought on behalf of the West Virginia State Class against all Defendants.

2633.   West Virginia State Class members who purchased or leased the Class Vehicles in West Virginia are "consumers" within the meaning of W. Va. Code § 46A-6A-2(1).

2634.   Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of W. Va. Code § 46A-6A-2(2).

2635.   The Class Vehicles are "motor vehicles" as defined by W. Va. Code § 46A-6A-2(4).

2636.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2637.   Defendants also made numerous representations, descriptions, and promises to West Virginia State Class members regarding the performance and emission controls of their vehicles.

2638.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2639.   The Clean Air Act requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2640.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emissions systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emissions control unit (ECU), and the onboard emissions diagnostic device or computer.

2641.   The EPA requires vehicle manufacturers to issue Defect Warranties with respect to their vehicles' emissions systems. Thus, Defendants also provide an express warranty to its vehicles through a Federal Emissions Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly due to a defect in materials or workmanship. This warranty

1    provides protection for two years or 24,000 miles, whichever comes first, or, for the major

2    emissions control components, for eight years or 80,000 miles, whichever comes first.

3         2642.   As a manufacturer of light-duty vehicles, Defendants were required to provide these

4    warranties to West Virginia State Class members. Defendants' warranties formed a basis of the

5    bargain that was reached when consumers purchased or leased Class Vehicles.

6         2643.   The emissions defects in the Class Vehicles existed from the date of the original sale

7    of the new vehicle to the consumer but could not be detected by a reasonable consumer exercising

8    reasonable care and diligence. Therefore, applicable express warranties for the Class Vehicles

9    containing the defects described herein would be extended. Further extension of the express

10   warranty period is now required because of the difficulties the Defendants may have in executing a

11   massive recall Class Vehicles in the United States.

12        2644.   Pursuant to W.Va. Code §§ 46A-6A-3(a) and 5(c), Plaintiffs have sent a notice letter

13   to Defendants. Additionally, Defendants are on notice of the issues raised in this count and this

14   Complaint by way of investigations conducted by governmental regulators.

15        2645.   As a direct and proximate result of the Defendants' breaches of their duties under

16   West Virginia's Lemon Law, West Virginia State Class members received goods whose defect

17   substantially impairs their value. The West Virginia State Class has been damaged by the

18   diminished market value of the vehicles along with the compromised functioning and/or non-use of

19   their Class Vehicles.

20        2646.   Defendants have a duty under § 46A-6A-3 to make all repairs necessary to correct

21   the defect herein described to bring the Class Vehicles into conformity with all written warranties.

22   In the event that Defendants cannot affect such repairs, they have a duty to replace each Class

23   Vehicle with a comparable new motor vehicle that conforms to the warranty.

24        2647.   As a result of Defendants' breaches, the West Virginia State Class are entitled to the

25   following:

26             A.     Revocation of acceptance and refund of the purchase price, including, but

27         not limited to, sales tax, license and registration fees, and other reasonable expenses

28

1  incurred for the purchase of the new motor vehicle, or if there be no such revocation of

2  acceptance, damages for diminished value of the motor vehicle;

3          B.      Damages for the cost of repairs reasonably required to conform the motor

4  vehicle to the express warranty;

5          C.      Damages for the loss of use, annoyance or inconvenience resulting from the

6  nonconformity, including, but not limited to, reasonable expenses incurred for replacement

7  transportation during any period when the vehicle is out of service by reason of the

8  nonconformity or by reason of repair; and

9          D.      Reasonable attorney fees.

10                          **WEST VIRGINIA COUNT III:**
                            **Breach of Express Warranty**
11                  **W. Va. Code §§ 46-2-313 and 46-2A-210**
                    **(On Behalf of the West Virginia State Class)**
12
       2648.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though
13
fully set forth herein.
14
       2649.   This count is brought on behalf of the West Virginia State Class against all
15
Defendants.
16
       2650.   Defendants are and were at all relevant times "merchant[s]" with respect to motor
17
vehicles under W. Va. Code § 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles
18
under § 46-2-103(1)(d).
19
       2651.   With respect to leases, Defendants are and were at all relevant times "lessors" of
20
motor vehicles under W. Va. Code § 46-2A-103(1)(p).
21
       2652.   The Class Vehicles are and were at all relevant times "goods" within the meaning of
22
W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).
23
       2653.   In connection with the purchase or lease of each one of its new vehicles, Defendants
24
provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This
25
warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."
26

27

28

2654.   Defendants also made numerous representations, descriptions, and promises to West Virginia State Class members regarding the performance and emission controls of their vehicles.

2655.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2656.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2657.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2658.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1    2659.   As manufacturers of light-duty vehicles, Defendants were required to provide these

2    warranties to purchasers or lessees of Class Vehicles.

3    2660.   Defendants' warranties formed a basis of the bargain that was reached when

4    consumers purchased or leased Class Vehicles.

5    2661.   Despite the existence of warranties, Defendants failed to inform West Virginia State

6    Class members that the Class Vehicles were defective and intentionally designed and manufactured

7    to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

8    regulators and represented to consumers who purchased or leased them, and Defendants failed to

9    fix the defective emission components free of charge.

10    2662.   Defendants breached the express warranty promising to repair and correct

11    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

12    have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

13    2663.   Affording Defendants a reasonable opportunity to cure their breach of written

14    warranties would be unnecessary and futile here.

15    2664.   Furthermore, the limited warranty promising to repair and correct Defendants'

16    defect in materials and workmanship fails in its essential purpose because the contractual remedy is

17    insufficient to make West Virginia State Class members whole and because Defendants have failed

18    and/or have refused to adequately provide the promised remedies within a reasonable time.

19    2665.   Accordingly, recovery by West Virginia State Class members is not restricted to the

20    limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

21    and they seek all remedies as allowed by law.

22    2666.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

23    leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

24    conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

25    material facts regarding the Class Vehicles. West Virginia State Class members were therefore

26    induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

27    2667.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

28    through the limited remedy of repairing and correcting Defendants' defect in materials and

1    workmanship as many incidental and consequential damages have already been suffered because of

2    Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

3    failure to provide such limited remedy within a reasonable time, and any limitation on West

4    Virginia State Class members' remedies would be insufficient to make them whole.

5          2668.   Finally, because of Defendants' breach of warranty as set forth herein, West

6    Virginia State Class members assert, as additional and/or alternative remedies, the revocation of

7    acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles

8    currently owned or leased, and for such other incidental and consequential damages as allowed.

9          2669.   Defendants were provided reasonable notice of these issues by way of a letter sent

10   by Plaintiffs as well as the regulators' investigations.

11         2670.   As a direct and proximate result of Defendants' breach of express warranties, West

12   Virginia State Class members have been damaged in an amount to be determined at trial.

**WEST VIRGINIA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**W. Va. Code §§ 46-2-314 and 46-2A-212**
**(On Behalf of the West Virginia State Class)**

13

14

15         2671.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding

16   paragraphs as though fully set forth herein.

17         2672.   This count is brought on behalf of the West Virginia State Class against all

18   Defendants.

19         2673.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

20   vehicles under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles

21   under § 46-2-103(1)(d).

22         2674.   With respect to leases, Defendants are and were at all relevant times "lessors" of

23   motor vehicles under W. Va. Code § 46-2A-103(1)(p).

24         2675.   The Class Vehicles are and were at all relevant times "goods" within the meaning of

25   W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

26

27

28

2676.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to W. Va. Code §§ 46-2-314 and 46-2A-212.

2677.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2678.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2679.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, West Virginia State Class members have been damaged in an amount to be proven at trial.

**WISCONSIN COUNT I:**
**Violations of the Wisconsin Deceptive Trade Practices Act**
**Wis. Stat. § 100.18 *et seq.***
**(On Behalf of the Wisconsin State Class)**

2680.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

2681.   This count is brought on behalf of the Wisconsin State Class against all Defendants.

2682.   Wisconsin State Class members are "persons" and members of "the public" under the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), Wis. Stat. § 100.18(1). Wisconsin State Class members purchased or leased one or more Class Vehicles.

2683.   Defendants are "person[s], firm[s], corporation[s] or association[s]" within the meaning of Wis. Stat. § 100.18(1).

2684.   The Wisconsin DTPA makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

2685.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2686.   Wisconsin State Class members had no way of discerning that Defendants' representations were false and misleading because Wisconsin State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2687.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2688.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Wisconsin State Class.

2689.   Defendants knew or should have known that their conduct violated the Wisconsin DTPA.

2690.   Defendants owed the Wisconsin State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

> A.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

> B.     intentionally concealed the foregoing from regulators and Wisconsin State Class members; and/or

> C.     made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2691.   Defendants' concealment of the true characteristics of the Class Vehicles' true fuel consumption and emissions were material to the Wisconsin State Class.

2692.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Wisconsin State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2693.   Defendants' violations present a continuing risk to the Wisconsin State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2694.   Wisconsin State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Wisconsin DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2695.   As a direct and proximate result of Defendants' violations of the Wisconsin DTPA, the Wisconsin State Class have suffered injury-in-fact and/or actual damage.

2696.   The Wisconsin State Class seeks damages, court costs and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2), and any other just and proper relief available under the Wisconsin DTPA.

**WISCONSIN COUNT II:**
**Breach of Express Warranty**
**Wis. Stat. §§ 402.313 and 411.210**
**(On Behalf of the Wisconsin State Class)**

2697.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2698.   This count is brought on behalf of the Wisconsin State Class against all Defendants.

2699.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under § 402.103(1)(d).

2700.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. § 411.103(1)(p).

2701.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

2702.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2703.   Defendants also made numerous representations, descriptions, and promises to Wisconsin State Class members regarding the performance and emission controls of their vehicles.

2704.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2705.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2706.   The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2707.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2708.   As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2709.   Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2710.   Despite the existence of warranties, Defendants failed to inform Wisconsin State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2711.   Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2712.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2713.   Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Wisconsin State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2714.   Accordingly, recovery by Wisconsin State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2715.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Wisconsin State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2716.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Wisconsin State Class members' remedies would be insufficient to make them whole.

2717.   Finally, because of Defendants' breach of warranty as set forth herein, Wisconsin State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2718.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2719.   As a direct and proximate result of Defendants' breach of express warranties, Wisconsin State Class members have been damaged in an amount to be determined at trial.

**WISCONSIN COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Wis. Stat. §§ 402.314 and 411.212**
**(On Behalf of the Wisconsin State Class)**

2720.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2721.   This count is brought on behalf of the Wisconsin State Class against all Defendants.

2722. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under § 402.103(1)(d).

2723. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. § 411.103(1)(p).

2724. The Class Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

2725. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wis. Stat. §§ 402.314 and 411.212.

2726. These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2727. Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2728. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Wisconsin State Class members have been damaged in an amount to be proven at trial.

**WYOMING COUNT I:**
**Violations of the Wyoming Consumer Protection Act,**
**Wyo. Stat. § 40-12-101, *et seq.***
**(On Behalf of the Wyoming State Class)**

2729. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2730. This count is brought on behalf of the Wyoming State Class against all Defendants.

2731. The Wyoming State Class and Defendants are "persons" within the meaning of Wyo. Stat. § 40-12-102(a)(i).

1      2732.   The Class Vehicles are "merchandise" pursuant to Wyo. Stat. § 40-12-102(a)(vi).

2      2733.   Each sale or lease of a Class Vehicle to a Wyoming State Class member was a

3  "consumer transaction" as defined by Wyo. Stat. § 40-12-102(a)(ii). These consumer transactions

4  occurred "in the course of [Defendants'] business" under Wyo. Stat. § 40-12-105(a). Wyoming

5  State Class members purchased or leased one or more Class Vehicles.

6      2734.   The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits lists unlawful

7  deceptive trade practices, including when a seller: "(i) Represents that merchandise has a source,

8  origin, sponsorship, approval, accessories, or uses it does not have;" "(iii) Represents that

9  merchandise is of a particular standard, grade, style or model, if it is not;" "(x) Advertises

10  merchandise with intent not to sell it as advertised;" "(xv) Engages in unfair or deceptive acts or

11  practices." Wyo. Stat. § 40-12-105(a).

12      2735.   In the course of their business, Defendants concealed and suppressed material facts

13  concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for

14  emissions testing that were different from production vehicles, (b) installing a secret software

15  program that caused the vehicles to perform differently during emissions testing than on the road,

16  and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass

17  emissions tests when they in fact did not.

18      2736.   Wyoming State Class members had no way of discerning that Defendants'

19  representations were false and misleading because Wyoming State Class members did not have

20  access to Defendants' emissions certification test vehicles and Defendants' emissions-related

21  hardware and software was extremely sophisticated technology.

22      2737.   Defendants thus violated the Wyoming CPA by, at minimum: representing that

23  Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

24  representing that Class Vehicles are of a particular standard, quality, and grade when they are not;

25  advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing

26  that the subject of a transaction involving Class Vehicles has been supplied in accordance with a

27  previous representation when it has not.

28

2738.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Wyoming State Class.

2739.   Defendants knew or should have known that their conduct violated the Wyoming CPA.

2740.   Defendants owed the Wyoming State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      A.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      B.     intentionally concealed the foregoing from regulators and Wyoming State Class members; and/or

      C.     made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2741.   Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions were material to the Wyoming State Class.

2742.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Wyoming State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

2743.   Defendants' violations present a continuing risk to the Wyoming State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2744.   Wyoming State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Wyoming CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2745.   Pursuant to Wyo. Stat. § 40-12-108(a), the Wyoming State Class seeks damages as determined at trial, and any other just and proper relief available under the Wyoming CPA, including but not limited to court costs and reasonable attorneys' fees as provided in Wyo. Stat. § 40-12-108(b).

2746.   Pursuant to Wyo. Stat. Ann. § 40-12-109, Plaintiffs sent a notice letter to Defendants. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by way of the investigations conducted by governmental regulators. The Wyoming State Class seeks all damages and relief to which it is entitled.

**WYOMING COUNT II:**
**Breach of Express Warranty**
**Wyo. Stat. §§ 34.1-2-313 and 34.1-.2A-210**
**(On Behalf of the Wyoming State Class)**

2747.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2748.   This count is brought on behalf of the Wyoming State Class against all Defendants.

2749.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wyo. Stat. §§ 34.1-2-104(a) and 34.1-2.A-103(a)(xx), and "sellers" of motor vehicles under § 34.1-2-103(a)(iv).

2750.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wyo. Stat. § 34.1-2.A-103(a)(xvi).

2751.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Wyo. Stat. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

2752.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2753.   Defendants also made numerous representations, descriptions, and promises to Wyoming State Class members regarding the performance and emission controls of their vehicles.

2754.   For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the

1    time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free

2    from defects in material and workmanship which would cause it not to meet those standards."

3        2755.   The Clean Air Act also requires manufacturers of light-duty vehicles to provide two

4    federal emission control warranties: a "Performance Warranty" and a "Design and Defect

5    Warranty."

6        2756.   The EPA requires vehicle manufacturers to provide a Performance Warranty with

7    respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for

8    their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

9    required by the EPA applies to repairs that are required during the first two years or 24,000 miles,

10   whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major

11   emission control components are covered for the first eight years or 80,000 miles (whichever

12   comes first). These major emission control components subject to the longer warranty include the

13   catalytic converters, the electronic emission control unit, and the onboard emission diagnostic

14   device or computer.

15       2757.   The EPA requires vehicle manufacturers to issue Design and Defect Warranties

16   with respect to their vehicles' emission systems. Thus, Defendants also provide an express

17   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

18   Design and Defect Warranty required by the EPA covers repair of emission control or emission

19   related parts, which fail to function or function improperly because of a defect in materials or

20   workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes

21   first, or, for the major emission control components, for eight years or 80,000 miles, whichever

22   comes first.

23       2758.   As manufacturers of light-duty vehicles, Defendants were required to provide these

24   warranties to purchasers or lessees of Class Vehicles.

25       2759.   Defendants' warranties formed a basis of the bargain that was reached when

26   consumers purchased or leased Class Vehicles.

27       2760.   Despite the existence of warranties, Defendants failed to inform Wyoming State

28   Class members that the Class Vehicles were defective and intentionally designed and manufactured

1    to emit more pollution and achieve worse fuel economy on the road than what was disclosed to

2    regulators and represented to consumers who purchased or leased them, and Defendants failed to

3    fix the defective emission components free of charge.

4         2761.   Defendants breached the express warranty promising to repair and correct

5    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and

6    have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

7         2762.   Affording Defendants a reasonable opportunity to cure their breach of written

8    warranties would be unnecessary and futile here.

9         2763.   Furthermore, the limited warranty promising to repair and correct Defendants'

10   defect in materials and workmanship fails in its essential purpose because the contractual remedy is

11   insufficient to make Wyoming State Class members whole and because Defendants have failed

12   and/or have refused to adequately provide the promised remedies within a reasonable time.

13        2764.   Accordingly, recovery by Wyoming State Class members is not restricted to the

14   limited warranty promising to repair and correct Defendants' defect in materials and workmanship,

15   and they seek all remedies as allowed by law.

16        2765.   Also, as alleged in more detail herein, at the time Defendants warranted and sold or

17   leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not

18   conform to their warranties; further, Defendants had wrongfully and fraudulently concealed

19   material facts regarding the Class Vehicles. Wyoming State Class members were therefore induced

20   to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

21        2766.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved

22   through the limited remedy of repairing and correcting Defendants' defect in materials and

23   workmanship as many incidental and consequential damages have already been suffered because of

24   Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued

25   failure to provide such limited remedy within a reasonable time, and any limitation on Wyoming

26   State Class members' remedies would be insufficient to make them whole.

27        2767.   Finally, because of Defendants' breach of warranty as set forth herein, Wyoming

28   State Class members assert, as additional and/or alternative remedies, the revocation of acceptance

of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2768.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs as well as the regulators' investigations.

2769.   As a direct and proximate result of Defendants' breach of express warranties, Wyoming State Class members have been damaged in an amount to be determined at trial.

**WYOMING COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Wyo. Stat. §§ 34.1-2-314 and 34.1-.2A-212**
**(On Behalf of the Wyoming State Class)**

2770.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2771.   This count is brought on behalf of the Wyoming State Class against all Defendants.

2772.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wyo. Stat. §§ 34.1-2-104(a) and 34.1-2.A-103(a)(xx), and "sellers" of motor vehicles under § 34.1-2-103(a)(iv).

2773.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wyo. Stat. § 34.1-2.A-103(a)(xvi).

2774.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Wyo. Stat. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

2775.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wyo. Stat. §§ 34.1-2-314 and 34.1-2.A-212.

2776.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1    2777.   Defendants were provided reasonable notice of these issues by way of a letter sent

2    by Plaintiffs as well as the regulators' investigations.

3    2778.   As a direct and proximate result of Defendants' breach of the implied warranty of

4    merchantability, Wyoming State Class members have been damaged in an amount to be proven at

5    trial.

6    **X.     REQUEST FOR RELIEF**

7            WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class

8    and all Subclasses, respectfully request that the Court enter judgment in their favor and against

9    Defendants, as follows:

10           A.      An order temporarily and permanently enjoining Defendants from

11    continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and

12    practices alleged in this Complaint;

13           B.      Relief in the form of a comprehensive program to fully reimburse and make

14    whole all Class members for all costs and economic losses resulted from the inaccurate fuel

15    economy disclosures, as well as any other consequential damages suffered as a result of the

16    false fuel economy statistics;

17           C.      A declaration that Defendants are financially responsible for all Class notice

18    and the administration of Class relief;

19           D.      Costs, restitution, compensatory damages for economic loss and

20    out-of-pocket costs, multiple damages under applicable states' laws, punitive and

21    exemplary damages under applicable law; and disgorgement, in an amount to be

22    determined at trial;

23           E.      Rescission of all Class Vehicle purchases or leases, including

24    reimbursement and/or compensation of the full purchase price of all Class Vehicles,

25    including taxes, licenses, and other fees.

26           F.      Any and applicable statutory and civil penalties;

27           G.      An order requiring Defendants to pay both pre- and post-judgment interest

28    on any amounts awarded.

1              H.      An award of costs and attorneys' fees, as allowed by law;

2              I.      Leave to amend this Complaint to conform to the evidence produced at trial;

3  and

4              J.      Such other or further relief as the Court may deem appropriate, just, and

5  equitable.

6  **XI.**    **DEMAND FOR JURY TRIAL**

7      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

8  and all issues in this action so triable of right.

9  Dated: October 23, 2020          Respectfully submitted,

10                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

11

12                        By: */s/ Elizabeth J. Cabraser*
                          Elizabeth J. Cabraser (State Bar No. 083151)
                          Kevin R. Budner (State Bar No. 287871)

13                        Phong-Chau G. Nguyen (State Bar No. 286789)
                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

14                        275 Battery Street, 29th Floor
                          San Francisco, CA 94111

15                        Telephone: 415.956.1000
                          Facsimile: 415.956.1008

16                        E-mail: ecabraser@lchb.com
                          kbudner@lchb.com

17                        pgnguyen@lchb.com

18                        David S. Stellings
                          Wilson M. Dunlavey (State Bar No. 307719)

19                        Kara I. McBride
                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

20                        250 Hudson Street, 8th Floor
                          New York, NY 10013

21                        Telephone: 212.355.9500
                          Facsimile: 212.355.9592

22                        E-mail: dstellings@lchb.com
                          wdunlavey@lchb.com

23                        kmcbride@lchb.com

24                        *Plaintiffs' Lead Counsel*

25

26

27

28